# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Thomas Dexter Jakes<br><br>             Plaintiff<br><br>~against~<br><br>Duane Youngblood, et al.<br><br>             Defendant | Civil Action No. **2:24-CV-1608-WSS**<br><br>**Defendant's Special Motion To Dismiss Pursuant To Pennsylvania's Anti-Slapp Statute** |

---

## Defendant's Special Motion To Dismiss
## Pursuant To Pennsylvania's Anti-Slapp Statute

Brief By:

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
90 Broad Street, 2nd Floor
New York, NY 10004

## Table of Contents

I.    **Introduction** ............................................................... 1

•   Purpose and Overview ...................................................... 1

•   Key Themes and First Amendment Implications .............. 2

II.   **Factual Background** ................................................... 3

•   Personal History of Abuse ............................................. 3

•   Encounters with Prominent Church Figures .................... 4

•   The Role of Transparency and Advocacy in Healing ...... 5

•   Public Context of Allegations and Statements ............... 6

III.  **Legal Standard** ....................................................... 7

•   Overview of Pennsylvania's Anti-SLAPP Statute ............ 7

•   Legislative Purpose and Burden-Shifting Provisions ...... 8

IV.   **Argument** ............................................................. 10

•   Defendant's Statements Are Protected Public Expression
    ........................................................... 10

    o   Matters of Public Concern ........................................... 11

    o   Importance of Open Discourse and Criticism ............... 12

•   Plaintiff Cannot Establish a Prima Facie Case ............. 14

    o   Defamation Per Se Claims ......................................... 15

    o   Civil Conspiracy Claims .............................................. 16

•   Public Policy and Anti-SLAPP Statute Support Dismissal
    ........................................................... 17

•   Defendant Is Entitled to Attorney Fees ........................ 19

V.    **Request for Leave to File Cross-Complaint** ....................... 21

•   Causes of Action in Texas ............................................ 21

•   Causes of Action in Pennsylvania ................................. 22

VI.   **Conclusion** .............................................................. 22

## Table of Authorities

**Cases**

1. *New York Times Co. v. Sullivan, 376 U.S. 254 (1964)* ......... *10, 12, 19*

2. *Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767 (1986)* ....................................................... *10, 12, 17, 22*

3. *Hustler Magazine v. Falwell, 485 U.S. 46 (1988)* ............... *10, 12*

4. *Joseph v. Scranton Times, L.P., 129 A.3d 404 (Pa. 2015)* ............................................................ *15, 16*

5. *Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)* .............. *17*

6. *Baral v. Schnitt, 376 P.3d 604 (Cal. 2016)* ........................ *11, 18*

7. *In re Lipsky, 460 S.W.3d 579 (Tex. 2015)* ........................ *11, 18*

8. *Tucker v. Phila.  Daily News, 848 A.2d 113 (Pa. 2004)* ...... *15*

9. *Hoy v. Angelone, 691 A.2d 476 (Pa. Super. Ct. 1997)* ...... *22*

10. *Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988 (Pa. 1987)* ................................................. *22*

11. *Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466 (Pa. 1979)* ................................................. *22*

12. *Twyman v. Twyman, 855 S.W.2d 619 (Tex. 1993)* ............. *21*

**Statutes**

13. *Pennsylvania Anti-SLAPP Statute, 42 Pa.C.S. § 8340.11 et seq.* ......................................................... *7, 10, 17*

## INTRODUCTION

This Court is tasked with addressing one of the most egregious attempts to pervert the judicial process for personal gain. Plaintiff, Thomas Dexter "T.D." Jakes, a self-proclaimed spiritual leader revered by millions, has weaponized this lawsuit not to seek justice but to muzzle the voice of truth. His hypocrisy is staggering—standing in the pulpit on Sundays to preach virtue while allegedly engaging in depraved acts betraying the principles he claims to uphold. As Scripture warns, "*Beware of false prophets, who come to you in sheep's clothing but inwardly are ravenous wolves*" (Matthew 7:15). Plaintiff epitomizes this warning, using his platform to project an image of righteousness while allegedly abusing his power to satisfy his closeted homosexual desires.

Defendant Duane Youngblood, a survivor of clergy abuse and an advocate for transparency, stands accused of defamation and other baseless claims for daring to speak his truth. However, the Defendant's narrative is not one of vengeance; it is one of redemption and accountability. By no means is Defendant a patron saint. He has admittedly done things in his past that he is ashamed of, and after he has served his time, he has focused on publicly atoning for his actions. The Defendant is trying to shed light on systemic abuses within religious institutions. His statements, grounded in lived experience and supported by corroborating affidavit testimony, are the very type of protected speech Pennsylvania's anti-SLAPP statute seeks to preserve.

This motion seeks to dismiss the Plaintiff's retaliatory complaint and highlight the gross misuse of power by a man who has consistently avoided accountability. The Bible rebukes such duplicity: "*You shall not misuse the name of the Lord your God, for the Lord will not hold anyone guiltless who misuses his name*" (Exodus 20:7). Plaintiff's actions represent an affront to this commandment, exploiting the sanctity of faith to shield his misconduct. By granting this motion, this Court will affirm the principles of free speech and justice while ensuring that those who abuse their positions of power are held accountable.

