# Exhibit 3

1

1    IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

2

3    COMMONWEALTH OF PA              CRIMINAL DIVISION

4                                   CC 4961-2006
          vs
5                                   PROBATION VIOLATION HEARING

6    DUANE YOUNGBLOOD,              REPORTED BY:
                                    Jane E. Sporrer
7                                   Official Court Reporter
              Defendant.
8                                   DATE:
                                    June 8, 2015
9
                                    BEFORE:
10                                  Hon. David Cashman

11                                  COUNSEL OF RECORD:

12                                  For the Defendant:
                                    Milton Raiford, Esq.
13
                                    ALSO PRESENT:
14                                  Ashlee Lynn
                                    Probation Officer
15

16

17

18

19

20

21

22

23

24

25

2

1          June 8, 2015

2                - - -

3          THE CLERK:  Your Honor, now is the date

4      and time set for the violation hearing for

5      Duane Youngblood.

6          Mr. Youngblood, please come forward

7      with your counsel.

8          (Defendant sworn.)

9          THE COURT:  Ms. Lynn.

10         MS. LYNN:  Thank you, Your Honor.

11     Mr. Youngblood stands before you as a

12     technical and convicted violator.  He was

13     originally sentenced by Your Honor on March

14     3rd of 2008 for one count of Felony 2 sexual

15     assault to a period of one year intermediate

16     punishment and a seven-year concurrent period

17     of probation.  He stands before you with a

18     new conviction at 2014-10522 for one count of

19     corruption of minors, a felony of the third

20     degree.  That was heard by the Honorable

21     Judge Rangos.  He was sentenced to 16 to 48

22     months at the state correctional institute.

23         Throughout the period of supervision

24     initially there were some issues.  Your Honor

25     did order the defendant -- that he was

3

1    prohibited from counseling any children.  He

2    was involved in pastoral services through his

3    church.  So probation was contacted by the

4    police chief in Homestead regarding possible

5    interactions with children in the community

6    in regards to his church duties. So that was

7    monitored closely.

8         He began sex offender treatment with

9    Dr. Coufal's office. The defendant was

10    allowed by the Court to travel regarding some

11    church business trips out of the state.  Your

12    Honor did grant permission until one of the

13    trips in December of 2010.  The Court granted

14    the travel permit. The defendant cancelled

15    the trip.  So at that point Your Honor

16    ordered all future requests to travel outside

17    the state would be denied.

18         Ultimately in July of 2014 the

19    probation officer received a phone call from

20    a woman stating that her son admitted or the

21    defendant admitted to her that he had

22    sexually assaulted her son. He was arrested

23    for the attributable charge.  Additional

24    charges were filed against the defendant for

25    corruption of minors, involuntary deviate

4

1       sexual intercourse and indecent assault with

2       offense dates back in 2009. Those charges

3       were ultimately withdrawn; however, the

4       defendant was then convicted of the sole

5       count of corruption of minors by Judge

6       Rangos.

7               THE COURT:  Mr. Raiford.

8               MR. RAIFORD:  I have no dispute with

9       those facts as given by the probation

10      officer. I got involved in this case -- a

11      difficult situation because, you know, you

12      would not expect -- you expect the church to

13      be a safe place and you expect people who

14      come to counsel with you as a clergyman as

15      people who need help.  And so -- but I was

16      persuaded to take the case based on the fact

17      that I knew and I had learned that people who

18      had been abused are more likely -- can easily

19      become abusers.  So when I talked to

20      Mr. Youngblood and found out the depth of the

21      abuse that was heaped upon him by the church,

22      I mean, it is really -- it is really the

23      greatest -- one of the greater abnormalities

24      in our society, I believe, whether it is the

25      Catholic church or Baptist church or any kind

5

1       of church, to see leaders in the church fall

2       to that type of sin is horrific in terms of

3       building confidence of the parishioners and

4       the presence and the need for God in their

5       lives.  So I recognize the abhorrent nature

6       of this particular conduct.

