UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Thomas Dexter Jakes<br><br>                Plaintiff<br><br>~against~<br><br>Duane Youngblood, et al.<br><br>                Defendant | Civil Action No. **2:24-CV-1608-WSS**<br><br>**Defendants Reply Brief In Further Support Of Defendant's Special Motion To Dismiss Pursuant To Pennsylvania's Anti-Slapp Statute** |

**Defendants Reply Brief In Further Support Of Defendant's Special Motion To Dismiss Pursuant To Pennsylvania's Anti-Slapp Statute**

Brief By:

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
90 Broad Street, 2nd Floor
New York, NY 10004

**TABLE OF CONTENTS**

I. INTRODUCTION
II. PENNSYLVANIA'S ANTI-SLAPP LAW APPLIES AND WARRANTS DISMISSAL
    a. Pennsylvania's Anti-SLAPP Law Applies in Federal Court
    b. Defendant's Speech is Clearly Protected Under the Anti-SLAPP Statute
III. PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE FOR DEFAMATION
    a. Plaintiff Fails to Show Falsity, a Necessary Element for Defamation
    b. Plaintiff Fails to Demonstrate Actual Malice
    c. Plaintiff Fails to Show Special Harm, Making the Claim Legally Insufficient
IV. THIS COURT HAS JURISDICTION OVER JERMAINE JAKES
    a. Specific Jurisdiction is Proper Under Pennsylvania's Long-Arm Statute
    b. The "Effects Test" Confirms Specific Jurisdiction Over Jermaine Jakes
    c. Conspiracy Jurisdiction Further Supports Jurisdiction Over Jermaine Jakes
    d. Due Process is Satisfied
V. DEFENDANT IS ENTITLED TO ATTORNEY FEES
    a. Pennsylvania Law Mandates Attorney Fee Awards in Anti-SLAPP Cases
    b. The Award of Attorney Fees is Essential to Deterring Frivolous Litigation
    c. Defendant's Fees Are Reasonable and Should Be Fully Reimbursed
    d. Public Policy Requires an Award of Attorney Fees to Defendant
VI. CONCLUSION

**TABLE OF AUTHORITIES**

**Cases**
- *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)
- *Baral v. Schnitt*, 376 P.3d 604 (Cal. 2016)
- *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)
- *Calder v. Jones*, 465 U.S. 783 (1984)
- *Clifford v. Trump*, 818 F. App'x 746 (9th Cir. 2020)
- *Commonwealth v. Dixon*, 907 A.2d 468 (Pa. 2006)
- *Foman v. Davis*, 371 U.S. 178 (1962)
- *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)
- *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010)
- *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989)
- *Hensley v. Eckerhart*, 461 U.S. 424 (1983)
- *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015)
- *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)
- *Joseph v. Scranton Times, L.P.*, 129 A.3d 404 (Pa. 2015)
- *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)
- *Manning v. WPXI, Inc.*, 886 A.2d 1137 (Pa. Super. 2005)
- *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)
- *Morrison v. Nat'l Broad. Co.*, 19 A.3d 1026 (Pa. Super. 2011)
- *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)
- *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986)
- *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001)
- *Rogers v. Smith Volkswagen, Ltd.*, 2020 U.S. Dist. LEXIS 59733
- *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 14 F. Supp. 2d 710 (M.D. Pa. 1998)

- *Tucker v. Phila. Daily News*, 848 A.2d 113 (Pa. 2004)
- *Walden v. Fiore*, 571 U.S. 277 (2014)

**Statutes**
- 42 Pa. C.S. § 5322(a) (Pennsylvania Long-Arm Statute)
- 42 Pa. C.S. § 8340.11 et seq. (Pennsylvania Anti-SLAPP Statute)
- 42 Pa. C.S. § 8340.18 (Mandatory Award of Attorney Fees)

**Rules**
- Fed. R. Civ. P. 12(b)(2) (Motion to Dismiss for Lack of Personal Jurisdiction)
- Fed. R. Civ. P. 56 (Summary Judgment Standard)

**Other Authorities**
- Pennsylvania General Assembly, Legislative History of Anti-SLAPP Protections.

I.   INTRODUCTION

Plaintiff T.D. Jakes's opposition to Defendant Duane Youngblood's Anti-SLAPP motion is meritless, relying on legal mischaracterizations and factual distortions to salvage a lawsuit designed to suppress free speech. Defendant's motion, brought under 42 Pa. C.S. § 8340.11 et seq., is legally and factually justified, as the statute protects public discourse on significant matters of public concern, including allegations of misconduct by clergyman and religious institutions.

