Exhibit E – Amicus Brief on the Anti-SLAPP Application
(Filed by free speech advocacy organizations, addressing the applicability of
Pennsylvania's Anti-SLAPP protections in federal court)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YUSEF SALAAM,
ANTRON BROWN,
KEVIN RICHARDSON,
RAYMOND SANTANA, and
KOREY WISE,

                Plaintiffs,

    v.

DONALD J. TRUMP,

              Defendant.

Case No. 2:24-cv-005560-WB

**AMICUS BRIEF OF THE ACLU OF PENNSYLVANIA, AMERICANS FOR PROSPERITY PENNSYLVANIA, ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR FREE SPEECH, PENNSYLVANIA ASSOCIATION OF BROADCASTERS, PENNSYLVANIA NEWSMEDIA ASSOCIATION, RADIO TELEVISION DIGITAL NEWS ASSOCIATION, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, AND STUDENT PRESS LAW CENTER IN SUPPORT OF NEITHER PARTY ADDRESSING THE APPLICABILITY OF THE PENNSYLVANIA UNIFORM PUBLIC EXPRESSION PROTECTION ACT IN FEDERAL COURT**

BALLARD SPAHR LLP
Michael Berry
Kaitlin M. Gurney
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  (215) 665-8500
F:  (215) 864-8999
berrym@ballardspahr.com
gurneyk@ballardspahr.com

*Attorneys for* Amici Curiae

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

CORPORATE DISCLOSURE ............................................................................. v

STATEMENT OF INTEREST ............................................................................. vi

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

I.     An Outline of Pennsylvania's Anti-SLAPP Law ...................................... 2

II.    Pennsylvania's Anti-SLAPP Law Is Applicable in Federal Court ...................................... 5

     A.     PA-UPEPA's Immunity and Fee-Shifting Provisions Are Substantive and Do Not Conflict with the Federal Rules ............................................................ 6

     B.     Other Courts' Analyses of Different States' Anti-SLAPP Laws Support the Application of PA-UPEPA in Federal Court ...................................... 9

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC*,
　783 F.3d 1328 (D.C. Cir. 2015)........................................................................13, 14

*Adelson v. Harris*,
　774 F.3d 803 (2d Cir. 2014)..................................................................................7, 9

*Ali v. McClinton*,
　2017 WL 2588425 (E.D. Pa. June 14, 2017) ............................................................7

*Alyeska Pipeline Service Co. v. Wilderness Society*,
　421 U.S. 240 (1975)..............................................................................................7, 8

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986)...................................................................................................4

*Ashcroft v. Iqbal*,
　556 U.S. 662, 678-79 (2009) .....................................................................................4

*Bobulinski v. Tarlov*,
　2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024)...........................................10, 11, 14

*Bongino v. Daily Beast Co.*,
　477 F. Supp. 3d 1310 (S.D. Fla. 2020) ...................................................................11

*Carbone v. Cable News Network*,
　910 F.3d 1345 (11th Cir. 2018) ...............................................................................12

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986)...................................................................................................4

*Clifford v. Trump*,
　818 F. App'x 746 (9th Cir. 2020) ............................................................................13

*Corsi v. Newsmax Media, Inc.*,
　519 F. Supp. 3d 1110 (S.D. Fla. 2021) ...................................................................11

*Eagan ex rel. Keith v. Jackson*,
　855 F. Supp. 765 (E.D. Pa. 1994) .............................................................................7

*Erie Railroad Co. v. Tomkins*,
　304 U.S. 64 (1938).....................................................................................................6

*Fairfax v. CBS Broadcast Corp.*,
   2 F.4th 286 (4th Cir. 2021) ..................................................................................11

*Fairfax v. N.Y. Public Radio*,
   2023 WL 3303125 (E.D. Va. Apr. 4, 2023) ..........................................................11

*Godin v. Schencks*,
   629 F.3d 79 (1st Cir. 2010) ..............................................................................12, 13

*Great North Insurance Co. v. Whipple-Allen Real Estate*,
   2018 WL 3618689 (W.D. Pa. July 30, 2018) ..........................................................7

*Hilferty v. Chevrolet Motor Division of GMC*,
   1996 WL 287276 (E.D. Pa. May 30, 1996) .............................................................8

*Hoelzle v. Vensure Employee Services, Inc.*,
   2022 WL 3588025 (E.D. Pa. Aug. 22, 2022) ...........................................................8

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, &
   Products Liability Litigation*,
   553 F. Supp. 3d 211 (D.N.J. 2021) ........................................................................12

*Klocke v. Watson*,
   936 F.3d 240 (5th Cir. 2019) .................................................................................13

*Krassnoski v. Rosey*,
   684 A.2d 635 (Pa. Super. 1996) ..............................................................................5

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ...............................................................................13, 14

*Liggon-Redding v. Sugarman*,
   659 F.3d 258 (3d Cir. 2011) ....................................................................................6

*Minnix v. Sinclair Television Group, Inc.*,
   2023 WL 3570955 (W.D. Va. May 19, 2023) ........................................................11

*Montgomery Ward & Co. v. Pacific Indemnity Co.*,
   557 F.2d 51 (3d Cir. 1977) .......................................................................................7

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ............................................................................12, 13

