IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS DEXTER JAKES,<br><br>            *Plaintiff,*<br><br>v.<br><br>DUANE YOUNGBLOOD,<br><br>            *Defendants.* | Civil Action No. 2:24-cv-1608<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Thomas Dexter Jakes ("Jakes") brought this action against Defendant Duane Youngblood ("Youngblood") and ten unidentified individuals (collectively "Defendants"). (ECF No. 4). At Count I, brought against Youngblood, Jakes alleges that Youngblood engaged in "libel per se." (*Id.* ¶¶ 50-65). At Count II, brought against all Defendants, Jakes alleges that Defendants engaged in a civil conspiracy to commit defamatory acts. (*Id.* ¶¶ 66-71). Youngblood filed a Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute. (ECF No. 35). For the reasons articulated below, the Court will deny Youngblood's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2024, Youngblood was interviewed on the Larry Reid Live ("LRL") online video podcast. (ECF No. 4, ¶ 20). The episode was allegedly titled "The Abused become the Abuser." (*Id.*). During the interview, Youngblood alleged that Jakes groomed and sexually abused him when he was eighteen to nineteen years old. (*Id.* ¶ 24). Specifically, Youngblood alleged that Jakes attempted to kiss him (*id.*) and subsequently called him on the phone and made statements regarding future sexual encounters between Jakes and Youngblood. (*Id.* ¶ 25).

1

Youngblood stated that the encounter between himself and Jakes was "absolute destructive sexual damage." (*Id.* ¶ 26). Youngblood described another conversation that took place with Jakes years later where Jakes allegedly stated that "[m]y stock was rising, I would have had sex with anybody at that time" in reference to the prior alleged interactions between Jakes and Youngblood. (*Id.* ¶ 28). On November 3, 2024, a second part of the LRL episode aired. (*Id.* ¶ 28). In that episode, Youngblood repeated his previous allegations towards Jakes. (*Id.*).

Jakes subsequently brought this lawsuit under the Court's diversity jurisdiction against Youngblood alleging that Youngblood's allegations are "patently false" and defamatory. (*Id.* ¶¶ 32, 57). At Count I, Jakes alleges that "Youngblood's statements on the October 28 and November 3 episodes of [LRL] are libelous per se in that they expose . . . Jakes to contempt, ridicule, and obloquy, tend[] to affect . . . Jakes in his profession as a trusted pastor and religious figure, and accuse[] . . . Jakes of engaging in unlawful conduct." (*Id.* ¶ 58). At Count II, Jakes alleges that Youngblood, along with ten unidentified defendants, acted in concert "to publish and broadcast the false claim that . . . Jakes groomed . . . and sexually assaulted Youngblood on a podcast reaching over 100k persons knowing that making such false claims on a podcast that reaches such a broad audience of listeners would harm . . . Jakes." (*Id.* ¶ 67).

Youngblood filed a Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute arguing that (1) Youngblood's statements are protected public expression, (2) Jakes cannot establish a prima facie case of defamation or civil conspiracy, (3) public policy and Pennsylvania's Anti-SLAPP statute support dismissal of Jakes's complaint, and (4) Youngblood is entitled to attorneys' fees. (ECF No. 35-2). Youngblood also requests leave to file a "cross-complaint" against Jakes and his son, Jermaine Jakes, in relation to a message Jermaine Jakes sent Youngblood via social media. (*Id.* at 20-21).

## II. ANALYSIS

### 1. The Court will deny Youngblood's motion brought under the Pennsylvania's Uniform Public Expression Protection Act.

Youngblood filed a Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute, 42 Pa. C.S. §§ 8340.11 *et seq.* ("the Uniform Public Expression Protection Act"). (ECF Nos. 35, 35-1, 35-2); 42 Pa. C.S. § 8340.11. Youngblood did not mention Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), nor did he address Rule 12(b)(6)'s legal standard. Instead, Youngblood focuses exclusively on the Uniform Public Expression Protection Act. (*See* ECF No. 35-2). The Uniform Public Expression Protection Act is often referred to as an anti-SLAPP statute. Although "SLAPP" – an acronym for "Strategic Lawsuit Against Public Participation" – does not appear in the Act's title, the Uniform Public Expression Protection Act is considered an anti-SLAPP act. 42 Pa. C.S. § 8340.11 (Uniform Law Comment). SLAPP lawsuits are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Id.*

