IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS DEXTER JAKES,<br><br>               Plaintiff,<br><br>    v.<br><br>DUANE YOUNGBLOOD; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; JOHN DOE 6; JOHN DOE 7; JOHN DOE 8; JOHN DOE 9; JOHN DOE 10,<br><br>               Defendants. | CIVIL ACTION NO. 2:24-cv-01608-WSS<br><br>Judge William S. Stickman |

**MEMORANDUM OF LAW OF TYRONE A. BLACKBURN, ESQ.
IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

By: Tyrone Blackburn, Esq.

**PRELIMINARY STATEMENT**

This Memorandum is submitted in response to the Court's June 28, 2025, Order to Show Cause regarding potential violations of Federal Rule of Civil Procedure 11 in connection with the motion to dismiss and supporting Memorandum filed on behalf of Defendant Duane Youngblood.

The undersigned respectfully submits that any errors in the cited materials were the result of inadvertent misquotations and citation misattributions stemming from newly adopted product upgrades for LexisNexis and Westlaw legal research tools. While those upgrades offered efficiency, they also introduced vulnerabilities in the citation and quotation process that I did not fully understand at the time of filing.

Importantly, I was in the process of correcting these issues during the 21-day safe harbor period provided under Rule 11(c)(2) when I was involuntarily terminated as counsel. I did not have an opportunity to finalize and file the corrected Memorandum of Law, despite my clear intent to do so. My termination and forced withdrawal occurred before I could complete my professional obligation to amend the record.

I do not dispute that the motion contained editorial and citation deficiencies. However, I respectfully submit that these errors were not made in bad faith, were not intended to mislead the Court, and were never intended to evade scrutiny. I take full responsibility for my failure to thoroughly verify quotations sourced through newly adopted product upgrades for the LexisNexis and Westlaw legal platforms, and I acknowledge the seriousness of the Court's concerns. I request that those concerns be viewed in the context of the entire matter: this was a good-faith effort to file a procedurally sound and meritorious motion, followed by a good-faith effort to correct what I later learned were citation-related mistakes. As the Court will see from my attachments, I have completed the research, and the cited misquoted content came from actual cases. They were just misattributed.

## ARGUMENT
I. **THE LEGAL STANDARD UNDER RULE 11**

Rule 11 imposes requirements on attorneys and parties regarding pleadings and other court filings. First, a filing must "not be[] presented for any improper purpose, such as to harass" another party. *Fed. R. Civ. P. 11(b)(1)*. Second, the claims must be warranted by existing law or by a nonfrivolous argument for extending or modifying existing law. *Fed. R. Civ. P. 11(b)(2)*. Third, "the factual contentions [must] have evidentiary support or . . . [be] likely [to] have evidentiary support after" discovery. *Fed. R. Civ. P. 11(b)(3)*. Finally, before filing, the parties and their attorneys must undertake an "inquiry reasonable under the circumstances" to verify compliance with Rule 11's requirements. *Fed. R. Civ. P. 11(b)*. If a party violates Rule 11, a court "may impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11] or is responsible for the violation." *Fed. R. Civ. P. 11(c)(1)* (emphasis added); *Scott v. Vantage Corp.*, 64 F.4th 462, 467.

In assessing Rule 11 compliance, courts in the Third Circuit apply an objective standard of reasonableness. See *Bus. Guides, Inc. v. Chromatic Comm. Enterprises, Inc.*, 498 U.S. 533, 551 (1991); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) ("The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances."). This includes:

- "Objective knowledge or belief at the time of the filing of the challenged paper" that the claim is well-grounded in law and fact (*Jones v. Pittsburgh Nat 'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990));
- Consideration of "the amount of time available to conduct the factual and legal investigation," the "necessity for reliance on a client for the underlying factual information," and "the complexity of the legal and factual issues implicated." *Shelton v. Chaudhry*, 763 F. Supp. 3d 675, 683 (E.D. Pa. 2025) (quoting *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 207 (3d Cir. 2019)).

Rule 11 does not require perfection. Sanctions are reserved for "exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)).

As the Third Circuit explained in *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 151 (3d Cir. 2024):

> "As officers of the Court, lawyers must not mislead courts. So before they state facts, they must investigate reasonably."

