# Exhibit A

**MWPP** | MEIER WATKINS PHILLIPS PUSCH

**Dustin Pusch**
dustin.pusch@mwpp.com
(617) 543-4459

June 17, 2025

*Served by Overnight Mail and Email*

Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
tblackburn@tablackburnlaw.com

> Re:    Notification of Violations Pursuant to FRCP 11
> *Jakes v. Youngblood*, 2:24-cv-01608-WSS (W.D. Pa 2024)

Dear Mr. Blackburn:

I write on behalf Plaintiff Bishop T.D. Jakes regarding your conduct in representing Defendant Duane Youngblood in the above referenced case. Pursuant to Fed.R.Civ.P. 11(c), this letter constitutes service of Plaintiff's Motion for Sanctions and documents in support in accordance with Rule 11 and as provided in Fed.R.Civ.P. 5.

Plaintiff intends to file this Motion for Sanctions with the Court by ECF within 21 days after service of this motion, as provided in Rule 11(c)(2). Plaintiff's Motion seeks sanctions based on your misconduct in signing and filing pleadings for Defendant's Motion to Dismiss, specifically the Memorandum of Law [ECF 43] and Reply [ECF 46].

Plaintiff intends to file the Motion for Sanctions unless Defendant immediately withdraws his Motion to Dismiss, files a notification to the Court explaining the circumstances of the false citations and statements noted in the Motion for Sanctions, and formally retracts the statements about Plaintiff and his counsel noted in the Motion.

Please advise within 21 days whether Defendant will comply.

Kind regards,

Dustin Pusch

Enclosures

CC:    Brad N. Sommer, Sommer Law Group, PC, BNS@SommerLawGroup.com
Paul Anthony Ellis, Jr., Sommer Law Group, PC, PAE@SommerLawGroup.com
Derrelle Janey, The Janey Law Firm, djaney@thejaneylawfirm.com
Devin Chastwyck, McNees Wallace & Nurick LLC, DChwastyk@mcneeslaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS DEXTER JAKES,<br><br>    *Plaintiff,*<br><br> v.<br><br>DUANE YOUNGBLOOD,<br>JOHN DOE 1,<br>JOHN DOE 2,<br>JOHN DOE 3,<br>JOHN DOE 4,<br>JOHN DOE 5,<br>JOHN DOE 6,<br>JOHN DOE 7,<br>JOHN DOE 8,<br>JOHN DOE 9, and<br>JOHN DOE 10,<br><br>    *Defendants.* | No. 2:24-CV-1608-WSS |

**PLAINTIFF'S RULE 11 MOTION FOR SANCTIONS AGAINST DEFENDANT YOUNGBLOOD'S COUNSEL, TYRONE BLACKBURN**

Pursuant to Federal Rule of Civil Procedure 11(c), Plaintiff Thomas Dexter Jakes respectfully moves for sanctions against Defendant Duane Youngblood's counsel, Tyrone A. Blackburn, for filing briefs replete with false factual contentions, fabricated quotations, and gross misrepresentations of case law and the record—conduct that violates the standards imposed by Rule 11(b). Specifically:

1. On May 5, 2025, Defendant Youngblood, through his counsel, filed a Motion to Dismiss and a Memorandum of Law (ECF No. 43) (the "Opening Brief").

2. The Opening Brief falsely attributed language and findings to this Court's April 25, 2025 Memorandum Opinion (ECF No. 40), including that this Court had already observed Plaintiff's Complaint to be "repetitive and heavy on rhetoric," and lacking "factual detail"

1

supporting the elements of Plaintiff's claims. In reality, no such findings or observations were made by the Court.

3.      The Opening Brief mischaracterized numerous other judicial decisions too, citing them for propositions that the cases either did not support or outright contradicted and, in many instances, fabricating quotes that do not appear anywhere in the cited opinions.

4.      The Opening Brief also made false representations about the Complaint's content, representing that it does not contain various factual allegations that it plainly does.

5.      Plaintiff identified these misstatements in detail, providing specific examples of the fabricated quotations and mischaracterizations, in his Opposition (ECF No. 45). Rather than correcting or withdrawing the misrepresentations upon notice, Defendant's counsel doubled down in his Reply (ECF No. 46).

6.      The Reply continued to misrepresent case law and also falsely accused Plaintiff of misquotations and other legal inaccuracies, supporting this claim with a LexisNexis "Quote Check" report that he failed to submit to the Court and that Plaintiff disproved through manual review, as detailed in his Sur-Reply (ECF No. 51).

7.      Counsel's conduct is not excused by any suggestion of inadvertence. The failure to withdraw or correct the material falsehoods—after Plaintiff first raised the issue in his Opposition and again in his Sur-Reply—demonstrates a deliberate disregard for counsel's obligations under Rule 11. And many of the false quotes do not appear in any legal source and are found nowhere online except in Defendant's own brief—facts that make their fabrication unmistakable.

8.      Moreover, counsel for Defendant had recently been admonished by another federal judge in *Jones v. Combs*, No. 24-cv-1457, 2025 WL 896829, at *3–4 (S.D.N.Y. Mar. 24, 2025), for making misrepresentations of law.  He is also the subject of a pending disciplinary referral in

the Southern District of New York. *See Zunzurovski v. Fisher*, No. 23-cv-1088, 2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024).

All of the foregoing conduct violates Rule 11(b)(2) and (b)(3), which require counsel to ensure factual contentions have evidentiary support and that legal contentions are warranted by the law. Given the severity, sanctions are warranted to deter future misconduct and uphold the integrity of these proceedings. Accordingly**,** Plaintiff respectfully requests that the Court Impose sanctions against Youngblood's counsel, Tyrone Blackburn, pursuant to Rule 11(c) as follows:

a.   Award Plaintiff all reasonable attorneys' fees and costs incurred in responding to the Motion to Dismiss, drafting and filing the Motion for Leave to File a Sur-Reply and the Sur-Reply itself, and preparing this Motion for Sanctions, including but not limited to the fees and costs incurred to discover and address each of Blackburn's false representations, misrepresentations, and false accusations in his Motion to Dismiss papers; and

b.   Impose any other sanction the Court deems just and appropriate under Rule 11(c)(4), including referral to the Court's disciplinary committee.

This Motion finds support in the accompanying Memorandum of Law, the Declaration of Dustin Pusch, and the Exhibits thereto.

Dated: _____, 2025                         Respectfully submitted,

By: */s/ Dustin A. Pusch*
Dustin A. Pusch (admitted *Pro Hac Vice*)
Amy M. Roller (admitted *Pro Hac Vice*)
Meier Watkins Phillips Pusch LLP
919 18th Street NW, Suite 650
Washington, DC 20006
dustin.pusch@mwpp.com
amccannroller@mwpp.com

By: */s/ Derrelle M. Janey*
Derrelle M. Janey (admitted *Pro Hac Vice*)
The Janey Law Firm P.C.
111 Broadway, Suite 701
New York, NY 10006
(646) 289-5276
djaney@thejaneylawfirm.com

By: <u>*/s/ Devin J. Chwastyk*</u>
Devin J. Chwastyk
McNees Wallace & Nurick LLC
100 Pine Street, P.O. Boc 1166
Harrisburg, PA 17108
(717) 232-8000
dchwastyk@mcneeslaw.com

*Counsel for Plaintiff Bishop T.D. Jakes*

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS DEXTER JAKES,

*Plaintiff*,

   v.

DUANE YOUNGBLOOD,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,
JOHN DOE 4,
JOHN DOE 5,
JOHN DOE 6,
JOHN DOE 7,
JOHN DOE 8,
JOHN DOE 9, and
JOHN DOE 10,

          *Defendants*.

No. 2:24-CV-1608-WSS

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS RULE 11 MOTION FOR SANCTIONS AGAINST DEFENDANT'S COUNSEL, TYRONE BLACKBURN

# **TABLE OF CONTENTS**

Table of Contents ........................................................................................................... i

Introduction .................................................................................................................. 2

   I.      Relevant Facts ................................................................................................ 3

   II.     Legal Standard ............................................................................................... 5

   III.    Argument ....................................................................................................... 6

         A.     The False Claims About this Court's Order Violate Rule 11(b)(2) or (b)(3)..... 7

         B.     By Misrepresenting Other Judicial Opinions, Blackburn Violated Rule 11(b)(2). ........................................................................................................ 8

         C.     The Claims About Plaintiffs' Counsel and the Opposition Violate Rule 12(b)(2)-(3). ................................................................................................. 10

         D.     The False Claims About the Complaint Violate Rule 12(b)(3) ....................... 12

         E.     A Severe Sanction Against Blackburn Is Warranted. ..................................... 13

Conclusion .................................................................................................................. 15

## INTRODUCTION

This Motion seeks to address grave misconduct and breaches of professional and ethical duties by Tyrone A. Blackburn, counsel for Defendant Duane Youngblood and admitted to practice in this Court *pro hac vice* for this case.[1]

The misconduct is severe: Defendant's Memorandum in Support of His Motion to Dismiss (ECF No. 35) ("Opening Brief") and his Reply (ECF No. 46), ***signed only by and filed by Blackburn***, were riddled with fabricated quotations, distortions of controlling law, and false representations about the record—conduct that not only violates Federal Rule of Civil Procedure Rule 11(b), but also offends the integrity of the judicial process. These are not minor errors or aggressive interpretations. They are deliberate fabrications: ***quotes invented whole cloth and attributed to this Court*** (and others), fictitious descriptions of cases (and their holdings) that say no such thing, and false accusations levied against opposing counsel and the Complaint, without factual or legal foundation.

This misconduct is repeated and escalating. Other federal courts have already warned Blackburn about similar misrepresentations about case law and willful ignorance to factual bases for his claims. And despite these warnings—including as recently as March 2025 by a federal judge in the Southern District of New York—his misconduct has persisted. Indeed, when Plaintiff identified these most recent misrepresentations and fabrications in his Opposition to the Motion to Dismiss (ECF 45) ("Opposition"), Blackburn not only did not correct them, he doubled down— repeating false claims, concocting new ones, manufacturing yet more case quotes, and lashing out

---

[1] We are unaware as to the extent Defendant Youngblood endorsed or directed Blackburn's actions with regard to the Motion to Dismiss.  We therefore defer to the Court and its discretion whether Defendant Youngblood should likewise be sanctioned.

with baseless accusations against Plaintiff's counsel.[2] Those tactics reflect a willingness to mislead the Court to gain an advantage and a disregard for the requirements of Rule 11(b), which require counsel to refrain from advocating for positions that lack evidentiary or legal support.

"[U]nlike the [authority Defendant] cited, Rule 11 is not artificial; it imposes a real duty on lawyers … to ''Stop, Think, Investigate and Research' before filing papers,'" which Blackburn did not heed. *Bunce v. Visual Tech. Innovations, Inc.*, No. CV 23-1740, 2025 WL 662398, at *1 (E.D. Pa. Feb. 27, 2025) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)).

Blackburn has flouted those obligations at every turn. Sanctions are not just appropriate; they are ***necessary*** to deter future misconduct, vindicate the integrity of these proceedings, and protect the Court and Plaintiff from further abuse.

## I.    RELEVANT FACTS

As recently as March 24, 2025—less than two months before filing the Brief— Youngblood's counsel, Blackburn, received a "Warning to Counsel" from another federal district court about "inaccurate statements of law" in his court filings. *See Jones v. Combs*, No. 24-cv-1457, 2025 WL 896829, at *3-4 (S.D.N.Y. Mar. 24, 2025). And that was not the first time Blackburn had been in trouble for filing "false claims"—Blackburn was previously referred by the Honorable Denise Cote of the Southern District of New York to the S.D.N.Y. grievance committee for his repeated failure to investigate basic elements of his cases. *Id.* at *3; *Zunzurovski v. Fisher*, No. 23-cv-1088, 2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024).

On May 5, 2025, a little over a month after receiving the warning from Judge Oentken, Blackburn signed and filed the Opening Brief, for which he was the ***sole signatory***. (ECF 43 at

---

[2] Blackburn's new knowingly false claims and representations to the Court in the Reply are detailed in Plaintiff's Sur-Reply (ECF 51).

19). While reading the Opening Brief, glaring inaccuracies emerged: fabricated quotes attributed to this Court's April 25, 2025 Order, fake quotes and wildly inaccurate descriptions of other judicial opinions, false representations about precedent, and overt misrepresentations of the Complaint. (*See* June 17, 2025 Declaration of Dustin Pusch ¶ 3 ("Pusch Decl.") (**Exhibit 1**).)[3]

Plaintiff noted these issues in his Opposition and in the May 27, 2025 Declaration of Dustin Pusch (ECF No. 45-1). At that point, Plaintiff's counsel fully expected that defense counsel would issue a *mea culpa* and withdraw the false representations or otherwise correct the record—or at a bare minimum try and explain how his filing could be littered with such misrepresentations. But not Blackburn. Instead, on June 2, 2025, he ignored being caught red-handed in misconduct and instead chose to double down on his false representations and falsely accuse Plaintiff's counsel of doing what he did. (Def.'s Reply (ECF No. 46).) The Reply, like the Opening Brief, was signed and filed by Blackburn alone. (*Id.* at 15.)

The Reply doubled down on the issues with Defendant's Opening Brief—inaccurately quoting cases, misrepresenting holdings and rulings from others, and misrepresenting the record. (Pusch Decl. ¶¶ 3, 8, 18, 27, 31, 35-47.) But that's not all—Blackburn also went on the offensive against Plaintiff's counsel, claiming that, using a LexisNexis AI product, he had discovered "a pattern" of issues with the citations in Plaintiff's Opposition, including "at least 20 incorrect quotations[.]" (Def.'s Reply at 13-14 (ECF No. 46); Pusch Decl. ¶¶ 6, 51, 56-59.) Notably, he did not attach that analysis to his filing, and when Plaintiff checked the cites and recreated the very LexisNexis "Quote Check" Analysis Blackburn claimed to have created and reviewed, Plaintiff's

---

[3] For ease of reference for the Court, the Pusch Declaration includes the same descriptions and identified issues with Defendant's Motion to Dismiss filings as originally filed in the declarations at ECF 45-1 and ECF 51-1, as well as additional details regarding Blackburn's case misrepresentations in Defendant's Reply.

counsel confirmed that not only were all the citations in the Opposition correct and accurate,  the only truly "incorrect" quotes in the Opposition were the instances where Plaintiff was quoting from the Opening Brief—and highlighting for the Court Blackburn's fabrications. (Pusch Decl. ¶¶ 3, 7, 35-47, 58-59.)

In light of Defendant's failure to take accountability for his false representations and because of the significant time and resources Plaintiff was forced to expend to identify and address Blackburn's misconduct, Plaintiff's counsel sent a copy of this Motion to Blackburn on June 17, 2025 pursuant to the requirements of Rule 11. (**Exhibit 2.**) Blackburn refused to withdraw or appropriately correct his filings , and this Motion proceeds.

## II.    LEGAL STANDARD

In relevant part, Rule 11 provides that by signing and filing a document, "an attorney … certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the "legal contentions are warranted by existing law or by a nonfrivolous argument for … modifying … existing law or for establishing new law"; and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support" following discovery. Fed. R. Civ. P. 11(b)(2)-(3). The signer has "a 'personal, nondelegable responsibility' to comply with the requirements of Rule 11 before signing the document" and then certify he has "(1) read the pleading, motion, or paper; [and] (2) made a reasonable inquiry into the contents … and concluded that it is well grounded in fact and warranted in law[.]" *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278 (3d Cir. 1994) (citation omitted).

When false representations are made, courts determine the reasonableness of an inquiry by applying an objective standard. *See Business Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 548-50 (1991). "This objective test has teeth." *Wharton v. Superintendent*, 95 F.4th 140,

148 (3d Cir. 2024). "There is no 'empty-head pure-heart justification'" and "[l]awyers cannot avoid sanctions by unreasonably failing to investigate[.]" *Id.* (citation omitted). Rather, Rule 11 allows "lawyers [to] be sanctioned for objectively unreasonable conduct—in a word, negligence," *Wharton*, 95 F.4th at 148,[4] which "prevent[s] abuse caused not only by bad faith but … to some extent, by professional incompetence," *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).

