IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS DEXTER JAKES, | CIVIL ACTION NO. 2:24-cv-01608-WSS |
| Plaintiff, | Judge William S. Stickman |
| v. | |
| DUANE YOUNGBLOOD; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; JOHN DOE 6; JOHN DOE 7; JOHN DOE 8; JOHN DOE 9; JOHN DOE 10, | |
| Defendants. | |

**TYRONE BLACKBURN'S OPPOSITION
TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES**

By: Tyrone Blackburn, Esq.

I.      **Preliminary Statement**

Plaintiff's demand for $76,197.63 in attorneys' fees is excessive, unsupported by governing law, and inconsistent with this Court's discretion under Rule 11.  I do not challenge that mistakes occurred in the second motion to dismiss.  As I explained to the court during the show cause hearing, I come from a military family.  My Dad is a Marine, my uncles are Marines, and now my nephew is a Marine.  Service to the least of these and unequivocal accountability when wrong is how I was raised, and all that I know.

I have taken full ownership of those citation errors, as I explained to the Court at the show cause hearing.  However, Plaintiff's fee petition overlooks the factual record, the remedial efforts that were underway prior to my involuntary termination, and the legal norms applied by courts in similarly situated AI-related citation error cases.

II.     **I Was Terminated Mid-Correction, Preventing Completion of Remedial Steps**

As I explained under oath during the show-cause hearing, I began correcting the citation errors immediately upon receipt of the Rule 11 safe-harbor letter.  I was in the middle of preparing an errata.  I planned to substitute the relevant pages of the second motion to dismiss with corrected citations when my client terminated me on June 23, 2025.  This unexpected termination stripped me of the ability to complete the remedial process and to file corrections with the Court under Rule 11(c)(2).  The suggestion that no steps were taken is demonstrably false.

III.    **I Took Full Responsibility at the Hearing—Without Excuse or Deflection**

At no point did I minimize or shift blame.  I apologized to the court and counsel for the defendants, and I candidly acknowledged the errors in open Court.  I explained that I had recently activated new subscriptions to LexisNexis and Westlaw, both of which had integrated emerging AI functions that I was unfamiliar with.  While the technology contributed to the citation issues, I accepted that it was my responsibility—not the tool's—to verify every case before submission.

2

My mistake was not fully auditing each citation before filing. That is on me. I made no excuses then, and I make none now.

IV. **I Have Taken Substantial Corrective Steps Since the Filing**

Since the events at issue, I have completed more than eleven hours of CLE courses focused on artificial intelligence, ethics, data protection, and small firm compliance. These courses—spanning both New York and New Jersey CLE accreditation systems—reflect my genuine effort to deepen my understanding of emerging risks and best practices surrounding AI in the legal profession. True and correct copies of my CLE certificates are attached as **Exhibit A**.

| Course Title | Date Completed | CLE Credits | Category |
| --- | --- | --- | --- |
| Catching Up to AI Ethically: How the Existing Ethics Rules Apply to Artificial Intelligence | 7/18/2025 | 1 | Ethics & Professionalism |
| Artificial Intelligence and Legal Practice | 7/18/2025 | 1.25 | Areas of Professional Practice |
| AI is Changing the Legal Profession but not Your Ethical Duties [CC] | 7/18/2025 | 1 | Ethics & Professionalism |
| Generative Artificial Intelligence and Legal Ethics | 8/5/2025 | 1 | Ethics & Professionalism |
| Ethical Use of AI: Risks, Responsibilities, and Realities for Lawyers | 8/6/2025 | 1 | Ethics & Professionalism |
| The Impact of Artificial Intelligence on Employment Litigation | 8/6/2025 | 1 | Areas of Professional Practice |
| ChatGPT Demystified: Understanding the AI Revolution in the Legal Profession | 8/8/2025 | 1 | Areas of Professional Practice |
| ChatGPT Generative AI and the | 8/8/2025 | 1 | Law Practice Management |

3

| | | | |
|---|---|---|---|
| Transformation of the Practice of Law | | | |
| Ethics for Small Firm & Solo Practitioners: Common Challenges and Careful Compliance | 8/8/2025 | 1 | Ethics & Professionalism |
| GDPR Compliance for Law Firms and Solo Practitioners | 8/8/2025 | 1.5 | Cybersecurity, Privacy & Data Protection-General |
| Artificial Intelligence and ChatGPT: Uses, Abuses, and Ethical Standards | 8/7/2025 | 1 | Cybersecurity, Privacy & Data Protection-General |
| | Total Credits Earned: | 11.75 | |

V.   **The $76,000 Fee Request Is Excessive and Punitive**
I am a solo practitioner. Approximately 60% of my cases is handled on a pro bono basis. My representation of Mr. Youngblood was entirely pro bono. I do not possess the resources to pay $76,197.63, or any amount, without jeopardizing my practice and my clients—most of whom are indigent or survivors of sexual abuse.

