UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**JOSEPH CARTAGENA**,

*Plaintiff*,

v.

**TERRANCE DIXON, TYRONE BLACKBURN, and T.A. BLACKBURN LAW, PLLC,**

*Defendants*.

Civil Action No. 25-cv-03552

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFF JOSEPH CARTAGENA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

---

Joseph Tacopina
Chad Seigel
**Tacopina Seigel & DeOreo**
275 Madison Avenue, 35th Floor
New York, New York 10016
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com
212-227-8877

**Of Counsel:**

Jordan W. Siev
**Reed Smith LLP**
599 Lexington, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com
212-205-6085

*Attorneys for Plaintiff Joseph Cartagena*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................. 4

I. Dixon Threatened to Make Public Allegations Against Cartagena Unless
Cartagena Paid Him Money He Was Not Owed ............................................ 4

II. Dixon Executed His Threats By Maliciously Accusing Cartagena of Crimes
He Knew Cartagena Did Not Commit ......................................................... 5

III. Dixon Enlisted Blackburn to Extort Cartagena ................................................ 6

IV. Blackburn Stated, With Certainty, That Cartagena "Put a Hit" on Dixon, And
That He Had Corroborating Evidence of Cartagena's Sexual Misconduct .... 7

LEGAL STANDARD ................................................................................ 8

ARGUMENT .......................................................................................... 8

I. The Court Should Disregard Much, If Not All, of Defendants' Motion, and
Should Sanction Defendants For Relying On Hallucinated Cases ................. 8

    A. The Court Should Disregard the Dixon Declaration In Its Entirety .... 9

    B. The Court Should Disregard Defendants' Brief and Sanction
    Blackburn For Misrepresenting and Fabricating Legal Authority .... 10

II. The Complaint States a Claim For Defamation (Counts I and II) ............... 13

    A. Cartagena's Defamation Claims are Timely ..................................... 14

    B. Defendants' Defamatory Statements Are Statements of Fact ........... 14

    C. The Complaint Pleads Actual Malice ................................................ 15

    D. Defendants' Defamatory Statements Are Not Privileged ................. 19

    E. Cartagena's Artistic Expression Is Not A License For Defendants To
    Defame    20

III. The Complaint States a Claim For Intentional Infliction of Emotional
Distress (Count III) ..................................................................... 21

    A. The Complaint States a Claim for Intentional Infliction of Emotional
    Distress ....................................................................... 22

    B. Cartagena's IIED Claim is Not Duplicative of His Defamation Claim
    26

CONCLUSION ................................................................................ 27

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. City of Mount Vernon,*
  2024 U.S. Dist. LEXIS 87787 (S.D.N.Y. May 13, 2024)................................................11, 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................................8, 9, 18

*Baez v. JetBlue Airways Corp.,*
  No. 09-CV-596, 2009 U.S. Dist. LEXIS 67020 (E.D.N.Y. Aug. 3, 2009)............................26

*Barbash v. STX Fin., LLC,*
  2020 U.S. Dist. LEXIS 210331 (S.D.N.Y. Nov. 10, 2020)....................................................10

*Brimelow v. N.Y. Times Co.,*
  No. 21-66-cv, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021) ..............................15, 17

*Brummer v. Wey,*
  No. 153583/2015, 2016 N.Y. Misc. LEXIS 2029 (N.Y. Sup. Ct. Mar. 1, 2016) ...................26

*Carandang v. Shapiro,*
  No. 12-cv-5634, 2013 U.S. Dist. LEXIS 61707 (S.D.N.Y. Apr. 30, 2013) ...........................22

*Chang v. Arroyave,*
  No. 55459/2020, 2020 N.Y. Misc. LEXIS 49085 (N.Y. Sup. Ct. Aug. 12,
  2020) .....................................................................................................................................20

*CT Espresso LLC v. Lavazza Premium Coffees Corp.,*
  No. 22-cv-377, 2022 U.S. Dist. LEXIS 211760 (S.D.N.Y. Nov. 22, 2022)...........................20

*Curiano v. Suozzi,*
  469 N.E.2d 1324 (N.Y. 1984)...............................................................................................11

*Dfinity Found v. N.Y. Times Co..,*
  No. 23-7838-cv, 2024 U.S. App. LEXIS 18619 (2d Cir. July 29, 2024) .........................19, 20

*Doe v. Doe,*
  No. 16-cv-0332, 2017 U.S. Dist. LEXIS 109692 (S.D.N.Y. July 14, 2017)....................22, 25

*Erdman v. Victor,*
  No. 20-CV-4162, 2021 U.S. Dist. LEXIS 222159 (S.D.N.Y. Nov. 17, 2021).................14, 15

*Flaherty v. Dixon,*
  2023 U.S. Dist. LEXIS 26876 (S.D.N.Y. Feb. 16, 2023)...................................................5, 10

*Fossil Grp., Inc. v. Angel Seller LLC*,
    No. 20-CV-02441, 2022 U.S. Dist. LEXIS 188347 (E.D.N.Y. Oct. 14, 2022)......................19

*Front, Inc. v. Khalil*,
    28 N.E.3d 15 (N.Y. 2015)........................................................................................................19

*Goldfarb v. Channel One Russia*,
    663 F. Supp. 3d 280 (S.D.N.Y. 2023)....................................................................................16

*Goolden v. Wardak*,
    No. 19-CV-6257, 2020 U.S. Dist. LEXIS 131748 (S.D.N.Y. July 23, 2020) ..................22, 24

*Gottwald v. Sebert*,
    220 N.E.3d 621 (N.Y. 2023)..........................................................................................19, 20

*Greenberg v. Spitzer*,
    62 N.Y.S.3d 372 (N.Y. App. Div. 2017) .........................................................................11, 21

*Gurpreet Kaur v. Desso*,
    No. 25-CV-0726, 2025 U.S. Dist. LEXIS 129902 (N.D.N.Y. July 9, 2025) ..........................10

*Hanly v. Powell Goldstein, LLP*,
    No. 05-CV-5089, 2007 U.S. Dist. LEXIS 17152 (S.D.N.Y. Mar. 5, 2007) ...........................26

*Harte-Hanks Commc'ns v. Connaughton*,
    491 U.S. 657 (1989)..........................................................................................16, 17, 18

*HC2, Inc. v. Delaney*,
    510 F. Supp. 3d 86 (S.D.N.Y. 2020)...............................................................................22, 23

*Hodges v. McGough Enters., LLC*,
    No. 23-cv-05016, 2025 U.S. Dist. LEXIS 109230 (S.D.N.Y. June 4, 2025) .............23, 24, 26

*Howell v. New York Post Co.*,
    612 N.E.2d 699 (N.Y. 1993)...................................................................................................11

*Immuno AG. v. Moor-Jankowski*,
    567 N.E.2d 1270 (N.Y. 1991).................................................................................................11

*Jones v. Combs*,
    No. 24-CV-1457, 2025 U.S. Dist. LEXIS 54277 (S.D.N.Y. Mar. 24, 2025) .........................12

*Klein v. McGauley*,
    29 A.D.2d 418 (N.Y. App. Div. 1968) ..................................................................................11

*Kraus v. Brandstetter*,
    185 A.D.2d 300 (N.Y. App. Div. 1992) ................................................................................10

*Kwok Sze v. Pui-Ling Pang*,
No. 15-CV-0447, 2015 U.S. Dist. LEXIS 151813 (S.D.N.Y. Nov. 9, 2015)...........................9

*Lynch v. City of N.Y.*,
952 F.3d 67 (2d Cir. 2020)...........................................................................8, 23, 24

*Mann v. Abel*,
885 N.E.2d 884 (N.Y. 2008).............................................................................11

*Marmelstein v. Kehillat New Hempstead*,
892 N.E.2d 375 (N.Y. 2008)..........................................................................11, 21