## FACTUAL BACKGROUND

As the leader of The Potter's House in Dallas, Texas, a megachurch with an international following, Plaintiff wields significant influence over millions of congregants and the broader Christian community. Despite this public image of moral authority, serious allegations have emerged accusing him of engaging in sexually exploitative behavior and abusing his position of

4

power.  Defendant Duane Youngblood is a survivor of childhood sexual abuse and a former pastor who has dedicated his life to raising awareness about systemic abuse within religious institutions. Defendant's disclosures are deeply personal, recounting his experiences of grooming and abuse by clergy members, including Plaintiff.  These statements are not recent fabrications but part of a consistent narrative shared over decades, both privately and publicly.

The Defendant's experiences have left lasting scars.  Diagnosed with Post-Traumatic Stress Disorder (PTSD), anxiety disorder, and severe depression, Defendant has spent years in therapy addressing the impact of the abuse he endured.  His public statements are part of a broader therapeutic journey rooted in a desire to heal and prevent others from suffering similar harm. Through this process, the Defendant has taken responsibility for his past missteps and has become an advocate for survivors, exposing the pervasive issue of clergy abuse and calling for systemic reform.

Multiple sworn affidavits corroborate Defendant's account.  Witnesses such as Jeffrey S. Gray and Richard Edwin Youngblood have provided detailed testimonies recounting Defendant's disclosures about Plaintiff.  Jeffrey S. Gray attested to a specific incident in which Plaintiff allegedly made unwelcome advances toward Defendant following a church service in Pittsburgh, Pennsylvania.  See **Blackburn Dec. Exhibit A**.  Richard Edwin Youngblood confirmed that Defendant consistently described Plaintiff's attempts to groom him, including an alleged financial proposal contingent upon sexual favors.  See **Blackburn Dec. Exhibit B**.  In addition to Jeffrey S. Gray and Richard Edwin Youngblood, the Defendant has affidavits from Daniel B. Spaulding (See **Blackburn Dec. Exhibit C**); LaShawn Youngblood (See **Blackburn Dec. Exhibit D**); Joshua Munoz (See **Blackburn Dec. Exhibit E**) and Landon Claybourne (See **Blackburn Dec. Exhibit F**).

Public scrutiny of Plaintiff's behavior has intensified in recent years, fueled by viral social media content and investigative reporting.  Numerous reports have linked Plaintiff to inappropriate relationships with young men and participation in sexually charged gatherings hosted by Sean "Diddy" Combs.  Sean Combs is currently under federal indictment for RICO sex trafficking, prostitution, etc.  One of Mr. Combs' male sex workers has come forward and named Bishop Jakes as a participant in Diddy's "Freak Off" parties.  Allegations include Plaintiff's alleged grooming of male mentees and his role in covering up misconduct within his religious organization.  See **Blackburn Dec. Exhibit G**, "*More about TD Jakes' gay accusations plus pedophilia activities*

*lands online*," and **Blackburn Dec. Exhibit H**, "*TD Jakes: 'If everything was true, all I got to do is repent*."

Defendant has alleged that Plaintiff and his associates have engaged in retaliatory conduct to silence him. Not only has Plaintiff filed this baseless lawsuit, but Defendant has also reported receiving threats from individuals associated with Plaintiff, including his son. See **Blackburn Dec. Exhibit I** *Jermaine Jakes' Social Media Threat*. These actions have exacerbated Defendant's PTSD and heightened his sense of vulnerability, reinforcing the psychological toll of his past trauma with Plaintiff. See **Blackburn Dec. Exhibit J** *Linda Sturdivant's letter on Duane*.

Despite the mounting evidence and public discourse, Plaintiff continues to portray himself as a moral and spiritual leader, using his platform to denounce those who seek accountability. His public sermons dismissing the allegations as "lies" starkly contrast the biblical principles he claims to uphold. As Proverbs 28:13 declares, "*Whoever conceals their sins does not prosper, but the one who confesses and renounces them finds mercy.*" The Plaintiff's refusal to address the allegations transparently underscores the hypocrisy of his position. See **Blackburn Dec. Exhibit K**. "*Bishop T.D. Jakes Denies Sexual Misconduct at Diddy's Parties*."

Far from malicious, the Defendant's statements are rooted in lived experience and serve a critical public purpose. By sharing his story, the Defendant contributes to a broader conversation about systemic abuse, the failures of institutions to protect the vulnerable, and the urgent need for accountability. These disclosures align with Pennsylvania's anti-SLAPP statute's goal of protecting free expression on matters of **public concern**.

## LEGAL STANDARD

Under Pennsylvania's newly enacted anti-SLAPP statute (See, Blackburn, Dec. Exhibit H), codified at 42 Pa.C.S. § 8340.11 et seq., a special motion to dismiss may be filed against lawsuits targeting protected public expression. The statute is modeled on similar laws in other jurisdictions and explicitly aims to curb litigation intended to silence speech on matters of public concern.

### Key Provisions of the Anti-SLAPP Statute:

- Protected Public Expression: The statute defines "protected public expression" as any communication related to matters of public concern, including: 1. Speech made in a legislative, executive, judicial, or administrative proceeding. 2. Communications under review in such proceedings. 3. Speech on *issues of public importance*, encompassing the rights to freedom

of speech, press, assembly, and petition as guaranteed by the First Amendment of the U.S. Constitution and Article I, Section 7 of the Pennsylvania Constitution (§ 8340.13).