7           But I also know that Mr. Youngblood,

8       through talking to him, had been so abused

9       himself.  That's not an excuse at all for his

10      conduct, not at all. It just brings me some

11      clarity in terms of understanding, which

12      means that we who are clergymen have to be a

13      lot more vulnerable and transparent about

14      what's going on inside of us and not cover it

15      up so we might minister to those that we are

16      called to and give great healing to instead

17      of destruction upon them.

18          Mr. Youngblood did plead guilty in

19      front of Judge Rangos, did get sentenced to

20      16 to 48 months. At the time that he was

21      sentenced he did not take the credit at that

22      particular time.  So the day he got sentenced

23      his sentence began.  He had already at that

24      particular time been incarcerated on this

25      Court's detainer from July 12, 2014.

1    Ms. Hayes, I believe, has those dates that he

2    is entitled to credit for on this particular

3    case.

4        THE CLERK: So does the judge.

5        MR. RAIFORD: So with that being said,

6    Your Honor, I know my client would like to

7    address the Court. I think he should. I will

8    just ask the Court to be merciful in as much

9    as you know as well as I know this day was

10   going to come and you have control over

11   Mr. Youngblood.  But the truth is --

12       THE COURT: I have no control over him.

13   Absolutely none. He has lied and he has

14   scammed and he has conned me from the day he

15   stood in front of me. I am going to go to

16   Ohio to some church to celebrate its opening.

17   I am going to stay in this hotel.  We signed

18   the order.  An hour after signing the order

19   he cancels the hotel reservation, so we don't

20   know where he is. And that didn't happen

21   once.  It didn't happen twice.  It happened a

22   whole bunch of times. I got a whole bunch of

23   stuff in here from him. It got to the point

24   we just cut him off.

25       MR. RAIFORD: I'm sorry, Your Honor.

1    THE COURT: Mr. Youngblood, anything you
2    would like to tell me?
3    THE DEFENDANT:  Yes, sir.  First I
4    would like to say I take full responsibility
5    for the reason I'm standing in front of you
6    today.
7    I would hopefully like the opportunity
8    to address what you just spoke to as well.
9    When I took the plea in front of you in 2008,
10   my attorney at the time -- I had
11   conversations to apply for travel with him.
12   They told me the way to set it up, since I
13   was going to be going every week to establish
14   a ministry in Cleveland, that we needed to
15   get it four weeks in advance.  I said, well,
16   I am going to do Hotwire to get my hotels the
17   week of. He said that they would not send it
18   to your office that way. They need to do it
19   four weeks at a time. So we did Holiday Inn
20   Express reservations and gave notes to him.
21   He said the week you are going to go you make
22   your reservation through Hotwire. That's what
23   I did.  When he stopped doing it and a
24   paralegal started sending those to your
25   office, we continued that same process. After

1    I was told by the probation office that the

2    tipstaff had contacted them regarding it, I

3    came here the next day and to the probation

4    office and brought receipts for every hotel

5    stay that I had. There was absolutely no

6    effort whatsoever to deceive you, and I did

7    what the attorney told me to do at that time.