This lawsuit is a textbook SLAPP—a retaliatory effort to punish Defendant for sharing personal experiences and insights into institutional abuse. Pennsylvania's Anti-SLAPP law exists precisely to prevent such misuse of the judicial system.

Furthermore, Plaintiff erroneously disputes this Court's jurisdiction over Jermaine Jakes, despite his clear and intentional efforts to threaten and intimidate Defendant in Pennsylvania. The law is clear: ***anyone who directs harm into a state is subject to its jurisdiction***.

For these reasons, Defendant respectfully requests that this Court: 1. Grant his Anti-SLAPP motion and dismiss Plaintiff's complaint with prejudice; 2. Award attorneys' fees and costs as mandated by Pennsylvania law; and 3. Grant Defendant's request to file a cross-complaint against T.D. Jakes and Jermaine Jakes for their coordinated efforts to intimidate, silence, and retaliate against Defendant.

II.   **PENNSYLVANIA'S ANTI-SLAPP LAW APPLIES AND WARRANTS DISMISSAL**

A.   Pennsylvania's Anti-SLAPP Law Applies in Federal Court

Plaintiff erroneously contends that Pennsylvania's Anti-SLAPP statute does not apply in this Court.  However, federal courts sitting in diversity jurisdiction regularly apply state Anti-SLAPP laws, so long as they do not conflict with the Federal Rules of Civil Procedure.  See *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010) (holding that Anti-SLAPP laws apply in federal Court because they create substantive protections against meritless lawsuits).  Pennsylvania's 42 Pa. C.S.

§ 8340.11 et seq. establishes a substantive right to immunity from lawsuits designed to suppress constitutionally protected speech.

Federal courts applying state Anti-SLAPP laws balance the interests of free speech with judicial efficiency, preventing powerful plaintiffs from misusing litigation to silence their critics. See *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (establishing that public figures must show actual malice to prevail in defamation claims). Thus, Pennsylvania's Anti-SLAPP statute is applicable and fully enforceable in this Court, supporting the dismissal of Plaintiff's complaint.

B.  The defendant's Speech is Clearly Protected Under the Anti-SLAPP Statute

The Anti-SLAPP statute protects speech related to matters of public concern, including statements made in public forums about public figures. Defendant's statements about Plaintiff's alleged misconduct within religious institutions fall squarely within this protection.

The Supreme Court has consistently upheld heightened First Amendment protections for speech on issues affecting public welfare. See *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) (affirming that public-figure plaintiffs bear the burden of proving falsity in defamation cases). The plaintiff, a widely known religious leader, cannot credibly argue that discussions concerning his alleged misconduct and influence within faith-based organizations do not constitute matters of public concern. The law unequivocally protects Defendant's right to speak on these issues without fear of retaliatory litigation.

Accordingly, this Court should dismiss the Plaintiff's complaint under Pennsylvania's Anti-SLAPP law.

III.  **THE PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE FOR DEFAMATION**

Under Pennsylvania state law, a plaintiff establishes a defamation claim by proving (1) the defamatory character of the communication; (2) publication of the communication by the

5

defendant; (3) application to the plaintiff; (4) the recipient's understanding of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) the defendant lacked a conditional privilege to make the statement. *Nothstein* v. *USA Cycling*, 499 F. Supp. 3d. 101, 121–22 (ED Pa, 2020) citing 42 Pa. C.S. § 8343(a) (West 1998); *see also Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (listing relevant elements); *Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 459 (E.D. Pa. 2017) (same). Moreover, based upon the constitutional protections for freedom of speech, a public figure, bears an additional burden of proof.   Plaintiff must prove that the statement was false and that the statement was made with actual malice. *See Mallory*, 260 F.Supp.3d at 462 (describing standard). "Actual malice means knowledge that the statement was false or reckless disregard of whether it was false or not." *Id.* (alterations omitted).