*Reed v. Chamblee*,
   2024 WL 69570 (M.D. Fla. Jan. 5, 2024) ...........................................................9, 11

*Tah v. Global Witness Publishing, Inc.*,
   991 F.3d 231 (D.C. Cir. 2021) ...............................................................................12

*Watcher v. Pottsville Area Emergency Medical Service, Inc.*,
559 F. Supp. 2d 516 (M.D. Pa. 2008) ......................................................8

**Statutes, Rules, Constitutional Provisions**

42 Pa.C.S.A. Chap. 83, Subchs. C, C.1 ....................................................3

42 Pa.C.S.A. § 8320.1 .............................................................................2

42 Pa.C.S.A. § 8340.11, *et seq.* ...................................................... *passim*

2024 Pa. Legis. Serv. Act 2024-72 ....................................................1, 2, 5

Federal Rule of Civil Procedure 12 ..........................................................4

Federal Rule of Civil Procedure 54 ......................................................6, 8

Federal Rule of Civil Procedure 56 ......................................................4, 12

Pa. Const. art. V, § 10(c) ...........................................................................2

**Other Authorities**

*Anti-SLAPP Legal Guide*, REPORTERS COMM. FOR FREEDOM OF THE PRESS .................................2

Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections:  The New Uniform Public Expression Protection Act*, 96 PA. BAR ASS'N Q. 9-28 (Jan. 2025).........................................2, 14

Michael Berry, *Pennsylvania's New Anti-SLAPP Law Protects Press Freedom*, LEGAL INTELLIGENCER (Aug. 1, 2024) ...............................................2

Shannon Jankowski and Charles Hogle, *SLAPP-ing Back:  Recent Legal Challenges to the Application of State Anti-SLAPP Laws*, COMMUNICATIONS LAWYER (Mar. 16, 2022) .........................................................5

David Keating, *Lawmakers Should Protect Free Speech in Pennsylvania and Pass the Anti-SLAPP Bill*, PENNLIVE (Jan. 31, 2024).........................................5

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, J. FREE SPEECH L. (Jan. 18, 2023) ....................................10

SPEAK FREE PA, https://bit.ly/4fWpcS5 ..............................................4, 14

Thomas G. Wilkinson, Jr., *What Pennsylvania Can Expect from Anti-SLAPP Law*, LAW360 (Sept. 30, 2024) ...............................................14

## CORPORATE DISCLOSURE

The ACLU of Pennsylvania is a nonprofit organization with no parent corporation and no stock.

Americans for Prosperity Pennsylvania (AFP-PA) is a state chapter of Americans for Prosperity, a nonprofit organization that has no parent companies, subsidiaries, or affiliates that have issued shares or debt.

The Electronic Frontier Foundation is a nonprofit organization with no parent corporation and no stock.

The Foundation for Individual Rights and Expression is a nonprofit organization with no parent corporation and no stock.

The Institute for Free Speech is a nonprofit organization with no parent corporation and no stock.

The Pennsylvania Association of Broadcasters is a nonprofit organization with no parent corporation and no stock.

The Pennsylvania NewsMedia Association is a nonprofit organization with no parent corporation and no stock.

The Radio Television Digital News Association is a nonprofit organization with no parent corporation and no stock.

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Student Press Law Center is a nonprofit organization with no parent corporation and no stock.

## STATEMENT OF INTEREST

The ACLU of Pennsylvania ("ACLU-PA") is a state affiliate of the American Civil Liberties Union ("ACLU"), a nationwide, nonprofit, nonpartisan organization with more than 1.6 million members dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. Since its founding in 1920, the ACLU has been dedicated to preserving and defending the principles of individual liberty and equality embodied in the United States Constitution and civil rights laws. Chief among those liberties is the freedom of expression. The ACLU-PA appears regularly as direct counsel and *amicus curiae* in federal and state courts to defend freedom of speech on behalf of both plaintiffs and defendants. The proper resolution of the issue addressed in this brief is thus a matter of substantial importance to the ACLU and its members.

Americans for Prosperity Pennsylvania ("AFP-PA") is a 501(c)(4) organization working to break down governmental barriers to opportunity through direct and grassroots advocacy. AFP-PA works toward these goals by defending the individual rights that are essential to all members of society, including the freedoms of expression and association. As part of this mission, it appears as *amicus curiae* before federal and state courts.

The Electronic Frontier Foundation ("EFF") is a member-supported, non-profit civil liberties organization that works to protect free speech and privacy in the digital world. EFF's team of attorneys, activists, and technologists engage in impact litigation, direct advocacy, and technological innovation to represent the interests of technology users in the U.S. and abroad. Founded in 1990, EFF has over 30,000 dues-paying members and regularly works at the intersection of the First Amendment and technology. Recognizing that anti-SLAPP laws – statutes designed to deter and swiftly defeat strategic lawsuits against public participation

vi

(commonly referred to as "SLAPP" suits) – provide essential free speech protections for online speakers, EFF has been a long-time supporter of state anti-SLAPP laws and an advocate for a federal anti-SLAPP law.  EFF has also litigated cases under the California anti-SLAPP statute.