Of particular importance to Youngblood's motion is §§ 8340.16, 8340.15, and 8340.18. The Court will address the application of each subsection in turn. For the reasons articulated below, the Court holds that (1) § 8340.16 is not effective; (2) § 8340.15 is not applicable in federal court; and (3) § 8340.18 is not relevant at this stage of litigation.[1]

    a. <u>Pretrial Motion (42 Pa. C.S. § 8340.16)</u>

Youngblood purports to rely on 42 Pa. C.S. § 8340.16 as the mechanism permitting him to file his Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute. (*See* ECF

---

[1] The Court addresses the subsections out of numerical order for the purposes of judicial efficiency. It is appropriate to address 42 Pa. C.S. § 8340.16 first since it is the procedural mechanism under which Youngblood filed the motion. Since § 8340.16 is ineffective, Youngblood may not file a special motion to dismiss based upon that subsection. (*See* ECF

Nos. 35, 35-2). The Court holds that § 8340.16 has not yet taken effect. Under § 8340.16(a), "[a] party may file a special motion for dismissal of or judgment on a cause of action, or part of a cause of action, based on a party's protected public expression immunity." 42 Pa. C.S. § 8340.16(a). In ruling on the special motion to dismiss, the statute directs the Court to consider the special motion to dismiss, responses, and the evidence which can be considered on a motion for summary judgment. 42 Pa. C.S. § 8340.16; *see also id.* (Uniform Law Comment § 6) ("The Act establishes a procedure that shares many attributes with summary judgment. . . . So, consistent with summary-judgment practice, parties should submit admissible, competent evidence--such as affidavits, deposition testimony, or tangible evidence – for the court to consider."). Nevertheless, § 8340.16 is only effective if any of the following occur:

> (i) Promulgation by the Supreme Court of Pennsylvania of a rule, similar in form to Pa. R. C. P. No. 4023, stating that the provisions of 42 Pa. C.S. § 8340.16 are not suspended.
>
> (ii) Promulgation by the Supreme Court of Pennsylvania of a direct letter of address, similar in form to In re 42 Pa. C.S. § 1703, 482 Pa. 522, 394 A.2d 444 (1978), stating that the provisions of 42 Pa. C.S. § 8340.16 are not suspended and do not violate Article V of the Constitution of Pennsylvania.
>
> (iii) Promulgation by the Supreme Court of Pennsylvania of procedural rules providing substantially the same content as the provisions of 42 Pa. C.S. § 8340.16.

H.B. 1466, No. 2024-72, § 3, at 5 (2024). The Supreme Court of Pennsylvania has not promulgated any rules or issued a direct letter of address regarding § 8340.16 or any similar provision. Thus, § 8340.16 is not effective and has no bearing on this litigation. It is not operative law. Youngblood purports to file his special motion to dismiss pursuant to § 8340.16's mechanisms. His motion must fail on procedural grounds as the subsection under which it was

4

brought is ineffectual. Since § 8340.16 is not good law, Youngblood's motion may not proceed under the subsection.[2]

    b. Grant of Immunity (42 Pa. C.S. § 8340.15)

Youngblood alleges that he is entitled to "immunity and judgment as a matter of law" under 42 Pa. C.S. § 8340.15 because his "statements are supported by affidavits, public reports, and corroborating testimony" and Jakes has not "demonstrated" actual malice or falsity. (ECF No. 35-2, pp. 15-16). Youngblood repeatedly states that Jakes has "failed to provide credible evidence" to meet the burdens of § 8340.15. (*Id.*). Youngblood filed a multitude of exhibits with the Court that allegedly support the truthfulness of his statements. (*See* ECF Nos. 35-3 – 35-24). Jakes counters that § 8340.15 does not apply in federal court because it conflicts with the Federal Rules of Civil Procedure. Thus, the first issue before the Court is whether a federal court exercising diversity jurisdiction may apply § 8340.15. Even assuming that § 8340.15 could apply independently of § 8340.16, the Court holds that § 8340.15 does not apply in federal court.