Rule 11(b)(3) further affirms this duty, stating:

Counsel must ensure that they make "factual contentions [that] have evidentiary support, or if so specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation." *Contreras Madrid v. Wal-Mart Stores, L.P.*, No. CV 24-5229, 2025 WL 1698701, at *4 (E.D. Pa. June 17, 2025).

Where a Rule 11 violation is found, courts are encouraged to consider nonmonetary sanctions, including formal reprimands or referrals to continuing legal education. See *5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1336 (2d ed. Supp. 1996)*; *Contreras Madrid*, 2025 WL 1698701, at *8.

II. **THE MOTION WAS GROUNDED IN LAW AND FACT DESPITE CITATION ERRORS**

The Memorandum of Law submitted in support of the motion to dismiss was a sincere and substantive attempt to challenge the legal sufficiency of Plaintiff's claims under established Defamation and Collusion precedent. The filing was not frivolous. It was rooted in binding federal and state case law.

The gravamen of the motion to dismiss was that Plaintiff, a public figure, initiated a defamation claim in federal Court in response to public statements made by Defendant about his

4

own lived experiences and religious teachings—matters that fall squarely within the protections of the First Amendment and Pennsylvania's public expression protections. These arguments were not manufactured, fabricated, or legally baseless. The legal theory advanced by the Defendant, though now tainted by citation defects, was not ungrounded in fact or law.

Every affirmative defense asserted in the motion was supported by authority I researched and reviewed in good faith. The research I conducted before drafting the Memorandum of Law yielded over 50 authorities, including case law from federal and state courts. The research I conducted is timestamped and began on May 5, 2025. I reviewed and downloaded those sources using my newly upgraded LexisNexis (Protege) and WestlawNext (CoCounsel) accounts. Although I later learned that the formatting and tagging mechanisms of these modernized legal research tools created quotation artifacts. At no point was there an intent to deceive the Court or fabricate authority. The legal foundation of the motion was sound; the formatting and attribution process was flawed.

I respectfully submit that the Court's inquiry should focus not only on the surface-level citation deficiencies but also on whether the motion to dismiss—despite those editorial flaws—advanced a good-faith argument grounded in fact and law.

### III. EFFORTS WERE UNDERWAY TO CORRECT THE RECORD WHEN I WAS FORCEFULLY REMOVED FROM THE CASE

On June 17, 2025, I received a letter from Plaintiff's counsel identifying perceived violations of Rule 11 and invoking the 21-day safe harbor provision under Rule 11(c)(2). That same week, I began a comprehensive review of the Memorandum of Law to remove or correct any problematic quotations, citations, or formatting issues. I planned to file an amended version that preserved the substance of the motion but corrected any inadvertent quotation misuses or source misattributions.

5

This process was not delayed or avoided. I had every intention of completing it within the 21-day window. Unfortunately, before I could complete and file the corrected Memorandum, I was involuntarily terminated as counsel via email by Defendant Duane Youngblood at 10:28 pm on June 23, 2025. The very next day, on June 24, 2025, I received an email from Defendant's local counsel directing me to sign and return a pre-drafted notice of withdrawal. I was given no opportunity to discuss the Rule 11 issues with the client or local counsel, nor was I given a chance to explain that corrective work was already in progress.

My withdrawal was not strategic. It was not a way to avoid responsibility. It was a consequence of a client relationship that had come to a sudden and unexpected end. I had every intention of remaining in the case and completing the corrective process. The fact that I was unable to do so was beyond my control.

IV. **MISATTRIBUTIONS WERE CAUSED BY EMERGING LEGAL TECHNOLOGY, NOT MALICE**

The citation and quotation errors identified by Plaintiff's counsel—and flagged in the Court's Order to Show Cause—arose in part from my recent adoption of upgraded legal research platforms: LexisNexis Protege and WestlawNext CoCounsel. These tools were marketed to me as solutions for solo practitioners who manage high caseloads without the support of staff. They promised to streamline research, expedite drafting, and offer integrated support for cite-checking and case analysis.