When abuse occurs, Rule 11 holds violators accountable. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) ("the intended goal of Rule 11 is accountability"). And gives courts "the necessary flexibility to deal appropriately with violations" and "discretion to tailor sanctions to the particular facts of the case[.]" Fed. R. Civ. P. 11, 1983 advisory comm. note. The Court may impose sanctions "sufficient to deter repetition," including monetary and nonmonetary penalties. Fed. R. Civ. P. 11(c)(4). In deciding what sanctions are necessary, "[d]istrict courts have broad discretion[.]" *United States v. Brace*, 1 F.4th 137, 144 (3d Cir. 2021).

## III.    ARGUMENT

The Court should sanction, at a minimum, Youngblood's attorney, Tyrone Blackburn, for, in connection with Defendant's Motion to Dismiss filings, violating Rule 11 by misrepresenting the Court's April 25 Order and the other judicial opinions he cites, misrepresenting the content of the Complaint, and by making knowing or, at least reckless unfounded accusations of misconduct against Plaintiff's counsel, all of which violate Rule 11(b)(2)-(3), which require attorneys to have legal and factual support for claims made to courts. The standard "requires attorneys to be careful and scrupulously honest in their filings and representations," *Young v. Smith*, 905 F.3d 229, 234 (3d Cir. 2018), because officers of the courts, must not mislead them, *Wharton*, 95 F.4th at 151. Blackburn has fallen so far short of that standard here that severe sanctions are not just warranted—

---

[4] An earlier version of Rule 11 required bad faith, which rendered the Rule ineffective. *Id.*

they are necessary.

Tellingly, Defendant's local counsel, attorneys from the Sommer Law Group, ***did not sign any of the Motion to Dismiss filings***.  Blackburn, who is admitted *pro hac vice* in this case and attested to having "read, underst[ood], and agree[d] to comply with the Local Rules of the United States District Court for the Western District of Pennsylvania, including all standards of professional conduct" in that application (Mot. for Adm. PHV, ECF Nos. 28, 33), is ***the sole signatory to*** and the ECF filer of the at-issue pleadings.

**A.**    **The False Claims About this Court's Order Violate Rule 11(b)(2) or (b)(3).**

It is sanctionable to misrepresent either the record or the law. Fed. R. Civ. P. 11(b)(2)-(3). But the Opening Brief's most egregious falsehoods were the four separate sections in which it premised arguments on fake holdings attributed to this Court's April 25, 2025 Memorandum Opinion (ECF No. 40), buttressed with fabricated quotes:

- "The Court has already noted in its April 25, 2025, Memorandum Opinion that Plaintiff's Complaint is 'repetitive and heavy on rhetoric,' with no factual detail supporting the core elements of his claims. This observation is critical. A complaint based on rhetorical flourishes, inflammatory language, and character assassination—rather than well-pleaded factual allegations—is precisely what *Twombly* and *Iqbal* were designed to eliminate. As the Court implicitly recognized, Plaintiff's reliance on tone over substance is fatal under Rule 12(b)(6)." (Def.'s Br. at 3-4).

- "The Court's April 25, 2025, Memorandum Opinion—while resolving only the procedural applicability of the Anti-SLAPP statute—nonetheless made several critical observations that substantively reinforce Defendant's arguments under Rule 12(b)(6). The Court noted, for example, that Plaintiff's Complaint is 'repetitive and heavy on rhetoric' and fails to identify with clarity the specific allegedly defamatory statements made by Defendant Youngblood. It also observed that Plaintiff's allegations rely on conclusory assertions and lack factual content supporting core elements such as falsity and malice. Although these observations were not dispositive in the Court's prior ruling, they directly mirror the Rule 12(b)(6) arguments raised in this motion and further demonstrate that Plaintiff's defamation and conspiracy claims are not merely weak—they are legally deficient. These issues, already apparent on the face of the pleadings and acknowledged by the Court, independently warrant dismissal." (*Id.* at 6-7.)

- "The Court further noted that Plaintiff's Complaint fails to establish that Youngblood's statements were specifically "of and concerning" him." (*Id.* at 13.)

- "[T]he Court independently noted the deficiencies raised in this Rule 12(b)(6) motion in its April 25, 2025, Memorandum Opinion. The Court observed the Complaint's failure to allege specific defamatory statements, overuse of conclusory assertions, and lack of factual content supporting falsity and malice." (*Id.* at 18.)

(Pusch Decl. ¶¶ 3, 6, 7.) These fabrications are shocking in both their detail and the distance from the truth—the Court said nothing of the sort, both the sentiments and the quotes are total fabrications (and many of the passages ascribe to the Court serious error). (*Id.*; April 25 Order at 12, 13, 17 (explaining that it would not address the Rule 12(b)(6) framework because it had not been briefed).

By fabricating a record of judicial findings adverse to the Plaintiff, Blackburn violated Rule 11(b)(2), Rule 11(b)(3), or both. *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp*, No. C05-2129RSM, 2010 WL 2026756, at *2 (W.D. Wash. May 17, 2010) (imposing sanctions where party misrepresented the meaning and significance of appellate court's order), *aff'd* 653 F.3d 1314 (Fed. Cir. 2011); *Macdraw, Inc. v. CIT Grp.*, 994 F. Supp. 447, 457 (S.D.N.Y. 1997) (revoking *pro hac vice* of attorney who misquoted judge's own order), *aff'd,* 138 F.3d 33 (2d Cir. 1998); *see also Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 460-61 (S.D.N.Y. 2023) (falsifying judicial orders approaches a criminal act and raises the same concerns as the acts prohibited by 28 U.S.C. § 505). It is hard to imagine a more overt way for an attorney to flaunt this Court's authority and his own ethical duties than to make up a quote and ruling by the very Court in the very case over which the Court is presiding—and that is what Blackburn has done here.

**B.** **By Misrepresenting Other Judicial Opinions, Blackburn Violated Rule 11(b)(2).**

But this Court was not the only one whose words were fabricated and misrepresented. Blackburn's two briefs contained *dozens* of citations to judicial opinions that did not support the proposition for which they were cited—either fabricating quotations outright or misrepresenting their subject matter, observations, and holdings. (*See* Pusch Decl. ¶¶ 3, 8-49.) One particularly

8

egregious example is *Franklin Prescriptions v. New York Times Co.,* 267 F. Supp. 2d 425 (E.D. Pa. 2003), to which Defendant ascribed four fake quotes and cited for the pleading standard applied to defamation and conspiracy claims. (Pusch Decl. ¶¶ 12, 21.) But *Franklin Prescriptions* says nothing of the sort—it's a summary judgment decision that does not discuss pleading standards. (*Id.* ¶ 21.) Nor did it consider the level of textual specificity required to prove a defamatory statement, an attribution requirement, or conspiracy doctrine—it concerned choice of law, negligence, actual malice, and whether the New York Times intended or endorsed the defamatory implication in an article about online pharmacies. (*Id.*) And the case has ***absolutely nothing to do with conspiracy claims***. (*See* Pusch Decl. ¶ 21.) There is no way to reconcile the case with Blackburn's representations.

But these examples are just a drop in the bucket—the entire Opening Brief was constructed on a scaffolding of fake quotes and citations. These bald misrepresentations about the law are textbook violations of Rule 11(b)(2). *See, e.g.*, *Bevins v. Colgate-Palmolive Co.*, No. CV 25-576, 2025 WL 1085695, at *7 (E.D. Pa. Apr. 10, 2025) (attorney violated Rule 11(b)(2) "by submitting briefs to the Court that cited case law that did not support his stated propositions"); *Bunce*, 2025 WL 662398, at *3 (counsel "violated [Rule] 11(b)(2) by … cit[ing] case law that does not support his stated proposition"); *Mata*, 678 F.Supp.3d at 461 ("A fake opinion is not 'existing law'" for purposes of Rule 12(b)(2)); *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1349, 1353, 1357 (Fed. Cir. 2003) (affirming Rule 11 sanctions for misrepresenting judicial opinions).

And although some of the caselaw was real, none of it supported Defendant's contention that the Complaint failed to state a claim for relief. For example, the overarching contention that "general denials or self-serving declarations of 'this didn't happen' are insufficient to establish

falsity under the Twombly/Iqbal standard," was made up. (Opening Br. at 8.)[5]  Nor do courts require the plaintiff to allege an "alibi." (Reply at 7.) Those objectively baseless arguments are grounds for sanctions too. *See, e.g.*, *Tradewell v. Kennedy*, 656 F. Supp. 442, 444 (C.D. Ill. 1987) (imposing sanctions for frivolous motion to dismiss where "the Court can find no authority—since none exists—to support Defendants' proposition that a security deposit is required to make a prima facie showing of discrimination under § 1982").

Moreover, Defendant failed to correct course in his Reply after receiving notice of the extraordinary issues with his brief. (*See* Pusch Decl. ¶ 32.) "That [counsel] was already on notice that his pleadings contained overt errors makes these violations even more egregious." *Shelton v. Chaudhry*, 763 F. Supp. 3d 675, 683 (E.D. Pa. 2025). "Rather than adjusting course … [counsel] continued to submit filings that contained false and unfounded … legal assertions[.]." *Id.*; *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (holding that a court may impose sanctions on a party for refusing to withdraw statements even after they are shown to be inaccurate). Accordingly, Blackburn's conduct is not only egregious, it is sanctionable.

## C.    The Claims About Plaintiffs' Counsel and the Opposition Violate Rule 12(b)(2)-(3).

The Reply not only ignored the issues with the Opening Brief and perpetuated its false claims, but it added false attacks on Plaintiff's counsel. It claimed that Plaintiff's Opposition contained "a pattern of misquotation, superficial citation, and invocation of authorities that are either inapposite or do not support the propositions for which they are cited," which Blackburn said he confirmed using the "Brief Analysis" feature of the LexisNexis "Quote Check" tool. (Reply at 13.) Blackburn told the Court that his analysis revealed "at least 20 incorrect quotations in

---

[5] Even under the anti-SLAPP framework, a firm fair denial suffices. *Burrill v. Nair*, 217 Cal.App.4th 357, 389 (2013) ("[plaintiff's] denial of these [perjury] charges in her declaration provides a sufficient prima facie showing that the accusations are false").

Plaintiff's brief," but provided just two examples and did not submit a copy of the LexisNexis report. (*Id.*) The two "examples" included in the Reply were quoted correctly—*Tavoulareas v. Piro* was modified using brackets and *Sprague v. American Bar Association*, was truncated without the use of an ellipses, in accordance with common punctuation conventions. (*See* Pl.'s Opp'n at 10 ("'no [single] piece of [this] evidence'"), 14 ("'Presumed' damages are those that are expected to result from defamation; they require no proof, but instead, as reflected in their name, are presumed.'").)

While the Reply slung mud, it failed to identify a single example of an incorrect quotation, let alone a "pattern." It was telling that Blackburn did not attach a copy of his LexisNexis report, because when Plaintiff's counsel recreated the same LexisNexis analysis, the resulting Report (Pusch Decl., Ex. 1) confirmed that there are, in fact, no misquotations, inapposite authorities, or other serious errors in the Opposition; rather, the system flagged a variety of correct quotations as being incorrect, a fact that is immediately obvious to any reader, let alone a member of any Bar. (*See* Pusch Decl. ¶¶ 53, 55-57 & Ex. 1.) And the only truly incorrect quotes LexisNexis flagged in the Opposition were the instances where Plaintiff quoted and discussed the fabricated quotes from Defendant's Opening Brief. (*Id.*) Indeed, Blackburn either knew or should have known from the very LexisNexis analysis he claims to have done that not only was Plaintiff's citations above reproach, but his own quotations were fake.

These spurious accusations of misconduct, lodged against Plaintiff's counsel with absolutely no factual basis and in bad faith, are beneath any member of any Bar, and likewise sanctionable. *See, e.g.*, *Balerna v. Gilberti*, 708 F.3d 319, 321-23 (1st Cir. 2013) (affirming sanctions imposed on counsel for making groundless misconduct allegations against another attorney); *Roberts v. McCrory*, 693 F. Supp. 998, 1010 (W.D. Okla. 1987) (imposing Rule 11

sanctions for "spurious and unsubstantiated allegations of misconduct against opposing counsel").

**D.      The False Claims About the Complaint Violate Rule 12(b)(3)**

Defendant's Brief also makes a series of misrepresentations about the Complaint, fabricating one quote and outright denying the existence of many factual allegations, paragraphs, and entire sections, all to further the false claim that the Complaint is devoid of factual allegations in violation of *Twombly* and *Iqbal*. "'Rule 11 also imposes an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims. Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—or after reasonable investigation should have known—are false or wholly unsupported.'" *Wharton*, 95 F.4th at 148 (citation omitted). Here, by denying the existence of factual allegations rather than disputing their accuracy, Blackburn violated his duty.

*First*, the Opening Brief represented several times that the Complaint "does not quote or paraphrase" the defamatory remarks or "delineat[e] what role Defendant Youngblood himself played in the act of publication." (Opening Br. at 3, 7-8, 12; Pusch Decl. ¶ 31.). But it does quote the defamatory statements, characterizes their import, and alleges Youngblood himself said these things during "live interview[s]" on the Larry Reid Live show. (Compl. ¶¶ 24-30, 52-53, 56.)

*Second*, the Opening Brief represents that the Complaint offers nothing more than "general denials" and Youngblood's "ill will" to allege falsity. (Opening Br. at 8-9; Pusch Decl. ¶ 30.) But the Complaint explains that: "*Bishop Jakes never kissed or tried to kiss Youngblood, never cornered him or forced him into any situation (sexual or otherwise), and certainly never told him that he wanted to sleep with him or had any conversation of a sexual nature at all with him.*" (Compl. ¶ 32.) That is more than a generalized allegation that the statement was false—it's a denial of the conduct claimed to have occurred, contrary to the Opening Brief's false claims.

*Third*, Defendant's Brief represents that "[t]he only references to malice appear as

12

conclusory legal assertions—that Youngblood acted 'intentionally and maliciously'" (Opening Br. at 9-10 (citing Compl. ¶ 60)), and that "the Complaint does not allege that Youngblood ever recanted, contradicted himself, or expressed doubt." (*Id.* at 9, 10.) But the phrase "intentionally and maliciously" ***does not appear in the Complaint***—the quote is fake—and the Complaint identifies seven categories of evidence that constitute proof of actual malice and notes instances in which Youngblood lied or contradicted himself, including the specific instance of Youngblood (through Blackburn) altering Youngblood's story in the very letter in which he demanded $6 million from Plaintiff.[6] (Compl. ¶¶ 21, 60-61.)

To dispute the adequacy of the Complaint's factual allegations would be one thing, but Defendant's filings falsely claim they do not exist. That crosses the line, rendering the conduct sanctionable under Rule 11(b)(3). *E.g.*, *Wharton*, 95 F.4th at 145-50 (imposing sanctions for implied false representation that the record contained no evidence of escape or prison misconduct).

### E.    A Severe Sanction Against Blackburn Is Warranted.

This case calls for strong sanctions for several reasons. ***First***, the conduct was beyond egregious and made in bad faith—Blackburn submitted two briefs ***full*** of provably and blatantly false representations about the law and the record, including by this very Court in this very case.

***Second***, Blackburn's conduct was particularly culpable because he received prior warnings from courts and notice of the widespread fabrications and errors in his Opening Brief. *Wharton*, 95 F.4th at 150 (counsel "should have investigated fully and given the court all the facts, or at least admitted [the] earlier oversights … [i]nstead, [they] doubled down").

In April 2024, Blackburn was found to have violated Rule 11 but not sanctioned, even

---

[6] Revealing just how disingenuous Defendant's and Blackburn's argument that Youngblood has never contradicted himself is, Defendant's Reply again directly contradicts Youngblood's story, now claiming that the alleged incident occurred "in the car" rather than in a dining room in a house. (ECF No. 51 at 1-3).

though the Court observed at the time that his "failure to conduct the investigation required by Rule 11 appears to be a pattern." *Zunzurovski v. Fisher*, No. 23-cv-1088, 2024 WL 1434076, at *2-5 (S.D.N.Y. Apr. 3, 2024). Instead, the Court referred Blackburn to the S.D.N.Y. grievance committee. *Id.* at *5. In March 2025, less than two months before filing the Opening Brief, another federal court issued a "Warning to Counsel" because "Blackburn's filings are replete with inaccurate statements of law" that were "not just disturbing, but shocking[.]" *Jones v. Combs*, No. 24-cv-1457, 2025 WL 896829, at *3-4 (S.D.N.Y. Mar. 24, 2025). The court reminded Blackburn that he "has a professional obligation … to state the law accurately[.]" *Id.* at *4. In light of the warnings he received previously, "the Court f[ound] much of Blackburn's conduct regarding Defendant's motion to dismiss to be unsettling." *Id.* For most lawyers, these admonitions would make an impression and cause them to clean up their act. Not Blackburn—he defiantly drafted, signed, and filed the Opening Brief with all of its falsities.