As discussed below, across the country, judges have opted for education and caution over punishment.

VI.   **Request for Alternative Sanction: CLEs, Not Financial Penalties**
If the Court is inclined to issue any sanction, I respectfully request that it consider a non-financial remedy such as mandatory CLEs and public admonition. That would mirror what numerous judges, including those in this very district, have done in response to comparable incidents. For instance, in *In re Hill*, 439 B.R. 647, 650 (Bankr. W.D. Pa. 2010), this Court issued a public reprimand where an attorney "lied to the court" and "showed no remorse," concluding that public admonition—not financial sanctions—was appropriate, even under a higher evidentiary standard. The Court in *Hill* rightly recognized that honesty is a matter of character, not something

4

curable through CLEs or fines. Here, unlike *Hill*, I acknowledged the error immediately and have demonstrated remorse and corrective action.

I accept responsibility, and I have shown good faith. But a $76,000 sanction for citation issues—never intended to mislead—would be punitive, not corrective.

Courts across the country have addressed AI-related citation errors in a measured and proportionate manner. (see **Exhibit B**). In *Hall v. The Academy Charter School*, No. 2:24-cv-08630 (E.D.N.Y. Aug. 7, 2025), the Court declined to impose monetary sanctions despite the submission of fabricated case law. The Court accepted counsel's explanation that the errors stemmed from AI-assisted drafting and accepted counsel's apology that the submission was not done in bad faith. Similarly, in *Robbins v. Martin*, No. 2:25-cv-00409 (M.D. Fl. July 28, 2025), the Court issued only a warning to counsel for AI citation errors and declined to issue monetary sanctions.

In *Mavy v. Commissioner of SSA*, No. 2:25-cv-00689 (District of Arizona Aug. 14, 2025), the Court likewise declined to impose any financial penalty for AI-generated hallucinated citations. Instead, the judge acknowledged the widespread learning curve surrounding AI tools and opted for a public admonition. In the matter involving *Johnson v. Dunn, et al.*, No. 2:21-cv-01701 (N.D. Ala. July 23, 2025), the Court declined to award fees and ordered only corrective education.

These cases reflect a growing recognition that honest, non-malicious errors in the use of AI tools warrant education and reform—not financial ruin. This approach better supports the long-term integrity of the legal system, especially when, as here, the attorney promptly acknowledged the mistake, took steps to prevent recurrence, and acted without bad faith.

VII. **Notice to the Court Regarding Extrajudicial Conduct by Plaintiff's Counsel**
I respectfully place the Court on notice of extrajudicial conduct undertaken by Plaintiff's counsel, Dustin Pusch, which has caused me significant personal and professional harm. On or

5

about June 11, 2025, Mr. Pusch filed an ethics complaint against me with the New Jersey State Bar, and—based on the nature of his allegations—I reasonably presume he filed similar complaints with the New York State Bar and potentially others. These complaints falsely accuse me of misrepresenting my admission to the District of Columbia Bar.

Rather than extending the professional courtesy of a phone call or email, Mr. Pusch chose to expend time—and presumably his client's money—contacting every state and federal licensing body to confirm my bar admissions. His grievance (see **Exhibit C**) states that, because he was not immediately provided confirmation of my D.C. Bar admission, he proceeded to report me to multiple disciplinary authorities. This was a gross overreaction and, in my view, an abusive use of the grievance process.

As a result, I was plunged into an unnecessary ethics inquiry by the New Jersey Office of Attorney Ethics and have been forced to retain an ethics attorney at my own expense—despite my limited resources and pro bono-centered practice. I now face the additional burden of preparing for possible follow-up reviews from other jurisdictions, despite having done nothing wrong.