*Matter of Ullah v. Kelly*,
29 A.D.3d 432 (N.Y. App. Div. 2006) ...............................................................11

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020)..............................................................15, 16

*Menaker v. Kaplan*,
No. 17-cv-5840, 2019 U.S. Dist. LEXIS 68559 (E.D.N.Y. Apr. 23, 2019) .....................19, 20

*Morass v. White*,
571 F. Supp. 3d 77 (S.D.N.Y. 2021)....................................................................20

*Ottah v. Nat'l Grid*,
No. 19-CV-8289, 2020 U.S. Dist. LEXIS 74585 (S.D.N.Y. Apr. 27, 2020)...........................9

*Ousmane Bah v. Apple Inc.*,
No. 19-cv-3539, 2020 U.S. Dist. LEXIS 22867 (S.D.N.Y. Feb. 10, 2020)...........................17

*Palin v. N.Y. Times Co.*,
940 F.3d 804 (2d Cir. 2019)............................................................................15

*Park v. Kim*,
91 F.4th 610 (2d Cir. 2024) ............................................................................10

*People v. Andrade*,
2023 N.Y. Misc. LEXIS 1901 (N.Y. Sup. Ct. 2023)...............................................10

*Salazar v. NBA*,
118 F.4th 533 (2d Cir. 2024) ...........................................................................8

*Sheila C. v. Povich*,
11 A.D.3d 120 (N.Y. App. Div. 2004) ...............................................................11

*SLS Brands, LLC v. Authentic Brands Grp., LLC*,
No. 19-CV-8115, 2021 U.S. Dist. LEXIS 21438 (S.D.N.Y. Feb. 4, 2021)...........................25

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)........................................................................................17

*Stuto v. Fleishman*,
  164 F.3d 820 (2d Cir. 1999)............................................................................23

*Sweeney v. Prisoners' Legal Servs.*,
  647 N.E.2d 101 (N.Y. 1995)............................................................................16

*Thomas v. City of N.Y.*,
  No. 24-CV-2534, 2025 U.S. Dist. LEXIS 108251 (S.D.N.Y. June 6, 2025) ...........9

*Zunzurovski v. Fisher*,
  No. 23-CV-10881, 2024 U.S. Dist. LEXIS 62568 (S.D.N.Y. Apr. 3, 2024)...........12

**Statutes**

Civil Rights Law § 74 ........................................................................................20

CPLR § 215(3)....................................................................................................14

**Other Authorities**

Smolla, Rodney A., *Law of Defamation* § 3:45.50 (2d ed. 2025) ...............................15

## PRELIMINARY STATEMENT

Terrance Dixon's ("**Dixon**"), and his lawyers Tyrone Blackburn and T.A. Blackburn Law PLLC's (collectively, "**Blackburn**," and together with Dixon, "**Defendants**")'s Rule 12(b)(6) motion to dismiss (the "**Motion**" or "**Mot**.") the Second Amended Complaint ("**Complaint**" or "**SAC**") should be denied for many reasons. Chief among them is that Defendants rely heavily on evidence outside of the four corners of the Complaint, including from a thirty-six-paragraph declaration that the Court should ignore, and ***have cited cases that simply don't exist, and have mis-cited cases for propositions they simply don't stand for***. There are at least ten instances in the Motion where Defendants cite cases for inapposite propositions or quotes language found nowhere in the case, commonly referred to as "hallucinated" case citations, which, in all likelihood, were the result of Blackburn's irresponsible reliance on artificial intelligence ("**AI**") generated content without manual verification.

As shocking as this is coming from Blackburn, a licensed member of the bar, it is not surprising to one familiar with his history. Federal judges have admonished Blackburn within the past year because his filings were "replete with inaccurate statements of law" and "wholly fabricated quotations from caselaw." Blackburn recently blamed these errors on his "misinterpretation" of new "legal technology," and represented, just days after filing his Motion, that he had taken the appropriate steps to ensure that he would "never" make the same errors again. The Motion is, unfortunately, just the latest example of Blackburn's serial disregard of his ethical obligations. In addition to disregarding Blackburn's fictional authorities, the Court should impose harsh sanctions for this repeat conduct.

Blackburn's egregious misconduct in drafting the Motion overshadows Defendants' substantive arguments, all of which fail against the well-pled allegations of Complaint describing

Defendants' calculated campaign of defamation, extortion, and malicious harassment designed to destroy world renowned musician Joseph "Fat Joe" Cartagena's ("**Cartagena**") reputation and business. Dixon fabricated and publicly spread knowingly false, scandalous accusations against Cartagena with the intent to coerce Cartagena into paying millions of dollars he did not owe, including that Cartagena engaged in sexual relationships with underage girls and sexually assaulted a woman in Wisconsin. When these tactics failed, Dixon enlisted Blackburn, who first sought compensation for Dixon's alleged unpaid wages, but quickly threatened disseminating false allegations for statutory rape, forced labor, sex trafficking, and a RICO lawsuit if he did not pay $20 million to settle. After Cartagena refused to back down, Blackburn published further defamatory statements, including the knowingly false statements that Cartagena "ordered a hit job against" Dixon and that he had a recording of Cartagena's alleged former 16-year-old girlfriend. Of course, Defendants knew that these statements were false when they made them to coerce an unwarranted payout.

Defendants' unconscionable conduct forced Cartagena to commence this lawsuit to protect his reputation, career, and emotional wellbeing. The Complaint asserts three causes of action: defamation against Dixon (**Count I**) and Blackburn (**Count II**), and intentional infliction of emotional distress ("**IIED**") against all Defendants (**Count III**). The Motion, which seeks to dismiss the Complaint in its entirety, is a tactical misfire: most of Defendants' arguments amount to disputing the veracity of Cartagena's allegations, which the Court must accept as true on a Rule 12(b)(6) motion. Defendants also improperly rely on either evidence outside of the pleadings or fake quotes from cases. What is left over are half-baked arguments that are completely divorced from the Complaint's allegations and *genuine* legal precedent. In reality, the Complaint more than adequately pleads every necessary element of Cartagena's defamation and IIED claims.

*First*, Defendants' attempts to undermine the defamation claims get them nowhere:

- Defendants argue that some of their defamatory statements are not actionable because they are time-barred. But the statute of limitations for defamation is one year, and Defendants made each statement relied on by Cartagena on or after April 29, 2024, *i.e.,* less than one year before he initiated this action.

- Defendants maintain that Cartagena's allegations are based on Defendants' opinions. This is disproven. Statements that Cartagena committed crimes and that Blackburn had recordings of Cartagena's "girlfriend" are capable of being proven true or false (and Cartagena will prove their falsity at trial), and are thus actionable statements of fact.

- Defendants insist that Cartagena has not pled actual malice, but Cartagena alleges that Defendants knew their statements were false or acted with reckless disregard of their falsity. Cartagena also alleges a motive—namely, to pressure Cartagena into paying Dixon in exchange for his silence—and that Blackburn lied about corroborating their statements, both of which are factors from which malice may be inferred.

- Defendants attempt to cloak their statements in the litigation privilege, but Cartagena's claims rest on statements made far in advance of any litigation through mediums like Instagram deliberately chosen for their capacity to reach widespread audiences. The fact that Blackburn, an attorney, eventually joined Dixon in his campaign to harass and humiliate Cartagena changes nothing because, by Blackburn's own admission, Defendants' statements were not part of good faith legal advocacy but rather side shows intended to exert leverage over Cartagena.

*Second*, Defendants' attempts to walk back their contemptible conduct to avoid liability for their intentional infliction of emotional distress are of no use:

- Defendants claim that their conduct was not "extreme and outrageous," which is incredible when their conduct includes public accusations of pedophilia and sexual and physical assault committed as part of an extensive pattern of harassment.

- Defendants assert that Cartagena could not have suffered severe emotional distress, comparing the effect of their conduct on Cartagena to "preschool-level hurt feelings." Such ludicrous comparisons say more about Defendants' sad state of mind than anything else. In reality, Defendants' conduct is so extreme and so outrageous that severe emotional distress is a necessary byproduct.