- <u>Grant of Immunity</u>: A party is immune from civil liability if the action arises from protected public expression and the Plaintiff fails to establish a prima facie case for their claims (§ 8340.15).

- <u>Special Motion to Dismiss</u>: Defendants may file a motion within 60 days of being served with the complaint. Upon filing, all other proceedings, including discovery, are stayed unless the Court permits limited discovery necessary to address the motion (§ 8340.16).

- <u>Burden Shifting</u>: Once a defendant demonstrates that the action arises from protected expression, the burden shifts to the Plaintiff to establish a probability of prevailing on the merits of their claims (§ 8340.15(1)).

- <u>Awards for Prevailing Parties</u>: If the Defendant prevails, the Court must award attorney fees, costs, and litigation expenses. Conversely, if the Court finds the motion frivolous, the Plaintiff may recover their costs (§ 8340.18).

<u>Public Concern</u>: The Defendant's statements about the Plaintiff's misconduct highlight systemic abuse, institutional accountability, and the misuse of power by religious leaders. Courts consistently recognize such topics as matters of public concern.

In *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), the Supreme Court held that speech addressing public issues occupies the highest rung of First Amendment protections. Here, Defendant's disclosures about Plaintiff's grooming and exploitation directly contribute to public discourse on systemic abuse within religious institutions. The Defendant's allegations were the latest in a chorus of allegations of sexual assault, closeted homosexuality, and grooming directed at Plaintiff Jakes. Ironically, Plaintiff Jakes' has only opted to sue Defendant but has purportedly paid off several men who raised the same and/or similar claims as Defendant.

The allegations that Plaintiff participated in sex parties and engaged in grooming behavior have been widely reported in public forums, including TikTok and investigative media. The Defendant's statements, such as "Bishop Jakes groomed me" and "He used his position as a pastor to manipulate and exploit me," are directly tied to these public conversations and contribute to broader societal awareness.

Chilling Effect on Free Speech: Allowing Plaintiff's claims to proceed would set a dangerous precedent, discouraging survivors and advocates from speaking out against powerful figures. The Pennsylvania General Assembly specifically noted that the statute should be broadly construed to protect such speech (§ 8340.12).

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court recognized that imposing liability for defamation on public officials [figures] without proof of actual malice would lead to self-censorship, chilling free speech. Similarly, in the current case, the Defendant's statements address public figures and matters of significant public concern, and litigation against such speech risks suppressing essential public discourse. The Court in *Sullivan* emphasized that the First Amendment protects robust debate on matters of public importance, even if such debate includes harsh criticisms or errors, to avoid silencing individuals who seek to expose wrongdoing.

### Bishop T.D. Jakes is a self-proclaimed "world-renowned spiritual leader, global philanthropist, author, film and music producer."

In *Gertz*, 418 U.S. at 351, the Supreme Court identified two distinct categories of public figures. The first is an "all purpose" public figure who "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." Id. at 351. The second is a "limited" public figure, who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Id. "That 'limited range of issues' is identified 'by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'" *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 13 (1st Cir. 2011) (quoting *Gertz*, 418 U.S. at 352). If a plaintiff has "attempted to 'influence the resolution' of that controversy," the Plaintiff is considered a limited public figure"and bears the heavy, and often insurmountable, burden of proving actual malice." *Lluberes*, 663 F.3d at 14. The controversy at issue must predate the alleged defamation. See id.

Here, the Court can take Judicial notice that the Plaintiff is an "all-purpose public figure" as that term is defined in Gertz, as the Plaintiff self-identified as such in paragraph 4 of his baseless complaint. As a result of this self-proclamation, the Plaintiff has voluntarily adopted the burden of pleading **actual malice** under *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

8

"[T]he requirement that the plaintiff be able to show actual malice by clear and convincing evidence is initially a matter of law." *Tucker*, 577 Pa. at 626, 848 A.2d at 130 (citation omitted). "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Milkovich*, 497 U.S. at 17, 110 S.Ct. at 2705 (quotation marks and quotation omitted).  This rule is premised on "the unique character of the interest protected by the actual malice standard." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685-86, 109 S.Ct. 2678, 2695, 105 L. Ed. 2d 562 (1989).  More fundamentally, the rule is derived from the recognition that "[j]udges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" *Bose Corp.*, 466 U.S. at 511, 104 S.Ct. at 1965.

As to what constitutes actual malice, the federal High Court has held … actual malice requires "at a minimum that statements were made with a reckless disregard for the truth." Id. at 667, 109 S.Ct. at 2686.  That is, "the defendant must have made the false publication with a 'high degree of awareness . . . of probable falsity,' or must have 'entertained serious doubts as to the truth of his publication[.]'" Id.  (quotations omitted). … Also, "[t]he standard is a subjective one--there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of . . . probable falsity.'" Id. at 688, 109 S.Ct. at 2696(quotation omitted). *Joseph v. Scranton Times L.P.*, 634 Pa. 35, 129 A.3d 404 (2015).