8         As it relates to this case, as I said,

9    I'm 100 percent responsible for what

10   happened. I would like to briefly explain my

11   process.  When I was 12 years of age I won a

12   singing competition, and that singing

13   competition put me on a tour. The first stop

14   was in Baltimore. After the first night that

15   I sang I was taken to the penthouse

16   apartment, penthouse room for the person who

17   was the president of that conference, that

18   youth conference. I was sexually assaulted

19   that evening by that person.  A month later

20   my mother wanted me to switch the person who

21   was playing piano for me, so we switched to a

22   new piano player. And one rehearsal she was

23   unable to attend and I went to his home and

24   was taken from -- after singing the song, I

25   was taken to his bedroom where he took my

9

1    clothes off, did oral sex and anal sex on me.
2    I came home.  My mother didn't understand why
3    I did no longer want to do the tour. But a
4    little over a month after that, lying in my
5    bed one morning, I hear my sister who's 13
6    months younger than me in a room above me.
7    She is saying, No, don't do that, No, don't
8    do that. I thought someone had broken into
9    our home. I finally got the courage to get
10    out of my bed, walk into my dining room,
11    stomped on the floor to try to get the
12    person's attention. I finally see my father
13    walk out of my sister's room.  For the next
14    three-and-a-half years I would hear this and
15    see this on a consistent basis. I hated
16    myself because I didn't ever say a word. I
17    didn't stop it from happening, and I wish I
18    had.  Fast-forward to my therapy.  In the
19    first year of therapy which began in July of
20    '09, the first year of therapy, we did a
21    book.  And in this book I learned that people
22    who commit sex offenses typically have a hard
23    time expressing emotion. I also learned what
24    the sex offense cycle is. It was also at that
25    same time I met Jasmine Riviera (phonetic)

1    who was my probation officer. She was clear

2    with me what the standard was as far as

3    working with people, counseling people under

4    age. I was never told that the police

5    officers or anybody like that had complained

6    about us doing something with the church.

7    What I was told was my wife was sponsoring a

8    youth program in our community and she said

9    that it is being housed at the same building

10   that your office is in. As soon as I was told

11   that, we stopped that program and moved it to

12   a different building so that I wasn't where

13   it was being housed. That was 2009. In

14   December of 2011 the -- in therapy a lot of

15   us were asking questions of the therapist,

16   and he said something that changed my life

17   forever. He said that every sex offense has

18   four components:  Anger, power, intimacy

19   needs and physiological sex.  Up to that

20   point I realized I had been living my life

21   stuck in my childhood. I was waiting for my

22   father to come back, waiting for the four

23   other men who had sexually assaulted me

24   before I was 18 years of age to come back and

25   make things right in my life. Therefore, I

1    was keeping this stuff buried and a secret

2    from anybody who could have done anything to

3    help me.

4         And I had gone on, gone to college,

5    graduated.  I started the ministry. It was

6    doing well. So I was able to do a lot of

7    things that were good, but I had this thing

8    going on inside my heart at the same time

9    that was very, very destructive. Once he told

10   me that, I began immediately in January in

11   individual therapy and in my group therapy

12   working to deal with the anger, the

13   powerlessness that I felt and why I couldn't

14   share with people. I listened to people for

15   years. I helped people for years, but I had

16   not shared what I was going through my own

17   self.

18        I have been married to a wonderful

19   woman who's sitting in this courtroom today

20   for 26 years. I was not able to share with

21   her openly what was going on down on the

22   lower level of my heart. My problem was that

23   I spent so much time stuck in the past that I

24   was missing the love and the people who

25   really were there for me in my present.

1    So I am tremendously sorry. I have
2    never to my knowledge tried to deceive this
3    Court. I did not do what this Court asked me
4    to do. I committed another violation, and I
5    regret that. I am standing in front of you
6    today.  I am a 100 percent different person.
7    I am not that guy. I have a support system in
8    my life. I am not trying to avoid
9    consequences.
10    When I stood in court here on December
11    1st, sitting back in that room with me was my
12    mother-in-law who had Stage 4 cancer. I lost
13    her in March of this year, didn't get to
14    attend that funeral. My daughter had our
15    first grandbaby a day later.  I wasn't there
16    for that.  My wife and I celebrated our 25th
17    anniversary.  I wasn't there for that. My
18    daughter just got married.  My oldest just
19    got married yesterday and I was unable to
20    give her away.
21    I intend to not deceive you, manipulate
22    you or anybody else. I am working every day
23    of my life to get out of this hole that I'm
24    in every day.  When I'm in that jail I'm
25    working to help people. I made a promise to

1    myself to be good to me and to be good to

2    everybody I encounter. I have 100 percent

3    apologized for my ignorance relative to those

4    reservations in Ohio.

5        But I was not ignorant in this case

6    before Judge Rangos. I did what I did and it

7    was wrong to do and I'm going to work every

8    day of my life to see to it that when I die

9    people won't think bad of me, they'll think

10    of the good things that I've done.

11        MS. LYNN:  Your Honor, if I could also

12    add, the victim's mother is here, and I

13    believe she would like to address the Court.