A defamatory statement which "imputes a criminal offense, loathsome disease, business misconduct, or serious sexual misconduct ... constitutes defamation *per se* and proof of 'special' damages is not required." *Rose v. Dowd*, 265 F. Supp. 3d 525, 531 (E.D. Pa. 2017) (citations omitted). The difference between defamation and defamation *per se* is that "only general damages, *i.e.*, proof that one's reputation was actually affected by the defamation or that one suffered personal humiliation, or both, must be proven; special damages, *i.e.*, out-of-pocket expenses borne by the plaintiff due to the defamation need not be proven." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 344 (Pa. Super. 2008).

The Plaintiff claims that Mr. Youngbloods personal story constitutes defamation *per se*. *See* [ECF 1 Compl. P. 14]   The statements that Plaintiff allege are defamatory are:

- That when Youngblood was in his later teens, Bishop Jakes cornered him, wrapped his arms around him, and tried to kiss him, in a way that Youngblood found threatening and predatory.

6

- Afterwards, Jakes called him and said "there's three things I need you to do. The first one is, when I come to Pittsburgh, you're going to be the only person I sleep with. The second one is you can't sleep with anybody else because I don't want to give my wife anything, and thirdly, I will take care of you the rest of your life."
- And that "[t]here is so much more to me and Bishop Jakes and my family and Bishop Jakes and the absolute sexual damage". [ECF 37 p. 11]

As an initial matter, none of these statements satisfy the requirements for defamation per se. Further, Plaintiff, as so artfully articulated throughout this litigation is a public figure. Therefore, the Plaintiffs actions, even those actions that occur away from the white house, the church, the grammy awards, book signings and his family are of public concern. Instead of proving that Youngblood's statements were false, Plaintiff merely conducted background checks in hopes of swaying the court to weigh against Mr. Youngblood's credibility. Plaintiff further alleges that pictures of his run-down church and home are proof that he was incapable of making promises that he couldn't keep. This does not satisfy his burden. At most it proves that the Plaintiff believes that his public persona and word should be enough in the court of law. This does not prove that the claims are false.

A.   Plaintiff Fails to Demonstrate Actual Malice

Additionally, the Plaintiff has failed to prove and cannot prove that Mr. Youngblood's statements were made with malice, because they were not. The question of whether the evidence in the record in a defamation case is sufficient to support a finding of malice is a question of law. *Coleman v Ogden* 142 A 3d 898, 906 (Pa.Super.,2016) *citing Joseph* v. *Scranton Times L.P.*, 129 A.3d 404, 436 (Pa. 2015) (internal quotation marks and citations omitted). "Clear and convincing evidence is the highest burden in our civil law and requires that the fact-finder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue."[1] *Ogden* at 906 citing

---

[1] The Plaintiff cites a 9th Circuit Case for the proposition that the clear and convincing standard should not be applied with an anti-SLAPP motion. However, there is no authority in this jurisdiction for that proposition. In *Medure* v. *Vindicator Printing Co*, 273 F Supp 2d 588, 597 (WD Pa, 2002), the court held that "where the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine

7

*Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. 2014). Failure to investigate, without more, will not support a finding of actual malice, **nor will ill** or a **desire to increase profit**. *Ogden* at 906 citing *Manning v WPXI, Inc*., 886 A.2d 1137, 1144 (Pa.Super. 2005). [emphasis added]

The Plaintiff speculates with no evidence, that Mr. Youngblood made these allegations in an effort to "transform himself from a sex offender into an inspiration" [ECF 37 p. 14]. Then he goes further and alleges that Mr. Youngblood "dispatched a lawyer to demand $6 million from Bishop Jakes" *Id*. In hopes of bolstering its weak position, the Plaintiff adds an alleged "vendetta" by Mr. Youngblood's brother Richard Youngblood. *Id*. Based on these allegations, the Plaintiff claims that "Youngblood [had] substantial motive to make up stories about Bishop Jakes…" *Id*. Unproven ill-will coupled with unproven attempted exposure to boost future business opportunities does not satisfy the Plaintiffs burden. Moreover, the communication of a denial by a plaintiff does not usually constitute evidence of actual malice. *Manning Supra* at 1144. The Defendant has failed to prove a valid claim of defamation and count 1 of Plaintiff's complaint should be dismissed.