The Foundation for Individual Rights and Expression ("FIRE") is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought – the essential qualities of liberty.  Since 1999, FIRE has successfully defended individual rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment.  FIRE has a strong interest in upholding anti-SLAPP protections for free speech.  It has defended speakers from strategic lawsuits against public participation across the country.  *E.g.*, *VICTORY! Maine hospital backs down from defamation threat over teen's criticism*, FIRE (Nov. 7, 2024), https://bit.ly/Maine-SLAPP; *LAWSUIT:  Historian fights back after Pennsylvania state senator sues him for criticizing book*, FIRE (Sept. 19, 2024), https://bit.ly/OklaSLAPP; *FIRE defends Idaho conservation officer sued for criticizing wealthy ranch owner's airstrip permit*, FIRE (Oct. 2, 2023), https://bit.ly/IdahoSLAPP.

The Institute for Free Speech ("IFS") is a nonpartisan, nonprofit organization dedicated to the protection of the First Amendment rights of speech, assembly, petition, and press. Along with scholarly and educational work, IFS represents individuals and civil society organizations in litigation securing their First Amendment liberties. IFS has an interest here because it supports statutory protections for those who face litigation filed to deter the exercise of First Amendment rights when communicating about matters of public interest.  *See, e.g.*, *Anti-SLAPP*, INSTITUTE FOR FREE SPEECH, http://bit.ly/4jbU97A.

The Pennsylvania Association of Broadcasters ("PAB") was the first of our nation's state broadcast associations.  It endeavors to promote collaboration between radio and television broadcast station owners, managers, and staff across the Commonwealth.  PAB assists its nearly 300 member stations in serving their communities, audiences, and advertisers through FCC licensed free, over-the-air broadcast program operations.  It also represents broadcasters throughout Pennsylvania by advocating for strong legal protections for the press.

The Pennsylvania NewsMedia Association ("PNA") is a Pennsylvania nonprofit member corporation with its headquarters located in Harrisburg, Pennsylvania.  PNA represents the interests of more than 300 daily and weekly newspapers, digital publications, and other media organizations across the Commonwealth of Pennsylvania in ensuring that the press can gather information and report to the public.  A significant part of PNA's mission is to defend the constitutional and statutory rights of the press.

The Radio Television Digital News Association ("RTDNA") is the world's largest professional organization devoted exclusively to broadcast and digital journalism.  Founded as a grassroots organization in 1946, RTDNA's mission is to promote and protect responsible journalism.  RTDNA defends the First Amendment rights of electronic journalists throughout the country, honors outstanding work in the profession through the Edward R. Murrow Awards, and provides members with training to encourage ethical standards, newsroom leadership, and industry innovation.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association.  The Reporters Committee was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources.  Today, its attorneys provide pro bono legal

representation, *amicus curiae* support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.  As part of its new Local Legal Initiative, in 2020, the Reporters Committee hired a Pennsylvania-based attorney to provide direct legal services to journalists and news organizations in Pennsylvania.

The Student Press Law Center ("SPLC") is a national, non-profit, non-partisan organization established in 1974 that works to promote, support, and defend the press freedom and freedom of information rights of high school and college journalists.  As the only national organization in the country devoted exclusively to defending the legal rights of the school-sponsored and independent student press, SPLC collects information on student press cases nationwide and produces a number of publications on student press law, including its book, LAW OF THE STUDENT PRESS (4th ed. 2014).

## INTRODUCTION

First Amendment advocates, including *amici*, long advocated for a broad Pennsylvania anti-SLAPP law with significant speech protections.  That effort culminated last summer, when Act 72 of 2024 was signed into law as the Pennsylvania Uniform Public Expression Protection Act ("PA-UPEPA").  The first cases invoking the new law – including this one – are pending now.

In this case, Defendant Donald J. Trump has filed a motion to dismiss in which he argues, among other things, that he is immune from Plaintiffs' claims under PA-UPEPA and that, to the extent that the statute grants him immunity, he is entitled to his attorneys' fees and costs under the law.  *See* Def.'s Mot. to Dismiss ("Def. Br.") at 7 (ECF No. 26-1); *see also* Def.'s Reply in Supp. of Mot. to Dismiss ("Def. Reply") at 9-10 (ECF No. 29).  In response, Plaintiffs argue that the Court need not address PA-UPEPA, but suggest that, if it does, the law should not apply in federal court.  *See* Pls.' Resp. in Opp'n to Mot. to Dismiss at 29-30 (ECF No. 27).

This brief takes no position regarding the pending motion or the merits of this case. Instead, *amici* write for the sole purpose of advocating that, if PA-UPEPA's standards are met, the law's substantive provisions – namely, its immunity and fee-shifting provisions – can and should be applied in federal court.  If the Court were to determine otherwise, PA-UPEPA would be rendered less effective, its objectives of discouraging forum-shopping and protecting speakers in Pennsylvania would be severely undermined, and the Legislature's unanimous intent to encourage speech on matters of public significance would be thwarted.[1]

---

[1] *See* Legislative History, Act 72 (H.B. 1466), https://bit.ly/42jtDTA.