The Court acknowledges that there is a disagreement amongst courts as to whether a federal court exercising diversity jurisdiction can apply a state's anti-SLAPP law. While other states' laws are not identical to § 8340.15, these cases provide persuasive guidance to the Court. *Cf. Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1335 (D.C. Cir. 2015); *with Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) (holding that Maine's anti-SLAPP law does not conflict with Rules 12 and 56 and, therefore, applies in federal court). In *Abbas*, the United States Court of Appeals for the District of Columbia Circuit held that "[a] federal court exercising diversity jurisdiction . . . must apply . . . Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to

---

[2] Since § 8340.16 is not effective, the Court does not reach the issue of whether it would apply in federal court.

dismiss provision." *Abbas*, 783 F.3d at 1337. The D.C. Circuit determined that the D.C. Anti-SLAPP Act "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial." *Id.* at 1334; *see also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 220 n.4 (D.N.J. 2021); *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020) (holding that federal courts must apply Rules 12 and 56 instead of California's anti-SLAPP statute); *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (holding that Texas's anti-SLAPP statute does not apply in federal court); *Carbone v. Cable News Network*, No. 1:16-CV-1720-ODE, 2017 WL 5244176, at *5 (N.D. Ga. Feb. 15, 2017) (finding *Abbas* persuasive and holding Rule 12(b)(6) answers "the same question" as the Georgia anti-SLAPP statute). The Court finds *Abbas*'s reasoning persuasive. Section 8340.15, and other anti-SLAPP statutes with similar provisions, is a procedural rule, not a substantive law. It creates a mechanism for a defendant to resolve a case pre-trial, much like Federal Rules of Civil Procedure 12 and 56.

Pursuant to the *Erie* doctrine, "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). "This substantive/procedural dichotomy of the '*Erie* rule' must be applied with the objective that 'in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Id.* at 158–59 (alteration in original) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). This outcome determinative test, however, "should not produce a decision favoring application of the state rule" unless it furthers one of *Erie*'s "twin aims:

6

discouragement of forum shopping and avoidance of inequitable administration of the laws." *Id.* (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

Consistent with these aims, the Court must apply a three-part test to decide whether a state law or rule is substantive or procedural for *Erie* purposes. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011) (internal citations omitted). First, the Court considers "whether there is a direct collision between a federal rule and the state law or rule that the court is being urged to apply." *Id.* If there is a direct conflict, and the federal rule is "constitutional and within the scope of the Rules Enabling Act," the Court must apply the federal rule and end the analysis. *Chamberlain*, 210 F.3d at 159. In other words, a federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure "answer[s] the same question" as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398–99 (2010).

The Court holds that there is a direct conflict between § 8340.15 and Rules 12(b)(6) and 56. For the category of cases that it covers, § 8340.15 essentially supplants the Rule 12(b)(6) motion to dismiss standard with the Rule 56 summary judgment standard. Rules 12(b)(6) and 56 help form "an integrated program" for determining whether to grant pre-trial judgment in cases in federal court. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., concurring); *see also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) (stating that Rules 12(b)(6) and 56 "establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court.").

Under Rule 12(b)(6), a plaintiff can overcome a motion to dismiss by alleging facts sufficient to state a claim that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Id.* at 556. The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Further, at the motion to dismiss stage, the Court may not consider matters extraneous to the pleadings unless the documents were "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

If the complaint survives a motion to dismiss, a party may move (after discovery but before trial) for summary judgment under Rule 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable [factfinder] could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). If a party fails "to make a showing

sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

Under 42 Pa. C.S. § 8340.15:

> A person is immune from civil liability for a cause of action based on protected public expression if any of the following paragraphs apply:
>
> (1) The party asserting the cause of action based on protected public expression fails to:
>
>     (i) establish a prima facie case as to each essential element of the cause of action; or
>
>     (ii) state a cause of action upon which relief can be granted.
>
> (2) There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part.

42 Pa. C.S. § 8340.15. This section permits the Court to consider whether there are genuine issues of material fact, and seemingly requires the Court to look outside the pleadings to other evidence and documents submitted by the parties. It imposes evidentiary weighing requirements not found in the Federal Rules and operates largely without pre-decisional discovery.[3] Thus, there is a direct conflict between § 8340.15 and Rules 12 and 56.