Admittedly, I was excited to have access to technology that could reduce the time required for legal research and writing by nearly half. Sixty percent (60%) of my work is pro bono, and at times, I do not have enough hours in the day to complete all the tasks required of me. It is difficult to find a co-counsel to assist with the work I do because, quite frankly, no one wants to work for free. My firm routinely handles civil rights, employment, sexual assault, and medical malpractice

matters for clients who are indigent, unemployed, or recovering from debilitating trauma. In the case at hand, I provided the Defendant with pro bono legal services for nearly nine months.

Although I utilized the citation review features included with the upgraded platforms, I now understand that I initially misinterpreted how these tools handled paraphrased text and inserted quotation marks. I failed to independently confirm that the quotation formatting matched the underlying source material in every instance. That failure was mine alone. But it was a technological and editorial error, not an act of deception or an attempt to defraud the Court.

I did my due diligence to the best of my understanding: I read the document thoroughly before filing it, ran the citation review feature, and cross-checked the sources. Still, mistakes remained. I deeply regret that the errors survived my review. But I ask that the Court view them in light of the tools that caused them and my good-faith reliance on platforms that I was still learning to use.

V. **SPECIFIC RESPONSE TO QUOTATION CONCERNS RAISED IN THE ORDER**
The Court's Order to Show Cause specifically questioned the accuracy of several quotations, including attributions to *Castellani v. Scranton Times* and other Pennsylvania cases. I take full responsibility for each of the challenged quotations and acknowledge that some were imprecise paraphrases mistakenly enclosed in quotation marks, while others were misattributed due to errors during drafting and formatting.

At the time I understood that all I had to do was highlight the section of the cases, and authorities I researched and wanted to use, upload those case and authorities, as well as supporting materials (complaint, court Orders and opinions, and any relevant transcrips), with written instruction and the upgraded legal research platforms would extract the information and draft the requested document. I was wrong.

7

For example, the challenged language in *Castellani v. Scranton Times*, No. 05-cv-69, 2012 WL 8745208 (Pa. Ct.C.P. Mar. 23, 2012), was not fabricated, but rather paraphrased from Pennsylvania cases cited in other judicial opinions:

- **Challenged Quote 1**: "an intent to injure" – This language was paraphrased from *R.B. v. Hollibaugh*, No. 1:16-CV-01075, 2017 WL 663735, at *12 (M.D. Pa. Feb. 1, 2017) (report and recommendation adopted, 2017 WL 661577), which in turn cited *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979) ("Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy.").
- **Challenged Quote 2**: "To sustain a claim for civil conspiracy, the plaintiff must demonstrate malicious conduct." – This paraphrase was drawn from *Jones v. Johnson & Johnson*, 1997 U.S. Dist. LEXIS 13050, at *30, which stated that a plaintiff must prove "that the Defendant acted with malicious intent to injure."

While the original intention was to streamline legal standards in a reader-friendly format, I now understand that paraphrases—particularly those closely tracking the language from cases—must never be enclosed in quotation marks unless they accurately reflect the precise language of the cited source. In this instance, I failed to meet that standard. However, the underlying authorities that support the legal propositions were real cases I reviewed, highlighted during my research, and accurately reflected the substantive requirements for civil conspiracy under Pennsylvania law.

None of these paraphrases were invented or drawn from fictitious cases. Instead, the problem lay in the way they were formatted and attributed. From now on, I understand that this level of precision must be maintained even in time-constrained or high-volume litigation settings.

VI. **GOOD FAITH, MITIGATING FACTORS, AND CANDOR REGARDING OPTICS OF WITHDRAWAL**

I fully acknowledge that, from the Court's vantage point, the circumstances surrounding the filing of the motion to dismiss—and my subsequent withdrawal as counsel—may appear to reflect an intent to deflect responsibility for a filing that contained significant citation errors. The

8

absence of any immediate corrections or clarifications, followed by my departure from the case, creates an understandable and compelling inference of bad faith. The Court is justified in viewing the sequence of events as problematic and as potentially evidencing a deliberate attempt to escape liability. But everything is not what it seems.