Then came Plaintiff's Opposition, which highlighted the issues with Blackburn's submission and put him on notice of his falsehoods, misrepresentations, and overt errors. When confronted with wild inaccuracies in their briefing, most lawyers admit their wrongdoing. *E.g.*, *Bunce*, 2025 WL 662398, at *2-3. Not Blackburn. He failed to correct the record or engage with the substantial inaccuracies at all. Instead, he went on the offensive, turning his ire on Plaintiff and falsely accusing Plaintiff's counsel of engaging in the same reckless conduct as he. (Reply at 13-14.) Courts agree: more severe sanctions are warranted when a litigant fails to take responsibility for misrepresentations. *E.g.*, *Shelton*, 763 F. Supp. 3d at 683 ("That [counsel] was already on notice that his pleadings contained overt errors makes these violations even more egregious."). Blackburn has not only failed to take responsibility, he doubled down on his disregard for ethics and basic decency. *Wharton*, 95 F.4th at 148 ("'Whether the improper conduct was willful[ ] or negligent'

14

may bear on … what th[e] sanctions should be.").

**Third**, "[b]aseless filing[s]" like the ones Blackburn submitted in this case "put[] the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Further, "[m]any harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. *Mata*, 678 F.Supp.3d at 448. And "[i]t promotes cynicism about the legal profession and the American judicial system." *Id.* at 448-49.

Accordingly, strong sanctions are warranted to deter future misconduct and uphold the integrity of these proceedings. Plaintiff respectfully requests that the Court sanction Blackburn under Rule 11(c) as follows:

- Award Plaintiff all reasonable attorneys' fees and costs incurred in responding to the Motion to Dismiss, drafting and filing the Motion for Leave to File a Sur-Reply and the Sur-Reply itself, and preparing this Motion for Sanctions, including but not limited to the fees and costs incurred to discover and address each of Blackburn's false representations, misrepresentations, and false accusations in his Motion to Dismiss papers; and

- Impose any other sanction the Court deems just and appropriate under Rule 11(c)(4), including referral to the Court's disciplinary committee.

## <u>CONCLUSION</u>

For the reasons stated above, we respectfully request that the Court grant this Motion and sanction Defendant's attorney, Tyrone Blackburn. A proposed order is attached.

DATED: _____, 2025                    Respectfully Submitted,

By: */s/ Dustin A. Pusch*
Dustin A. Pusch (admitted *Pro Hac Vice*)
Amy M. Roller (admitted *Pro Hac Vice*)
Meier Watkins Phillips Pusch LLP
919 18th Street NW, Suite 650
Washington, DC 20006
dustin.pusch@mwpp.com

amccannroller@mwpp.com

By: */s/ Derrelle M. Janey*
Derrelle M. Janey (admitted *Pro Hac Vice*)
The Janey Law Firm P.C.
111 Broadway, Suite 701
New York, NY 10006
(646) 289-5276
djaney@thejaneylawfirm.com

By: */s/ Devin J. Chwastyk*
Devin J. Chwastyk
McNees Wallace & Nurick LLC
100 Pine Street, P.O. Boc 1166
Harrisburg, PA 17108
(717) 232-8000
dchwastyk@mcneeslaw.com

*Counsel for Plaintiff Bishop T.D. Jakes*

# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS DEXTER JAKES,

*Plaintiff*,

v.

DUANE YOUNGBLOOD,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,
JOHN DOE 4,
JOHN DOE 5,
JOHN DOE 6,
JOHN DOE 7,
JOHN DOE 8,
JOHN DOE 9, and
JOHN DOE 10,

*Defendants*.

No. 2:24-CV-1608-WSS

## DECLARATION OF DUSTIN PUSCH IN SUPPORT OF PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

**DUSTIN ANDREW PUSCH,** being duly sworn, states as follows:

1.      I am a United States citizen, am over the age of 18, am sound of mind, and make this declaration based on my personal knowledge and review of publicly available information.  I am admitted to practice in this Court *pro hac vice* and I am a member in good standing of the bars of the District of Columbia and the Commonwealth of Virginia.  I am a partner at Meier Watkins Phillips Pusch LLP, located at 919 18th Street NW, Suite 650, Washington, D.C., 20006.

2.      In December 2024, Defendant Duane Youngblood filed a motion under Pennsylvania's anti-SLAPP law.  (ECF No. 35.) By order dated April 25, 2025, the Court denied Defendants' Motion based on the inapplicability of the anti-SLAPP law and noted that "[t]he Court

will not reframe Youngblood's argument to fit within the Rule l 2(b)(6) or Rule 56 framework. If Youngblood wishes to file a motion to dismiss based on Rule 12(b)(6) or Rule 56, he may do so provided that his filing complies with all applicable Federal Rules of Civil Procedure." (Mem. Op at 13 (April 25, 2025) (ECF No. 40).) The Court did not otherwise comment on Rule 12, including as to the sufficiency of Plaintiff's Complaint in pleading the elements of his claims.

## I.    DEFENDANT'S MOTION TO DISMISS AND OPENING BRIEF

3.    On May 5, 2025, Defendant Youngblood filed a Motion to Dismiss and Memorandum in Support (the "Opening Brief") (ECF No. 43).  The sole signatory and filer of the Opening Brief was Defendant's counsel, Tyrone Blackburn.  While reading the Opening Brief, glaring inaccuracies emerged: fabricated quotes from the Court's April 25 order, fabricated quotes from other cases, misrepresentations of precedent, and misstatements about the Complaint.

4.    As a result, I, along with other attorneys and legal support staff at my firm, conducted a detailed review of the case law and record citations in the Opening Brief.  The result of our analysis is as follows.[1]

### A.    The Opening Brief fabricates quotes from the Court's April 25, 2025 Order.

5.    While working on Plaintiff's Opposition to Defendant's Motion to Dismiss, I was initially surprised to read certain quotes from the Court's April 25 Order which, at first glance, I did not recall seeing in the Order.  Upon closer inspection, I confirmed that the quotes and the other references and claims about the Court's April 25 Order appear nowhere in it.

6.    Specifically, the Opening Brief made the following false representations about what the Court's April 25 Order states and finds:

---

[1] We additionally have concerns, based on the inaccuracies described herein and from additional research, that the filings made in support of Defendant's Motion to Dismiss may have been aided, in whole or in part, by the use of artificial intelligence software (such as ChatGPT).

a.  "The Court has already noted in its April 25, 2025, Memorandum Opinion that Plaintiff's Complaint is 'repetitive and heavy on rhetoric,' with no factual detail supporting the core elements of his claims. This observation is critical.  A complaint based on rhetorical flourishes, inflammatory language, and character assassination—rather than well-pleaded factual allegations—is precisely what *Twombly* and *Iqbal* were designed to eliminate.  As the Court implicitly recognized, Plaintiff's reliance on tone over substance is fatal under Rule 12(b)(6)." (Def.'s Br. at 3-4).

b.  "The Court's April 25, 2025, Memorandum Opinion—while resolving only the procedural applicability of the Anti-SLAPP statute—nonetheless made several critical observations that substantively reinforce Defendant's arguments under Rule 12(b)(6).  The Court noted, for example, that Plaintiff's Complaint is 'repetitive and heavy on rhetoric' and fails to identify with clarity the specific allegedly defamatory statements made by Defendant Youngblood.  It also observed that Plaintiff's allegations rely on conclusory assertions and lack factual content supporting core elements such as falsity and malice.  Although these observations were not dispositive in the Court's prior ruling, they directly mirror the Rule 12(b)(6) arguments raised in this motion and further demonstrate that Plaintiff's defamation and conspiracy claims are not merely weak—they are legally deficient.  These issues, already apparent on the face of the pleadings and acknowledged by the Court, independently warrant dismissal." (*Id.* at 6-7.)

c.    "The Court further noted that Plaintiff's Complaint fails to establish that Youngblood's statements were specifically "of and concerning" him." (*Id.* at 13.)

d.    "[T]he Court independently noted the deficiencies raised in this Rule 12(b)(6) motion in its April 25, 2025, Memorandum Opinion.  The Court observed the Complaint's failure to allege specific defamatory statements, overuse of conclusory assertions, and lack of factual content supporting falsity and malice." (*Id.* at 18.)

7.    None of the representations by Defendant about this Court's statements happened, and the quotes are all total fabrications.  As the April 25 Opinion explains, "[t]he Court will dismiss Youngblood's motion because it relies on statutory provisions that are not applicable in this litigation" and "[t]he Court will not reframe Youngblood's argument to fit within the Rule l2(b)(6) … framework" because "[a]s discussed above, the Court cannot and will not craft arguments for the parties."  (ECF No. 40 at 12, 13, 17.)

**B.    The Opening Brief Fabricates Quotations from Other Cases.**

8.    After discovering that the Opening Brief misrepresents the Court's April 25 Opinion, I looked more closely at the cases relied upon in the argument section.  Upon inspection, I confirmed that quotes from many court cases had also been fabricated, either in whole or in part.[2]

9.    *Blackwell v. Eskin*, 916 A.2d 1123 (Pa. Super. Ct. 2007).

a.    "Moreover, the Pennsylvania Superior Court in *Blackwell v. Eskin* emphasized that even where statements are embarrassing or upsetting, the Plaintiff must demonstrate their precise defamatory content and origin.

---

[2] The fabricated quotations—in whole or in part— are in bold.

'**The mere incantation of harm or reputational injury, without identifying the defamatory words and the speaker, is insufficient.**' 916 A.2d 1123, 1128–29 (Pa. Super. Ct. 2007)." (Def.'s Br. at 8.)

b.  "As the Court held in *Blackwell*, 'ill will or a defendant's desire to harm the plaintiff, although probative of the defendant's state of mind, without more, does not establish actual malice **or falsity**.' 916 A.2d at 1130."[3] (Def.'s Br. at 8.)

c.  "As *Blackwell* makes clear, 'evidence of ill will **or the fact that a statement is strongly worded is not sufficient to show** actual malice.' 916 A.2d at 1130." (Def.'s Br. at 9-10.)

10.  *Castellani v. Scranton Times*, No. 05-cv-69, 2012 WL 8745208 (Pa. Ct. C.P. Mar. 23, 2012).

a.  "Under Pennsylvania law, civil conspiracy demands a showing of actual malice, which means '**an intent to injure**' the Plaintiff and no other lawful or independent motive. *Castellani v. Scranton Times, L.P.*, 23 Pa. D. & C.5th 50, 78 (Lackawanna Cnty. C.P. 2012)] ('**To sustain a claim for civil conspiracy, the plaintiff must demonstrate malicious conduct**')." (Def.'s Br. at 16.)

11.  *Duffy v. Lawyers Title Ins. Co.*, 972 F. Supp. 2d 683 (E.D. Pa. 2013).

---

[3] The Opening Brief expands this quote to make it applicable to falsity, which the case does not mention.  The actual quote from the case is: "Moreover, despite Appellant's further assertion that Officer Campbell's information was motivated by a grudge against Temple, 'evidence of ill will or a defendant's desire to harm the plaintiff's reputation, although probative of the defendant's state of mind, without more, does not establish "actual malice."'" *Blackwell v. Eskin*, 916 A.2d 1123, 1127 (Pa. Super. 2007).

a.    "Group pleading is particularly improper in civil conspiracy claims, where individual conduct and malicious intent must be alleged, as the Court stated in *Duffy v. Lawyers Title Ins. Co.*, '**[a] Plaintiff must allege facts supporting the inference that each Defendant acted with specific malice and in furtherance of a shared unlawful purpose. Absent this showing, a conspiracy claim fails.**' 972 F. Supp. 2d 683, 697 (E.D. Pa. 2013)." (Def.'s Br. at 17.)

12.    *Franklin Prescriptions v. N.Y. Times Co.*, 267 F. Supp. 2d 425 (E.D. Pa. 2003).

a.    "Courts recognize that '**[t]he threat of protracted litigation could have an undue chilling effect on the exercise of First Amendment rights.**' *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 430 (E.D. Pa. 2003)." (Def.'s Br. at 5, 6 (repeated verbatim on both pages).)

b.    "The law requires a plaintiff to plead '**the exact words spoken or published and the context in which they were made.**' *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 430 (E.D. Pa. 2003)." (Def.'s Br. at 7.)

c.    "Conclusory allegations of '**coordination**' or '**acting in concert**,' without more are legally insufficient. *See Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425, 430 (E.D. Pa. 2003) (dismissing conspiracy claim where Plaintiff failed to '**identify any facts**' establishing the existence of an agreement)." (Def.'s Br. at 15.)

d.    "Courts applying Pennsylvania law consistently reject conspiracy claims where the Plaintiff fails to distinguish among the alleged co-conspirators or

describe what each participant did. *See Franklin Prescriptions*, 267 F. Supp. 2d at 430–31 (dismissing claims where the plaintiff '**lumped**' defendants together and failed to plead individual conduct)." (Def.'s Br. at 17.)

13. *Hill v. Cosby*, 665 F. App'x 169 (3d Cir. 2016).

   a.   "The Third Circuit reached the same result in *Hill v. Cosby*, affirming the dismissal of a civil conspiracy claim because the Plaintiff's defamation claim failed. The Court noted that when the underlying tort collapses, '**there can be no cause of action for conspiracy.**' *Hill v. Cosby*, 665 F. App'x 169, 176–77 (3d Cir. 2016). That same result is compelled here." (Def.'s Br. at 14.)

14. *McTernan v. City of York*, 577 F.3d 521 (3d Cir. 2009).

   a.   "A Rule 12(b)(6) motion '**tests the legal sufficiency of the complaint,**' not the merits of the underlying claim. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)." (Def.'s Br. at 4, 5 (repeated verbatim on both pages).)

15. *Romano v. Young*, No. 07-cv-1708, 2011 WL 346558 (E.D. Pa. Feb. 2, 2011).

   a.   "As the Court held in *Romano v. Young*, '**without facts showing who agreed, when they agreed, and to what end, a conspiracy claim cannot survive.**' 2011 U.S. Dist. LEXIS 10986, at *15 (E.D. Pa. February 1, 2011)." (Def.'s Br. at 15.)

16. *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407 (E.D. Pa. 2014).

   a.   "The Plaintiff must allege specific facts—not merely conclusions—demonstrating the formation of a conspiratorial agreement, overt acts in

furtherance of that agreement, and actual malice. *See Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 421–22 (E.D. Pa. 2014) ('**Conclusory allegations… are insufficient. Plaintiff must state with particularity the material elements necessary to sustain recovery'**)." (Def.'s Br. at 14.)

17.    The quotations noted in bold in Paragraphs 9-16 are completely made up. I confirmed that the quoted language does not exist in the cited cases and, for quotes longer than three words, I could not identify *any* cases using the quoted language, using either a Westlaw or Google search.  For most quotes, the only Google search result was the Opening Brief itself.

**C.    The Opening Brief also cites many cases for propositions to which they do not relate.**

18.    During my inquiry into the case law, I discovered that the Opening Brief misrepresents many other cases that it cites but does not quote.

19.    *Castellani v. Scranton Times, L.P.* In addition to the fabricated quotes noted in Paragraph 10, the Opening Brief cites *Castellani v. Scranton Times, L.P.*, 23 Pa. D. & C.5th 50, 77–78 (Lackawanna Cnty. C.P. 2012) for two invented propositions:

a.    On Page 13, the Opening Brief claims the case stands for the notion that "the pleading standard for civil conspiracy is exacting: the Plaintiff must plead with factual specificity that two or more parties entered into a knowing agreement to commit an unlawful act (or a lawful act by unlawful means), took overt acts in furtherance of that agreement, and acted with malice—i.e., with the specific intent to harm the Plaintiff." (Def.'s Br. at 13.)

b.    On Page 16, the Opening Brief claims the case stands for the notion that, "[u]nder Pennsylvania law, civil conspiracy demands a showing of actual

malice, which means 'an intent to injure' the Plaintiff and no other lawful

or independent motive." (Def.'s Br. at 16.)

*Castellani* was not a conspiracy case and does not discuss the tort's requirements or the standard

for pleading those claims.