For the record, I am duly admitted to the District of Columbia Bar. I was officially sworn in on May 7, 2024, by the Honorable Katherine H. Parker, United States Magistrate Judge for the Southern District of New York. Any suggestion to the contrary is unequivocally false and could have been dispelled with a single phone call or email. Instead, Plaintiff's counsel chose to escalate a good-faith litigation dispute into an attempt to trigger professional ruin—weaponizing the ethics complaint process as a form of retaliation.

This type of conduct exacerbates the punitive impact of an already excessive fee demand and highlights a troubling lack of proportionality in the Plaintiff's litigation strategy. In the context of a Rule 11 dispute over citation errors—errors I have publicly and fully owned—this

6

extrajudicial campaign is not only unjustified, but also corrosive to the integrity of the adversarial process.

VIII.   **AI Hallucinations Have Affected Judges as Well, Including in the Third Circuit**

The rise of generative artificial intelligence (AI) tools has not only impacted attorneys but has also led to citation errors in judicial opinions. In multiple instances, federal judges, including the Honorable Julien Xavier Neals of the District of New Jersey, have unknowingly incorporated hallucinated cases or quotes into published orders, only to later withdraw those opinions after the errors were discovered.

For example, in *In re CorMedix Securities Litigation*, No. 2:21-cv-1422 (D.N.J.), Judge Neals withdrew a written opinion after it was revealed that the ruling included nonexistent case law and fabricated quotes. Similarly, in the Southern District of Mississippi, the Honorable Henry T. Wingate entered a temporary restraining order that included fictitious allegations and parties—a mistake that was later attributed to clerical oversight influenced by AI-generated drafts. These incidents demonstrate that AI hallucinations are not a matter of willful misconduct, but an emerging professional challenge affecting even the most experienced members of the bench.

I raise these examples not to deflect blame, but to highlight the broader context in which my errors occurred. I did not willfully submit fake citations. I did not attempt to deceive this Court or opposing counsel. I made an honest mistake in failing to audit all citations after using legal tools that now include AI-assisted functionality. The legal profession as a whole—including judges, law clerks, and attorneys—is learning to adapt to these powerful but imperfect tools.

What separates professionals who err from those who mislead is what happens next. In my case, I took immediate steps to investigate the error. I prepared corrections. I appeared before this Court and took full responsibility—without excuse. And I have since completed multiple

7

CLEs focused on AI ethics, legal technology, and solo practitioner compliance, all in an effort to ensure this never happens again.

In this broader context, I respectfully ask the Court for grace. The use of AI tools is reshaping our profession in real time, and no one—judge or attorney—is immune to the risk of citation error. I have done everything in my power to remediate the mistake, educate myself, and protect the integrity of my practice. I ask only for the opportunity to continue that work without the crushing weight of a financial penalty that would cripple my ability to serve the public.

IX. **Conclusion**

For the foregoing reasons, I respectfully request that the Court deny Plaintiff's petition for attorneys' fees in its entirety. Alternatively, suppose the Court deems some sanction appropriate. In that case, I ask that it adopt a proportional, non-monetary remedy in line with how courts across the country have treated similar situations involving AI-assisted legal drafting errors. A sanction focused on education, transparency, and accountability would serve justice far more effectively than financial penalties that would cripple a solo practitioner engaged in extensive pro bono work.

DATE: July 19, 2025

BY: /s/ *Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com

8

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 19th day of August 2025, a true and correct copy of the foregoing Memorandum of Law of Tyrone A. Blackburn, Esq. In Opposition to the Defendants' Motion for Attorney Fees, a copy has been served via the Court's Electronic Filing System on the following counsel of record:

Devin J. Chwastyk, Esquire
McNees Wallace & Nurick LLC
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108
dchwastyk@mcneeslaw.com

Dustin A. Pusch (admitted *Pro Hac Vice*)
Amy M. Roller (admitted *Pro Hac Vice*)
Meier Watkins Phillips Pusch LLP
919 18th Street NW, Suite 650
Washington, DC 20006
dustin.pusch@mwpp.com
amccannroller@mwpp.com

Derrelle M. Janey (admitted *Pro Hac Vice*)
The Janey Law Firm P.C.
111 Broadway, Suite 701
New York, NY 10006
(646) 289-5276
djaney@thejaneylawfirm.com

BY: */s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com