- Defendants argue that Cartagena's IIED and defamation claims are duplicative. But Cartagena alleges that Defendants engaged in conduct intended to intimidate and humiliate Cartagena above and beyond their defamatory statements. Indeed, the bases for Cartagena's IIED claim include statements that are extreme and outrageous regardless of their veracity, such as abhorrent comments about

3

Cartagena's wife, as well as physical assault of members of Cartagena's process server and threats designed to cause Cartagena to live in fear.

In sum, the Motion accomplishes nothing except to open Blackburn to sanctions. As for Cartagena's Complaint, it consists of extensive well-pled allegations of defamatory statements and extreme and outrageous intentional conduct causing Cartagena severe emotional distress. Accordingly, the Motion should be denied in its entirety.

## STATEMENT OF FACTS

The following facts are drawn from Cartagena's Complaint and are presumed to be true for purposes of Defendants' motion.

### I. Dixon Threatened to Make Public Allegations Against Cartagena Unless Cartagena Paid Him Money He Was Not Owed

From approximately 2006 to 2019, Dixon served as Cartagena's "hype man." SAC ¶ 34. Throughout this period, Dixon did not raise concerns regarding his compensation or working conditions. *Id.* ¶ 34. Yet in 2023, Dixon abruptly began making false, retrospective claims that he had been underpaid. *Id.* ¶ 35. These actions marked the beginning of a sustained and escalating campaign of defamation, threats, and attempted extortion directed at Cartagena. *Id.* ¶¶ 37-110.

Dixon made his intentions clear. Dixon told family members that if they continued working with Cartagena, he would disseminate false information about Cartagena on social media and "***take all of Joe's money***." *Id.* ¶ 36. Dixon also sent Cartagena's manager a doctored image of a news headline reading, "FAT JOE STATUTORY RAPE VICTIM REVEALED," and threatened, "This is what the news paper is going to look like wow is daughter is going to be real proud of him I'm going to tag Jordan Nike cnn the wthite [sic] the president and the vice president every major outlet will have this now think about it this just one." *Id.* ¶¶ 40-41. Dixon further warned, "***The***

*countdown is on*[.] Tell the fat man be smart. I warned him before," and added, "Joe got it fucked up. I get it. Joe didn't get it yet. *I'm the predator, Joe's the prey*." *Id.* ¶ 42.

## II. Dixon Executed His Threats By Maliciously Accusing Cartagena of Crimes He Knew Cartagena Did Not Commit

Dixon followed through on his threats by posting a barrage of wholly fabricated, grotesque, and scandalous allegations on social media accusing Cartagena of heinous acts such as pedophilia, statutory rape, and sexual assault. SAC ¶¶ 45-53.

*Dixon's False Sexual Assault Statements*. Dixon repeatedly alleged that Cartagena committed sexual assault in Wisconsin in June 2010 (the "**Sexual Assault Statements**"). *Id.* ¶¶ 51-52. Dixon posted images of Cartagena to his Instagram account with the following caption: "#FATJOE Milwaukee was scary the girl wasn't lying" and "this happened in Wisconsin joe was being a thirsty n**** and almost got us locked up for #sexualassault." *Id.* ¶ 51. The post included four headlines: "It's Officially Over for Fat Joe," "Fat Joe Investigated for Sexual Assault," "Fat Joe's Ghostwriter T.A. The Legend," and "Fat Joe Former employee finally speaks out." *Id.* Dixon also reposted an interview in which he falsely accused Cartagena of sexually assaulting a woman in Wisconsin by "placing his hand up her skirt." *Id.* ¶ 43.

Dixon knew that his Sexual Assault Statements were false. The inappropriate touching allegation was made against *Dixon*, not Cartagena, a fact Dixon obviously knew. *Id*. ¶ 38. Moreover, Cartagena never sexually assaulted anyone; authorities never charged or detained Cartagena in connection with the Wisconsin allegations; and Cartagena was cleared of any involvement shortly after speaking with him. *Id.* ¶ 44.

*Dixon's False Statutory Rape Statements.* Dixon repeatedly falsely accused Cartagena of engaging in sexual acts with underage girls. Examples include:

- **May 23, 2024**: Dixon posts on Instagram that Cartagena: "WAS DATING AND HAVING SEX WITH A 16 YEAR OLD GIRL NAMED NIKKI AKA CHIQUITA HE HAD A FULL FLEDGE RELATIONSHIP WITH HER FOR 5 YEARS."

- **September 20, 2024**: Dixon posts on Instagram a picture of Cartagena, Sean "Diddy" Combs, and DJ Khaled, stating: "#fatjoe Nikki was underage when u flew her across state lines and out the country."

- **October 1, 2024**: Dixon posts on Instagram a picture stating: "FAT JOE HAD A FULL FLEDGE RELATIONSHIP WITH NIKKI WHO WAS UNDERAGE" and "FAT JOE KNEW DRE WAS HAVING SEX WITH A UNDERAGE GIRL BECAUSE JOE WAS THE GUY TELLING HIM CALM DOWN WE GOING TO TAKE CARE OF IT."

*Id.* ¶ 50 (collectively, the "**Statutory Rape Statements**").

Dixon's Sexual Assault Statements and Statutory Rape Statements were calculated to destroy Cartagena's life and career. *Id.* ¶ 128. On December 6, 2023, Dixon posted about Cartagena, tagging Market America's Instagram account and writing: "DOES @marketamerica KNOWS THEY HAVE A PEDOPHILE AS THEY SPOKE'S PERSON." *Id.* ¶ 49.

## III.    Dixon Enlisted Blackburn to Extort Cartagena

After Dixon's initial campaign of public accusations and threats failed to yield the desired financial settlement, Dixon turned to Blackburn, a known extortionist masquerading as a lawyer. SAC ¶¶ 64-65. Blackburn began by drafting and sending a series of demand letters to Cartagena's lawyers demanding compensation for Dixon's alleged work as a "ghostwriter and uncredited vocalist" but quickly escalated to include threats of lawsuits containing salacious and false allegations that had no connection to Dixon's purported grievances over his compensation and work conditions. *Id.* ¶ 144. To maximize leverage over Cartagena, Blackburn made more severe accusations, including allegations of sexual misconduct with minors, trafficking, and orchestrating violence. *Id.* The letters set short deadlines for payment and threatened immediate public litigation if Cartagena did not comply. *Id.* ¶ 146.

Blackburn then sent a series of increasingly hostile and extortionate emails to Cartagena's lawyer threatening, among other things, to report Cartagena to Homeland Security. *Id.* ¶¶ 69-72.

Blackburn repeatedly represented that he corroborated Dixon's allegations with witness interviews and recordings. *Id.* ¶ 74. Blackburn described three different women he claimed to have spoken with about purported sexual encounters they had with Cartagena while still underage. *Id.* ¶ 76. Despite not engaging in any sexual acts with any underage individuals, Cartagena recognized the three women based on Blackburn's descriptions of their names and whereabouts. *Id.* Investigators were later able to locate two of the women and confirm that they had never spoke to Blackburn. *Id.* ¶ 77.

Cartagena's counsel also asked Blackburn for the video "evidence" that Blackburn claimed to have had, but Blackburn later admitted he never had them. *Id.* ¶ 78. Further, Blackburn threatened to submit a sworn statement by one of Cartagena's former managers to "corroborate" the sex trafficking claims against Cartagena, but never did. *Id.* ¶ 79.