Here, this billing exercise, poorly disguised as a defamation complaint, focuses on a conclusory civil conspiracy and the Defendant's criminal past, as opposed to denying any other aspect of the Defendant's 10-minute story aside from the claims of grooming and sexual assault. Plaintiff has failed miserably to show that Defendant had a "high degree of awareness of probable falsity," or that he "entertained serious doubts as to the truth of his publications."  Plaintiff failed to meet this heightened pleading standard because Defendant was not lying!  Plaintiff knows that Defendant confronted him about his actions.  Plaintiff knows that Defendant has been crying out for help to church elders, telling his accounts of Plaintiff's assault to anyone who would listen for nearly four decades.  As evidenced by the Defendant's sworn affidavit witness statements, his story has remained the same for 40 years.

## TD Jakes Is Defamation Proof!

Public discourse about Plaintiff's alleged misconduct is widespread and well-documented. Social media platforms and investigative reports have brought to light allegations of grooming, sexual abuse, and exploitation involving Plaintiff with specific claims alleging: 1. Plaintiff's participation in sex parties hosted by Sean "Diddy" Combs, as reported by multiple sources. See **Blackburn Dec. Exhibit L** "*Bishop T.D. Jakes and long-time friend accused of sexual assault*," and See **Blackburn Dec. Exhibit M** "*Kenneth Copeland, T.D. Jakes & Rick Warren are being accused of sexual abuse - LGBTQ Nation*." 2. Text messages allegedly sent by Plaintiff to a male mentee containing flirtatious and inappropriate content. See **Blackburn Dec. Exhibit N** "*Text messages of Bishop TD Jakes surfaces of him flirting with man*," and 3. Allegations by Plaintiff's former mentee, Manasseh Jordan, who claimed that Plaintiff groomed and sexually assaulted him during his youth. See **Blackburn Dec. Exhibit O** "*Alleged victims of Bishop T.D. Jakes planning legal action*."

Statements from alleged victims of Plaintiff include:

> "Bishop Jakes groomed me" See, **Blackburn Dec. Exhibit O**.
> "Bishop Jakes sexually assaulted me" See, **Blackburn Dec. Exhibit M**.
> "He invited me to private meetings under the guise of spiritual mentorship, only to violate my trust" See **Blackburn Dec. Exhibit G**.
> "He used his position as a pastor to manipulate and exploit me" See, **Blackburn Dec. Exhibit O**.
> "I was forced to remain silent while he continued to abuse others." See **Blackburn Dec. Exhibit N**.

These are just a handful of statements made by individuals who have come forward to share their victimization by the Plaintiff. Despite these allegations, the Plaintiff continues to portray himself as a moral authority, preaching to millions while allegedly living a double life. It is clear from these articles that Plaintiff Jakes has been the topic of discussion in the public for several years prior to his interview with Larry Reid on 10/28/2024.

## "Whoever Walks With The Wise Becomes Wise, But A Companion Of Fools Will Suffer Harm." Proverbs 13:20

A man is known by the company he keeps, and not surprisingly, Plaintiff keeps company with indicted RICO sex traffickers (Sean Combs) and alleged sexually assaulting members of the clergy (Eddie Long, Kenneth Copeland, and Rick Warren).

For instance, Bishop Eddie Long, a close compatriot of Plaintiff, was accused of coercing young men into sexual relationships under the guise of spiritual mentorship. Although Long denied the allegations, he settled multiple lawsuits filed by his accusers. During the time these accusations came out, Plaintiff stated in a CNN interview (August 2013) that what Bishop Long was going through concerning the allegations was a "tragedy." He then said he tried to "counsel," and "comfort" Bishop Long. Other prominent figures, such as Kenneth Copeland and Rick Warren, have also faced accusations of sexual misconduct, highlighting systemic issues within religious institutions. See **Blackburn Dec. Exhibit M**.

### Defendant's Public Statements Concerning His Childhood Sexual Assaults Committed By Members Of The Clergy Contribute To A Broader Conversation

The Defendant's public statements contribute to a broader conversation about the systemic failures within religious institutions to protect vulnerable individuals. His disclosures are vital to ongoing efforts to protect future congregants from future harm.

The Catholic Church, similarly, has faced a deluge of sexual abuse claims worldwide. Thousands of priests have been accused of sexually assaulting minors, leading to multi-billion-dollar settlements and calls for systemic reform within the Church. Reports indicate a long history of institutional cover-ups, where clergy members were relocated rather than held accountable for their actions. This pattern underscores the broader, systemic issues within religious institutions that prioritize self-preservation over accountability and justice for victims.

### ARGUMENT

I. Defendant's Statements Are Protected Public Expression

Defendant's statements about Plaintiff, a self-proclaimed globally prominent religious leader and public figure, address matters of significant public interest, including systemic abuse, institutional accountability, and the misuse of power within faith-based organizations. As a public figure, Plaintiff must meet a heightened standard to claim defamation, as established in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). This heightened standard exists to ensure that public discourse remains robust and uninhibited, especially when addressing issues of societal concern.

A. Plaintiff's Public Figure Status

Plaintiff, Bishop T.D. Jakes is undeniably a public figure. See above.

B. Implications of Public Figure Status

11

As a public figure, Plaintiff cannot claim defamation per se without proving actual malice—that is, that Defendant knowingly published false information or acted with reckless disregard for the truth.  This standard, outlined in *New York Times Co. v. Sullivan*, serves to protect speech on matters of public concern, even if the speech is critical or unfavorable.  Courts have consistently emphasized the importance of safeguarding discussions about public figures to prevent a chilling effect on free expression.  (*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988).