14        THE COURT:  Sure.

15        (Witness sworn.)

16        MR. LYNN: State your name for the

17    record, ma'am.

18        MS. ███████    My name is Sarah ███████

19        MS. LYNN: Spell that, please.

20        MS. ███████    S-a-r-a-h ███████████

21        MS. LYNN:  This is your opportunity to

22    let Judge Cashman know how you feel and

23    anything you would like him to know about

24    your situation that your son was in.

25        MS. ███████    Good morning, Your Honor.

1      THE COURT: Good morning.

2      MS. ███████ Your Honor, I sat there

3   and I contemplated actually speaking this

4   morning.  Youngblood has caused me and my son

5   ███████ (phonetic), my entire family a great

6   deal of pain and hurt. When my son ███████

7   told me that he was molested by this man, it

8   felt like someone had ripped my heart out of

9   my chest. And I confronted Youngblood and he

10  denied everything.  Up until our hearing

11  December 15th, our trial, he denied

12  everything.

13      This man with an ankle bracelet on his

14  leg was still molesting children. My husband,

15  me, all of my children served this man, his

16  ministry faithfully for twelve years.

17  Faithfully.  My son was molested when he was

18  four years old, and he went to Youngblood

19  with my husband seeking help, counseling that

20  he never received. Mr. Youngblood said that

21  his ministry is about helping young men who

22  were hurting, but he, instead of helping

23  them, inflicted more pain and suffering on

24  them. He was supposed to encourage them,

25  protect them, give them the word of God, be a

1    role model for them.  My son, my husband

2    called him Dad.  They respected him. They

3    admired him. They looked up to him.  And he

4    betrayed my son and he betrayed my family.

5    He is not repentant. He is not sorry for what

6    he did. This man used to smile at me.  At the

7    time I didn't know what happened to my son.

8    He would come into the sanctuary and be

9    smiling.  We would be sitting in meetings.

10   He would be smiling at me because he knew

11   what he was doing and I didn't know. He told

12   my son, whatever you do -- do not tell your

13   mother whatever you do.

14       Your Honor, he is a serial child

15   molester. My son is a victim, but there's

16   still so many other victims who are out there

17   who have still not come forward. That's all I

18   have to say, Your Honor.

19       THE COURT:  Mr. Raiford, do you have

20   any questions?

21       MR. RAIFORD:  Ms. ▮▮▮▮▮▮ you had also

22   at the time that Mr. Youngblood was sentenced

23   before Judge Rangos -- you spoke on that day

24   to similar things to what you spoke today,

25   correct?

1      MS. ████    Yes, I did.

2      MR. RAIFORD: And your -- I believe your

3      daughter spoke also; is that true?

4      MS. ████    My now 18-year old

5      daughter and my 16-year old son also spoke.

6      MR. RAIFORD: And your daughter, when

7      she spoke, she offered Mr. Youngblood

8      forgiveness for what he had done, did she

9      not?

10      MS. ████    I'm not my daughter. Let

11      me ask you a question.  You know, you

12      verbally reprimanded me and my family because

13      me and my husband did not say we forgave him.

14      Maybe you never had a child that was molested

15      by somebody that you trusted and you confided

16      in to understand the pain, the hurt and

17      suffering that me and my family are going

18      through.

19      MR. RAIFORD: I appreciate that, but I

20      just wanted to ask that.  The judge gave me

21      an opportunity to ask some questions. I just

22      asked that particular question. I have no

23      more questions.

24      THE COURT:  Thank you, ma'am.

25      MS. ████    Thank you, Your Honor.

1          THE COURT:  Mr. Raiford, anything
2     further?
3          MR. RAIFORD: Just that, Your Honor, I
4     do believe that the glory of justice is alive
5     and it's redeemed.  The foundation of his
6     repentance -- no one can ever really count
7     on.  I told Mr. Youngblood that. You can't
8     count on anybody ever receiving your
9     repentance when you are hurt. I understand
10    that.  You can't make anybody forgive you.
11    That's something that has got to be between
12    Mr. Youngblood and God. I get that. I
13    wouldn't be standing here if I didn't believe
14    he was repentant.  But I understand.  I'm not
15    -- as Ms. ████ said, my children were not
16    part of that church and I don't know what
17    she's feeling. Their perspective is their
18    perspective. I can't diminish that one step.
19    This Court is -- that's why we have courts
20    and that's why I believe judges are called by
21    God to be judges. I don't believe in the
22    electoral process of judges, but I know this
23    Court enough to know you were supposed to be
24    sitting there because you were ordained to do
25    that from a long time ago.  So with that