B.   Plaintiff Fails to Show Falsity, a Necessary Element for Defamation

Under Pennsylvania law, a public-figure plaintiff in a defamation case must prove falsity by clear and convincing evidence. See *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). The Supreme Court has explicitly stated that "when a public-figure plaintiff brings a defamation suit, he must bear the burden of proving that the statement in question is false." Id. at

---

issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not. (footnote omitted)" citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254-55 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standard should be no different in this case.

776-777. Here, Plaintiff fails to demonstrate that Defendant's statements were false. Defendant's statements were based on first-hand experiences and testimony, public reports and allegations made by other individuals, and Corroborated evidence from witnesses who support Defendant's assertions.

The plaintiff provides no counter-evidence proving falsity. Instead, Plaintiff relies solely on broad denials and general statements of harm. However, denials alone do not constitute proof of falsity. See *Tucker v. Phila. Daily News*, 848 A.2d 113, 132 (Pa. 2004) (holding that a plaintiff must do more than merely deny the allegations—they must prove falsity). Furthermore, the law is clear:

> *"Where speech addresses matters of public concern, the burden falls on the plaintiff to establish that the statements at issue were false."* See *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16 (1990).

Because Plaintiff has failed to carry his burden, his defamation claim must be dismissed.

C.   Plaintiff Fails to Show Special Harm, Making the Claim Legally Insufficient

Pennsylvania law requires plaintiffs to demonstrate special harm unless the statements fall under the narrow category of defamation per se. See *Joseph v. Scranton Times L.P.*, 129 A.3d 404 (Pa. 2015). 1. No Defamation Per Se: Statements qualify as defamation per se only if they accuse someone of criminal conduct, professional misconduct, or an inherently defamatory act. Here, Defendant's statements are not actionable per se because they relate to matters of public interest and institutional accountability rather than inherently defamatory accusations.

2. No Special Damages Shown: Even if defamation per se does not apply, the Plaintiff must prove actual financial or reputational harm. However, Plaintiff fails to present any evidence of special harm, instead relying on generalized claims of injury. Courts have consistently held that unsupported claims of reputational damage are insufficient to sustain a defamation claim. See

9

*Morrison v. Nat'l Broad. Co.*, 19 A.3d 1026, 1032 (Pa. Super. 2011). Because Plaintiff fails to allege specific damages, his defamation claim must be dismissed.

## IV. Conspiracy Claim

Under Pennsylvania law, a civil conspiracy requires: (1) an agreement between two or more people to commit an unlawful act or to use unlawful means for a lawful act, (2) an overt act in furtherance of that agreement, and (3) actual legal harm. See *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 545 (W.D. Pa. 2018). Additionally, proof of malice—an intent to injure—is essential. A professional motive negates malice, defeating a conspiracy claim. Id.

Plaintiff alleges that Youngblood and others conspired to spread false claims about Bishop Jakes through a widely viewed podcast, asserting that these individuals coordinated to harm Jakes' reputation. However, Plaintiff fails to provide any verifiable evidence of an agreement or a meeting of the minds, relying instead on speculative allegations.

Appearing on a podcast is not evidence of a conspiracy. Plaintiff's argument suggests that any public discussion of personal experiences could be labeled a conspiracy, which is legally unsound. The Larry Reid Live ("LRL") interview merely provided Youngblood a platform to discuss his personal experiences, and there is no evidence of coordination or fabrication.

Plaintiff further argues that a YouTuber's reference to Bishop Jakes having "fixers" intervene somehow confirms the conspiracy. However, this claim is unsupported and speculative. By Plaintiff's logic, even Jermaine Jakes' contact with Youngblood—where he allegedly urged him not to appear on LRL—could be interpreted as validating Youngblood's claims, demonstrating the illogical nature of Plaintiff's argument.

Moreover, Plaintiff claims that Youngblood acted with malice to extract money and damage Jakes' reputation. However, Plaintiff's own assertions suggest that Youngblood's actions

10

were professionally motivated—to rebuild his reputation and launch new business endeavors—which negates malice under Pennsylvania law. Since Plaintiff fails to establish the fundamental elements of conspiracy, this claim must be dismissed.