## ARGUMENT

## I.    <u>An Outline of Pennsylvania's Anti-SLAPP Law</u>

PA-UPEPA stands among the most recent legislation passed by states to combat SLAPP suits.[2]  Like other states' anti-SLAPP laws, PA-UPEPA seeks to curb "lawsuits brought primarily to chill the valid exercise of" speech and to "encourage continued participation in matters of public significance."  42 Pa.C.S.A. § 8340.12(1), (2).  While similar to other states' anti-SLAPP laws, Pennsylvania's law accounts for distinctive features in the Commonwealth's Constitution and in its legal practice.[3]

PA-UPEPA is split between substantive and procedural sections.[4]  This split recognizes the Pennsylvania constitutional requirement that only the Commonwealth's Supreme Court can enact court procedures.  *See* Pa. Const. art. V, § 10(c) (providing that the Pennsylvania Supreme Court is vested with "the power to prescribe general rules governing practice, procedure and the conduct of all courts").

The sections of PA-UPEPA that are considered substantive under Pennsylvania law went into effect immediately when the law was signed by the Governor.  *See* PA LEGIS 2024-72 § 2, 2024 Pa. Legis. Serv. Act 2024-72 § 2 (H.B. 1466) (hereinafter "Act 72").  Those sections are codified at 42 Pa.C.S.A. §§ 8320.1, 8340.11-15, 8340.17-18.  They establish a new immunity for "protected public expression," a mandatory damages award for a party forced to defend against a

---

[2] *See Anti-SLAPP Legal Guide*, REPORTERS COMM. FOR FREEDOM OF THE PRESS, https://bit.ly/4afFu7b.

[3] *See* Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections:  The New Uniform Public Expression Protection Act*, 96 PA. BAR ASS'N Q. 9-28 (Jan. 2025) (providing a detailed overview of PA-UPEPA), *available at* https://bit.ly/3DPf7Jo.

[4] *See* Michael Berry, *Pennsylvania's New Anti-SLAPP Law Protects Press Freedom*, LEGAL INTELLIGENCER (Aug. 1, 2024), *available at* https://bit.ly/40hRu3o.

claim from which it is immune, a right to interlocutory appeal, and a new cause of action –
commonly called a "SLAPP-back" claim – that can be asserted by a person wrongfully subjected
to a suit arising from "protected public expression."  Two of these provisions are implicated by
the pending motion:  the provisions establishing immunity and providing a mandatory damages
award of attorneys' fees, costs, and expenses of litigation.

PA-UPEPA "grants immunity to those groups or parties exercising the rights to protected
public expression." 42 Pa.C.S.A. § 8340.12(3)(i).  As the commentary to the law explains, this
immunity is "substantive in nature." *Id.* § 8340.13 Uniform Law Cmt. 2; *id.* § 8340.14 Uniform
Law Cmt. 2 ("The point of the anti-SLAPP statute is that you have a right not to be dragged
through the courts because you exercised your constitutional rights.").  For this reason, the new
statute is codified in the subchapter of the Pennsylvania Consolidated Statutes dedicated to
immunities. *See* 42 Pa.C.S.A. Chap. 83, Subchs. C, C.1.  And, accordingly, the Pennsylvania
law explicitly states that it "grants immunity" and provides for when "a person is immune from
civil liability."  42 Pa.C.S.A. §§ 8340.12(1), 8340.15.

The immunity provided under PA-UPEPA is implicated whenever a defendant faces "a
cause of action based on protected public expression." *Id.* §§ 8340.14(a), 8340.15.  PA-UPEPA
defines "protected public expression" to include three kinds of expression:  (1) "communication
in a legislative, executive, or judicial or administrative proceeding"; (2) "communication on an
issue under consideration or review in a legislative, executive, judicial or administrative
proceeding"; or (3) any exercise of the constitutional rights of speech, press, assembly, petition,
or association "on a matter of public concern." *Id.* § 8340.13(1)-(3).

If a cause of action is based on "protected public expression," a defendant "is immune
from civil liability" under three circumstances:  (1) the plaintiff fails to "state a cause of action

3

upon which relief can be granted"; (2) the plaintiff fails to "establish a prima facie case as to

each essential element" of its claim; or (3) "[t]here is no genuine issue as to any material fact,"

and the defendant "is entitled to judgment as a matter of law." *Id.* § 8340.15.  The first

circumstance tracks the standard for granting a motion to dismiss in federal court, *see, e.g.*,

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and the second and third circumstances track the

federal standards for granting summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that

summary judgment should be granted against "a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case").

If any of these three standards is met, the defendant is deemed immune under the law.

Accordingly, the immunity provided by PA-UPEPA can be raised through any available

procedural vehicle, including a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

or a motion for summary judgment under Rule 56.  *See* Berry & Gurney, *supra* note 3, at 19-20.

When defendants are immune from suit under PA-UPEPA, they are entitled to recover

their attorneys' fees, court costs, and "expenses of litigation."  42 Pa.C.S.A. § 8340.18(a)(1).