The Uniform Law Comment to 42 Pa. C.S. § 8340.14 acknowledges that the statute "operates in a procedural manner – specifically, by altering the typical procedure parties follow

---

[3] 42 Pa. C.S. § 8340.16 permits the Court to allow limited discovery to establish whether a party has satisfied a burden under § 8340.15. This section is ineffective, as explained below, and does not allow for discovery in the instant litigation. Moreover, Jakes previously moved for expedited discovery under Federal Rule of Civil Procedure 26 ("Rule 26"). (ECF No. 14). The Court denied this motion as Jakes failed to show that good cause existed for expedited discovery as required by Rule 26. (ECF No. 31).

at the outset of litigation." 42 Pa. C.S. § 8340.14 (Uniform Law Comment). Nevertheless, the commentary argues that "the rights the act protects are most certainly substantive in nature." *Id.* ("The Act's procedural features are designed to prevent substantive consequences: the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit."). The Court does not believe that a procedural rule protecting a substantive right is, by the virtue of the right it is protecting, transformed into a substantive law. The statute exists to spare those who exercise their free speech rights from unwarranted and harassing litigation. However, § 8340.15 pursues this policy goal through procedural means. *See also Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 670 (10th Cir. 2018). The substantive free speech rights underlying the statute exist entirely independent of § 8340.15. Section 8340.15 merely provides a procedural mechanism for a speedy dismissal of a meritless lawsuit.

In sum, Rules 12 and 56 answer the same question as § 8340.15. Rules 12 and 56 therefore govern in diversity cases in federal court, unless they violate the Rules Enabling Act. The Court holds that Rules 12 and 56 do not violate the Rules Enabling Act. The Rules Enabling Act empowers the Supreme Court of the United States to "prescribe general rules of practice and procedure and rules of evidence" for cases in the lower federal courts. 28 U.S.C. § 2072(a). A Federal Rule of Civil Procedure violates the Rules Enabling Act if it abridges, enlarges, or modifies any substantive right. 28 U.S.C. § 2072(b). "So far, the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Abbas*, 783 F.3d at 1336. In determining whether a federal rule violates the Rules Enabling Act, the United States Court of Appeal for the Third Circuit has stated:

> A rule of procedure does not run afoul of . . . [§ 2072(b)'s] statutory limitation merely because it "affects a litigant's substantive rights; most procedural rules

10

do." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (Scalia, J., plurality opinion). As Justice Scalia elaborated: "What matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* (quoting *Mississippi Pub'g Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 409 (3d Cir. 2013).

> [Rules 12 and 56] are valid under the Rules Enabling Act because they define the procedures for determining whether a claim is alleged in a sufficient manner in a complaint and whether there is a genuine dispute of material fact sufficient to warrant a trial. These Rules affect[ ] only the process of enforcing litigants' rights and not the rights themselves, and thus really regulate procedure.

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2018).

In accordance with the *Erie* doctrine and *Shady Grove*, the Court holds (1) there is a direct conflict between § 8340.15 and Rules 12 and 56; and (2) Rules 12 and 56 are constitutional and within the scope of the Rules Enabling Act. The Court must apply Rules 12 and 56. The procedural mechanisms established by § 8340.15 cannot apply in federal court. Since the Court cannot apply § 8340.15, the Court will not consider Youngblood's arguments brought under that statute.

    c. <u>Awards (42 Pa. C.S. § 8340.18)</u>

Youngblood seeks attorney fees pursuant to 42 Pa. C.S. § 8340.18. (ECF No. 35-2, p. 19). 42 Pa. C.S. § 8340.18 awards attorney fees, court costs, and expenses of litigation to defendants who engaged in protected public expression if the Court finds that the defendant is immune under § 8340.15 or the opposing party voluntarily discontinues the action. 42 Pa. C.S. § 8340.18. On the other hand, "[i]f the [C]ourt determines that a party's assertion of protected public expression immunity is frivolous or filed solely with intent to delay the proceeding, the court shall award the opposing party attorney fees, court costs and expenses of litigation, incurred in opposing the assertion of protected public expression immunity." *Id.*

As noted in the prior sections, 42 Pa. C.S. §§ 8340.15 and 8340.16, respectively, (1) are not applicable in federal court and (2) not effective law. Consequently, the Court will not make any findings with respect to whether Youngblood or Jakes is the prevailing party. The Court holds that § 8340.18's award of fees is inapplicable at this stage of litigation, and, at this time, it will not reach the issue of whether § 8340.18 is applicable in federal court.