As previously stated, upon receiving the Rule 11 safe harbor letter from Plaintiff's counsel, I immediately began the process of correcting the record, consistent with my obligations under Rule 11(c)(2). My plan was straightforward: to remove all quotation marks around paraphrased or imprecise citations, correct misattributions, and ensure that every statement of law or fact was sourced correctly. I had no intention whatsoever to abandon the filing or to evade the correction process. To the contrary, I took the allegations seriously and had already begun implementing changes. I did not seek to withdraw—I was involuntarily terminated by my client and instructed by local counsel to file a withdrawal prepared by them, without any discussion about the pending Rule 11 issues or the correction process I had undertaken.

Had I been given even a few more days, I would have filed the corrected Memorandum. I gain nothing by misleading the Court. This case was never about evasion or deception. I have always acted in earnest, and my singular goal has been to help the Defendant defend what I believed—what I still believe—is his constitutionally protected right to speak about his lived experiences.

From October 2024 through June 23, 2025, I dedicated myself to this case. I spoke with witnesses, conducted extensive research, drafted motions, and responded to numerous filings—all without compensation and assistance from a paralegal or associate. The Anti-SLAPP motion I filed earlier in this case did not contain similar issues for attribution. That motion reflected the

same commitment to accuracy and advocacy that I brought to the motion to dismiss, but without the complications introduced by newly adopted technology.

At the time I was removed, I had every intention of remaining in the case and continuing to represent the Defendant for free. My commitment to this matter was never driven by financial gain—it was rooted in a genuine belief that the lawsuit was an impermissible attempt to chill the Defendant's First Amendment rights. My work was focused entirely on helping the Defendant fight what I understood to be a defamation claim brought in bad faith for the purpose of silencing his public account of lived experiences.

The Court's concerns are serious and warranted. But I ask only that they be evaluated with the full context in mind: I did not abandon my ethical responsibilities to correct these errors—I was deprived of the opportunity to fulfill them.

## CONCLUSION

I respectfully submit this Memorandum not to excuse or minimize the citation errors that appeared in the motion to dismiss Memorandum of Law, but to candidly explain the circumstances surrounding them and to reaffirm my professional commitment to the integrity of this Court.

The filing at issue was never intended to mislead. The substance of the motion was grounded in legal authority, which I researched, downloaded, and reviewed. The citation and quotation issues were not the result of fraud or deception. Still, rather than the unintended byproduct of transitioning to modernized legal research tools—tools specifically marketed to solo practitioners like me, who lack staff, paralegals, or associates to rely on. I misunderstood the output of these tools and failed to catch formatting and attribution errors, and for that, I accept full responsibility.

I attempted to take immediate steps to correct the record upon receiving the 21-day Rule 11 letter from opposing counsel. I intended to file a corrected memorandum that preserved the

10

substance of the motion while addressing the citation concerns, just as Rule 11 contemplates. However, I was involuntarily terminated by my client before I could complete that process. I did not choose to abandon the case or to avoid correcting the record. I was denied the opportunity to do so.

    I understand the seriousness of the Court's concerns, and I fully appreciate why the optics of withdrawal without correction could raise questions. But I assure the Court that my actions were not driven by malice, evasion, or disrespect, but were the result of a confluence of events.

    My goal now is to demonstrate that I was engaged in good faith throughout, that I was actively trying to correct the filing, and that I remain committed to the standards of candor and responsibility required by Rule 11. I respectfully request that this Court consider the totality of the circumstances when deliberating on whether to impose sanctions.

DATE: July 18, 2025

BY: */s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 18th day of July 2025, a true and correct copy of the foregoing Memorandum of Law of Tyrone A. Blackburn, Esq. In Response to the Court's Order to Show Cause, a copy has been served via the Court's Electronic Filing System on the following counsel of record:

Devin J. Chwastyk, Esquire
McNees Wallace & Nurick LLC
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108
dchwastyk@mcneeslaw.com

Dustin A. Pusch (admitted *Pro Hac Vice*)
Amy M. Roller (admitted *Pro Hac Vice*)
Meier Watkins Phillips Pusch LLP
919 18th Street NW, Suite 650
Washington, DC 20006
dustin.pusch@mwpp.com
amccannroller@mwpp.com

Derrelle M. Janey (admitted *Pro Hac Vice*)
The Janey Law Firm P.C.
111 Broadway, Suite 701
New York, NY 10006
(646) 289-5276
djaney@thejaneylawfirm.com

BY: _/s/ Tyrone A. Blackburn_
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com