20.     *Cipriano v. Philadelphia Newspapers, Inc*. The Opening Brief cites *Cipriano v.*

*Philadelphia Newspapers, Inc*., 1999 U.S. Dist. LEXIS 2761 at *14 (E.D. Pa. March 12, 1999) for

two invented propositions:

> a.      On page 9, the Opening Brief cites the case for the notion that "[t]o survive
>
> dismissal, a public figure must allege facts suggesting the speaker had
>
> serious doubts about the truth of their statements" (Def.'s Br. at 9); and
>
> b.      On page 10, the Opening Brief cites the case for the notion that "[a]s
>
> reaffirmed in *Cipriano* …., actual malice requires more than a plaintiff's
>
> denial or general allegations of motive; it demands facts showing the
>
> Defendant knowingly or recklessly disregarded the truth." (Def.'s Br. at 10.)

*Cipriano* considered whether a collective bargaining agreement preempted the defamation suit and

it only mentioned actual malice in passing.  With regard to actual malice, the case stated only:

"Plaintiff's complaint also includes numerous allegations which Plaintiff contends are sufficient to

demonstrate malice on the part of the Defendants to defeat a conditional privilege, if one exists."

1999 WL 135111, at *6.

21.     *Franklin Prescriptions, Inc. v. N.Y. Times Co.* In addition to the fabricated quotes

noted in Paragraph 12, the Opening Brief cites *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267

F. Supp. 2d 425, 430 (E.D. Pa. 2003) for several invented propositions:

a.    On Page 7, the Opening Brief claims the case stands for the notion that where a "[c]omplaint contains vague references … without supplying the precise language, speaker, or context … [t]his defect is dispositive." (Def.'s Br. at 7.) It also parenthetically represents that *Franklin Prescriptions* "require[ed] a defamation plaintiff to allege the exact words spoken or published." (*Id.*) And it claims that *Franklin Prescriptions* holds that "liability for defamation cannot rest on the speech of others unless the Defendant actively adopted or republished it," and, parenthetically, that it "requir[es] plaintiffs to attribute statements to each Defendant." (*Id.*)

b.    On Page 10, the Opening Brief claims that *Franklin Prescriptions* stands for the proposition that "Pennsylvania law places the burden squarely on the Plaintiff to prove publication and resulting harm, and federal pleading standards under Rule 8 require that these allegations be stated with non-conclusory, plausible factual support," and, parenthetically, that it "not[ed] that general allegations of reputational harm or 'publication' without factual detail are insufficient to withstand dismissal." (Def.'s Br. at 10.)

c.    On page 12, the Opening Brief claims that *Franklin Prescriptions* stands for the proposition that "undifferentiated group pleading violates both Pennsylvania defamation law and Rule 8" and, parenthetically, that it "reject[ed] group attribution in defamation pleadings where individual defendants' roles were not specified." (Def.'s Br. at 12.) And on page 18 that: "Courts applying Pennsylvania law have long held that group pleading in defamation and conspiracy cases is improper." (*Id.* at 18.)

   d.  On page 15, the Opening Brief claims that *Franklin Prescriptions* stands for the proposition that "Conclusory allegations of 'coordination' or 'acting in concert,' without more are legally insufficient" and, parenthetically, "dismissing conspiracy claim where Plaintiff failed to 'identify any facts' establishing the existence of an agreement." (Def.'s Br. at 15.) And on page 17 it says: "As *Franklin Prescriptions* both make clear, such generalized allegations do not satisfy Rule 8 or the heightened specificity required for conspiracy claims under Pennsylvania law." (*Id.* at 17.)

 *Franklin Prescriptions* had nothing to do with any of these propositions. It is a summary judgment decision that did not opine on pleading standards at all. Nor did it consider the level of textual specificity required to prove a defamatory statement or attribution of statements—the case was about choice of law, negligence, actual malice, and whether the Times intended or endorsed the defamatory implication of the claims.  And *Franklin Prescriptions* is ***not in any way a conspiracy case***.

  22. *Hill v. Cosby.* In addition to the fabricated quote noted in Paragraph 13, the Opening Brief misrepresents the Third Circuit's decision in *Hill v. Cosby*, 665 F. App'x 169, 176–77 (3d Cir. 2016) more than once:

   a.  Page 9 of the Opening Brief argues that the Complaint should be dismissed for failure to allege falsehood and represents that "In *Hill v. Cosby*, the Third Circuit rejected a defamation claim in which the Plaintiff—also a public figure—relied primarily on general denials and failed to offer any supporting factual content to make the claim plausible. 665 F. App'x 169, 176-77 (3d Cir. 2016)." *Hill* says nothing like that—it considers the fact-

opinion dichotomy and whether people could have reasonably inferred Ms. Hill was being accused of lying in the alleged defamatory statements.

b.  Page 14 of the Opening Brief cites *Hill v. Cosby*, 665 F. App'x 169, 176–77 (3d Cir. 2016) for the notion that "[t]he Third Circuit reached the same result in *Hill v. Cosby*, affirming the dismissal of a civil conspiracy claim because the Plaintiff's defamation claim failed.  The court noted that when the underlying tort collapses, 'there can be no cause of action for conspiracy.' That same result is compelled here."  (Def.'s Br. at 14.) *Hill* was ***not a conspiracy case*** at all.

23.    *Isiminger v. Davis.* On page 12, the Opening Brief cites *Isiminger v. Davis*, 2015 Pa. Super. Unpub. LEXIS 748, at *12–13 (Pa. Super. Ct. April 6, 2015) for the proposition that "fail[ing] to allege that any third party received the statements and understood them as defamatory toward Plaintiff" is "fatal" to the claims and represents, parenthetically, that *Isiminger* was "affirming dismissal where Plaintiff failed to plead specific harm under § 8343."  (Def.'s Br. at 12.) But the *Isiminger* court did not consider whether the plaintiff alleged specific harm, rather it was a case about defamatory meaning.

24.    *Kennedy v. Onorato*. On pages 5 and 6, the Opening Brief cites *Kennedy v. Onorato*, 2013 U.S. Dist. LEXIS 82762, at 5–6 (W.D. Pa. April 17, 2013) for the proposition that: "[f]ederal courts reviewing defamation and conspiracy claims under Rule 12(b)(6) must strike all conclusory content and evaluate whether the remaining factual allegations plausibly support each element of the claim."  (Def.'s Br. at 4-5, 6.) The sentence is repeated verbatim on both pages. But *Kennedy* was ***not a defamation or conspiracy case***, it was a lawsuit filed by a prisoner for

violations of the Eight and Fourteenth Amendments.  Accordingly, it did not address the standard for reviewing defamation and conspiracy claims under Rule 12(b)(6).

25.     *Romano v. Young.* In addition to the fabricated quotes noted in Paragraph 15, on page 15, the Opening Brief cites to *Romano v. Young*, 2011 U.S. Dist. LEXIS 10986, at \*15 (E.D. Pa. February 1, 2011) and states that: "As the Court held in *Romano v. Young*, 'without facts showing who agreed, when they agreed, and to what end, a conspiracy claim cannot survive.'" (Def.'s Br. at 15.)  But in addition to the cited quotation not appearing in the case, *Romano* was ***not a conspiracy case at all***.  There was, therefore, no discussion of the standard for pleading a conspiracy agreement.

26.     *Whiting v. Safe Auto Ins. Co.* On page 5, and repeated verbatim on page 6, the Opening Brief cites *Whiting v. Safe Auto Ins. Co.*, No. 15-6791, 2016 U.S. Dist. LEXIS 94923, at \*5 (E.D. Pa. July 20, 2016) for the notion that "[c]laims that merely track statutory language or infer liability based on group pleading or tone are insufficient."  (Def.'s Br. at 5, 6.)  But the case has nothing to do with group pleading, or tone, or allegations that only track statutory language.

### D.     The Opening Brief Misrepresents the Complaint Too.

27.     The Opening Brief also makes a series of misrepresentations about the Complaint, fabricating one quote and denying the existence of many paragraphs, sections, and facts that are recited therein, that in my opinion go beyond the bounds of zealous advocacy or just putting Defendant's arguments forward with the best footing.

28.     **Actual Malice**. On pages 9-10, the Opening Brief states: "The only references to malice appear as conclusory legal assertions—that Youngblood acted 'intentionally and maliciously'" (Def.'s Br. at 9 (citing Compl. ¶ 60.), and that "the Complaint does not allege that Youngblood ever recanted, contradicted himself, or expressed doubt" and "[t]he Complaint offers no facts suggesting that Youngblood disbelieved his account, was contracted by evidence in his

possession, or was aware of any falsity at the time of the broadcasts."  (Def.'s Br. at 9, 10.)  But the phrase "intentionally and maliciously" *does not appear in the Complaint*, let alone in paragraph 60, which reads: "Youngblood published his statements on the October 28 and November 3 episodes of Larry Reid Live with actual malice, in that he was aware at the time of publication that the statement was false or, at a minimum, had a high degree of awareness that the statement was probably false."  (Compl. ¶ 60.) And the Complaint alleges seven categories of evidence that constitute proof of actual malice.  (Compl. ¶ 61).

29.    **The Defamatory Remarks**. On pages 3 and 7-8, the Opening Brief states that the Complaint does not identify "concrete" or "specific" defamatory statements by Youngblood, and that "Plaintiff does not quote or paraphrase any specific defamatory statement by Youngblood," instead relying on "vague references to 'grooming' or 'sexual misconduct' without supplying the precise language, speaker, or context."  (Def.'s Br. at 3, 7-8.) But paragraphs 24 through 30 and 52 through 53 quote specific defamatory statements and exchanges from the LRL interview verbatim including in several instances in *block quotes*.  (*See* Compl. ¶¶ 24-29, 52-53.) And the Complaint also alleges the import of those remarks.  (*Id.* ¶ 56.)

30.    **Falsehood**. Pages 8-9 of the Opening Brief states that the Complaint offers nothing more than "general denials" and only that Youngblood was "motivated by ill will" as pleadings for falsity.   (Def.'s Br. at 8-9.) But the Complaint alleges that none of the salient events Youngblood describes occurred: "From start to finish, Youngblood's tale of grooming and attempted sexual assault at the hands of Bishop Jakes is patently false."  (Compl. ¶ 32.)  "***Bishop Jakes never kissed or tried to kiss Youngblood, never cornered him or forced him into any situation (sexual or otherwise), and certainly never told him that he wanted to sleep with him or had any conversation of a sexual nature at all with him***."  (*Id.*)  "The interactions described by

Youngblood during his LRL interviews on October 28 and November 3 never happened—period."
(*Id.*)  This is more than a generalized claim the statement was false—it's a denial of the conduct alleged to have occurred, contrary the false claims about the Complaint's content made in the Opening Brief.[4]

31.    **Publication**. On Page 12, the Opening Brief claims that "[t]hroughout the Complaint, [Jakes] refers to 'Defendants' having published or broadcast the statements without delineating what role Defendant Youngblood himself played in the act of publication." (Def.'s Br. at 12.)   But the Complaint plainly alleges: "On October 28, 2024 and November 3, 2024, Youngblood gave a live interview on the Larry Reid Live show in which he accused Bishop Jakes of grooming him, of sexually assaulting and abusing him, and over other predatory conduct of a sexual nature." (Compl. ¶ 51.)  The Complaint then quotes the specific defamatory exchanges that occurred during each episode (*id.* ¶¶ 52-53), and, elsewhere, it notes that Larry Reid Live has 150,000 subscribers and that both episodes went viral, with over 120,000 views of part 1 and over 25,000 views for part 2.  (*Id.* ¶¶ 20, 34.)  To dispute the adequacy of these allegations would be one thing, but the Opening Brief falsely stated they did not exist at all—that is a misrepresentation.

32.    On May 27, 2025, Plaintiff filed his Opposition to Defendant's Motion to Dismiss ("Opposition") (ECF No. 45).  That Opposition, along with my declaration filed in support (ECF No. 45-1), detailed the breadth of the above issues and inaccuracies for Defendant, his counsel (including both Blackburn and attorneys from the Sommer Law Group), and this Court.

---

[4] Additionally, the Complaint points out specific instances where (1) Youngblood lied on the October 28 podcast about his criminal record (Compl. ¶ 21), and (2) Youngblood, through Blackburn in his November 15 demand letter, made claims about the instances that contradicted his story on the podcast.  (Compl. ¶ 61).

## II.    DEFENDANT'S REPLY BRIEF

33.    On June 2, 2025, Defendant Youngblood filed his Reply in Support of his Motion to Dismiss ("Reply") (ECF No. 46).

34.    The Reply, like the Opening Brief, was filed and signed only by attorney for Defendant, Tyrone Blackburn, and not by any of the other noticed counsel for Defendant in this case.

### E.    The Reply Again Contained a Number of Fake Quotes and Cases That Do Not Support the Propositions for Which They Were Cited.

35.    Like the Opening Brief, the Reply contains a number of fake quotes and cases that do not support the propositions for which they were cited.

36.    On page 4, the Reply quotes a case called *Livingston v. Murray*, stating: "Critically, the Plaintiff must *'have shown a willingness to interpret relatively mild statements as being capable of a defamatory meaning,'* but only if the 'innuendo must be warranted, justified and supported by the publication.'" *Livingston v. Murray*, 417 Pa. Super. 202, 612 A.2d 443, 449 (1992) (quoting *Thomas Merton*, 442 A.2d at 217)." But the first half of the quotation, in bold italics above, appears nowhere in *Livingston*.

37.    On page 5, the Reply states that: "merely labeling a statement 'defamation per se' or invoking an alleged criminal accusation does not dispense with the pleading burden on falsity, publication, and—because Plaintiff is a public figure—actual malice. *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 343-44 (3d Cir. 2005)[.]" *Franklin Prescriptions* says nothing about this topic or the pleading standard Defendant espouses throughout the brief (and it does not contain a page 344 either). Rather, in *Franklin Prescriptions*, the Third Circuit heard an appeal following a jury verdict against the plaintiff, an online pharmacy. 424 F.3d at 337. The Third Circuit explained that at trial "the jury found no actual harm and returned to the courtroom without answering the subsequent verdict sheet questions concerning actual malice" and noted that without

a finding of actual malice, presumed damages are unavailable even in cases of defamation *per se* (*id.* at 342-43), a principle that Plaintiff has noted before (Opp'n at 14-15 & n.8; Anti-SLAPP Opp'n at 16-17 (ECF No. 37)).

38.    On page 5, the Reply also cites a case styled as "*Jackson v. Lehigh Valley Hosp.*, 596 F. App'x 147, 151-52 (3d Cir. 2014)" for the same proposition noted in the preceding paragraph. But the entire case appears to have been fabricated. The reporter cite (596 F. App'x 147) corresponds to an appeal of a criminal sentence, *United States v. Ledesma-Nolasco*, 596 F. App'x 147 (3d Cir. 2014). The cited pages (151 and 152 of 596 F. App'x) correspond another case, *Kendall v. Gov't of Virgin Islands*, 596 F. App'x 150 (3d Cir. 2015). As far as we can tell, no Third Circuit case called "*Jackson v. Lehigh Valley Hospital*" exists.  While there was a trial court case called *Jackson v. Lehigh Valley Physicians Group*, No. CIV.A. 08-3043, 2009 WL 229756, at *4 (E.D. Pa. Jan. 30, 2009), it did not concern defamation, slander, or libel. And while the Third Circuit has heard other cases involving the Lehigh Valley Hospital, such as *Angelico v. Lehigh Valley Hosp., Inc.,* 85 F. App'x 308, 311 (3d Cir. 2004) and *Cauler v. Lehigh Valley Hosp., Inc.*, 654 F. App'x 69 (3d Cir. 2016), none are relevant to Defendant's proposition.