## IV. Blackburn Stated, With Certainty, That Cartagena "Put a Hit" on Dixon, And That He Had Corroborating Evidence of Cartagena's Sexual Misconduct

Defendants' unrelenting efforts to humiliate and threaten Cartagena into an extortionate settlement agreement to avoid the painstaking efforts of publicly dispelling Dixon's lies compelled Cartagena to file the complaint initiating this lawsuit on April 29, 2025. SAC ¶ 87. In response, Blackburn posted on Instagram that Cartagena had "ordered a hit job" against Dixon (the "**Hit Job Statements**"). He then falsely stated on Instagram that he possessed audio recordings of "two females discuss[ing] [Cartagena's] disgusting pattern of rooming and sleeping with 16-year-old-children" and represented, on a podcast, that he had a recording of Cartagena's "girlfriend" admitting that she started dating Cartagena when she was 16 years old, and that "Fat Joe is Sean Combs minus the Tusi [pink cocaine]" (collectively, the "**Corroboration Statements**").

**LEGAL STANDARD**

"To survive Rule 12(b)(6) dismissal, a complaint's factual allegations must state a claim to relief that is plausible on its face." *Salazar v. NBA*, 118 F.4th 533, 537 (2d Cir. 2024) (quotations omitted). "The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all well-pleaded factual allegations in the complaint as true." *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (quotations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Each of Cartagena's claims satisfy this liberal pleading standard.

**ARGUMENT**

Defendants' Motion is convoluted and disjointed, riddled with irrelevant asides (*see e.g.,* Mot. at 16), cursory, single sentence arguments in the preliminary statement without expansion in the rest of the brief (*see e.g., id*. at 6) and arguments about prima facie tort, a claim that Cartagena does not bring (*id*. at 21). Despite its lack of coherence, Defendants appear to advance several arguments in support of dismissal, including claims of litigation privilege, assertions that the challenged statements are protected opinion or truth, and repeated contentions that the Complaint fails to plead actual malice. The Court should disregard much, if not all, of Defendants' Motion, which relies on hallucinated cases and "evidence" outside the four corners of the Complaint. And, in any event, Defendants' arguments are baseless.

**I. The Court Should Disregard Much, If Not All, of Defendants' Motion, and Should Sanction Defendants For Relying On Hallucinated Cases**

Defendants' Motion is not only unreliable, it is a shameless abuse of the judicial process that the Court should flatly reject. First, the Court may not consider the extraneous materials Defendants improperly inject through Dixon's self-serving declaration that is inadmissible on a

8

Rule 12(b)(6) motion to dismiss. Second, Defendants' submission is tainted by their repeated reliance on fabricated citations, a practice for which Blackburn has already been publicly cautioned against and Blackburn promised to end, to no avail.

### A.    The Court Should Disregard the Dixon Declaration In Its Entirety

In support of their Motion, Defendants submit the Declaration of Terrance Dixon, dated August 11, 2025 ("**Dixon Declaration**"). The Court should disregard it for two reasons.

The express purpose of the Dixon Declaration is to "demonstrate that Dixon's public statements were truthful." Dixon Decl. ¶ 2. Defendants dedicate much of their Motion to arguing that the Complaint's allegations are contradicted by the Dixon Declaration. *See, e.g.*, Mot. at 9-12. But, as noted, the Court *must* accept the truth of Cartagena's well-pled allegations on a Rule 12(b)(6) motion to dismiss. *See Ashcroft*, 556 U.S. at 679. For this reason alone, the Court should disregard the Dixon Declaration. *See Ottah v. Nat'l Grid*, No. 19-CV-8289, 2020 U.S. Dist. LEXIS 74585, at \*24-26 (S.D.N.Y. Apr. 27, 2020) (disregarding declaration at motion to dismiss stage).

The Court should also disregard the Dixon Declaration because it contains material outside of the four corners of the Complaint. "A district court is limited in the material it may consider in deciding a motion to dismiss." *Id*. Courts have thus consistently declined to consider declarations and affidavits containing material outside of the pleadings. *See id.*; *Kwok Sze v. Pui-Ling Pang*, No. 15-CV-0447, 2015 U.S. Dist. LEXIS 151813, at \*8 (S.D.N.Y. Nov. 9, 2015) (citations omitted); *see also Thomas v. City of N.Y.*, No. 24-CV-2534, 2025 U.S. Dist. LEXIS 108251, at \*11 (S.D.N.Y. June 6, 2025). Nearly every allegation in the Dixon Declaration lies well beyond the four corners of the Complaint, and should not be considered. *See* Dixon Decl. ¶¶ 5-7 (Cartagena "stole from me," "stole from Big Pun's widow," and Dixon "kept [Plaintiff's] career breathing"); ¶¶ 8-19 (claims of a $500,000 "business opportunity" that Cartagena supposedly sabotaged; Cartagena's supposed theft of intellectual property and statements Cartagena purportedly made

about Dixon on Instagram; accusations that there are people who are "dead" or "had their lives ruined" because of Cartagena); and ¶¶ 31-32 (threats made by Cartagena and his associates against Dixon).

Accordingly, between the express purpose of the Dixon Declaration—to attempt to establish that Dixon's public statements were truthful—and the extraneous allegations completely absent from the Complaint, there is nothing in the Dixon Declaration that the Court may consider. The Court should therefore disregard the Dixon Declaration in its entirety.

### B. The Court Should Disregard Defendants' Brief and Sanction Blackburn For Misrepresenting and Fabricating Legal Authority

Defendants' Motion is replete with misrepresentations and fabrications of legal authority clearly generated by AI. "[C]ourts in this Circuit have not hesitated to find that the submission of fabricated legal authority resulting from the use of artificial intelligence is sanctionable conduct." *Gurpreet Kaur v. Desso*, No. 25-CV-0726, 2025 U.S. Dist. LEXIS 129902, at *7 (N.D.N.Y. July 9, 2025). Lawyers "must ensure that … submissions to the Court are accurate." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).

Here, Blackburn's Motion makes countless fabrications and misrepresentations:

- Defendants fabricate a citation to "*Kraus v. Brandstetter*, 2023 N.Y. Misc. LEXIS 1901, at *7-8 (N.Y. Sup. Ct. March 30, 2023)." Mot. at 6. A different court published *Kraus* in a different year and in a different reporter. *See* 185 A.D.2d 300 (N.Y. App. Div. 1992). The reporter to which Blackburn cites is, instead, attributable to *People v. Andrade*, 2023 N.Y. Misc. LEXIS 1901 (N.Y. Sup. Ct. 2023). Neither case stands for the proposition that "privilege barred defamation claims based on settlement and litigation-related correspondence between opposing counsel," as Blackburn represents.

- Defendants misrepresent the holding of *Barbash v. STX Fin., LLC*, 2020 U.S. Dist. LEXIS 210331, at *10 (S.D.N.Y. Nov. 10, 2020). *Barbash* does not stand for the proposition that Cartagena's claim is barred by New York's one-year statute of limitations for defamation, Mot. at 6, nor does it concern limitations issues at all.

- Defendants misrepresent the holding of *Flaherty v. Dixon*, 2023 U.S. Dist. LEXIS 26876, at *13 (S.D.N.Y. Feb. 16, 2023). *Flaherty* does not state or otherwise "emphasize[]" that "the judicial system is not a weapon for retaliating against an attorney's legal advocacy,"

Mot. at 7, nor does it hold that "litigation privilege shields attorneys from liability when advocating for their clients in anticipation of suit." Mot. at 17.

- Defendants misrepresent the holdings of "*Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 22 (2008)" and "*Anderson v. City of Mount Vernon*, 2024 U.S. Dist. LEXIS 87787, at \*21-22 [(S.D.N.Y. May 13, 2024)]." Neither case concerns the litigation privilege.

- Defendants misrepresent the holding of *Curiano v. Suozzi*, 63 N.Y.2d 113, 119 (1984). *Curiano* does not hold that "resort to legal process, if unwarranted or malicious, does not support an IIED claim," Mot. at 21, nor does it concern IIED claims at all.