> "The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that *they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from publicity is so great, and the chance of injury to private character so small, that such discussion must be privileged*." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964).  See **Blackburn Dec. Exhibit P**.

Defendant's statements, made during an interview on *Larry Reid Live*, addressed issues of systemic abuse within religious institutions and included personal accounts of misconduct by Plaintiff visited upon Defendant.  These statements contribute to a broader societal dialogue and are firmly protected under Pennsylvania's anti-SLAPP statute and the First Amendment.

The Defendant's statements were made during a widely respected interview on *Larry Reid Live*, a premier YouTube platform that champions community advocacy and reform, particularly within the Black Church and the broader African diaspora.  Hosted by Mr. Larry Reid, an artist, clergyman, and altruistic entrepreneur, the platform provides survivors of clergy abuse a safe space to voice their experiences and raise awareness about systemic issues, including sexual abuse and institutional corruption.

Defendant's statements about Plaintiff, a globally prominent religious leader, address matters of significant public interest, including systemic abuse, institutional accountability, and the misuse of power within faith-based organizations.  Under Pennsylvania's anti-SLAPP statute, 42 Pa.C.S. § 8340.11 et seq., such speech is safeguarded when it pertains to public concerns and contributes to societal discourse.  See **Blackburn Dec. Exhibit Q**.

C.  Matters of Public Concern

Speech involving public figures and institutions addressing societal or systemic issues is accorded the highest level of First Amendment protection.  The Supreme Court, in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), emphasized that speech on matters of public concern lies at the heart of free expression and must be safeguarded to ensure robust debate.  See **Blackburn Dec. Exhibit R**.

> "a public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation.  See *Garrison* v. *Louisiana*, 379 U.S. 64, 74 (1964) (reading *New York Times* for the proposition that "a public official [is] allowed the civil [defamation] remedy only if he establishes that the utterance was false").  See also *Herbert* v. *Lando*, 441 U.S. 153, 176 (1979) ("[The] plaintiff must focus on the editorial process and prove a false publication attended by some degree of culpability")."  *Phila.  Newspapers v. Hepps*, 475 U.S. 767, 106 S. Ct. 1558 (1986).

Defendant's disclosures about alleged misconduct by Plaintiff fall squarely within this category, as they expose abuses of power within a globally influential institution by a self-proclaimed globally influential clergyman.

> "In a case presenting a configuration of speech and Plaintiff like the one we face here, and where the scales are in such an uncertain balance, we believe that the Constitution requires us to tip them in favor of protecting true speech.  To ensure that true speech on matters of public concern is not deterred, we hold that the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages … for speech of public concern." *Phila.  Newspapers v. Hepps*, 475 U.S. 767, 106 S. Ct. 1558 (1986).

The Defendant's statements contribute to a critical and ongoing dialogue about institutional reform and accountability.  Dismissing this lawsuit would reinforce the legislative intent behind the anti-SLAPP statute, ensuring that the judicial system is not misused to suppress speech on matters of profound public concern.

## Pennsylvania Spearheaded The National Practice Of Holding Clergymen Accountable For Sexual Depravity

In Pennsylvania, public policy underscores the importance of investigating and eradicating sexual abuse within the clergy.  This commitment was exemplified by the 2018 Pennsylvania grand jury report, which detailed decades of systemic abuse and cover-ups within the Catholic Church, affecting thousands of victims across multiple dioceses[1].

---

[1] The document is 1356 pages.  The Court can access a PDF of the document here: https://www.attorneygeneral.gov/wp-content/uploads/2023/05/INVESTIGATING-GRAND-JURY-REPORT-NO.-1_FINAL_May-2023_Redacted.pdf

Pennsylvania's former Attorney General and current Governor, Josh Shapiro, described the report as "the largest, most comprehensive report into child sexual abuse within the Catholic Church ever produced in the United States." Pennsylvania has since enacted policies and pursued investigations to hold religious institutions accountable and encourage transparency to protect vulnerable populations.

The Defendant's statements contribute to this critical discourse by adding his personal testimony of clergy abuse to the chorus of other survivors of clergy abuse in Pennsylvania. Defendants' advocacy aims to address the failure of black religious institutions to protect individuals from predatory clergy and expose systemic issues that perpetuate abuse. Platforms like *Larry Reid Live* serve as a safe space for survivors of clergy abuse to amplify these discussions, ensuring that survivors and advocates can voice their concerns while fostering accountability and reform. A year before Defendants interview, Plaintiffs former mentee Manasseh Jordan used Larry Reid Live to come forward and share his experience being groomed and sexually assaulted by Plaintiff.

Speech involving public figures and institutions addressing societal or systemic issues is accorded the highest level of First Amendment protection. The Supreme Court, in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), emphasized that speech on matters of public concern lies at the heart of free expression and must be safeguarded to ensure robust debate.