1    being said, I do believe that in time, no

2    matter how much time it is, maybe, maybe not

3    he will be forgiven by Ms. ▇▇▇▇    But I

4    know this is true. God forgives us. I just

5    rest on that truth that God does forgive us

6    seven times seventy, infinitely so.  So with

7    that being said, I'm standing here asking the

8    Court to be merciful.

9        THE COURT: All right. We'll note that

10    with respect to the case that Mr. Youngblood

11    had in front of Judge Rangos she ordered a

12    pre-sentence report. That report was dated

13    February 17, 2015. Since Mr. Youngblood has

14    been in jail the entire time there's no need

15    to update that particular report.

16        But in reviewing the report I'll note

17    that a little bit more than a year after I

18    placed him on probation he was charged with

19    corruption of morals of a minor, involuntary

20    deviate sexual intercourse and indecent

21    assault. Granted, the charges were withdrawn.

22    It also notes in a footnote the defendant had

23    several other arrests that were withdrawn,

24    dismissed or disposed of at the magisterial

25    level. I only say this because that

1    substantiates what my dealings with

2    Mr. Youngblood has been. I have been misled.

3    I have been deceived. I have been actually

4    lied to as to what he was doing when he went

5    out of this jurisdiction.

6         Taking into consideration the nature of

7    this particular offense, the impact upon his

8    victims, the danger that he presents to

9    society, his rehabilitative needs, we are

10    going to fashion a sentence to make sure that

11    all of those are taken care of.  It appears

12    Mr. Youngblood is not in a position to be

13    rehabilitated as he continues on the course

14    preying on small children, young men to

15    satisfy his particular sexual desires.

16         Accordingly, we are going to vacate his

17    period of probation, take into consideration

18    the guidelines that were applicable to his

19    original case.  We are going to sentence him

20    to a period of incarceration of not less than

21    54 nor more than 108 months, which will run

22    consecutive to any sentence he is now

23    serving.

24         You have the right within ten days of

25    today's date to file a motion seeking to

1      modify your sentence or you can take a direct

2      appeal to Superior Court within thirty days.

3      Should you decide to file a post-sentencing

4      motion or take an appeal to Superior Court or

5      do both, you are entitled to be represented

6      by counsel. If you cannot afford counsel, we

7      will appoint counsel for you.

8           I now have to make a determination as

9      to whether or not he is entitled to a RRRI

10     sentence.

11          MS. LYNN:  I don't believe so, Your

12     Honor.

13          THE COURT:  That being said, there will

14     be no RRRI sentence to be imposed.

15          Do you have any questions about your

16     sentence?

17          THE DEFENDANT:  No.

18          THE COURT:  Any questions about your

19     post-sentencing rights?

20          THE DEFENDANT:  No.

21          THE COURT: Okay. Thank you.

22          (Whereupon, this hearing concluded.)

23                    - - -

24

25

21

1    COMMONWEALTH OF PENNSYLVANIA

2    COUNTY OF ALLEGHENY

3

4                              CERTIFICATE OF REPORTER

5           I, Jane E. Sporrer, do hereby certify that the

6        evidence and proceedings are contained fully and

7        accurately in the machine shorthand notes taken by me

8        on the trial of the within cause, that the same were

9        transcribed under my supervision and direction, and

10       this is a correct transcript of the same.

11

12

13                              _____
                                Jane E. Sporrer
14                              Official Court Reporter

15          The foregoing record of the proceedings upon the trial

16   of the above cause is hereby approved and directed to be

17   filed.

18

19                                      _____

20

21

22

23

24

25