V.      **THIS COURT HAS JURISDICTION OVER JERMAINE JAKES**

Plaintiff wrongly asserts that this Court lacks personal jurisdiction over Jermaine Jakes. However, jurisdiction is clearly proper under Pennsylvania's long-arm statute, federal precedent, and due process principles. Jakes purposefully directed intentional conduct at Defendant, a Pennsylvania resident, through a direct and targeted electronic threat, meeting all statutory and constitutional requirements.

This Court has jurisdiction over Jermaine Jakes based on: *Specific jurisdiction* under Pennsylvania's Long-Arm Statute (42 Pa. C.S. § 5322(a)); *The "Effects Test"* from *Calder v. Jones*, 465 U.S. 783 (1984); and *Conspiracy jurisdiction*, as part of a broader effort to silence Defendant.

A.      **Specific Jurisdiction Under Pennsylvania's Long-Arm Statute**

Pennsylvania law confers jurisdiction over **nonresidents** who: 1. *Cause harm in Pennsylvania* through acts committed inside or outside the state (§ 5322(a)(3)); and 2. *Commit intentional torts* targeting a Pennsylvania resident (§ 5322(a)(4)).

Here, Jakes sent a direct threat to Defendant in Pennsylvania:

> "You might be in dangerous territory, Duane… just be careful."

Courts routinely find personal jurisdiction over out-of-state defendants who send threatening electronic communications into the forum. See *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (single threatening message sent into Pennsylvania established jurisdiction). See also *Rogers v. Smith Volkswagen, Ltd.*, 2020 U.S. Dist. LEXIS 59733 (W.D. Pa. 2020) (electronic threats sent across state lines create sufficient contacts for jurisdiction). Because Jakes directed

11

his actions at Pennsylvania and intended the harm to be felt there, jurisdiction under Pennsylvania's long-arm statute is proper.

### B. The "Effects Test" Confirms Jurisdiction

The Supreme Court's Calder test holds that intentional conduct expressly aimed at a forum state provides jurisdiction when. <u>A defendant can be subject to specific jurisdiction if</u>: 1. They commit an intentional act; 2. The act is expressly aimed at the forum state; and 3. The Defendant knew the brunt of the harm would be felt in the forum state. See *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

Here, Jakes intentionally sent a threatening message directly to Defendant in Pennsylvania, fully aware that the harm and intimidation would take effect there. Courts consistently uphold jurisdiction in such cases. See *Walden v. Fiore*, 571 U.S. 277 (2014) (jurisdiction is proper where a defendant purposefully directs harm into a state).

### C. Conspiracy Jurisdiction Supports Personal Jurisdiction

Pennsylvania law also recognizes conspiracy jurisdiction, where: 1. Two or more parties conspire to commit a tort; 2. At least one co-conspirator commits an overt act in the forum state; and 3. The conspiracy causes harm within the forum. See *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 14 F. Supp. 2d 710, 718 (M.D. Pa. 1998).

Jakes' threat aligns with Plaintiff's broader effort to suppress Defendant's speech. If discovery reveals further coordination between Plaintiff and Jakes, conspiracy jurisdiction would provide an additional basis for jurisdiction. Courts routinely find jurisdiction over co-conspirators in similar cases. See *Aim and Direct Acts to NJ* (holding that out-of-state actors who conspire to intimidate a forum-state resident can be subjected to jurisdiction).

### D. Due Process is Satisfied

Jurisdiction must also comply with due process under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), which requires: 1. Defendant has minimum contacts with the

12

forum state; and 2. The exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Here, Jakes purposely directed his threatening conduct at Pennsylvania, meeting the minimum contacts requirement.

Furthermore, exercising jurisdiction is fair and reasonable because 1. Pennsylvania has a strong interest in protecting its residents from threats and intimidation; 2. The defendant has a right to seek relief in his home state; and 3. Jakes would not be unduly burdened defending himself in Pennsylvania, given his direct involvement in this dispute.

Since Jakes intentionally directed harm at Pennsylvania, exercising jurisdiction is proper and fully satisfies due process.