This award is mandatory:  The law states that a "court shall award" the immune party these

damages.  *Id.*  This mandatory award reflects the state's policy that defendants should not bear

the costs of defending against claims arising from protected public expression and serves to deter

people from filing such lawsuits in the future.  *See, e.g.*, *id.* § 8340.12(3)(ii); Berry, *supra* note

4.[5]  The award of attorneys' fees also serves to facilitate defendants' ability to retain counsel and

---

[5] *See also* SPEAK FREE PA, https://bit.ly/4fWpcS5 ("The award is mandatory, which will help
deter parties from filing SLAPPs in the first place.").  Speak Free PA is the name of the coalition
that supported the effort to update Pennsylvania law to protect against SLAPP suits and enact the
legislation that became PA-UPEPA.  *Id.*

to discourage forum shopping. *See* Berry & Gurney, *supra* note 3, at 15; *cf. Krassnoski v. Rosey*, 684 A.2d 635, 638 (Pa. Super. 1996) (explaining that recovery of attorneys' fees under Pennsylvania's Protection from Abuse Act "encourages private counsel to accept such cases" for "financially disadvantaged" individuals, "helps to support legal services agencies," and serves the statute's objective of deterring abuse). Fee-shifting is thus an integral component of the law that is all the more effective if applied uniformly.[6]

In contrast to these substantive provisions, PA-UPEPA's procedural provisions are not yet in effect. They will go into effect only if and when the Pennsylvania Supreme Court promulgates a rule of civil procedure or takes other actions as set forth in the statute. *See* Act 72 § 7(1). The procedural provisions, codified at 42 Pa.C.S.A. § 8340.16, create a new Pennsylvania state court motion through which a defendant can assert the statute's substantive immunity. They also set forth the procedures for asserting and litigating this new motion in state court. Even after PA-UPEPA's procedural provisions go into effect, however, the Act explicitly provides that its immunity can be asserted in state court through any other pleadings or motions available under the rules of civil procedure. *See id.* § 8340.16(c).

## II. **Pennsylvania's Anti-SLAPP Law Is Applicable in Federal Court**

In this case, Defendant seeks immunity under PA-UPEPA, asserting that Plaintiffs' lawsuit is based on "protected public expression." *See* Def. Br. at 7. Although Plaintiffs argue

---

[6] *See, e.g.*, Shannon Jankowski and Charles Hogle, *SLAPP-ing Back: Recent Legal Challenges to the Application of State Anti-SLAPP Laws*, COMMUNICATIONS LAWYER (Mar. 16, 2022), (explaining that fee-shifting is the "linchpin of the anti-SLAPP law's protective character" because it shifts the risk of meritless suits to plaintiffs and thus can effectively deter baseless claims); *available at* https://bit.ly/4jgkFgg; David Keating, *Lawmakers Should Protect Free Speech in Pennsylvania and Pass the Anti-SLAPP Bill*, PENNLIVE (Jan. 31, 2024) (explaining that PA-UPEPA "contains essential provisions that deter SLAPPs and minimize litigation costs for defendants," and pointing to the fee-shifting provision as an example), *available at* https://bit.ly/4anEiio.

that "there is no reason for the Court to address the anti-SLAPP issue" on Defendant's Rule 12(b)(6) motion, Pls.' Br. at 29, anti-SLAPP immunity may be properly asserted on such a motion. *See supra* at 3; *see also* 42 Pa.C.S.A. § 8340.15 (a defendant is "immune from civil liability" if the plaintiff fails to "state a cause of action upon which relief can be granted").[7]

Regardless of whether PA-UPEPA's immunity and fee-shifting provisions apply based on the allegations and claims made in this case, under longstanding principles, these substantive protections are available in federal court. The Supreme Court held in *Erie Railroad Co. v. Tomkins* that federal courts sitting in diversity jurisdiction should apply a state's substantive law but federal procedural law. 304 U.S. 64 (1938). Under *Erie* and its progeny, in assessing whether a law is substantive or procedural, federal courts should first determine whether application of a state law would result in a "direct collision" with the Federal Rules. *See Liggon-Redding v. Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011). If federal and state law do not conflict, courts should consider "whether the state law is outcome-determinative and whether failure to apply the state law would frustrate the twin aims of the *Erie* Rule to discourage forum shopping and avoid inequitable administration of the law." *Id.* Finally, courts should consider whether any "countervailing federal interests" prevent the state law from being applied in federal court. *Id.*

### A.   PA-UPEPA's Immunity and Fee-Shifting Provisions Are Substantive and Do Not Conflict with the Federal Rules.

Applying these principles, PA-UPEPA's immunity and fee-shifting provisions are applicable in federal court. The provisions easily pass *Erie*'s first step. As the Second Circuit

---

[7] Plaintiffs are correct that, if the Court holds that Defendant is immune under PA-UPEPA, he would be required to file a motion seeking fees, as provided for by the Federal Rules. *See* Pls.' Br. at 29; Fed. R. Civ. P. 54(d)(2). If the Court denies Defendant's motion to dismiss, he may reassert the immunity in a summary judgment motion. *See supra* at 3.

has explained, "when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity," unless "the state rule is in conflict with federal law." *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (quoting *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979)).  For this reason, district courts in this Circuit apply Pennsylvania's laws in assessing whether a defendant is immune from suit under those laws.  *See, e.g.*, *Great N. Ins. Co. v. Whipple-Allen Real Est.*, 2018 WL 3618689, at *5 (W.D. Pa. July 30, 2018) ("district courts routinely grant motions to dismiss in this district on the basis of immunity under the [Pennsylvania] Tort Claims Act"); *Ali v. McClinton*, 2017 WL 2588425, at *2 (E.D. Pa. June 14, 2017) ("[U]nder the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law." (citation omitted)).