**2. There is no Motion to Dismiss Pursuant to Rule 12(b)(6) pending before the Court.**

Youngblood's Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute is based entirely on the Uniform Public Expression Protection Act. (*See* ECF Nos. 35, 35-1, 35-2, pp. 6-7, 15). In his motion and supporting brief, Youngblood does not mention Rule 12(b)(6) – the governing rule at this stage of litigation. (*Id.*). Moreover, Youngblood's motion is reliant on the summary judgment like standard of §§ 8340.15 and 8340.16. The Court will not reframe Youngblood's motion as a Rule 12(b)(6) motion.

Youngblood relies on sworn affidavits to allegedly corroborate his statements and support his arguments. (*See, e.g.,* ECF No. 35-2, pp. 5-6, 10-11). The Court may not consider documents outside the pleadings under Rule 12(b)(6) (subject to certain exceptions which are not applicable here). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1246. Moreover, Youngblood's arguments are fundamentally incompatible with the Rule 12(b)(6) standard. For example, Youngblood argues that Jakes has not presented admissible evidence to prove that Youngblood's statements were false and made with malice. (ECF No. 35-2, p. 15); (*see also id.* at 16 ("Plaintiff cannot meet their burden of *proving* falsity or demonstrating that the Defendant's statements lack substantial truth." (emphasis added)); *id.* at 17 ("Plaintiff has failed to present admissible evidence of reputational damage directly resulting from Defendant's statements.")). Youngblood further contends that Jakes fails to establish by clear and convincing

12

evidence that Youngblood acted with actual malice. (*Id.* at 16). Youngblood's motion, based on the Uniform Public Expression Protection Act, fundamentally diverges from the Rule 12(b)(6) standard. At the motion to dismiss stage, Jakes does not have a burden to present admissible evidence. Before discovery and trial, Jakes has no obligation to prove any of his claims by clear and convincing evidence. His burden at this stage is merely to allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Twombly*, 550 U.S. at 555. Moreover, Youngblood's arguments rely on matters extraneous to the pleadings that the Court may not consider.

Given that Youngblood's motion is incompatible with Rule 12(b)(6)'s standards, the Court cannot reframe Youngblood's motion into a motion to dismiss based on Rule 12(b)(6). The Court's role is not to craft arguments for the parties. *See Lee v. Park*, 720 F. App'x 663, 666 (3d Cir. 2017) ("[I]t is the responsibility of neither the District Court nor this Court to make the parties' arguments for them; therefore, we will not engage in a freewheeling investigation into [a legal issue] without meaningful briefing on the subject."); *Hunt Optics & Imaging, Inc. v. Greene*, 2010 WL 3303792, at *1 (W.D. Pa. Aug. 19, 2010) ("[I]t is the parties' duty, not the courts', to present legal authority and arguments in support of a motion."). The Court will dismiss Youngblood's motion because it relies on statutory provisions that are not applicable in this litigation. The Court will not reframe Youngblood's argument to fit within the Rule 12(b)(6) or Rule 56 framework. If Youngblood wishes to file a motion to dismiss based on Rule 12(b)(6) or Rule 56, he may do so provided that his filing complies with all applicable Federal Rules of Civil Procedure.[4]

---

[4] The Court has the authority to convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment. *See* FED. R. CIV. P. 12(d). The Court is not required to do so unless matters outside the pleadings are presented to and not excluded by the Court. *Id.* Here, the

13

3. **Youngblood Does Not Require Leave to File a Crossclaim against Jakes. The Court will deny Youngblood's motion to file a crossclaim against Jermaine Jakes.**