39.    On page 6, the Reply cites *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) and *Kendall v. Daily News Publ. Co.*, 716 F.3d 82, 89-90 (3d Cir. 2013) for the position that "courts have long held that motive and hostility, without facts showing the speaker actually doubted his story, do not constitute actual malice" and argues that "[b]ecause the Complaint pleads no factual matter—such as retractions, contradictory source material, or admissions of doubt—that would show Youngblood knew or suspected his account was false, the malice element is not satisfied, and Count I must be dismissed." Neither case supports the Defendant's proposition. Rather, *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 665 n.6,

668 (1989), held that the lower court correctly considered a mosaic of evidence, including newspaper's profit motive, in the actual malice analysis.  And *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013) held that in the libel context, the Supreme Court has explained that "[m]alice [has been] defined in numerous ways, but in general depend[s] upon a showing that the defendant acted with improper motive." (citing *Herbert v. Lando*, 441 U.S. 153, 163-64 (1979).) Showing motive "hinge[s] upon the intent or purpose with which the publication was made." *Id.* at 164. These statements show that the intent of the publisher is linked to determining if that publisher had the actual malice necessary to support a libel claim.[5]

40.     On page 6, the Reply cites *Roberts v. Mentzer*, 382 F. App'x 158, 162 (3d Cir. 2010), for the proposition that "[s]elf-serving denials are insufficient." But Roberts did not consider the standard for pleading falsehood; it was a Section 1982 case about the alleged improper disclosure of personnel files. The cited page (382 F. App'x at 162) simply states the familiar Twombly/Iqbal pleading standard:

> In conducting a plenary review of this case, we must accept as true all of the allegations contained in the amended complaint and draw all inferences from the allegations in the light most favorable to the Plaintiffs/Appellants. See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A motion to dismiss should be granted if the Plaintiffs are unable to plead 'enough facts to state a claim to relief that is plausible on its face.' Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.' Ashcroft v. Iqbal, —— U.S. ——, (2009). Rather, the '[f]actual allegations must be enough to raise a right to relief above the speculative level....' Twombly, 550 U.S. at 555.

---

[5] In context, the cases are particularly misleading because while Plaintiff argued that motive is circumstantial evidence of actual malice, he's never argued that motive is his sole proof of malice, as the Reply falsely claims. (Reply at 8 ("Plaintiff relies solely on Youngblood's alleged motive for revenge and the tone of the broadcasts)). Indeed, evidence of Defendant's actions supporting a finding of actual malice pervades the Complaint.

41. On page 7, the Reply cites *McKee v. Cosby*, 874 F.3d 54, 61 (1st Cir. 2017) for the proposition that "Courts have consistently held that to plead falsity, a public figure must do more than offer conclusory denials" and, parenthetically, represents that it affirmed dismissal of a claim "where Plaintiff failed to allege facts that could support a finding that the statement was false." But *McKee* is not about the standard for pleading falsity, the factual detail required, or pleading conclusory denials. It is an opinion case that considers whether allegations that McKee was a lair were actionably defamatory assertions or pure opinion, and whether any opinions expressed in the letter were based on adequately disclosed facts. *McKee v. Cosby*, 874 F.3d 54, 62-64 (1st Cir. 2017). To the extent that *McKee* touches upon the notion of truth within the context of that analysis, it's limited to the following discussion, which undermines Defendant's position: "[plaintiff] claims that the [defamatory letter] mischaracterizes actions she took or statements she made, ***but does not contend that she never took the actions or made the statements***. For example, she challenges the statement that she 'liked' one of Cosby's comedy videos online and 'posted a fond message' ***without denying*** that she actually 'liked' the video or posted the message. Singer's 'subjective characterizations' of otherwise accurately reported actions or statements are not capable of being proven true or false." *Id.* at 64 (emphasis added).

42. On page 8, the Reply cites *Roberts v. Mentzer* for the proposition that "Under *Roberts v. Mentzer*, bare denials are 'not entitled to the assumption of truth' at the Rule 12(b)(6) stage, 382 F. App'x 158, 162 (3d Cir. 2010)." But *Roberts* says nothing about pleading falsehood in defamation cases. Rather, the quoted passage (in a footnote on page 165, not the body of page 162) observed that "appellants have provided us with nothing more than blanket assertions that the disclosed information was 'confidential' and therefore that its release was unconstitutional," a holding that related to the level of factual specificity required to demonstrate behavior that violated

the Fourth Amendment, versus completely lawful behavior. 382 F. App'x at 165 n.14. And the

footnote in no way supports Youngblood's incorrect claim that Plaintiff was required to plead an

"alternative timeline, … different venue, … witness, [or] documentary contradiction" to plead

falsity in a case concerning Youngblood's fabricated accusation that Plaintiff made overtures

towards him in private on an unspecified day in the mid-1980s (which never occurred).

43.    On page 9, the Reply cites *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) and

*Blackwell v. Eskin*, 2006 Phila. Ct. Com. Pl. LEXIS 125, at *10 (C.P. Phila. Mar. 14, 2006) for the

propositions that "Plaintiff's denial of the alleged conduct does not establish falsity. Courts have

repeatedly held that a defamation plaintiff cannot rely solely on self-serving denials or accusations

of motive to demonstrate falsity." Neither case supports the cited propositions (because they are

untrue).

a.    *First*, *St. Amant* did not consider the falsity standard at all, it concerned

actual malice. 390 U.S. at 728-34. And when discussing actual malice, it

said nothing about self-serving denials or the irrelevance of motive. *Id.* at

731-34. Rather, it acknowledged the probative value of circumstantial

evidence of the defendants' state of mind and specifically that the

defendant's own "[p]rofessions of good faith will be unlikely to prove

persuasive, for example, ***where a story is fabricated by the defendant, is***

***the product of his imagination***, or is based wholly on an unverified

anonymous telephone call." *Id.* at 732.

b.    *Second*, *Blackwell v. Eskin*, 2006 Phila. Ct. Com. Pl. LEXIS 125, 2006 WL

678577 (C.P. Phila. Mar. 14, 2006) concerned actual malice rather than

falsity too. And it contained no discussion of bare denials; rather, it held

that where a journalist published information obtained from a reliable source (in that case a police officer), rather than fabricating it himself, the plaintiff could not prove that the defendant acted with actual malice even if the defendant had some motive to defame. 2006 WL 678577 *11.

44.     On page 10, the Reply quotes *Marcone v. Penthouse Int'l*, 754 F.2d 1072, 1083 (3d Cir. 1985), stating: "The Third Circuit is in accord: 'Failure to investigate, without more, does not demonstrate actual malice ***unless the plaintiff pleads facts showing the defendant purposefully avoided the truth***.'" The second half of the quote, set forth in bold, is fabricated.

45.     On page 10, the reply cites *Lease v. Fishel*, 2011 U.S. Dist. LEXIS 151761, for the proposition that "While Plaintiff accuses Youngblood of conspiring with Larry Reid to spread defamatory statements, the Complaint does not allege the who, what, when, or how required to plausibly plead an agreement plausibly. Mere parallel conduct—such as shared interviews—is insufficient." But *Lease v. Fishel* holds the opposite. "The Court [held] that Plaintiff sufficiently alleges a conspiracy" because "Plaintiff avers that Defendant [1] returned to his property with Defendant [2] in June 2006, at which time Defendant [2] measured the parking lot on Plaintiff's property for zoning violations" which "'caused Hamilton Township to seek to have a fine imposed by the Adams County Court of Common Pleas[.]'" *Lease v. Fishel*, No. 1:07-CV-0003, 2011 WL 381656, at *7 (M.D. Pa. Jan. 28, 2011). Those allegations sufficed to plead "agreement and concerted action by Defendants to deprive him of his constitutional rights." *Id.*

46.     On page 11, the Reply cites *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) for the proposition that "[d]emand letters made in anticipation of litigation are absolutely privileged under the judicial proceedings privilege and cannot form the basis of a conspiracy or tort claim." But

*Post v. Mendel*, holds the opposite—the letter in that case (criticizing a lawyer and CC'ing a judge) was held to be unprivileged.

47.    On page 11, the Reply also cites *Pelagatti v. Cohen*, 536 A.2d 1337, 1344 (Pa. Super. Ct. 1987) for the same proposition as *Post v. Mendel*. But *Pelagatti* considered whether a letter containing defamatory statements, made in the course of litigation, could itself be actionably defamatory. *Id.* at 1344. It did not consider whether, as here, an extortive pre-suit demand letter sent to further a conspiracy to extort extortive purposes or a third party's knowledge and participation in the scheme to send such a letter could not give rise to a conspiracy.

**F.    Instead of Taking Responsibility, Blackburn Used the Reply to Lob False Accusations of  Misconduct at Plaintiff's Counsel, in a Transparent Effort to Retaliate and Distract.**

48.    The Reply, signed and filed only by Blackburn, also falsely represents that Plaintiff's Opposition "reveals a pattern of misquotation, superficial citation, and invocation of authorities that are either inapposite or do not support the propositions for which they are cited." (Reply at 13.)  And that "Lexis Quote-Check identifies at least 20 incorrect quotations in Plaintiff's brief." (Reply at 13.) The Reply did not include any LexisNexis report or analysis as an exhibit or an attachment.

49.    Before reading the Reply, I had never used the LexisNexis "Quote-Check" feature. After reading the Reply, my firm investigated Defendant's claims and we learned that LexisNexis Quote-Check is a tool included in LexisNexis's AI "Brief Analysis" feature that is marketed to attorneys to "analyze a legal document" by "read[ing] for you" to help "write a winning brief." LexisNexis, *AI for Legal Documents: The Ultimate Tool for Supporting Your Legal Strategy* (Aug. 2, 2022), https://www.lexisnexis.com/community/insights/legal/b/product-features/posts/ai-for-legal-documents-the-ultimate-tool-for-supporting-your-legal-strategy.

50.     I was surprised to read these allegations for many reasons, including the facts that (1) my firm employs talented professional staff that manually conduct thorough cite-checks for all briefs we file, and (2) my staff—including paralegals and attorneys (including myself)—reviewed the cited case law in the Opposition and ensured that not only were the direct quotes from cases accurate, but also that all of the propositions and holdings for the cited cases were likewise accurate and beyond reproach.

51.     Upon further investigation, it became apparent that Defendant's Reply, like his Opening Brief, included inaccurate representations, this time as a direct and clear result of the reliance on AI.

52.     On June 3, 2025, I directed my staff to upload the filed version of Plaintiff's Opposition to LexisNexis's "Brief Analysis" feature and through the "Quote Check" tool, which my staff did.  My firm's LexisNexis "Quote Check" report of Plaintiff's Opposition is attached as **Exhibit A**.

53.     The resulting report identified 59 citations (although Plaintiff's Opposition contains more than 59 citations identified by the "Quote Check" tool). Of the 59 citations, "Quote Check" flagged 40 as incorrect.

54.     My firm manually reviewed all 59 entries on the "Quote Check" report.

55.     However, the reason that most of the citations are flagged as "incorrect" on the "Quote Check" report are not because they are incorrect or improper.  Instead, the circumstances for those "incorrect" flags are as follows:

a.     One (1) citation is flagged as incorrect because Lexis did not have access to Plaintiff's complaint to verify the citations. (Ex. A at No. 2.)

b.     15 are flagged because the "Quote Check" AI misidentified the citation source that was actually cited. (*See e.g. id.* at Nos. 10, 11, 12, 13, 14, 15, 16 (misidentifying "*id.*" citations as citing to *Robert Gertz v. Welch*, 418 U.S. 323 (1974), when the actual citation is to the Complaint.); *see also id.* at Nos. 22, 39, 52, 54, 56 (misidentifying other "*id.*" Complaint citations to other incorrect authorities); *see also id.* at Nos. 34, 58, 59 (misidentifying the cases that are cited).

c.     15 are flagged because the "Quote Check" AI did not recognize the proper formatting of alterations to the cited material.  (*Id.* at Nos. 1, 6, 7, 26, 28, 30, 31, 37, 38, 40, 41, 43, 45, 49, 55.)  This includes the portion from the *Piro v. Tavouleras* case excerpted in Defendant's Reply on page 13. Plaintiff's Opposition contains appropriate and recorded alterations to the quoted material, which are properly Bluebook formatted.

d.     Several of the entries on the "Quote Check" report also include a warning that "[t]he pinpoint page in your citation is Incorrect," which was also incorrectly flagged by the AI.  My office has reviewed these pinpoint citations and the citations in Plaintiff's Opposition are correct.[6]

56.     In fact, the only citations that are accurately flagged as "incorrect" are the seven (7) quotations and citations that Plaintiff discussed in his brief that ***are fabricated quotes from Defendant's motion.*** (*Compare* Ex. A at 17, 18, 19, 20, 21, 50, 51 *with* Opp. at 7, 8, 16.).

57.     For example, "Quote Check" identified this excerpt/citation as "incorrect":

For example, he cites to *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 267 F. Supp. 2d 425 (E.D. Pa. 2003) for the prospect that defamation "law requires a plaintiff to

---

[6] The Opposition cites are to Westlaw, rather than LexisNexis, which may explain these false flags.

> plead 'the exact words spoken or published and the context in which they were made,'" "require[s] a defamation plaintiff to allege the exact words spoken or published," and "require[s] plaintiffs to attribute statements to each Defendant." (MTD at 7.) But *Franklin Prescriptions* makes no such findings—at all—and to undersigned counsel's knowledge, the quotation regarding "exact words spoken or published" does not appear in any case, let alone in *Franklin Prescriptions*.

(Ex. 1 at 17.) The LexisNexis Quote-Check tool notes specifically that there is "No matching quote found in See Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425, 430-31 (E.D. Pa. 2003)." (*Id*.) The LexisNexis Quote-Check tool is correct: those quotations to *Franklin Prescriptions* do not exist, only it was Defendant and his counsel who fabricated them, not Plaintiff.

58.    The other examples at number 18, 19, 20, 21, 50, and 51 of **Exhibit A** are the same.

59.    When my firm endeavored to analyze whether Defendant's Opening Brief (and now, his Reply) misquoted, misrepresented, or otherwise misused case law, we did not use an AI tool—we had an attorney review each and every case cited in the briefs to determine whether the citation a fair reflection of the case.

## III.    COUNSEL WAS RECENTLY ADMONISHED BY ANOTHER JUDGE FOR MISREPRESENTING THE LAW.

60.    Less than two months before Blackburn signed and filed the Opening Brief, he received a "warning to counsel" from another federal district court about "inaccurate statements of law" in a brief he filed. *Jones v. Combs*, No. 24-cv-1457, 2025 WL 896829, at *3-4 (S.D.N.Y. Mar. 24, 2025) ("Before addressing the substance of Jones's claims, the Court finds it necessary to issue a warning to his counsel, Tyrone Blackburn."). On March 24, 2025, U.S. District Judge J. Paul Oetken noted that "[Tyrone] Blackburn's filings are replete with inaccurate statements of law" and found that it was "not just disturbing, but shocking" that "any licensed member of the bar would espouse such an absurd understanding." *Id.* at *4. Blackburn was then reminded that "[he] has a professional obligation, both to the Court and to his client, to state the law accurately,

… and to allow this litigation to proceed efficiently." *Id.* Judge Oetken also noted that this was not the first time Blackburn had been in trouble for filing "false claims," and that he had a pending referral to the S.D.N.Y. disciplinary committee for his "repeated failure to investigate basic elements of his cases." *Id.* at *3 (citing *Zunzurovski v. Fisher*, No. 23-cv-10881, 2024 WL 1434076, at *2 (S.D.N.Y. Apr. 3, 2024)). In light of the chances and warning he'd received previously, "the Court f[ound] much of Blackburn's conduct regarding Defendant's motion to dismiss to be unsettling." *Id.* at *4.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 17, 2025

*/s/ Dustin A. Pusch*
Dustin A. Pusch
Meier Watkins Phillips Pusch LLP
919 18th Street NW, Suite 650
Washington, DC 20006
dustin.pusch@mwpp.com

*Counsel for Plaintiff Bishop T.D. Jakes*

# Exhibit A



Document Analysis › → › Upload Opponent's Document › [045] 20250527 Opp. to Mot. to Dismiss.pdf

Dashboard          Argument Comparison          Recommendations (147)          Similar Briefs (30)

Cited In Opponent's Document (44)          Quote Check (59)

Deliver full report ⌄

1 ☐          ⊘     This quote is Incorrect

**Quote from your brief:**

...provided by another lawyer); Saxena v. Martinez-Hernandez, No. 22-cv-2126, 2025 WL 1194003, at *2 & n.5 (D. Nev. April 23, 2025) (     "Saxena's use of AI generated cases – and his subsequent refusal to accept responsibility for doing so – is just another example of Saxena's abusive litigation tactics, and further explains why the court issued case-terminating sanctions."     ...) (collecting cases); United States v. Hayes, 763 F.Supp.3d 1054, 1067-73 (E.D. Cal. 2025) (sanctioning lawyer for using AI); Pennsylvania Bar Association, Joint Formal Opinion 2024-200: Ethical Issues Regarding the Use of Artificial Intelligence (May 22, 2024), https://tinyurl.com/5acpbznk.

**Quote from source citation:**

"Saxena's use of AI generated cases—and his subsequent refusal to accept responsibility for doing so—is just another example of Saxena's abusive litigation tactics, and further explains why the court issued case-terminating sanctions."