- Defendants misquote *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1280 (N.Y. 1991) and *Mann v. Abel*, 885 N.E.2d 884, 885 (N.Y. 2008). Mot. at 21. The purportedly quoted language—that statements that are "accompanied by a recitation of facts on which they are based" or "that do not imply the existence of undisclosed facts" are constitutionally protected—does not appear in either case. *Id.*

- Defendants fabricate a citation to "*Klein v. McGauley*, 29 A.D.3d 432, 432 (1st Dep't 2006)." Mot. at 26. A different court published *Klein* in a different year and in a different reporter. *See* 29 A.D.2d 418 (N.Y. App. Div. 1968). The reporter to which Blackburn cites is, instead, attributable to *Matter of Ullah v. Kelly*, 29 A.D.3d 432 (N.Y. App. Div. 2006). Neither case concerns IIED claims or contains the "quoted" language.

- Defendants misrepresent the holding of *Howell v. New York Post Co.*, 612 N.E.2d 699 (N.Y. 1993). *Howell* does not stand for the proposition that "[i]f conduct constitutes defamation, it cannot also be the basis for an intentional infliction of emotional distress claim," Mot. at 28, nor does it concern defamation claims at all.

- Defendants misrepresent the holding of *Greenberg v. Spitzer*, 62 N.Y.S.3d 372, 386 (N.Y. App. Div. 2017). *Greenberg* does not stand for the proposition that "[c]ourts have consistently refused to allow an IIED claim to proceed where it is based upon statements about matters of public concern," Mot. at 28, nor does it concern, or cite to cases concerning, IIED claims at all.

- Defendants misrepresent the holding of *Sheila C. v. Povich*, 11 A.D.3d 120 (N.Y. App. Div. 2004). *Sheila C.* does not stand for the proposition that an IIED claim must allege "emotional distress that is severe and debilitating," Mot. at 28, nor does it elaborate on the pleading standard for "emotional distress" at all.

Blackburn thus unquestionably violated his duty to this Court to ensure the accuracy and truthfulness of his filings and should be sanctioned.

Notably, several courts had already admonished Blackburn for his ethical violations before he filed the Motion. Last year, Judge Cote found that a "reasonable inference from Blackburn's

pattern of behavior is that he improperly files cases in federal court to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly." *Zunzurovski v. Fisher*, No. 23-CV-10881, 2024 U.S. Dist. LEXIS 62568, at *14 (S.D.N.Y. Apr. 3, 2024). Judge Oetken issued a "warning to" Blackburn, because his "filings are replete with inaccurate statements of law" and "full of similar irrelevant insults, misstatements, and exaggerations." *Jones v. Combs*, No. 24-CV-1457, 2025 U.S. Dist. LEXIS 54277, at *10 (S.D.N.Y. Mar. 24, 2025).

Most recently, on June 26, 2025, the Honorable William S. Stickman IV of the United States District Court for the Western District of Pennsylvania ordered Blackburn to show cause why he should not be sanctioned for using "wholly fabricated quotations from caselaw," "fabricated quotations from the Court's own prior opinion," and "non-existent quotations" in his briefs which "repeatedly misrepresent case law." *Jakes v. Youngblood*, No. 24-CV-1608 (W.D. Pa.), ECF 53 at 7-8 (June 26, 2025). Judge Stickman viewed Blackburn's actions as "very troubling" and a "clear ethical violation of the highest order," finding that Blackburn invoked "a conscious effort to deceive and mislead the Court." *Id.*

In his filed response to Judge Stickman's order, Blackburn acknowledged his failure to verify case citations, claiming he relied on "emerging legal technology." *Youngblood*, ECF 57 at 6 (June 26, 2025). Blackburn represented that he learned his lesson, stating that "I now understand that paraphrases—particularly those closely tracking the language from cases— must never be enclosed in quotation marks unless they accurately reflect the precise language of the cited source." *Id.* at 8. Blackburn later represented that "unequivocal accountability when wrong is how [he] was raised, and all that [he] know[s]," and that, between July 18, 2025 and August 8, 2025, he completed "more than eleven hours of CLE courses focused on artificial intelligence, ethics, data

protection, and small firm compliance" in "an effort to ensure this never happens again." *Youngblood*, ECF 63 at 3-4 (Aug. 19, 2025).

Blackburn filed the Motion *after* Judge Stickman's admonitions, *after* acknowledging the impropriety of misquoting cases, and *after* claiming he took CLE courses on the use of AI. Given Blackburn's history of submitting briefs riddled with misrepresentations and his failed attempts to correct his conduct, there is no longer any doubt that Blackburn is just sloppily relying on new technology. Rather, Blackburn's version of "lawyering" is simply an unethical ploy to mislead the Court and obstruct justice.

The Court should not tolerate this pattern of deception. It is time, once and for all, for Blackburn to be sanctioned for his flagrant disregard of his duties and responsibilities to the court in fabricating and intentionally misconstruing legal authority. At minimum, Blackburn's conduct erodes the credibility of Defendants' arguments, rendering their motion fundamentally untrustworthy and inappropriate for consideration by the Court.

## II.     The Complaint States a Claim For Defamation (Counts I and II)

Cartagena pleads that Defendants fabricated and publicly spread knowingly false, scandalous accusations of criminal conduct against Cartagena on social media and in interviews, with the intent to coerce him into paying millions of dollars. SAC ¶¶ 123-41. Defendants nevertheless argue that Cartagena's defamation claim should be dismissed because: (*a*) it is time-barred; (*b*) Defendants' statements are non-actionable opinions; (*c*) Cartagena does not plead malice; (*d*) Defendants' statements are privileged; and (*e*) Defendants are entitled to defame Cartagena simply because his songs contain provocative lyrics. Defendants are wrong, and the Court should deny their motion to dismiss Counts I and II.

### A.  Cartagena's Defamation Claims are Timely

In a single sentence, Defendants argue that some of their defamatory statements are barred by a one-year statute of limitations. *See* Mot. at 6. Defendants are plainly incorrect because they made each of the Sexual Assault Statements, the Statutory Rape Statements, the Hit Job Statements and Corroboration Statements on or after April 29, 2024, *i.e.,* less than one year before Cartagena filed the initial complaint. (SAC ¶¶ 124, 132, 143). Cartagena's defamation claim is therefore timely. *See* CPLR § 215(3).

### B.  Defendants' Defamatory Statements Are Statements of Fact

Without any elaboration, Defendants claim that "many of the challenged statements are either non-actionable opinions or rhetorical hyperbole, fully protected under the First Amendment." Mot. at 6, 21. Defendants' argument is baseless. Cartagena's defamation claim against Dixon is predicated on Dixon's false statements of fact that Cartagena engaged in criminal activity, not opinion, including that: (a) Cartagena "WAS DATING AND HAVING SEX WITH A 16 YEAR OLD GIRL;" (b) Cartagena flew an "underage" girl "across state lines and out the country;" and (c) Cartagena "HAD A FULL FLEDGE RELATIONSHIP WITH NIKKI WHO WAS UNDERAGE." SAC ¶ 143. Likewise, Cartagena's defamation claim against Blackburn is predicated on Blackburn's false statement of facts that Cartagena "ordered a hit job" against Dixon (*Id.* ¶ 132(a)) and that Blackburn had a recording of Cartagena's "girlfriend" admitting that she started dating Cartagena when she was 16-years-old. (*Id.* ¶ 132(b)). Blackburn even clarified that this latter statement was "according to" himself, "100 percent," telling a podcast host to "blame" him if he was wrong and that he would "indemnify [the host] a hundred percent." (*Id.* ¶ 132(c)).

These statements are factual allegations of criminal conduct, not opinion, and Defendants' argument fails. *See Erdman v. Victor*, No. 20-CV-4162, 2021 U.S. Dist. LEXIS 222159, at *7-8 (S.D.N.Y. Nov. 17, 2021) (motion to dismiss defamation claim denied where defendant falsely

accused plaintiff of committing crimes); *cf. Steinhilber*, 501 N.E.2d at 552-53 ("When … the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a mixed opinion and is actionable.").