Defendant's disclosures about misconduct by Plaintiff, which was visited upon him, fall squarely within this category, as they expose potential abuses of power within a globally influential institution. Additionally, the Defendant's statements during the *Larry Reid Live* interview[2] were part of a broader two-hour discussion centered on accountability, signs of grooming behavior, and the systemic failure of church leaders to address issues of sexual depravity within the clergy. Only approximately ten minutes of this dialogue pertained to Plaintiff specifically, highlighting how Defendant's speech was not targeted but rather part of a critical conversation aimed at meaningful reform within faith-based organizations.

In his disclosures, Defendant identified Plaintiff as one of several male figures who allegedly sexually assaulted him during his childhood. These statements were made in the context of raising awareness about the pervasive nature of clergy abuse and the long-term impact of such

---

[2] The Court can access a link to the YouTube interview via this link:
https://www.youtube.com/live/DN2Q5hWyeI0?si=mq6bTMx-ayxevx6K

actions on survivors. The Defendant's allegations contribute to a necessary and urgent discussion about institutional accountability and the need for systemic change. Speech involving public figures and institutions addressing societal or systemic issues is accorded the highest level of First Amendment protection. The Supreme Court, in *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986). Here, Platforms like *Larry Reid Live* play a critical role in fostering this necessary dialogue, giving voice to survivors and advocating for meaningful reform.

D.  Anti-SLAPP Protections

Pennsylvania's anti-SLAPP statute, 42 Pa.C.S. § 8340.11 et seq., is designed to protect individuals from lawsuits aimed at silencing constitutionally protected speech. The statute recognizes that litigation is often weaponized to intimidate or financially burden defendants who engage in public discourse. In this case, Defendant's statements are squarely protected under the statute, and Plaintiff's claims fail to meet the required legal standards.

The statute mandates that its provisions be "broadly construed" to encourage participation in public discourse on matters of significant societal importance (§ 8340.12). Defendant's statements on *Larry Reid Live* pertained to allegations of misconduct by Plaintiff, a globally recognized religious leader, and systemic issues within the Church. These are quintessential matters of public concern.

Pennsylvania's statute mirrors the principles of similar laws in states like California and Texas, which courts have upheld as critical to preserving free expression on public platforms. *Baral v. Schnitt*, 376 P.3d 604 (Cal. 2016); *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015).

**Burden Shifting to Plaintiff**

Once Defendant demonstrates that the claims arise from protected public expression, the burden shifts to Plaintiff to establish a prima facie case for each element of their claims (§ 8340.15(1)). Plaintiff must present admissible evidence to prove that the Defendant's statements were false and made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). However, Plaintiff has failed to provide credible evidence to meet this burden, relying instead on speculative assertions.

Immunity and Judgment as a Matter of Law The statute provides immunity if the Plaintiff cannot establish a prima facie case or if the Court determines that there is no genuine issue of material fact, entitling the Defendant to judgment as a matter of law (§ 8340.15(2)). Here,

Defendant's statements are supported by affidavits, public reports, and corroborating testimony. The Plaintiff's inability to demonstrate actual malice or falsity renders their claims legally insufficient.

      <u>Stay of Proceedings and Costs</u> Under § 8340.16, filing a special motion to dismiss stays all proceedings, including discovery, unless limited discovery is necessary to determine the motion's outcome.  (The Court has denied plaintiffs motion for expedited discovery).  This provision prevents plaintiffs from using the litigation process as a means of harassment.  Prevailing defendants are entitled to attorney fees, court costs, and litigation expenses (§ 8340.18).  Defendant respectfully seeks such relief, as Plaintiff's claims are baseless and serve only to burden the judicial system.

II.    <u>Plaintiff Cannot Establish A Prima Facie Case</u>

<u>Defamation Per Se Claims Fail</u>

      Under Pennsylvania law, to prevail in a defamation action, Plaintiff has the burden of proving 1) the defamatory character of the communication; 2) its publication by Defendant; 3) its application to the Plaintiff; 4) an understanding by the reader or listener of its defamatory meaning; 5) an understanding by the reader or listener of an intent by the Defendant that the statement refers to the Plaintiff; 6) special harm resulting to the Plaintiff from its publication; 7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat.  Ann. § 8343(a)(1)-(7) (1998). *Synygy, Inc. v. Scott-Levin, Inc.,* 51 F. Supp.  2d 570 (E.D. Pa. 1999).

      *Truth as a Complete Defense* Pennsylvania law unequivocally recognizes truth as an absolute defense to defamation claims. *Tucker v. Phila.  Daily News*, 848 A.2d 113 (Pa. 2004). The Defendant's statements are corroborated by sworn affidavits, victim testimony, and publicly available reports that align with the Defendant's disclosures of systemic abuse within religious institutions.  Plaintiff cannot meet their burden of proving falsity or demonstrating that the Defendant's statements lack substantial truth.

      <u>Actual Malice Not Demonstrated</u> As a public figure, Plaintiff must establish by clear and convincing evidence that Defendant acted with actual malice—that is, with knowledge of falsity or reckless disregard for the truth. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  The Defendant's statements, based on personal experiences and corroborated accounts, were made in

16

good faith and with the intent to expose systemic abuse. The Plaintiff has offered no evidence to support claims of actual malice.

No Evidence of Reputational Harm To sustain a defamation per se claim, the Plaintiff must demonstrate concrete harm to his reputation. Speculative assertions of harm are insufficient. Plaintiff has failed to present admissible evidence of reputational damage directly resulting from Defendant's statements. Without such evidence, the claim cannot stand. *Joseph v. Scranton Times, L.P.*, 129 A.3d 404 (Pa. 2015).