VI. **DEFENDANT IS ENTITLED TO ATTORNEY FEES**
Plaintiff's frivolous, retaliatory lawsuit is exactly what Pennsylvania's Anti-SLAPP statute is designed to prevent. Under 42 Pa. C.S. § 8340.18, a prevailing defendant is entitled to attorney fees, court costs, and litigation expenses. Given Plaintiff's failure to establish a legally sufficient defamation claim, Defendant is entitled to full reimbursement of legal costs.

A. **Attorney Fees Are Mandatory Under Pennsylvania Law**
Pennsylvania's Anti-SLAPP statute mandates an award of attorney fees:

> *"If the court determines that a party is immune from civil liability under this subchapter, the court shall award the party attorney fees and costs incurred in connection with the motion." (42 Pa. C.S. § 8340.18(a)(1))*

Because Defendant's speech is protected, this Court must award fees as a matter of law. See *Commonwealth v. Dixon*, 907 A.2d 468, 472 (Pa. 2006).

B. **Attorney Fees Deter Frivolous Litigation**
Fee-shifting ensures powerful plaintiffs cannot use defamation claims to suppress free speech. See:

- *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (discussing the importance of protecting free speech against powerful plaintiffs who seek to use litigation as a tool for intimidation).

13

- *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010) (Anti-SLAPP laws serve an important public interest in deterring meritless lawsuits intended to chill free speech).
- *Clifford v. Trump*, 818 F. App'x 746 (9th Cir. 2020) (awarding attorney fees under Texas' Anti-SLAPP law to deter frivolous claims against public speech).

Here, Plaintiff abused the legal process to silence Defendant. Awarding fees ensures future litigants think twice before weaponizing defamation claims.

### C. **Defendant's Fees Are Reasonable and Should Be Fully Reimbursed**

Attorney fees are calculated using the lodestar method, multiplying:

1. Reasonable hours expended; and
2. A fair hourly rate based on market standards (*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Defendant's legal team:
- Filed multiple motions, including this Anti-SLAPP motion.
- Conducted legal research on defamation and Anti-SLAPP laws.
- Responded to Plaintiff's opposition and jurisdictional challenges.

Given the significant legal work required to defend against Plaintiff's aggressive litigation tactics, Defendant requests full reimbursement of all reasonable fees.

### D. **Public Policy Supports an Award of Attorney Fees**

Awarding attorney fees reinforces Pennsylvania's strong public policy against SLAPP lawsuits. Courts have upheld Anti-SLAPP fee awards to protect public discourse. See:

- *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (holding that Anti-SLAPP fee awards protect against the financial ruin of individuals engaged in protected speech).
- *Baral v. Schnitt*, 376 P.3d 604, 615 (Cal. 2016) (Anti-SLAPP fee-shifting ensures that public discourse is not chilled by the threat of litigation costs).

Denying fees would undermine Pennsylvania's Anti-SLAPP protections and encourage future baseless lawsuits.

### E. **Conclusion: Attorney Fees Must Be Awarded**

Since Defendant prevails under Pennsylvania's Anti-SLAPP statute, this Court must award attorney fees. See 42 Pa. C.S. § 8340.18(a)(1). Defendant respectfully requests that this Court:

1. Award full reimbursement of attorney fees, court costs, and litigation expenses incurred in defending against Plaintiff's meritless claims;

14

2. Deter future SLAPP suits by reinforcing Pennsylvania's strong public policy against frivolous defamation claims; and
3. Send a clear message that baseless lawsuits targeting protected speech will not be tolerated.

## **CONCLUSION**

For these reasons, this Court should: 1. Grant Defendant's Anti-SLAPP motion and dismiss Plaintiff's complaint with prejudice; 2. Award Defendant attorney fees and costs; 3. Grant Defendant's request to file a cross-complaint against T.D. Jakes and Jermaine Jakes for their coordinated efforts to intimidate, silence, and retaliate against Defendant; and 4. Grant any further relief deemed just and appropriate.

Date: February 21, 2025

> Respectfully submitted,
> */s/Tyrone A. Blackburn, Esq.*
> Tyrone A. Blackburn, Esq.

Cc: All counsels of record via ECF