The immunity granted by PA-UPEPA is a substantive immunity against a "cause of action based on protected public expression."  42 Pa.C.S.A. § 8340.15; *see also supra at* 2-4. This immunity does not conflict with any federal procedural rule and, in fact, attaches based on standards that mirror the Federal Rules.  *See* 42 Pa.C.S.A. § 8340.15.

Likewise, the law's fee-shifting provision is substantive in nature.  Indeed, it has long been held that "[r]ules regulating attorneys' fees are considered substantive" under *Erie*.  *Eagan ex rel. Keith v. Jackson*, 855 F. Supp. 765, 778 n.18 (E.D. Pa. 1994) (citing *Elder v. Metro. Freight Carriers, Inc.*, 543 F.2d 513 (3d Cir. 1976) (Hunter, J., dissenting)).  As the Supreme Court has explained, a statutory right to attorneys' fees reflects "a substantial policy of the state" and "should be followed" in ordinary diversity cases.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975); *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977) ("[S]tate rules concerning the award of attorneys' fees are to be

applied in diversity cases whether these rules provide for an award or deny it, provided such rules do not run counter to federal statutes or policy considerations.").

PA-UPEPA's provision awarding attorneys' fees and costs – like other state laws awarding fees – does not conflict with the Federal Rules. Rather, the Rules authorize these awards. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii) (allowing motions for fees that "specify . . . the statute, rule, or other ground entitling the movant to the award"). For this reason, courts in this Circuit have repeatedly applied Pennsylvania fee-shifting statutes. *See, e.g.*, *Hoelzle v. Vensure Emp. Servs., Inc.*, 2022 WL 3588025, at \*\*5-6 (E.D. Pa. Aug. 22, 2022) (awarding fees pursuant to the Pennsylvania Wage Payment and Collection Law); *Watcher v. Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 521 (M.D. Pa. 2008) (awarding fees pursuant to the Pennsylvania Human Relations Act); *Hilferty v. Chevrolet Motor Div. of GMC*, 1996 WL 287276, at \*7 (E.D. Pa. May 30, 1996) (awarding fees pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law).

Turning to *Erie*'s second step, PA-UPEPA's immunity and fee-shifting provisions are outcome-determinative, as they determine whether defendants targeted with meritless lawsuits based on their public expression must bear the costs of those lawsuits. Further, failure to apply those provisions in federal court would result in forum shopping – plaintiffs would be incentivized to file their lawsuits in federal court, where they could evade PA-UPEPA's reach, frustrating the law's clear intent. *Cf. Alyeska Pipeline*, 421 U.S. at 259 n.31 (explaining that *Erie* did not alter the well-established principle that a state's fee-shifting policy should not be "thwarted and the right so plainly given destroyed by the removal of the cause to the federal courts"); *Hoelzle*, 2022 WL 3588025, at \*4 (applying a Pennsylvania wage law's fee-shifting provision where it went "to the very essence of [the law's] goal of making an employee whole

8

again"). Just as the Second Circuit explained when applying the immunity and fee-shifting provisions of Nevada's anti-SLAPP law, applying PA-UPEPA's similar provisions is "unproblematic" because they "would apply in state court had suit been filed there," are "consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity," and do not "squarely conflict with a valid federal rule." *Adelson*, 774 F.3d at 809.

At bottom, PA-UPEPA's immunity and fee-shifting provisions do not conflict with the Federal Rules. They provide substantive protections under state law, and their application in federal court would not frustrate any federal interest. In contrast, declining to apply those provisions would thwart PA-UPEPA's objectives, result in inequitable application of the law in federal and state court, and promote forum-shopping by plaintiffs seeking to pursue questionable claims arising from speech on matters of public concern.

### B. Other Courts' Analyses of Different States' Anti-SLAPP Laws Support the Application of PA-UPEPA in Federal Court.

In Plaintiffs' opposition to Defendant's motion to dismiss, they state that "most sister circuits that have addressed the applicability of state anti-SLAPP statutes have concluded these statutes do not apply in federal court." Pls.' Br. at 30. But, the mere reference to a law as an "anti-SLAPP statute" is meaningless for the *Erie* analysis. Determining whether a state law applies in federal court requires assessing that law on its individual and unique terms, an assessment that is particularly important for anti-SLAPP laws, which vary in structure and scope. *See Reed v. Chamblee*, 2024 WL 69570, at *6 (M.D. Fla. Jan. 5, 2024) ("The specific requirements and language in each state's anti-SLAPP statute must be analyzed individually

under *Erie*, which leads to different results depending on the statute.").[8]  Under this
individualized analysis, PA-UPEPA's substantive provisions pass with flying colors.  *See supra*
at 6-9.