Youngblood requests the Court's leave to file a "cross-complaint" against Jakes and his son, Jermaine Jakes, in relation to a message Jermaine Jakes allegedly sent to Youngblood via social media. (ECF No. 35-2, p. 20). The Court interprets this as a request to file a counterclaim against Jakes and a request to join Jermaine Jakes as a counterclaim defendant. First, the Court holds that Youngblood does not require the Court's leave to file a counterclaim against Jakes at this stage of litigation. Second, the Court holds that whether Youngblood may file a counterclaim against Jermaine Jakes, a non-party, is not fully briefed. The Court will address each proposed claim in turn.

a. Counterclaim against Jakes

Federal Rule of Civil Procedure 13 ("Rule 13") permits a party to file a counterclaim against an opposing party in its answer. FED. R. CIV. P. 13. There is no requirement to seek leave from the Court to file a counterclaim against an opposing party unless a party is seeking to amend its previously filed counterclaim or to file a counterclaim that matured or acquired after a party filed its answer. Youngblood has not yet filed his answer. He may file a counterclaim against Jakes in his answer under Rule 13. He need not obtain leave from the Court to file this counterclaim.[5]

---

Court is excluding all matters extraneous to the pleadings because, in part, (1) this motion is not a proper motion to dismiss in accordance with Rule 12(b)(6) and (2) that would not best serve the efficient progression of this litigation. The Court will not convert Youngblood's motion into a Rule 56 summary judgment motion.

[5] Although Youngblood does not require leave from the Court to file his proposed counterclaim against Jakes, the Court notes that Youngblood proposes bringing civil claims against Jakes and Jermaine Jakes for violating criminal statutes. (ECF No. 35-2, pp. 20-21 (proposing bringing a civil claim under 18 Pa. C.S. § 2709 and Texas Penal Code § 42.07)). Neither statute provides a civil cause of action. *See Norman v. Wall*, 2019 WL 3308342, at *5 (Pa. Super. Ct. July 23, 2019) (stating that there is no civil cause of action for harassment recognized under Pennsylvania

    b.   <u>Joining Jermaine Jakes as a Counterclaim Defendant</u>

Youngblood alleges that Jermaine Jakes sent him a message on social media on November 3, 2024, stating "You might be in dangerous territory, Duane . . . just be careful." (ECF No. 35-2, p. 20). Youngblood seeks leave to join Jermaine Jakes as a party to this litigation based on this conduct.[6] Federal Rules of Civil Procedure 19 and 20 ("Rules 19 and 20") govern the addition of a person as a party to a counterclaim. FED. R. CIV. P. 13(h). Rule 19 determines when joinder of a party is compulsory. FED. R. CIV. P. 19. Rule 20 applies to permissive joinder of parties. FED. R. CIV. P. 20. Thus, the first issue the Court must address is whether Jermaine Jakes is a necessary party under Rule 19(a), or whether his joinder is permissive. A required party is:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

---

law); *Barnes v. Phillips*, 2024 WL 3858394, at *2-3 (Tex. App. Aug. 15, 2024) (stating that Texas Penal Code § 42.07 provides for a criminal cause of action as opposed to a civil cause of action). Further, Youngblood proposes bringing claims under both Texas and Pennsylvania law for intentional infliction of emotional distress. (ECF No. 35-2, pp. 20-21). Youngblood has described one act giving rise to the various causes of action that he outlined – Jermaine Jakes allegedly sending Youngblood a message via a social media platform. (*Id.*). The Court cannot apply the law of multiple states to the same incident. Rather, the Court must conduct a choice-of-law analysis to see which law applies. This analysis begins by determining whether there are any material differences between the relevant laws that could be applied; if so, the Court will decide the most appropriate law based on "which state has the greater interest in the application of its law." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 (3d Cir. 2007). "The choice of law analysis is meant to prevent [parties] from simply litigating their claims under the laws of multiple states in the hope that the application of one of those laws will result in a favorable outcome." *Strassman, Tr. of Robert H. Strassman Revocable Tr. v. Essential Images*, 2018 WL 5718286, at *6 (M.D. Pa. Nov. 1, 2018). Further, parties are precluded from raising the same cause of action as separate counts simply because it is unclear which state's law would apply.