Source Citation:          Saxena v. Martinez-Hernandez, 2025 WL 1194003, 2

2 ☐          ⊘     This quote is Incorrect

**Quote from your brief:**

...On November 3, 2024, Youngblood sat for a second interview with Reid on LRL, titled ""Pt. 2 - Larry Reid Live INTERVIEWS Duane Youngblood: 'The Abused became The Abuser.'     " (Compl. ¶ 28.) In that interview, Youngblood repeated his previous accusations about Jakes, only this time in response to a prompt by Reid about how what he described in the October 28 LRL episode was "     ...predatory." Youngblood made it clear that he was accusing Bishop Jakes of actual or attempted sexual assault, describing it as Bishop Jakes "absolutely forcing [his] position" on Youngblood. (Compl. ¶¶ 28-29.) Youngblood's false statements to Reid on November 3 were viewed, at the time this Complaint was filed, by more than 25,000 people. (Compl. ¶ 34.)

**Quote from source citation:**

"Cited document not found"

3 ☐          ✓     This quote is Correct

**Quote from your brief:**

...When moving under Rule 12(b)(6),     "the defendant bears the burden to show that the plaintiff has not stated a claim."     ... Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016). And "[t]o survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). "That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference tha

Quote from source citation:

"the defendant bears the burden to show that the plaintiff has not stated a claim"

Source Citation:     Davis v. Wells Fargo, 824 F.3d 333, 349

---

4 ☐    ✓    This quote is Correct

Quote from your brief:

...When moving under Rule 12(b)(6), "the defendant bears the burden to show that the plaintiff has not stated a claim." Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016). And     "[t]o survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ... Doe v. Princeton Univ., 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). "That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).) The "plausibility standard is not akin to a

Quote from source citation:

"To survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

Source Citation:     Doe v. Princeton Univ., 30 F.4th 335, 341

---

5 ☐    ✓    This quote is Correct

ⓘ    The pinpoint page in your citation is Incorrect

Quote from your brief:

...2(b)(6), "the defendant bears the burden to show that the plaintiff has not stated a claim." Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016). And "[t]o survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)).     "That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" ... Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).) The "plausibility standard is not akin to a 'probability requirement.'" Iqbal, 556 U.S. at 678. And a well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." Twombly, 550 U.S. at 556. When evaluating the Motion, the co

Quote from source citation:

"That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

Source Citation:     Doe v. Princeton Univ., 30 f4th 335

---

6 ☐    ⊘    This quote is Incorrect

Quote from your brief:

...hat the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). "That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).) The "plausibility standard is not akin to a 'probability requirement.'" ... Iqbal, 556 U.S. at 678. And a well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of the facts

alleged is improbable." Twombly, 550 U.S. at 556. When evaluating the Motion, the court "must accept [plaintiff's] factual allegations as true and consider those facts in the light most favorable to [him]." See Doe v. Princeton Univ., 30 F.4th at 342.

Quote from source citation:

"plausibility standard is not akin to a 'probability requirement,'"

Source Citation:    Ashcroft v. Iqbal, 556 U.S. 662, 678

---

7 ☐    ⊘    This quote is Incorrect

Quote from your brief:

.... P. 8(a)(2)). "That requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).) The "plausibility standard is not akin to a 'probability requirement.'" Iqbal, 556 U.S. at 678. And a well-pleaded complaint    "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable."    ... Twombly, 550 U.S. at 556. When evaluating the Motion, the court "must accept [plaintiff's] factual allegations as true and consider those facts in the light most favorable to [him]." See Doe v. Princeton Univ., 30 F.4th at 342.

Quote from source citation:

"may proceed even if it strikes a savvy judge that actual proof of those facts is improbable"

Source Citation:    Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

---

8 ☐    ✓    This quote is Correct

Quote from your brief:

... (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).) The "plausibility standard is not akin to a 'probability requirement.'" Iqbal, 556 U.S. at 678. And a well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." Twombly, 550 U.S. at 556. When evaluating the Motion, the court    "must accept [plaintiff's] factual allegations as true and consider those facts in the light most favorable to [him]."    ... See Doe v. Princeton Univ., 30 F.4th at 342.

Quote from source citation:

"must accept Doe's factual allegations as true and consider those facts in the light most favorable to"

Source Citation:    Doe v. Princeton Univ., 30 F.4th 335, 342

---

9 ☐    ✓    This quote is Correct

Quote from your brief:

...    "A libel is a maliciously written or printed publication which tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession [.]"    ... Volomino v. Messenger Publ'g Co., 189 A.2d 873, 874-75 (Pa. 1963). And a public figure must also show "actual malice"—that the defendant made the statements with knowledge of falsity or reckless disregard for the truth. Gertz v. Robert Welch, Inc., 418 U.S. 323, 343-344 (1974) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964)). Here, Youngblood incorrectly claims that Jakes has failed to

Quote from source citation:

"A libel is a maliciously written or printed publication which tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession: Schmabel v"

Source Citation:    Volomino v. Messenger Publishing Co., 189 A.2d 873, 874

---

10 ☐        ⊘    **This quote is Incorrect**

**Quote from your brief:**

...System.Linq.Enumerable+<TakeRangeFromEndIterator>d__281`1[System.Char]        """In the morning, I step into our bathroom and my home phone rings. My mother answers the phone and she says to me, 'Duane, it's Elder Jakes.' Jakes and I get on that phone and when I get on that telephone, I can hear water. He is sitting in a bathtub and in that thing he says to me, without any hesitation, 'there's three things I need you to do. The first one is, when I come to Pittsburgh you're going to be the only person I sleep with. The second one is you can't sleep with anybody else because I don't want to give my wife anything. And thirdly, I will take care of you the rest of your life." "        ...(Id. ¶¶ 25, 52.) Third, "Youngblood ended his story by claiming that 'there is so much more to me and Bishop Jakes and my family and Bishop Jakes and the absolute destructive sexual damage, but this thing was so so extremely damaging.'" (Id. ¶¶ 26, 52.) Fourth, Youngblood stated that he once confronted Jakes and asked him "'Why did you do what you did?,'" to which Jakes responded, "'My stock was

**Quote from source citation:**

"No matching quote found in Id. ¶¶ 25, 52.) Third."

Source Citation:    Gertz v. Robert Welch, 418 us 323

---

11 ☐        ⊘    **This quote is Incorrect**

**Quote from your brief:**

...(Id. ¶¶ 25, 52.) Third,        "Youngblood ended his story by claiming that 'there is so much more to me and Bishop Jakes and my family and Bishop Jakes and the absolute destructive sexual damage, but this thing was so so extremely damaging.'"        ... (Id. ¶¶ 26, 52.) Fourth, Youngblood stated that he once confronted Jakes and asked him "'Why did you do what you did?,'" to which Jakes responded, "'My stock was rising, and I would have had sex with anybody at that time.'" (Id. ¶¶ 27, 30.) Fifth, during the November 3, 2024 episode, when pressed to further describe how his allegation that "Bishop Jakes violated, groomed" him was "preda

**Quote from source citation:**

"No matching quote found in Id. ¶¶ 26, 52.) Fourth."

Source Citation:    Gertz v. Robert Welch, 418 us 323

---

12 ☐        ⊘    **This quote is Incorrect**

**Quote from your brief:**

...(Id. ¶¶ 25, 52.) Third, "Youngblood ended his story by claiming that 'there is so much more to me and Bishop Jakes and my family and Bishop Jakes and the absolute destructive sexual damage, but this thing was so so extremely damaging.'" (Id. ¶¶ 26, 52.) Fourth, Youngblood stated that he once confronted Jakes and asked him        "'Why did you do what you did?,'"        ... to which Jakes responded, "'My stock was rising, and I would have had sex with anybody at that time.'" (Id. ¶¶ 27, 30.) Fifth, during the November 3, 2024 episode, when pressed to further describe how his allegation that "Bishop Jakes violated, groomed" him was "predatory" in nature by Reid,

**Quote from source citation:**

"No matching quote found in Id. ¶¶ 27, 30."

Source Citation:    Gertz v. Robert Welch, 418 us 323

13 ☐          ⊘          This quote is Incorrect

> **Quote from your brief:**
>
> ...(Id. ¶¶ 25, 52.) Third, "Youngblood ended his story by claiming that 'there is so much more to me and Bishop Jakes and my family and Bishop Jakes and the absolute destructive sexual damage, but this thing was so so extremely damaging.'" (Id. ¶¶ 26, 52.) Fourth, Youngblood stated that he once confronted Jakes and asked him "'Why did you do what you did?,'" to which Jakes responded,     "'My stock was rising, and I would have had sex with anybody at that time.'"     ... (Id. ¶¶ 27, 30.) Fifth, during the November 3, 2024 episode, when pressed to further describe how his allegation that "Bishop Jakes violated, groomed" him was "predatory" in nature by Reid,
>
> **Quote from source citation:**
>
> "No matching quote found in Id. ¶¶ 27, 30."
>
> Source Citation:     **Gertz v. Robert Welch, 418 us 323**

14 ☐          ⊘          This quote is Incorrect

> **Quote from your brief:**
>
> ...amage, but this thing was so so extremely damaging.'" (Id. ¶¶ 26, 52.) Fourth, Youngblood stated that he once confronted Jakes and asked him "'Why did you do what you did?,'" to which Jakes responded, "'My stock was rising, and I would have had sex with anybody at that time.'" (Id. ¶¶ 27, 30.) Fifth, during the November 3, 2024 episode, when pressed to further describe how his allegation that     "Bishop Jakes violated, groomed"     ... him was "predatory" in nature by Reid,
>
> **Quote from source citation:**
>
> "No matching quote found in Id. ¶¶ 27, 30."
>
> Source Citation:     **Gertz v. Robert Welch, 418 us 323**

15 ☐          ⊘          This quote is Incorrect

> **Quote from your brief:**
>
> ...System.Linq.Enumerable+<TakeRangeFromEndIterator>d__281`1[System.Char]     ""When it comes to Bishop Jakes. When I was sharing the story the other day this, I, I'm just running through the story, but I want to make sure people are very clear. I said that we were sitting at a dining room table and I looked at my watch and said I've got to get up and get out of here because I've got to get my mother's car back to her. But what may have been misunderstood is that Bishop Jakes got up, came around that table, and positioned himself in the corner that I had to walk past. When I was walking past that corner, he grabbed me. There is no reason if you're going to just give me a hug as we're leaving, go to the door with me and let's hug it out and let me go out the door. We are not at the door, we are still in the dining room, and he is in the corner, grabbed me to himself, looked down into my face, and tried to bend his head down to kiss me on my lips. That is not a 'you didn't get what you wanted to get.'" "     ...(Id. ¶¶ 28, 53.) Sixth, he then suggested that Jakes was "forcing [his] position, [his] idea onto [Youngblood]." (Id. ¶¶ 29, 53.)
>
> **Quote from source citation:**
>
> "No matching quote found in Id. ¶¶ 28, 53."
>
> Source Citation:     **Gertz v. Robert Welch, 418 us 323**

16 ☐          ⊘          This quote is Incorrect

> **Quote from your brief:**

...(Id. ¶¶ 28, 53). Sixth, he then suggested that Jakes was    "forcing [his] position, [his] idea onto [Youngblood]."    ... (Id. ¶¶ 29, 53).

**Quote from source citation:**

"No matching quote found in Id. ¶¶ 29, 53."

Source Citation:    Gertz v. Robert Welch, 418 us 323

---

17  ⊘    **This quote is Incorrect**

**Quote from your brief:**

...But Youngblood does not just misrepresent the record of the contents of the Complaint to erroneously claim that Bishop Jakes has not identified Youngblood's defamatory statements—he couples it with manufactured case law. For example, he cites to Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425 (E.D. Pa. 2003) for the prospect that defamation    "law requires a plaintiff to plead 'the exact words spoken or published and the context in which they were made,'"    ... "require[s] a defamation plaintiff to allege the exact words spoken or published," and "require[s] plaintiffs to attribute statements to each Defendant." (MTD at 7.) But Franklin Prescriptions makes no such findings—at all—and to undersigned counsel's knowledge, the quotation regarding "exact words spoken or published" does not appear in any case, let alone in Franklin Prescriptions. The same g

**Quote from source citation:**

"No matching quote found in See Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425, 430-31 (E.D. Pa. 2003)."

Source Citation:    Franklin Prescriptions, Inc. v. New York Times Co., 267 F. Supp. 2d 425, 430

---

18  ⊘    **This quote is Incorrect**

ⓘ    **The pinpoint page in your citation is Incorrect**

**Quote from your brief:**

...plaint to erroneously claim that Bishop Jakes has not identified Youngblood's defamatory statements—he couples it with manufactured case law. For example, he cites to Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425 (E.D. Pa. 2003) for the prospect that defamation "law requires a plaintiff to plead 'the exact words spoken or published and the context in which they were made,'"    "require[s] a defamation plaintiff to allege the exact words spoken or published,"    ... and "require[s] plaintiffs to attribute statements to each Defendant." (MTD at 7.) But Franklin Prescriptions makes no such findings—at all—and to undersigned counsel's knowledge, the quotation regarding "exact words spoken or published" does not appear in any case, let alone in Franklin Prescriptions. The same goes for his quotation of and reliance on Blackwell v. Eskin, 916 A.2d 1123 (Pa. Sup

**Quote from source citation:**

"require a plaintiff to prove that the implication was intended and endorsed"

Source Citation:    Franklin Prescriptions, Inc. v. New York Times Co., 267 F. Supp. 2d 425, 430

---

19  ⊘    **This quote is Incorrect**

**Quote from your brief:**

...y statements—he couples it with manufactured case law. For example, he cites to Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425 (E.D. Pa. 2003) for the prospect that defamation "law requires a plaintiff to plead 'the exact words spoken or published and the context in which they were made,'" "require[s] a defamation plaintiff to allege the exact words spoken or published," and    "require[s] plaintiffs to attribute statements to each Defendant."    ... (MTD at 7.) But Franklin Prescriptions makes no such findings—at all—and to undersigned counsel's knowledge, the quotation

regarding "exact words spoken or published" does not appear in any case, let alone in Franklin Prescriptions. The same goes for his quotation of and reliance on Blackwell v. Eskin, 916 A.2d 1123 (Pa. Super. Ct. 2007), which does not include any opinion related to identifyin

Quote from source citation:

"No matching quote found in See Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425, 430-31 (E.D. Pa. 2003)."

Source Citation:    **Franklin Prescriptions, Inc. v. New York Times Co., 267 F. Supp. 2d 425, 430**

---

20 ☐     ⊘     This quote is Incorrect

Quote from your brief:

...w requires a plaintiff to plead 'the exact words spoken or published and the context in which they were made,'" "require[s] a defamation plaintiff to allege the exact words spoken or published," and "require[s] plaintiffs to attribute statements to each Defendant." (MTD at 7.) But Franklin Prescriptions makes no such findings—at all—and to undersigned counsel's knowledge, the quotation regarding        "exact words spoken or published"     ... does not appear in any case, let alone in Franklin Prescriptions. The same goes for his quotation of and reliance on Blackwell v. Eskin, 916 A.2d 1123 (Pa. Super. Ct. 2007), which does not include any opinion related to identifying the defamatory words of the speaker in a complaint, let alone the quote Youngblood uses in his Motion (and that quote likewise does not appear in any case available i

Quote from source citation:

"No matching quote found in See Franklin Prescriptions, Inc. v. N.Y. Times Co., 267 F. Supp. 2d 425, 430-31 (E.D. Pa. 2003)."

Source Citation:    **Franklin Prescriptions, Inc. v. New York Times Co., 267 F. Supp. 2d 425, 430**

---

21 ☐     ⊘     This quote is Incorrect

Quote from your brief:

...The Complaint alleges that Youngblood's statements were false too: "From start to finish, Youngblood's tale of grooming and attempted sexual assault at the hands of Bishop Jakes is patently false." (Compl. ¶ 32.)      "Bishop Jakes never kissed or tried to kiss Youngblood, never cornered him or forced him into any situation (sexual or otherwise), and certainly never told him that he wanted to sleep with him or had any conversation of a sexual nature at all with him."     ... (Id.) "The interactions described by Youngblood during his LRL interviews on October 28 and November 3 never happened—period." (Id.)

Quote from source citation:

"No matching quote found in Id.."