### C.    The Complaint Pleads Actual Malice

Defendants argue that "Plaintiff does not plead a single non-conclusory fact supporting actual malice." Mot. at 8. Actual malice "simply means the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019). Actual malice "can be established through the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence." *Brimelow v. N.Y. Times Co.*, No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *5-6 (2d Cir. Oct. 21, 2021) (quotations omitted). Cartagena pleads that Dixon made the Sexual Abuse Statements and Statutory Rape Statements, and Blackburn made the Hit Job Statements and Corroboration Statements with actual malice.

####    1.    Defendants Knew Their Defamatory Statements Were False

***Sexual Assault Statements***. Cartagena denies the Sexual Assault Statements, which accuse him of an act that Dixon claims to have personally witnessed. SAC ¶ 44. Because Dixon claims to have personally witnessed something that did not happen, actual malice is presumed. *See* 1 Rodney A. Smolla, *Law of Defamation* § 3:45.50 (2d ed. 2025) ("[D]eliberate [first-hand] fabrications, if proven, should in almost all circumstances automatically satisfy the actual malice standard.") Moreover, Cartagena alleges that Dixon knew that the inappropriate touching allegations in question were made against *him*, not Cartagena, and therefore knew that the Sexual Assault Statements were false when he made them. *Id*. ¶¶ 52, 126(c).[1] *See Erdman*, 2021 U.S. Dist. LEXIS

---

[1] Defendants rely on *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174 (S.D.N.Y. 2020) for the proposition that Cartagena's defamation claims must be dismissed because he "does not allege that Defendant retracted his

at \*7-8 (actual malice pled where defendant "acted out of spite" and a "desire to retaliate" in falsely accusing plaintiff of committing crimes); *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 309 (S.D.N.Y. 2023).

***Statutory Rape Statements***. Cartagena also alleges that Dixon knew that his Statutory Rape Statements were false. SAC ¶ 126. Indeed, Cartagena alleges that Dixon did not corroborate the age of any of the alleged minors that Cartagena allegedly had relationships with. *Id.* ¶ 53. Dixon's motion to dismiss fails for this reason alone. *See Sweeney v. Prisoners' Legal Servs.*, 647 N.E.2d 101, 104 (N.Y. 1995) ("Evidence that defendants purposefully avoided the truth may support a finding of actual malice if supported by evidence that defendants' inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the published statement.") (quotations omitted); *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 692 (1989).

***Hit Job Statements***. Blackburn publicly stated that Cartagena had "ordered a hit job" on Dixon and that he even possessed an audio recording corroborating his statement. SAC ¶ 132(a). However, the transcript of the alleged audio recording evidencing Cartagena's purported hit shows no such thing. Rather, the recording was a conversation between two other individuals, identified as "Pete" and "Percy," not Cartagena. *Id.* ¶ 92. And the actual content of the audio files provided by Blackburn did not contain any statements or evidence indicating that Cartagena had directed anyone to harm Dixon. *Id.* Thus, Blackburn knew that the Hit Job Statements were false because the alleged recordings allegedly providing the basis for his statements did not reference Cartagena

---

statements, contradicted them, or was ever presented with evidence disproving them before publication" nor "plead that Defendant harbored any doubt about their accuracy." Mot. at 9. *McDougal* merely holds that political bias alone is insufficient to plead malice. 489 F. Supp. 3d at 185. Cartagena pleads far more than political bias.

ordering or requesting any violent act against Dixon. *See St. Amant v. Thompson,* 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."); *Ousmane Bah v. Apple Inc.*, No. 19-cv-3539, 2020 U.S. Dist. LEXIS 22867, at *27 (S.D.N.Y. Feb. 10, 2020) ("[Plaintiff] alleges that defendants were highly aware that these statements were probably false, satisfying New York's definition of actual malice.").

***Corroboration Statements***. Blackburn stated that he possessed audio evidence of Cartagena's "girlfriend" admitting to having started a sexual relationship with Cartagena when she was 16 years old and he was in his late 30s. Blackburn asserted that this was "clear as day" on the recording and that the woman described the relationship as "inappropriate" because she was a child. SAC ¶ 93. The actual audio provided did not mention Cartagena or contain any such admission, however. *Id.* ¶ 94. Blackburn thus knew his statements were false when he made them.

### 2.   Malice May Be Inferred From Defendants' Actions and Statements

Actual malice "can be established through the defendant's own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence." *Brimelow*, 2021 U.S. App. LEXIS 31672, at *5-6 (quotations omitted). The court can also infer Defendants' malice from their statements, actions and motives. *See Harte-Hanks*, 491 U.S. at 667-68.

First, Cartagena alleges that Dixon made statements to family members that he would put false information about Cartagena on social media to obtain money from him, saying he would "take all of Joe's money" if they did not stop working with Cartagena. SAC ¶ 36. Dixon also sent Cartagena's manager a doctored image of a news headline reading, "FAT JOE STATUTORY RAPE VICTIM REVEALED," and threatened, "This is what the news paper is going to look like

wow is daughter is going to be real proud of him I'm going to tag Jordan Nike cnn the wthite the president and the vice president every major outlet will have this now think about it this just one." *Id.* ¶¶ 40-41. Dixon further warned, "***The countdown is on***[.] Tell the fat man be smart. I warned him before," and added, "***I'm the predator, Joe's the prey***." *Id.* ¶ 42.

Second, the court can infer Defendants' malice from their motive. Cartagena alleges that Defendants made their defamatory statements neither in good faith nor as part of legitimate legal advocacy, but rather as part of a calculated campaign to extort Cartagena. *Id.* ¶ 134. Dixon even admitted to Cartagena's counsel that the allegations of statutory rape and other crimes were side shows intended to pressure Cartagena into a financial settlement over Dixon's purported unpaid services. *Id.* ¶ 80; *see Harte-Hanks*, 491 U.S. at 668 (holding that Defendant's profit motives were properly considered in finding actual malice and ruling that "evidence concerning motive … bears" on the "actual malice inquiry.").

Third, the timing of Dixon's statements show malice. After years of amicable professional association, Dixon suddenly began making false and scandalous allegations against Cartagena in a calculated effort to extort money. Although Dixon sought unearned compensation, he fabricated accusations of unrelated sexual misconduct and other crimes with the intent to damage Cartagena's reputation and force a lucrative settlement. SAC ¶ 44.

Defendants argue that their "statements are true" and, "upon information and belief," that Cartagena knew so. Mot. at 9-10. These arguments are nonsensical and contradicted by Cartagena's allegations in his Complaint, which are assumed true for purposes of the Motion. *See Ashcroft*, 556 U.S. at 679. They also depend on four pages of new "facts" outside of Cartagena's Complaint that must be discarded. *Supra* Sec. I(A).

### D. Defendants' Defamatory Statements Are Not Privileged

Under New York law, "statements pertinent to a good faith anticipated litigation" are protected by a qualified privilege. *Front, Inc. v. Khalil*, 28 N.E.3d 15, 19 (N.Y. 2015). This privilege is not absolute because "extending privileged status to communication made prior to anticipated litigation has the potential to be abused" and "ensures that privilege does not protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims[.]" *Id.* Defendants' invocation of the litigation privilege is a failed attempt to sanitize their relentless campaign of public defamation against Cartagena.

Defendants first argue that Dixon's "pre-suit correspondence," "statements regarding his unpaid musical contributions" and "alleged involvement in a pattern of sex and labor trafficking" are privileged communications in anticipation of litigation. Mot. at 13-14. This argument is besides the point, as Cartagena's defamation claims do not rest on those statements. The claims are instead rooted in Defendants' repeated, malicious, and highly public statements. These are not confidential pre-suit legal discussions, privileged negotiations or demands for royalties. They are calculated, attention-seeking attacks broadcast to the world with the sole purpose of destroying Cartagena's reputation and extorting a payout that were not made in anticipation of litigation. *See Front, Inc.*, 28 N.E.3d at 19; *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-02441, 2022 U.S. Dist. LEXIS 188347, at *11 (E.D.N.Y. Oct. 14, 2022); *Menaker v. Kaplan*, No. 17-cv-5840, 2019 U.S. Dist. LEXIS 68559, at *8-9 (E.D.N.Y. Apr. 23, 2019).