Civil Conspiracy Claim Fails

To state a claim for civil conspiracy, a plaintiff must allege "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999). The Plaintiff must make "specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 ("Without more, parallel conduct does not suggest conspiracy . . . ."). *Church Mut. Ins. Co. v. All. Adjustment Grp.*, 102 F. Supp. 3d 719 (E.D. Pa. 2015).

"[T]he allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation." *Reed v. Harpster*, 506 Fed. Appx. 109, 111 (3d Cir. 2012) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (affirming dismissal of conspiracy claims based on mere suspicion and speculation). *Tolbert v. Boyce*, No. 3:23-cv-00018, 2024 U.S. Dist. LEXIS 104250 (W.D. Pa. June 12, 2024).

No Evidence of an Unlawful Agreement Civil conspiracy under Pennsylvania law requires proof of an agreement to perform an unlawful act or achieve a lawful result through unlawful means and overt acts in furtherance of that agreement. *Phillips v. Selig*, 959 A.2d 420 (Pa. Super. Ct. 2008). Plaintiff's allegations of coordination between Defendant and others are speculative at best and unsupported by any credible evidence of an agreement to harm Plaintiff.

Lack of Actionable Underlying Tort Civil conspiracy is a derivative claim that requires an actionable underlying tort. Here, Plaintiff's defamation claim fails as a matter of law, rendering the conspiracy claim legally unsustainable. Without an actionable tort, the civil conspiracy claim

must also be dismissed. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396 (3d Cir. 2000).

     <u>Failure to Demonstrate Legal Harm</u> The Plaintiff has not shown actual legal harm resulting from any alleged conspiracy. Assertions of generalized injury or reputational harm fail to meet the standard to sustain a civil conspiracy claim. Moreover, Pennsylvania law precludes recovery where the underlying tort is unsubstantiated.

In *Forish v. Brasile*, Civil Action No. 2:23-cv-1316, 2024 U.S. Dist. LEXIS 108318 (W.D. Pa. June 18, 2024), Your Honor held,

     "Civil rights conspiracy claim. Section 1985(3) provides a remedy against private conspiracies and conspiracies by state actors. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993). It creates a private right of action for persons injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3). "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of [her] constitutional rights. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). More specifically, a plaintiff must allege:

     A conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983).

     The first element requires allegations of a **conspiracy that are "based in fact" and not "merely upon [the plaintiff's] own suspicion and speculation**." *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). To satisfy the second element, "mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." *L.R. ex rel. D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (en banc) (cleaned up)."

As Your Honor articulated in his opinion denying the Plaintiff's motion for expedited discovery, the Plaintiff's conspiracy claims are "bald and vague assertions that other individuals are part of a conspiracy to defame Jakes." See **Blackburn Dec. Exhibit S**.

III.    <u>Defendant Is Entitled To Attorney Fees</u>

Under § 8340.18 of Pennsylvania's anti-SLAPP statute, a prevailing defendant is entitled to recover attorney fees, court costs, and litigation expenses.  This provision reflects the legislative intent to deter baseless lawsuits designed to suppress constitutionally protected speech.  In this case, the Defendant has demonstrated that the Plaintiff's claims are meritless and that the litigation was initiated in bad faith.

<u>Purpose of Fee-Shifting</u> The fee-shifting mechanism ensures that individuals exercising their First Amendment rights are not financially burdened by retaliatory litigation.  The Pennsylvania General Assembly explicitly incorporated this provision to prevent powerful figures or institutions from using the courts to silence dissent.

<u>Defendant's Qualification for Recovery</u> Defendant satisfies the statutory criteria for recovery of fees and costs because: 1.  Plaintiff's claims arise from Defendant's protected public expression, as defined under § 8340.13; 2.  Plaintiff has failed to establish a prima facie case for defamation per se or civil conspiracy, as detailed in the preceding sections, and 3.  Defendant is entitled to judgment as a matter of law, rendering Plaintiff's lawsuit baseless and retaliatory.

<u>Public Policy Goals</u> Awarding attorney fees in this case aligns with the anti-SLAPP statute's overarching goal of deterring frivolous and oppressive litigation.  Such lawsuits undermine free speech and place undue financial burdens on individuals exercising their rights to speak on matters of public concern.

<u>Discouraging Retaliatory Litigation</u> Plaintiff's attempt to use the judicial system to silence Defendant exemplifies the type of retaliatory litigation the anti-SLAPP statute was designed to prevent.  By awarding fees and costs, this Court can reinforce the statute's intent and send a clear message that meritless claims aimed at suppressing public discourse will not be tolerated.

By granting the Defendant's request for attorney fees and costs, the Court will uphold the anti-SLAPP statute's purpose, protect constitutionally protected speech, and deter similar abuses of the judicial system in the future.  The Defendant respectfully requests an award of these fees to deter future misuse of the judicial process.