To the extent other courts' analyses of anti-SLAPP laws are relevant, those analyses
support the application of PA-UPEPA's substantive provisions in federal court.  A recent
decision considering New York's anti-SLAPP law, which similarly separates its procedural and
substantive elements, is instructive.  *See Bobulinski v. Tarlov*, 2024 WL 4893277 (S.D.N.Y.
Nov. 26, 2024).  There, the Southern District of New York dismissed defamation claims pursuant
to the defendant's Rule 12(b)(6) motion.  *Id.* at *11.  The defendant also asked the court to award
her attorneys' fees under New York's anti-SLAPP law, while the plaintiffs opposed the request
arguing that the law's fee-shifting provision conflicted with the Federal Rules.  The court held
that the provision applied because it "is doing no procedural work; it is merely defining the
substantive standard for entitlement to attorney's fees."  *Id.* at *14.  Because the provision passed
the first test – it answered a question not controlled by a federal rule – the court proceeded to the
second part of the analysis:  whether applying the provision was outcome-determinative and
would further the "twin aims" of *Erie*.  *Id.*  The court explained:

> The New York legislature has made the policy decision that mandatory fee-
> shifting applies to the subset of cases defined as SLAPP suits where the claim
> lacks a "substantial basis." . . .  If federal courts refuse to apply this provision,
> defendants in state and federal court defending SLAPP suits will have very
> different outcomes.  Defendants in federal court would have to pay the expenses
> of defending meritless SLAPP suits out of their own pockets.  Meanwhile,
> defendants in state court would receive the fees intended for them by their state
> legislature.  This inequitable outcome is exactly what *Erie* and its progeny sought
> to avoid.

---

[8] *See also* Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-
SLAPP Scheme in Federal Court*, J. FREE SPEECH L. (Jan. 18, 2023) at 593-94 ("[T]he application
of a particular anti-SLAPP necessarily turns on the text and structure of the specific anti-SLAPP
at issue."), *available at* https://bit.ly/4g21Ha1.

*Id.* (citations omitted).  The court further noted that, if the fee-shifting provision did not apply, plaintiffs "may choose to bring meritless SLAPP suits in federal court to avoid having to pay attorneys' fees," raising serious forum-shopping concerns.  *Id.*

Other courts have employed similar reasoning.  The Fourth Circuit, applying Virginia's immunity-based anti-SLAPP statute, explained that the statute "authorizes an award whenever a suit is dismissed pursuant to anti-SLAPP immunity, whether at the threshold, at summary judgment, or after a trial on the merits." *Fairfax v. CBS Broad. Corp.*, 2 F.4th 286, 297 (4th Cir. 2021).  Although the Fourth Circuit declined to exercise its discretion under Virginia's law to award fees in that case, federal courts have had no trouble applying that law's immunity and attendant fee-shifting provision.  *See Fairfax v. N.Y. Pub. Radio*, 2023 WL 3303125, at *8 (E.D. Va. Apr. 4, 2023); *Minnix v. Sinclair Television Grp., Inc.*, 2023 WL 3570955, at *8 (W.D. Va. May 19, 2023).  PA-UPEPA's fee shifting operates similarly.  *See* 42 Pa.C.S.A. §§ 8340.15, 8340.18.  As does Florida's fee-shifting provision, which applies in federal court because it "fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is 'without merit' and thus prohibited." *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021); *Reed*, 2024 WL 69570, at *6.  The Florida fee-shifting provision, like Pennsylvania's, was "enacted to accomplish a 'fundamental state policy' – deterring SLAPP suits." *Bongino*, 477 F. Supp. 3d at 1323; *see also* 42 Pa.C.S.A. § 8340.12.

Federal courts applying state anti-SLAPP laws consistently recognize the important substantive interests served by the laws.  The Ninth Circuit explained that California's law serves an "interest not directly addressed by the Federal Rules":  protecting the "constitutional rights of

11

freedom of speech and petition for redress of grievances." *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (citation omitted). And the First Circuit explained that Maine's law "serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010).

Though other courts have held that certain states' anti-SLAPP laws do not apply in federal court, *see* Pls.' Br. at 30 & n.9 (citing cases), those rulings have no bearing on the applicability of Pennsylvania's law. They are instead limited to state laws allowing defendants to pursue special motions that alter pleading standards or shift burdens. For example, in *Carbone v. Cable News Network*, the Eleventh Circuit held that Georgia's special motion-to-strike provision conflicted with the Federal Rules' motion to dismiss and summary judgment standards because the court was required to grant a defendant's motion to strike unless the nonmoving party established a "probability" of prevailing on the claim, which the court deemed in conflict with the standard for pre-trial dismissal prescribed by the Federal Rules. 910 F.3d 1345, 1350-51 (11th Cir. 2018).[9]

---

[9] Plaintiffs cite to *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231, 238-39 (D.C. Cir. 2021), as holding that state anti-SLAPP laws do not apply in federal court even where they "mirror[] the standards imposed" by the Federal Rules. Pls.' Br. at 30. That is incorrect. Although the defendant in that case argued that the special motion provided for in the District of Columbia's anti-SLAPP law mirrored Federal Rule 56, the D.C. Circuit rejected that argument, explaining that the anti-SLAPP motion authorized by the District's law "differ[ed] from [federal] summary judgment" by shifting the burden to the plaintiff and making it more difficult to obtain full discovery, overall "setting up an additional hurdle a plaintiff must jump over to get to trial." *Tah*, 991 F.3d at 239 (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015)); *accord In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 221 n.4 (D.N.J. 2021) (citing to *Tah* for the "key distinctions between Rule 56 and the D.C. Anti-SLAPP Act"); *see also* Def. Reply at 9-10 (distinguishing *Tah*). PA-UPEPA's substantive provisions, by contrast, require no additional hurdle prior to dismissal and instead award immunity to defendants in federal court once a case is deemed dismissible pursuant to Rule 12(b)(6) or Rule 56.