[6] As discussed above in relation to Jakes, the Court cautions Youngblood that (1) criminal statutes do not provide civil causes of action and (2) Youngblood may not proceed under the laws of both Pennsylvania and Texas in relation to the same alleged incident.

15

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19. Courts treat clauses (1) and (2) as disjunctive. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). Thus, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible. *Id.*

Under Rule 19(a)(1)(A), "[c]ompleteness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996). Jakes's claims against Youngblood relate to Youngblood's statements on two LRL episodes. Youngblood's proposed claim against Jermaine Jakes relates to an alleged social media message which may have had a tangential relationship to Youngblood's statements on LRL. In other words, Youngblood's proposed claim against Jakes arises out of a different transaction or occurrence than the subject of Jakes's claim against Youngblood. The Court holds that if Jermaine Jakes is not joined to this litigation, the Court may still accord complete relief between Jakes and Youngblood. Further, Jermaine Jakes is not a necessary party under Rule 19(a)(1)(B) as Jermaine Jakes does not claim an interest in the subject matter of the action – his father's claims against Youngblood. Thus, Jermaine Jakes is not a necessary party, and his joinder is governed by Rule 20.

Rule 20 states:

> Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20. "The purpose of Rule 20(a) is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Biglow v. Boeing Co.*, 201 F.R.D. 519, 520 (D. Kan. 2001) (internal citations and quotation marks omitted). "[J]oinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Accordingly, courts liberally construe the joinder provisions of Rule 20. *See Snyder v. Harris*, 394 U.S. 332, 340 (1969) (referring to the "liberal joinder provisions of Rule 20"); *Prather v. First Student Inc.*, No. 18-CV-02178-CM-GEB, 2018 WL 6659614, at *4 (D. Kan. Nov. 21, 2018) ("Courts generally construe Rule 20(a) broadly. . . .").

Neither Youngblood nor Jakes addressed the Rule 20 standard in relation to the proposed counterclaim against Jermaine Jakes. Given that this issue has not been fully addressed by the parties, the Court will deny Youngblood's motion to join Jermaine Jakes as a counterclaim defendant, without prejudice, until this issue is properly placed before the Court and fully briefed by the parties. As discussed above, the Court cannot and will not craft arguments for the parties.[7]

---

[7] Jakes argues that Youngblood cannot file a counterclaim against Jermaine Jakes, a non-party, because the Court does not have personal jurisdiction over Jermaine Jakes. The Court will not address this argument at this stage of litigation. Jakes cannot assert a personal jurisdiction defense on behalf of a non-party. *See Clark v. Assocs. Com. Corp.*, 149 F.R.D. 629, 634 n.3 (D. Kan. 1993) (holding that the plaintiff has no standing to assert a personal jurisdiction defense on behalf of third-party defendants). The Court cannot rule that it lacks personal jurisdiction over a party who has not been named in a properly filed pleading. Lack of personal jurisdiction is a personal defense. It can only be raised by the affected party, Jermaine Jakes. *See Tri–State Truck Ins. Ltd. v. First Nat. Bank of Wamego*, 2011 WL 3349153, at *7 (D. Kan. Aug.3, 2011) ("A lack of personal jurisdiction can usually be raised only by the affected party."); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, 2009 WL 791332, at *7 (W.D.N.Y. Mar. 23, 2009) (holding

### III. Conclusion

For the foregoing reasons, the Court will (1) deny Youngblood's Special Motion to Dismiss Pursuant to Pennsylvania's Anti-SLAPP Statute; (2) deny Youngblood's motion to file a counterclaim against Jakes as moot; and (3) deny Youngblood's motion to file a counterclaim against a non-party, Jermaine Jakes, without prejudice. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

---

that the defendant lacks standing to contest personal jurisdiction over co-defendant); *Jenkins v. Smead Mfg. Co.*, 2009 WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (holding that the defendant lacks standing to raise lack of personal jurisdiction on behalf of additional defendants named in amended complaint); *Clark v. Associates Commercial Corp.*, 149 F.R.D. 629, 634 (D. Kan. 1993) ("The court has already determined that third-party defendants have waived their personal jurisdiction defense, and plaintiff has no standing to assert this personal defense for third-party defendants.").