Source Citation:    **Blackwell v. Eskin, 916 a2d 1123**

---

22 ☐     ⊘     This quote is Incorrect

Quote from your brief:

...start to finish, Youngblood's tale of grooming and attempted sexual assault at the hands of Bishop Jakes is patently false." (Compl. ¶ 32.) "Bishop Jakes never kissed or tried to kiss Youngblood, never cornered him or forced him into any situation (sexual or otherwise), and certainly never told him that he wanted to sleep with him or had any conversation of a sexual nature at all with him." (Id.)      "The interactions described by Youngblood during his LRL interviews on October 28 and November 3 never happened—period."     ... (Id.)

Quote from source citation:

"No matching quote found in Id.."

Source Citation:    Blackwell v. Eskin, 916 a2d 1123

---

23 ☐    ✓    **This quote is Correct**

### Quote from your brief:

...the Complaint when he falsely argued that it contains nothing more than "general denials" and allegations that Youngblood was "motivated by ill will." (MTD at 8-9.) As the Court can see, that's false and, moreover, Bishop Jakes' denials plausibly allege falsehood under the Twombly/Iqbal standard. See, e.g., supra Section II; see also Ramunno v. Cawley, 705 A.2d 1029, 1036 (Del. 1998) (    "[I]t is a rare case that may be dismissed under Rule 12(b)(6) on the rationale that the statements complained of are substantially true"    ...). The Motion's claim that Jakes needs to prove more than the non-occurrence of the event in question, (MTD at 8-9), is nothing more than a made up, nonsensical pleading

### Quote from source citation:

"it is a rare case that may be dismissed under Rule 12(b)(6) on the rationale that the statements complained of are substantially true"

Source Citation:    Ramunno v. Cawley, 705 A.2d 1029, 1036

---

24 ☐    ✓    **This quote is Correct**

### Quote from your brief:

...malice inquiry asks whether the defendant published a false statement with knowledge that it was false or with reckless disregard for the truth. Herbert v. Lando, 441 U.S. 153, 156 (1979). Although the defendant's state of mind is the focus, the inquiry does not require an admission by the defendant, as Youngblood heavily suggests in his Motion. (MTD at 9-10.) Rather, courts widely recognize that    "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself"    ... because defamation defendants "are prone to assert their good-faith belief in the truth of their publications." Herbert, 441 U.S. at 170; accord Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1089-90 (3d Cir. 1988) ("A defendant subject to the actual malice standard 'cannot, however, ... automatically insure a favorable verdict by testifying that he published with a belief that the statements

### Quote from source citation:

"plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself"

Source Citation:    Herbert v. Lando, 441 U.S. 153, 170

---

25 ☐    ✓    **This quote is Correct**

### Quote from your brief:

.... Herbert v. Lando, 441 U.S. 153, 156 (1979). Although the defendant's state of mind is the focus, the inquiry does not require an admission by the defendant, as Youngblood heavily suggests in his Motion. (MTD at 9-10.) Rather, courts widely recognize that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself" because defamation defendants    "are prone to assert their good-faith belief in the truth of their publications."    ... Herbert, 441 U.S. at 170; accord Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1089-90 (3d Cir. 1988) ("A defendant subject to the actual malice standard 'cannot, however, ... automatically insure a favorable verdict by testifying that he published with a belief that the statements were true.'") (alterations in original) (quoting St. Amant v. Thompson, 390 U.S. 727, 732 (1968)).

### Quote from source citation:

"are prone to assert their good-faith belief in the truth of their publications"

Source Citation:    Herbert v. Lando, 441 U.S. 153, 170

26 ☐   ⊘   This quote is Incorrect

> **Quote from your brief:**
>
> ...n his Motion. (MTD at 9-10.) Rather, courts widely recognize that "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself" because defamation defendants "are prone to assert their good-faith belief in the truth of their publications." Herbert, 441 U.S. at 170; accord Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1089-90 (3d Cir. 1988) (     "A defendant subject to the actual malice standard 'cannot, however , ... automatically insure a favorable verdict by testifying that he published with a belief that the statements were tr"     ...) (alterations in original) (quoting St. Amant v. Thompson, 390 U.S. 727, 732 (1968)).
>
> **Quote from source citation:**
>
> "A defendant subject to the actual malice standard 'cannot, however, . . . automatically insure a favorable verdict by testifying that he published with a belief that the statements were true.'"
>
> Source Citation:     **Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1089**

27 ☐   ✓   This quote is Correct

> **Quote from your brief:**
>
> ...Therefore, courts rely on circumstantial evidence of the defendants' state of mind. Schiavone, 847 F.2d at 1090, n.36 (     "objective circumstantial evidence can suffice to demonstrate actual malice"     ... and sheds "light ... on the defendant's mental state") (quoting Rodney A. Smolla, Law of Defamation § 3.14[2]). "By examining the [publisher's] actions we try to understand their motives." Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1253 (9th Cir. 1997).
>
> **Quote from source citation:**
>
> "objective circumstantial evidence can suffice to demonstrate actual malice"
>
> Source Citation:     **Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1090**

28 ☐   ⊘   This quote is Incorrect

> **Quote from your brief:**
>
> ...Therefore, courts rely on circumstantial evidence of the defendants' state of mind. Schiavone, 847 F.2d at 1090, n.36 ("objective circumstantial evidence can suffice to demonstrate actual malice" and sheds     "light ... on the defendant's mental s"     ...) (quoting Rodney A. Smolla, Law of Defamation § 3.14[2]). "By examining the [publisher's] actions we try to understand their motives." Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1253 (9th Cir. 1997).
>
> **Quote from source citation:**
>
> "light it sheds on the defendant's mental state"
>
> Source Citation:     **Schiavone Constr. Co. v. Time, Inc., 847 F.2d 1069, 1090**

29 ☐   ✓   This quote is Correct

> **Quote from your brief:**
>
> ...Therefore, courts rely on circumstantial evidence of the defendants' state of mind. Schiavone, 847 F.2d at 1090, n.36 ("objective circumstantial evidence can suffice to demonstrate actual malice" and sheds "light ... on the defendant's mental state") (quoting Rodney A. Smolla, Law of

Defamation § 3.14[2]).    "By examining the [publisher's] actions we try to understand their motives."    ... Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1253 (9th Cir. 1997).

Quote from source citation:

"By examining the editors' actions we try to understand their motives."

Source Citation:    Eastwood v. National Enquirer, 123 F.3d 1249, 1253

---

30 ☐    ⊘    **This quote is Incorrect**

Quote from your brief:

...In this inquiry,    "any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration."    ... Herbert, 441 U.S. at 164 n.12; accord Schiavone, 847 F.2d at 1090 n.35 (citations omitted); see also Sprague v. Walter, 656 A.2d 890, 907 (Pa. Super. 1995). And while "no [single] piece of [this] evidence ... will support a verdict" that "does not mean that together all the evidence may not be clear and convincing." Tavoulareas v. Piro, 763 F.2d 1472, 1478 (D.C. Cir. 1985) (Scalia, J., concurring)

Quote from source citation:

"any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration"

Source Citation:    Herbert v. Lando, 441 U.S. 153, 164

---

31 ☐    ⊘    **This quote is Incorrect**

Quote from your brief:

...n the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." Herbert, 441 U.S. at 164 n.12; accord Schiavone, 847 F.2d at 1090 n.35 (citations omitted); see also Sprague v. Walter, 656 A.2d 890, 907 (Pa. Super. 1995). And while    "no [single] piece of [this] evidence ... will support a ver"    ... that "does not mean that together all the evidence may not be clear and convincing." Tavoulareas v. Piro, 763 F.2d 1472, 1478 (D.C. Cir. 1985) (Scalia, J., concurring) ("Pieces to a jigsaw puzzle sometimes appear nothing more than scattered fragments, but when placed together in proper fashion they create a clear picture.").

Quote from source citation:

"no piece of evidence in a defamation suit alone will support a verdict"

Source Citation:    Tavoulareas v. Piro, 763 F.2d 1472, 1478

---

32 ☐    ✓    **This quote is Correct**

Quote from your brief:

...ntiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." Herbert, 441 U.S. at 164 n.12; accord Schiavone, 847 F.2d at 1090 n.35 (citations omitted); see also Sprague v. Walter, 656 A.2d 890,

907 (Pa. Super. 1995). And while "no [single] piece of [this] evidence ... will support a verdict" that    "does not mean that together all the evidence may not be clear and convincing."    ... Tavoulareas v. Piro, 763 F.2d 1472, 1478 (D.C. Cir. 1985) (Scalia, J., concurring) ("Pieces to a jigsaw puzzle sometimes appear nothing more than scattered fragments, but when placed together in proper fashion they create a clear picture.").

Quote from source citation:

"does not mean that together all the evidence may not be clear and convincing"

Source Citation:    Tavoulareas v. Piro, 763 F.2d 1472, 1478

---

33    ☐    ✓    **This quote is Correct**

Quote from your brief:

...erbert, 441 U.S. at 164 n.12; accord Schiavone, 847 F.2d at 1090 n.35 (citations omitted); see also Sprague v. Walter, 656 A.2d 890, 907 (Pa. Super. 1995). And while "no [single] piece of [this] evidence ... will support a verdict" that "does not mean that together all the evidence may not be clear and convincing." Tavoulareas v. Piro, 763 F.2d 1472, 1478 (D.C. Cir. 1985) (Scalia, J., concurring) (    "Pieces to a jigsaw puzzle sometimes appear nothing more than scattered fragments, but when placed together in proper fashion they create a clear picture."    ...).

Quote from source citation:

"Pieces to a jigsaw puzzle sometimes appear nothing more than scattered fragments, but when placed together in proper fashion they create a clear picture."

Source Citation:    Tavoulareas v. Piro, 763 F.2d 1472, 1478

---

34    ☐    ⊘    **This quote is Incorrect**

Quote from your brief:

...lsely transforming himself from sex offender to inspiration. (Compl. ¶¶ 20-22.) The story was a success for Youngblood—he garnered attention and recast himself as the victim rather than the perpetrator of sexual abuse. (Compl. ¶¶ 18, 20-22, 33, 45.) This was one of his substantial motives for fabricating his claims about Jakes. Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 668 (1989) (    "[E]vidence concerning motive    ... is relevant to the actual malice inquiry); Eramo v. Rolling Stone, LLC, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016).

Quote from source citation:

"evidence of motive"

Source Citation:    Eramo v. Rolling Stone, LLC, 209 F. Supp. 3d 862, 872

---

35    ☐    ⊘    **This quote is Incorrect**

Quote from your brief:

... first-hand account of Jakes trying to kiss him and making suggestive remarks. (Compl. ¶¶ 32, 45); St. Amant, 390 U.S. at 732 (fabrication is proof of actual malice). Because Youngblood claims to have personally witnessed conduct that never occurred, the lies about Jakes were necessarily made with actual malice. See Chastain v. Hodgdon, 202 F. Supp. 3d 1216, 1221-22 (D. Kan. 2016) (    "[i]f defendant knew that the events were false, and nonetheless wrote the detailed narrative describing exactly how plaintiff sexually assaulted ... her when it actually never occurred, it is axiomatic that she wrote the narrative with actual malice, or actual knowledge that it was f"    ...); Ruth v. Carter, 560 P.3d 659, *3 (Nev. 2024) (table) ("[plaintiff's] evidence, if believed, establishes that [he] did not sexually assault [defendant] following the Backstreet Boys concert in 2001, such that [her] statements describing such an incident would perforce be made with knowledge of their falsity"); L.S.S. v. S.A.P., 523 P.3d 1280, 1291 (Colo. App. 2022) ("when faced with similar comp

Quote from source citation:

"TN defendant knew that the events were false, and nonetheless wrote the detailed narrative describing exactly how plaintiff sexually assaulted . . . her when it actually never occurred, it is axiomatic that she wrote the narrative with actual malice, or actual knowledge that it was false"

Source Citation:     Ruth v. Carter, 560 p3d 659, 3

---

36 ☐        ✓        This quote is Correct

Quote from your brief:

...Hodgdon, 202 F. Supp. 3d 1216, 1221-22 (D. Kan. 2016) ("[i]f defendant knew that the events were false, and nonetheless wrote the detailed narrative describing exactly how plaintiff sexually assaulted … her when it actually never occurred, it is axiomatic that she wrote the narrative with actual malice, or actual knowledge that it was false"); Ruth v. Carter, 560 P.3d 659, *3 (Nev. 2024) (table) (    "[plaintiff's] evidence, if believed, establishes that [he] did not sexually assault [defendant] following the Backstreet Boys concert in 2001, such that [her] statements describing such an incident would perforce be made with knowledge of their falsity"     …); L.S.S. v. S.A.P., 523 P.3d 1280, 1291 (Colo. App. 2022) ("when faced with similar competing narratives, courts … have routinely held that a plaintiff's allegations that the defendant made false accusations are sufficient to create a factual issue as to actual malice"); 1 Rodney A. Smolla, Law of Defamation § 3:45.50 (2d ed.) (treatise chapter on "actual malice and fabricated 'fi

Quote from source citation:

"Carter's evidence, if believed, establishes that Carter did not sexually assault Ruth following the Backstreet Boys concert in 2001, such that Ruth's statements describing such an incident would perforce be made with knowledge of their falsity"

Source Citation:     Ruth v. Carter, 560 p3d 659, 3

---

37 ☐        ⊘        This quote is Incorrect

Quote from your brief:

… knowledge that it was false"); Ruth v. Carter, 560 P.3d 659, *3 (Nev. 2024) (table) ("[plaintiff's] evidence, if believed, establishes that [he] did not sexually assault [defendant] following the Backstreet Boys concert in 2001, such that [her] statements describing such an incident would perforce be made with knowledge of their falsity"); L.S.S. v. S.A.P., 523 P.3d 1280, 1291 (Colo. App. 2022) (    "when faced with similar competing narratives, courts … have routinely held that a plaintiff's allegations that the defendant made false accusations are sufficient to create a factual issue as to actual ma    …); 1 Rodney A. Smolla, Law of Defamation § 3:45.50 (2d ed.) (treatise chapter on "actual malice and fabricated 'first—hand' allegations of wrongdoing" explaining that "[s]uch deliberate fabrications, if proven, should in almost all circumstances automatically satisfy the actual malice standard").

Quote from source citation:

"when faced with similar competing narratives, courts in Colorado  and  elsewhere have routinely held that a plaintiff's allegations that the defendant made false accusations are sufficient to create a factual issue as to actual malice"

Source Citation:     L.S.S. v. S.A.P., 523 P.3d 1280, 1291

---

38 ☐        ⊘        This quote is Incorrect

Quote from your brief:

… with knowledge of their falsity"); L.S.S. v. S.A.P., 523 P.3d 1280, 1291 (Colo. App. 2022) ("when faced with similar competing narratives, courts … have routinely held that a plaintiff's allegations that the defendant made false accusations are sufficient to create a factual issue as to actual malice"); 1 Rodney A. Smolla, Law of Defamation § 3:45.50 (2d ed.) (treatise chapter on     "actual malice and fabricated 'first—hand' allegations of

wrongdoing"      ... explaining that "[s]uch deliberate fabrications, if proven, should in almost all circumstances automatically satisfy the actual malice standard").

Quote from source citation:

"actual malice" under California law . The"

Source Citation:      Ratner v. Kohler, 2018 WL 1055528, 8

---

39 ☐          ⊘      This quote is Incorrect

Quote from your brief:

...2022) ("when faced with similar competing narratives, courts ... have routinely held that a plaintiff's allegations that the defendant made false accusations are sufficient to create a factual issue as to actual malice"); 1 Rodney A. Smolla, Law of Defamation § 3:45.50 (2d ed.) (treatise chapter on "actual malice and fabricated 'first—hand' allegations of wrongdoing" explaining that       "[s]uch deliberate fabrications, if proven, should in almost all circumstances automatically satisfy the actual malice standard"      ...).

Quote from source citation:

"Such an accusation, if false, is libelous on its face. Id. at 1190."