Although not fully developed, Defendants also argue that interviews, podcasts or social media posts about ongoing or potential litigation are privileged.[2] Yet Defendants do not actually

---

[2] Defendants' argument is based on *Dfinity Found v. N.Y. Times Co.*., No. 23-7838-cv, 2024 U.S. App. LEXIS 18619 (2d Cir. July 29, 2024) and *Gottwald v. Sebert*, 220 N.E.3d 621 (N.Y. 2023), Mot. at 16, neither of which are

argue that the Sexual Assault Statements, Statutory Rape Statements, Hit Job Statements and Corroboration Statements are privileged. Their decision not to do so is telling because none of those statements were made in anticipation of litigation. *See CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-cv-377, 2022 U.S. Dist. LEXIS 211760, at *7-8 (S.D.N.Y. Nov. 22, 2022) (holding that there were "no allegations suggesting that the defendants were anticipating litigation" at the time they made the statements).

Moreover, Defendants' statements are not privileged because, as noted, they were not made in good faith or as part of legitimate legal advocacy. SAC ¶ 134; *see Morass v. White*, 571 F. Supp. 3d 77, 101 (S.D.N.Y. 2021) (holding that the litigation privilege did not apply where the Complaint alleged that the defamatory statements were part of a "campaign of harassment"); *see also Menaker*, 2019 U.S. Dist. LEXIS 68559, at *8; *Chang v. Arroyave*, No. 55459/2020, 2020 N.Y. Misc. LEXIS 49085, at *4 (N.Y. Sup. Ct. Aug. 12, 2020). Defendants instead calculated their malicious lies to destroy Cartagena's life and career. *Id.* ¶ 138.

### E.    Cartagena's Artistic Expression Is Not A License For Defendants To Defame

Defendants' argument descends to a new low of desperation and bad faith, asserting that they are entitled to defame Cartagena simply because one of his songs contains provocative lyrics. Mot. at 11-12. This argument is not only a grotesque distortion of the lyrics, but a baseless smear. Tellingly, Defendants cite no authority—because none exists—for the proposition that artistic expression, no matter how controversial, opens the door to wholesale character assassination and false criminal accusations.

---

applicable. *Dfinity* concerned a report and video analyzing the collapse of a blockchain asset and had nothing to do with statements to press interviews, podcasts or social media posts about potential litigation. *Gottwald* reaffirmed that allegations of sham litigation are sufficient to overcome the statutory privilege under Civil Rights Law § 74, which Defendants do not argue applies here.

Defendants' selective and misleading reading of Cartagena's lyrics mirrors the very pattern of fabrication and defamation at the heart of this case. The lyrics in question do not, by any stretch, admit to or glorify illegal conduct. To the contrary, they make clear that Cartagena was ***not*** having relations with a minor. Defendants' willful mischaracterization is yet another example of their calculated campaign to destroy Cartagena's reputation. Their argument is thus not just meritless, but is also a cynical, bad faith attempt to weaponize artistic expression as a shield for their own outrageous misconduct.

### III. The Complaint States a Claim For Intentional Infliction of Emotional Distress (Count III)

Defendants make several ill-fated arguments against Cartagena's IIED claim, one of which is that the litigation privilege also bars Cartagena's IIED claim. *See* Mot. at 17. As a threshold matter, the two cases Defendants cite for this proposition have nothing to do with the litigation privilege. *See supra* Sec. I(B) (discussing *Marmelstein* and *Anderson*). But even assuming that the litigation privilege *can* apply to IIED claims, it does not apply here for the same reasons discussed *supra* Section II(D).

Defendants make three remaining arguments: (A) the Complaint does not state a claim for IIED because (1) Cartagena does not plead extreme and outrageous conduct by either Dixon or Blackburn, and (2) Cartagena has not alleged severe emotional distress; and (B) Cartagena's IIED claim against Dixon is duplicative of Cartagena's defamation claim.[3] They are all baseless.

---

[3] Defendants argue that "Plaintiff's References to … [New York Rules of Professional Conduct] Rule 3.4(e) Violations" are improper, when the Complaint does not even mention Rule 3.4(e), nor is Plaintiff's IIED claim dependent on proving a Rule 3.4(e) violation. Defendants also argue that Plaintiff's IIED claim is barred as a matter of public policy, Mot. at 28, but make no meaningful attempt to flesh out this argument, relying solely on *Greenberg v. Spitzer*, which, as noted *supra* Sec. I(B), does not actually concern an IIED claim at all.

A.    **The Complaint States a Claim for Intentional Infliction of Emotional Distress**

The elements of a claim for IIED are: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 104 (S.D.N.Y. 2020) (citing *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). Defendants do not contest that Cartagena has adequately alleged intent or a causal connection between the offending conduct and Cartagena's injuries, focusing only on the "extreme and outrageous conduct" and "severe emotional distress" elements. Yet the Complaint contains numerous well-pleaded allegations as to both elements.

1.    The Complaint Pleads Extreme and Outrageous Conduct

For conduct to form the basis of an IIED claim, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *HC2, Inc.*, 510 F. Supp. 3d at 104. Conduct that is "part of a continuous pattern of malicious behavior, or conduct that will leave a lasting harm upon its victim, is extreme and outrageous enough to move past a dispositive motion." *Doe v. Doe*, No. 16-cv-0332, 2017 U.S. Dist. LEXIS 109692, at *12 (S.D.N.Y. July 14, 2017). Another hallmark of extreme and outrageous conduct is "extraordinarily vindictive[ness]." *Id.* Threat of physical harm can amount to extreme and outrageous conduct but is not required. *See Carandang v. Shapiro*, No. 12-cv-5634, 2013 U.S. Dist. LEXIS 61707, at *10 (S.D.N.Y. Apr. 30, 2013).

Although IIED does not proscribe specific conduct, extreme and outrageous conduct is adequately pled where the complaint alleges "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Goolden v. Wardak*, No. 19-CV-6257, 2020 U.S. Dist. LEXIS 131748, at *15 (S.D.N.Y. July 23, 2020) (quotations omitted);

22

*see Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999) (denying motion to dismiss IIED claim where defendant engaged in a "campaign to severely harass, stalk, and defame [plaintiff] with the intent to ruin her life and reputation"); *Hodges v. McGough Enters., LLC*, No. 23-cv-05016, 2025 U.S. Dist. LEXIS 109230, at *6-7 (S.D.N.Y. June 4, 2025) (threats of fabricated civil and criminal actions, coupled with blackmail and public smearing). Cartagena's allegations align with nearly all these categories.

The Complaint alleges that Dixon engaged in an extensive campaign of false accusations of the most vile acts. Dixon broadcast false claims that Cartagena had committed pedophilic acts, statutory rape, and other instances of sexual assault on at least nine separate occasions, each time through his Instagram account. *See* SAC ¶¶ 143(a)-(i). Making such baseless, heinous accusations through a public medium intended to reach a biggest possible audience undisputedly "goes beyond all possible bounds of decency." *See HC2, Inc.*, 510 F. Supp. 3d at 104. Dixon similarly accused Cartagena publicly of a "long history of stealing and robbing people," including underpaying and failing to give songwriting credit to Dixon*, see* SAC ¶¶ 143(a)-(i)—allegations that are especially harassing to Cartagena, a musician and entrepreneur and which could, and already have, led to loss of employment. *See* SAC ¶¶ 111-22. Moreover, the Complaint describes this conduct as a "blatant money grab," *id.* ¶ 35—attempted blackmail—which is another characteristic of extreme and outrageous conduct. *Hodges*, 2025 U.S. Dist. LEXIS 109230, at *6-7.