IV.    <u>Request For Leave To File Cross-Complaint</u>

Defendant Duane Youngblood respectfully seeks leave from this Court to file a cross-complaint against Plaintiff T.D. Jakes and his son, Jermaine Jakes, for the social media threat sent by Jermaine Jakes on November 3, 2024. **See Blackburn Dec. Exhibit I**, and **Blackburn Dec. Exhibit T**. The threat, which stated, "You might be in dangerous territory, Duane... just be careful," was sent from Texas and received by the Defendant in Pennsylvania. This cross-complaint would assert the strongest available causes of action under the laws of both jurisdictions, as outlined below.

<u>Causes of Action in Texas (Jurisdiction Where Message Was Sent)</u>: Intentional Infliction of Emotional Distress (IIED): <u>Legal Standard:</u> Under Texas law, IIED claims require proof of conduct that is so extreme and outrageous that it exceeds all possible bounds of decency in a civilized society. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Additionally, the Defendant must have acted intentionally or recklessly, and the Plaintiff must have suffered severe emotional distress as a result. <u>Application</u>**:** The threatening message sent by Jermaine Jakes was extreme and outrageous, particularly given the existing power dynamics and the timing of the message shortly after the Defendant's public interview exposing systemic abuse. The threat exacerbated Defendant's PTSD, as documented in his therapist's report, and caused significant emotional distress.

Harassment by Communication: <u>Legal Standard</u>: Texas Penal Code § 42.07 prohibits electronic communications intended to harass, annoy, alarm, or embarrass another person. While this is primarily a criminal statute, it can provide the basis for related civil claims where emotional harm is demonstrable. <u>Application</u>: The threatening message, coupled with the context of intimidation, may be actionable as harassment under Texas law.

<u>Causes of Action in Pennsylvania (Jurisdiction Where Message Was Received)</u>: Intentional Infliction of Emotional Distress (IIED): <u>Legal Standard</u>: Pennsylvania recognizes IIED claims when conduct is extreme and outrageous and intentionally or recklessly causes severe emotional distress. *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). Severe emotional distress must be supported by competent medical evidence. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). <u>Application</u>: The threat received in Pennsylvania has directly impacted the Defendant's mental health, causing hypervigilance, panic attacks, and a pervasive fear for his safety. These effects are well-documented in the therapist's report and meet the threshold for IIED.

Harassment by Communication: <u>Legal Standard</u>: Under 18 Pa.C.S. § 2709, harassment occurs when communication is made with the intent to harass, alarm, or annoy the recipient. While primarily a criminal statute, it supports civil claims where the Plaintiff can demonstrate harm resulting from the harassment. <u>Application</u>: The threatening nature of the message constitutes harassment, particularly as it was made with the intent to intimidate the Defendant following his public disclosures.

Civil Conspiracy: <u>Legal Standard</u>: Civil conspiracy in Pennsylvania requires proof of an agreement between two or more parties to commit an unlawful act or to use unlawful means to achieve a lawful goal, along with overt acts in furtherance of the conspiracy. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). <u>Application</u>: If evidence suggests that T.D. Jakes and Jermaine Jakes coordinated the threat to silence Defendant; a claim for civil conspiracy may be sustained, particularly if linked to retaliatory motives related to Defendant's public statements.

Defendant seeks leave to pursue compensatory damages for the emotional and psychological harm caused by the threat, punitive damages for the malicious and retaliatory nature of the conduct, and attorney fees and costs associated with this cross-complaint.

Defendant respectfully requests that this Court grant leave to file a cross-complaint against T.D. Jakes and Jermaine Jakes for their roles in the social media threat and the resulting harm suffered by Defendant. By addressing this retaliatory conduct, the Court will uphold the principles of justice and protect the Defendant's right to speak truthfully and without intimidation.

V.   <u>Conclusion</u>

Plaintiff's claims represent a clear and troubling attempt to misuse the judicial process to silence protected speech and suppress public dialogue on matters of profound societal importance. The Defendant's statements, made on a platform dedicated to fostering awareness and reform, contribute to critical conversations about systemic abuse, institutional accountability, and the long-term impact of misconduct within religious organizations. These statements are indisputably protected under Pennsylvania's anti-SLAPP statute and the First Amendment.

The Plaintiff has failed to meet the legal standards required to sustain claims of defamation per se and civil conspiracy. The lack of evidence demonstrating falsity, malice, or any actionable harm renders the Plaintiff's claims legally and factually insufficient. Furthermore, the Plaintiff's

reliance on speculative assertions underscores the retaliatory nature of this litigation, which serves only to chill free speech and burden the judicial system.

The Pennsylvania anti-SLAPP statute is a critical safeguard against precisely this type of abuse, ensuring that individuals can engage in public advocacy without fear of financial ruin or protracted legal battles. By dismissing this lawsuit with prejudice, the Court will uphold the statute's legislative intent, protect constitutionally guaranteed freedoms, and send a strong message that meritless claims designed to intimidate and silence will not be tolerated.

Defendant respectfully requests that this Court: 1. Dismiss Plaintiff's complaint with prejudice; 2. Award Defendant attorney fees, court costs, and litigation expenses according to 42 Pa.C.S. § 8340.18; 3. Grant Defendant leave to file a cross complaint against Jermaine Jakes and plaintiff; and 4. Grant any further relief this Court deems just and proper.

Dated: New York, New York
January 23, 2025

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
90 Broad Street, 2nd Floor
New York, NY 10004

Cc: All counsels of record via ECF

22