In the limited cases where courts have ruled that fee-shifting provisions – otherwise substantive elements of anti-SLAPP laws – are not applicable in federal court, it is generally because those specific provisions are also predicated on prevailing on a particular procedure tied to a special motion established under state law.  For example, in *La Liberte v. Reid*, the Second Circuit determined that the fee-shifting provision in California's anti-SLAPP law did not apply in federal court because that provision awarded fees "*only* to a 'prevailing defendant *on a special motion to strike*.*"  966 F.3d 79, 88-89 (2d Cir. 2020) (emphasis in original).  The D.C. Circuit likewise reasoned that applying the District of Columbia's fee-shifting provisions would require the court to "rewrite the special motion to dismiss provision" because fee-shifting was based on prevailing on a special motion, which itself did not apply in federal court.  *See Abbas*, 783 F.3d at 1334-35, 1337 n.5; *see also Klocke v. Watson*, 936 F.3d 240, 247 n.6 (5th Cir. 2019), *as revised* (Aug. 29, 2019) (fee-shifting provisions of Texas's law were "not applicable apart from burden-shifting early dismissal framework," and because that framework did not apply in federal court, neither did the fee-shifting provisions).[10]

Those courts, however, also have suggested that states could have enacted fee-shifting provisions that *would* apply in federal court, for example by "award[ing] attorneys' fees to the

---

[10] *Amici* do not intend to suggest these decisions are correct.  Rather, an array of cases have come to the opposite conclusion, holding that states' anti-SLAPP laws apply in federal court, even when they require the filing of special motions.  *E.g.*, *Clifford v. Trump*, 818 F. App'x 746, 747 (9th Cir. 2020) (holding that Texas's anti-SLAPP motion to dismiss procedures apply in federal court); *Godin*, 629 F.3d at 88 (holding that Maine's special motion to dismiss applies in federal court because it is not a "substitute to the Federal Rules, but instead . . . a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities"); *Newsham*, 190 F.3d at 973 (holding that California's special motion to strike applies in federal court because it "adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by a[n] entitlement to fees and costs," and, if the law did not to apply, "a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum").  The Court need not address that circuit split, however, in light of PA-UPEPA's text and structure.

prevailing party in any defamation action," *La Liberte*, 966 F.3d at 89 n.6, or "mak[ing] attorneys' fees available to parties who obtain dismissal by other means," *Abbas*, 783 F.3d at 1337 n.5; *see also id.* at 1335 ("Had the D.C. Council simply wanted to permit courts to award attorney's fees to prevailing defendants in these kinds of defamation cases, it easily could have done so.").

That is precisely what Pennsylvania did when it enacted PA-UPEPA. Under elementary *Erie* principles, a defendant may be awarded damages under *state* substantive law when a suit is dismissed pursuant to *federal* procedural rules. As the Southern District of New York explained, there is a fundamental difference between the anti-SLAPP laws at issue in cases like *La Liberte* and one that "does not condition an award of attorneys' fees solely upon prevailing under the procedural provisions of [a state's] anti-SLAPP statute, as opposed to under federal law." *Bobulinski*, 2024 WL 4893277, at *13 (quoting *Cheng v. Neumann*, 106 F.4th 19, 24 n.2 (1st Cir. 2024)). Substantive protections that operate independently of special motions – such as PA-UPEPA's immunity and damages provisions – raise none of the questions contemplated by federal courts that have declined to apply state anti-SLAPP laws.[11] PA-UPEPA's substantive provisions are therefore applicable in federal court.

---

[11] *See* Berry & Gurney, *supra* note 3, at 22-23 ("Nothing in the Pennsylvania law's substantive provisions is tied to any particular procedure, and its applicability is determined based on the same standards that federal courts employ in deciding motions under Rules 12 and 56."); SPEAK FREE PA, https://bit.ly/4fWpcS5 ("And, because HB 1466 awards attorney's fees to any person subjected to a SLAPP suit without tying that award to a particular court procedure, its fee-shifting provision should apply in both state and federal courts."); Thomas G. Wilkinson, Jr., *What Pennsylvania Can Expect from Anti-SLAPP Law*, LAW360 (Sept. 30, 2024) ("The Act's fee shifting provision and its new cause of action should be deemed substantive law that apply in federal court because the immunity is not tied to any particular court procedure. The immunity can be raised in any pleading or motion permitted under the governing rules of civil procedure."), *available at* https://bit.ly/4gQPLJr.

## CONCLUSION

*Amici* reiterate that they take no position on the merits of this case or the pending motion. Rather, as longstanding advocates for Pennsylvania's anti-SLAPP law, they urge the Court to recognize, if appropriate given the allegations and claims made in this case, that PA-UPEPA's immunity and fee-shifting provisions apply in federal court. The text of the law, its legislative history, and an analysis of its substantive provisions under *Erie* all lead to the same conclusion: there is no conflict with federal procedural rules, and PA-UPEPA can – and should – be applied by federal courts sitting in diversity jurisdiction.

Dated:  January 15, 2025

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ Michael Berry*_____
     Michael Berry
     Kaitlin M. Gurney

1735 Market Street, 51st Floor
Philadelphia, PA 19103
T:  (215) 665-8500
F:  (215) 864-8999
berrym@ballardspahr.com
gurneyk@ballardspahr.com

*Attorneys for* Amici Curiae