---

40 ☐          ⊘      This quote is Incorrect

         ⓘ      The pinpoint page in your citation is Incorrect

Quote from your brief:

...Bishop Jakes in his profession as a trusted pastor and religious figure, and accuses Bishop Jakes of engaging in unlawful conduct." (Compl. ¶ 58.) That makes them libelous per se. Ralston v. Garabedian, 623 F. Supp. 3d 544, 576 & nn.351-352 (E.D. Pa. 2022) (Pennsylvania considers an accusation to be defamatory "per se      " when it is      ...obviously defamatory," such as when "it imputes ... business misconduct, or ... serious sexual misconduct.'"). Indeed, Youngblood's accusations "are as damaging and damning as anyone can make about a prominent pastor and spiritual leader." (Compl. ¶ 58.) And Youngblood's lies did harm Jakes' reputation, philanthropic mission, and his emotional and physical wellbeing, even suffering a severe medical cr

Quote from source citation:

", it is"

Source Citation:      Ralston v. Garabedian, 623 F. Supp. 3d 544, 576

---

41 ☐          ⊘      This quote is Incorrect

         ⓘ      The pinpoint page in your citation is Incorrect

Quote from your brief:

...Bishop Jakes in his profession as a trusted pastor and religious figure, and accuses Bishop Jakes of engaging in unlawful conduct." (Compl. ¶ 58.) That makes them libelous per se. Ralston v. Garabedian, 623 F. Supp. 3d 544, 576 & nn.351-352 (E.D. Pa. 2022) (Pennsylvania considers an accusation to be defamatory "per se" when it is "obviously defamatory,"      such as when"      ...it imputes ... business misconduct, or ... serious sexual misconduct.'"). Indeed, Youngblood's accusations "are as damaging and damning as anyone can make about a prominent pastor and spiritual leader." (Compl. ¶ 58.) And Youngblood's lies did harm Jakes' reputation, philanthropic mission, and his emotional and physical wellbeing, even suffering a severe medical crisis as a result. (Id. ¶¶ 45-47.)

Quote from source citation:

"such as mental"

Source Citation:    Ralston v. Garabedian, 623 F. Supp. 3d 544, 576

---

42 ☐    ⊘    This quote is Incorrect

Quote from your brief:

...trusted pastor and religious figure, and accuses Bishop Jakes of engaging in unlawful conduct." (Compl. ¶ 58.) That makes them libelous per se. Ralston v. Garabedian, 623 F. Supp. 3d 544, 576 & nn.351-352 (E.D. Pa. 2022) (Pennsylvania considers an accusation to be defamatory "per se" when it is "obviously defamatory," such as when "it imputes … business misconduct, or … serious sexual misconduct.'      "). Indeed, Youngblood's accusations"      ...are as damaging and damning as anyone can make about a prominent pastor and spiritual leader." (Compl. ¶ 58.) And Youngblood's lies did harm Jakes' reputation, philanthropic mission, and his emotional and physical wellbeing, even suffering a severe medical crisis as a result. (Id. ¶¶ 45-47.)

Quote from source citation:

"). Indeed, Mr ."

Source Citation:    Ralston v. Garabedian, 623 F. Supp. 3d 544, 576

---

43 ☐    ⊘    This quote is Incorrect

Quote from your brief:

...These well-pled factual allegations defeat Youngblood's arguments for two reasons. First, Jakes did plead facts showing emotional and reputational harm (id. ¶¶ 45-47), which is all that is required. See Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 341-43 (3d Cir. 2005) (defamation plaintiffs need only show   "'general damages ,' … proof of harm to reputation or personal humiliation—but not 'special dama"      ... which are "proof of actual monetary loss"). Second, when an accusation is defamatory per se it is considered so obviously harmful that reputational harm is presumed—obviating the need to prove damages as an element to the claim. See Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365, 368 (E.D. Pa. 2003) ("'Presumed' damages are those that are expected to result from defamation; they require no proof,

Quote from source citation:

""general damages"--proof of harm to reputation or personal humiliation--but not "special damages"

Source Citation:    Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 341

---

44 ☐    ✓    This quote is Correct

Quote from your brief:

...at Youngblood's arguments for two reasons. First, Jakes did plead facts showing emotional and reputational harm (id. ¶¶ 45-47), which is all that is required. See Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 341-43 (3d Cir. 2005) (defamation plaintiffs need only show "'general damages,' … proof of harm to reputation or personal humiliation—but not 'special damages'" which are      "proof of actual monetary loss"      ...). Second, when an accusation is defamatory per se it is considered so obviously harmful that reputational harm is presumed—obviating the need to prove damages as an element to the claim. See Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365, 368 (E.D. Pa. 2003) ("'Presumed' damages are those that are expected to result from defamation; they require no proof, but instead, as reflected in their name,

Quote from source citation:

"proof of actual monetary loss"

Source Citation:    Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 341

---

45 ☐    ⊘    This quote is Incorrect

**Quote from your brief:**

...eneral damages,' ... proof of harm to reputation or personal humiliation—but not 'special damages'" which are "proof of actual monetary loss"). Second, when an accusation is defamatory per se it is considered so obviously harmful that reputational harm is presumed—obviating the need to prove damages as an element to the claim. See Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365, 368 (E.D. Pa. 2003) (    "'Presumed' damages are those that are expected to result from defamation; they require no proof, but instead, as reflected in their name, are presumed."    ...). Youngblood even admits that presumed damages are available when the plaintiff shows actual malice, which Jakes has. (MTD at 12); see also Joseph v. Scranton Times L.P., 129 A.3d 404, 431-32 (Pa. 2015) (defamation per se plaintiffs can "recover presumed and punitive damages upon their satisfaction of the New York Times actual malice test"). Because

**Quote from source citation:**

"'Presumed' damages are those that are expected to result from defamation; they require no proof, but instead, as reflected in their name, are presumed under the law."

Source Citation:    Sprague v. ABA, 276 F. Supp. 2d 365, 368

---

46 ☐    ✓    This quote is Correct

ⓘ    The pinpoint page in your citation is Incorrect

**Quote from your brief:**

.... 2003) ("'Presumed' damages are those that are expected to result from defamation; they require no proof, but instead, as reflected in their name, are presumed."). Youngblood even admits that presumed damages are available when the plaintiff shows actual malice, which Jakes has. (MTD at 12); see also Joseph v. Scranton Times L.P., 129 A.3d 404, 431-32 (Pa. 2015) (defamation per se plaintiffs can    "recover presumed and punitive damages upon their satisfaction of the New York Times actual malice test"    ...). Because

**Quote from source citation:**

"recover presumed and punitive damages upon their satisfaction of the New York Times actual malice test"

Source Citation:    Joseph v. Scranton Times L.P., 129 A.3d 404

---

47 ☐    ✓    This quote is Correct

**Quote from your brief:**

...Nor does the statute Youngblood now cites, 42 Pa. Cons. Stat. § 8343(a)(2)-(6), require any showing of additional harm here. (See MTD at 10.) Section 8343 does not even list the general damages of which Youngblood demands proof. And more generally, Section 8343 apportions the burdens of proof for issues that can arise in a defamation case, but the plaintiff only assumes that burden    "when the issue is properly raised."    ... 42 Pa. Cons. Stat. § 8343(a). For example, Jakes need not show "special harm" arising from the publication, § 8343(a)(6), because that requirement only applies to certain types of claims (like slander per quod). See Franklin Prescriptions, 424 F.3d at 341-42 (defamation per se plaintiffs are not required to show special damages).

**Quote from source citation:**

"when the issue is properly raised"

Source Citation:    42 Pa. Cons. Stat. § 8343

---

48 ☐   ✓   **This quote is Correct**

Quote from your brief:

...17 (ECF No. 37).) Rather, under Joseph    "when private figure plaintiffs establish liability based on negligence, recovery is restricted to compensation for actual injury, thus eliminating the specters of presumed and punitive damages in this regard."    ... Joseph, 129 A.3d at 428-29 & n.10 (Pa. 2015) (emphasis added); Menkowitz v. Peerless Publ'ns, Inc., 211 A.3d 797, 806 (Pa. 2019) (same).

Quote from source citation:

"when private figure plaintiffs establish liability based on negligence, recovery is restricted to compensation for actual injury, thus eliminating the specters of presumed and punitive damages in this regard"

Source Citation:    Joseph v. Scranton Times L.P., 129 A.3d 404, 428

---

49 ☐   ⊘   **This quote is Incorrect**

ⓘ   The pinpoint page in your citation is Incorrect

Quote from your brief:

...meaning because they were not of the sort that would    "grievously fracture [plaintiff's] standing in the community"    ...).

Quote from source citation:

"grievously fractured his standing in the community"

Source Citation:    Blackwell v. Eskin, 916 A.2d 1123

---

50 ☐   ⊘   **This quote is Incorrect**

Quote from your brief:

...Tellingly, in an effort to convince this Court that there is some plausible basis for this argument, Youngblood's Motion again manufactures case law and precedent. For example, in citing to Hill v. Cosby, Youngblood erroneously claims that the Third Circuit    "affirm[ed] the dismissal of a civil conspiracy claim because the Plaintiff's defamation claim failed,"    ... and even "noted that when the underlying tort collapses, 'there can be no cause of action for conspiracy.'" (MTD at 14-15 (citing Hill v. Cosby, 665 F. App'x 169, 176-77 (3d Cir. 2016)).) The problem: that case was not at all a conspiracy claim, the Third Circuit did not opine on any conspiracy

Quote from source citation:

"No matching quote found in Hill v. Cosby, 665 F. App'x 169, 176-77 (3d Cir. 2016)."

Source Citation:    Hill v. Cosby, 665 Fed. Appx. 169, 176

---

51 ☐   ⊘   **This quote is Incorrect**

Quote from your brief:

...Tellingly, in an effort to convince this Court that there is some plausible basis for this argument, Youngblood's Motion again manufactures case law and precedent. For example, in citing to Hill v. Cosby, Youngblood erroneously claims that the Third Circuit "affirm[ed] the dismissal of a civil conspiracy claim because the Plaintiff's defamation claim failed," and even    "noted that when the underlying tort collapses, 'there can be no cause

of action for conspiracy.'"    ... (MTD at 14-15 (citing Hill v. Cosby, 665 F. App'x 169, 176-77 (3d Cir. 2016)).) The problem: that case was not at all a
conspiracy claim, the Third Circuit did not opine on any conspiracy

Quote from source citation:

"No matching quote found in Hill v. Cosby, 665 F. App'x 169, 176-77 (3d Cir. 2016)."

Source Citation:    Hill v. Cosby, 665 Fed. Appx. 169, 176

---

52 ☐            ⊘      This quote is Incorrect

Quote from your brief:

...Second, at least Reid and Youngblood acted jointly to further their common purpose by launching the second LRL episode on November 3, titled
"The Abused Become the Abuser, Part 2."    ... (Id. ¶¶ 28, 69.) Here again, Reid is no mere interviewer; he endorses and extracts from Youngblood the
false details about Jakes he wanted for his show. For example, at the beginning of the November 3 episode, Reid specifically tells Youngblood to
explain how Jakes's conduct was "predatory" in nature. (Id. ¶ 28.) This sets the stage for Youngblood to weave a story about being pushed into a c

Quote from source citation:

"No matching quote found in Id. ¶¶ 28, 69."

Source Citation:    Hill v. Cosby, 665 fappx 169

---

53 ☐            ⊘      This quote is Incorrect

Quote from your brief:

...tails about Jakes he wanted for his show. For example, at the beginning of the November 3 episode, Reid specifically tells Youngblood to explain
how Jakes's conduct was "predatory" in nature. (Id. ¶ 28.) This sets the stage for Youngblood to weave a story about being pushed into a corner by
Jakes—unlike the prior narrative that did not include any touching at all—which then allows Reid to say,    "Bishop Jakes violated,"    ... all while
attempting to add credibility to Youngblood's accusations by stating that Youngblood feels "honest" to him and that Youngblood is merely "telling
the story." (Id. ¶¶ 30-31.) Reid further buttressed Youngblood's false claims by stating that Jakes had "fixers" call to stop his show from airing more
episodes about Youngblood's story, and those efforts validated Youngblood's c

Quote from source citation:

"No matching quote found in Id. ¶¶ 30-31."

Source Citation:    Hill v. Cosby, 665 fappx 169

---

54 ☐            ⊘      This quote is Incorrect

                ⓘ      The pinpoint page in your citation is Incorrect

Quote from your brief:

...e. (Id. ¶ 28.) This sets the stage for Youngblood to weave a story about being pushed into a corner by Jakes—unlike the prior narrative that did not
include any touching at all—which then allows Reid to say, "Bishop Jakes violated, groomed you," all while attempting to add credibility to
Youngblood's accusations by stating that Youngblood feels "honest" to him and that Youngblood is merely    "telling the story."    ... (Id. ¶¶ 30-31.)
Reid further buttressed Youngblood's false claims by stating that Jakes had "fixers" call to stop his show from airing more episodes about
Youngblood's story, and those efforts validated Youngblood's claims—claims which were patently false. (Id. ¶ 67.) In other words, in sum and
substance, Reid delivers a message to hundreds of thousands of viewers: believe Youngblood's st

Quote from source citation:

"followed the story"

Source Citation:   Hill v. Cosby, 665 fappx 169

---

55 ☐    ✓    This quote is Correct

Quote from your brief:

...series of orchestrated podcasts, (2) threaten further exposure and defamatory attacks unless Bishop Jakes capitulated and paid their demand, and (3) reap the ill-gotten gains from their unlawful actions. (E.g., Compl. ¶ 69.) That more than satisfies the Pennsylvania standard for civil conspiracy. See Wurth Baer Supply Co. v. Strouse, 627 F. Supp. 3d 422, 439-440 (M.D. Pa. 2022) (holding that an     "intent to injure"    ... need not be the

Quote from source citation:

"intent to injure"

Source Citation:   Wurth Baer Supply Co. v. Strouse, 627 F. Supp. 3d 439

---

56 ☐    ⊘    This quote is Incorrect

Quote from your brief:

... See April 25, 2025 Mem. Op. at 13-14, 17 (ECF 40) (    "The Court will dismiss Youngblood's motion because it relies on statutory provisions that are not applicable in this litigation"    ... and "[t]he Court will not reframe Youngblood's arguments to fit within the Rule 12(b)(6) ... framework" because "[a]s discussed above, the Court cannot and will not craft arguments for the parties.").

Quote from source citation:

"No matching quote found in FRCP RULE 12(B)(6)."

Source Citation:   FRCP RULE 12

---

57 ☐    ⊘    This quote is Incorrect

Quote from your brief:

... See April 25, 2025 Mem. Op. at 13-14, 17 (ECF 40) ( "The Court will dismiss Youngblood's motion because it relies on statutory provisions that are not applicable in this litigation" and     "[t]he Court will not reframe Youngblood's arguments to fit within the Rule 12(b)(6) ... frame"    ... because "[a]s discussed above, the Court cannot and will not craft arguments for the parties.").

Quote from source citation:

"the Pleadings . If , on a motion under Rule 12(b)(6) or 12"

Source Citation:   FRCP RULE 12

---

58 ☐    ⊘    This quote is Incorrect

Quote from your brief:

...uately pleads the elements of a conspiracy claim, we request the Court consider the November 25, 2024 LRL episode (which aired several hours after the Complaint was filed), which is a matter of public record and is central to the claims in this case as are the other two attendant LRL episodes.

See, e.g., 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary Rule 12 (2024) (("the court may consider documents not attached to the complaint if the complaint specifically refers to them, they are central to the claim, and [or] their authenticity is not in dispute."   ...) (citing, inter alia, Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013))); see also Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010); see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Quote from source citation:

"No matching quote found in 916 A.2d 1123 (Pa. Super. Ct. 2007)."

Source Citation:    **Blackwell v. Eskin, 916 A.2d 1123**

---

59 ☐    ⃠    This quote is Incorrect

ⓘ    The pinpoint page in your citation is Incorrect

Quote from your brief:

... At the end of the show, Reid asks his thousands of viewers to make a "donation" if they     "enjoyed the update"     ... about the Bishop Jakes story. A banner appears on the screen advertising such "donations" could be made through a wide number of mechanisms, including PayPal, Venmo and Zelle. (Janey Decl., Ex. C at 26:13-17.)

Quote from source citation:

"[w]e look to the dictionary"

Source Citation:    **Doe v. Princeton Univ., 30 F.4th 335**

---



About
Privacy Policy
Cookie Policy
Terms & Conditions

Customer Support
Live Chat Support
On Demand Training
1-800-45-LEXIS

Copyright © 2025 LexisNexis.

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Thomas Dexter Jakes,<br>*Plaintiff,*<br><br>v.<br><br>Duane Youngblood, et al.<br><br>*Defendants.* | Civil Action No. **2:24-CV-1608-WSS**<br><br>**[PROPOSED] ORDER** |

AND NOW, this ____ day of _____, 2025, upon consideration of Plaintiff's Motion for Sanctions Against Defendant Youngblood's Counsel, Tyrone Blackburn, pursuant to Federal Rule of Civil Procedure 11.

IT IS HEREBY ORDERED that the Motion is GRANTED.

BY THE COURT:

_____
Hon. William S. Stickman IV
United States District Judge