Dixon cites no authority—nor could he—that such conduct cannot form the basis of an IIED claim. Dixon attempts to excuse his conduct by labeling it as "publicly stating the truth about his experiences." Mot. at 27. This is demonstrably false, but it is also beside the point; on this Rule 12(b)(6) motion to dismiss, the Court is required to accept the Complaint's well-pled allegations—that Dixon's statements are fabricated—as true. *See Lynch*, 952 F.3d at 74-75.

Blackburn, on the other hand, threatened to file baseless lawsuits and report Cartagena to Homeland Security if he did not accede to Dixon's demands. *See* SAC ¶¶ 145-47. He sent letters to Cartagena containing false allegations that he had sex with minors and engaged in sex trafficking, which he falsely claimed to have personally corroborated. *Id.* ¶¶ 146-55. Then, after Cartagena initiated this lawsuit, Blackburn, like Dixon, took his actions public. Blackburn falsely stated on his Instagram account that Cartagena "ordered a hit job against" Dixon and sought to lure Dixon to a location to be "pound[ed] out," and separately claimed to have a recording of a witness describing a sexual assault Cartagena purportedly committed while she was underage. *Id.* ¶ 157(a)-(b). Finally, Blackburn intentionally or recklessly ran his car into Cartagena's process server to avoid service of the Complaint. *Id.* ¶ 157(c). Blackburn's actions—threats of fabricated civil and criminal action, blackmail, public smearing, and physical abuse—are prime examples of extreme and outrageous conduct. *See Hodges*, 2025 U.S. Dist. LEXIS 109230, at *6-7; *Goolden v. Wardak*, 2020 U.S. Dist. LEXIS 131748, at *15.

Blackburn's attempts to contextualize his conduct as "protected litigation activity," "crisis-response communication," and "justified by his ethical duty to defend his client" are futile. Mot. at 21. Sending extortionate demand letters filled with vile and untrue accusations—the falsity of which the Court is required to accept for purposes of this Motion, *see Lynch*, 952 F.3d at 74-75—is not protected litigation activity and is never justified. Nor, of course, is ramming one's car into a process server to avoid service. *Id.* ¶ 157(c).

In short, the Complaint alleges numerous acts that are extreme and outrageous even when viewed in isolation. But the whole of Cartagena's IIED claim is greater than the sum of its parts—revealing a campaign of intolerable harassment persisting today.

### 2.   The Complaint Pleads Severe Emotional Distress

Defendants argue that Cartagena has not adequately pled severe emotional distress, equating the effect of their actions on Cartagena to "preschool-level hurt feelings" and complaints of the type "typically voiced by toddlers in daycare." Mot. at 28. This dismissive attitude is telling and, frankly, a sad reflection of Defendants' non-existent standards for decency. Cartagena does not consider accusations of pedophilia, statutory rape, sexual assault, and other criminal conduct to be mere schoolyard bullying, nor would any reasonable individual.

Defendants argue that Cartagena provides no "diagnosis, … medical documentation, … or hospitalization records … that would suggest actual harm." Mot. at 28. They do not cite to any authority holding that such evidence is required to support an IIED claim, however, let alone for such a claim to merely survive a motion to dismiss. In fact, this court has held that medical testimony is unnecessary. *Doe v. Doe*, 2017 U.S. Dist. LEXIS 109692, at *20. In *Doe,* the plaintiff alleged that the defendant's exposure of her private sexual behavior led her to develop depression, humiliation, and anxiety. *Id.* These allegations were sufficient where the defendant could not provide any alternative explanation for plaintiff's injuries. *Id*., at *20-21. In fact, *Doe* granted summary judgment to the plaintiff on her IIED claim despite viewing the evidence in the light most favorable to the *defendant*, which is the opposite of the case here on a Rule 12(b)(6) motion to dismiss. *See SLS Brands, LLC v. Authentic Brands Grp., LLC*, No. 19-CV-8115, 2021 U.S. Dist. LEXIS 21438, at *4 (S.D.N.Y. Feb. 4, 2021).

Like the defendants in *Doe*, Defendants here offer no alternative explanation for the pain and humiliation Cartagena alleges he suffered from Defendants' unconscionable actions, which are similar in severity to the defendant's actions in *Doe*. SAC ¶ 112. Cartagena is not required to do more—certainly not at the pleading stage.

## B.      Cartagena's IIED Claim is Not Duplicative of His Defamation Claim

Defendants contend that Cartagena's IIED claim is duplicative of his defamation claim. Mot. at 21. Defendants are wrong. As a threshold matter, IIED and defamation claims can coexist. *See Hodges*, 2025 U.S. Dist. LEXIS 109230, at *6-9; *Baez v. JetBlue Airways Corp.*, No. 09-CV-596, 2009 U.S. Dist. LEXIS 67020, at *37-41 (E.D.N.Y. Aug. 3, 2009).

Moreover, Cartagena's IIED claim is predicated on different conduct than his defamation claim. While the defamation claim alleges that Defendants made false statements about Cartagena, the IIED claim alleges that Defendants engaged in conduct which was intended to harass, threaten, and intimidate Cartagena, above and beyond any reputational injury. In particular, the Complaint alleges, among other actions, that Defendants (i) made statements regarding Cartagena that, although not defamatory, were extreme and outrageous, including humiliating accusations concerning Cartagena and his wife's private sexual behavior; (ii) threatened to report Cartagena to Homeland Security; (iii) physically assaulted members of Cartagena's process server; (iv) sent ominous and threatening statements to Cartagena's manager; and (v) threatened Cartagena with disclosures designed to disparage him in the eyes of his children. SAC ¶¶ 41-42, 59-61, 72-74, 158. Such behavior clearly constitutes the type of "extreme and outrageous" conduct that goes well beyond defamatory statements. *See Brummer v. Wey*, No. 153583/2015, 2016 N.Y. Misc. LEXIS 2029, at *9-10 (N.Y. Sup. Ct. Mar. 1, 2016).

Moreover, Cartagena seeks separate and distinct damages for his IIED claim from those sought for his defamation claim. *Compare* SAC ¶ 129 (seeking compensation for lost business opportunities and contracts stemming from reputational harm); *with id.* ¶ 158 (seeking damages for the severe emotional distress caused by Defendants' actions); *see Hanly v. Powell Goldstein, LLP*, No. 05-CV-5089, 2007 U.S. Dist. LEXIS 17152, at *20 n.9 (S.D.N.Y. Mar. 5, 2007) (claims are not duplicative when the alleged injuries are different).

Accordingly, Cartagena's IIED claim alleges a distinct set of severe and outrageous conduct, as well as separate damages, and is thus not duplicative of his defamation claim.

## **CONCLUSION**

For these reasons, the Court should deny Defendants' Motion to Dismiss and impose sanctions against Blackburn for misrepresenting and fabricating legal authority.

Dated:   September 5, 2025
New York, New York

*/s/ Joseph Tacopina*

Joseph Tacopina
Chad Seigel
**Tacopina Seigel & DeOreo**
275 Madison Avenue, 35th Floor
New York, New York 10016
212-227-8877
jtacopina@tacopinalaw.com
cseigel@tacopinalaw.com

**Of Counsel:**

Jordan W. Siev
**Reed Smith LLP**
599 Lexington Avenue, 22nd Floor
New York, New York 10022
212-205-6087
jsiev@reedsmith.com

**WORD CERTIFICATION**

       I hereby certify that the word count of this Memorandum of Law complies with the word limit of Local Rule 7.1(c). According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Rule 7.1(c), is 8,516 words.

Dated: New York, New York
       September 5, 2025

                                            */s/ Jordan W. Siev*
                                            Jordan W. Siev