# EXHIBIT A

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 2 of 32

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

MONIQUE FACEY,                                    Index No.: 152088/2025

                              Plaintiff,

           -against-

LIANE FISHER and FISHER TAUBENFELD, LLP,

                              Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO
STRIKE AND FOR SANCTIONS, AND IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
AND AN AWARD OF SANCTIONS**

**Of Counsel:**
  Lisa L. Shrewsberry, Esq.

TRAUB LIEBERMAN STRAUS &
SHREWSBERRY LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600
*Attorneys for Defendants Liane Fisher and
Fisher Taubenfeld, LLP*

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 3 of 32

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................3

    Background ...............................................................................................3

    Complaint Filed Against the Law Firm in Federal Court ...................................6

    The Law Firm's Efforts to Compel Plaintiff to Accept Her Funds .....................6

ARGUMENT ...................................................................................................9

    POINT I --    PLAINTIFF CANNOT DEMONSTRATE A CLAIM FOR
                  NEGLIGENCE OR BREACH OF FIDUCIARY DUTY
                  AGAINST THE LAW FIRM .........................................................9

    POINT II --    PLAINTIFF CANNOT DEMONSTRATE A CLAIM
                  AGAINST THE LAW FIRM FOR VIOLATION OF
                  NEW YORK JUDICIARY LAW §487 ........................................13

    POINT III --    PLAINTIFF CANNOT DEMONSTRATE A CLAIM FOR
                  CONVERSION AGAINST THE LAW FIRM ............................15

    POINT IV --    PLAINTIFF CANNOT DEMONSTRATE A CLAIM OF
                  FRAUD AGAINST THE LAW FIRM .........................................17

    POINT V --    THE LAW FIRM IS ENTITLED TO AN AWARD OF
                  SANCTIONS ...............................................................................19

    POINT VI --    PLAINTIFF'S CROSS-MOTION MUST BE DENIED ..............22

                  A.    Request for Sanctions .......................................................22
                  B.    Request to Strike .............................................................22

CONCLUSION .................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                        **PAGE(S)**

*Amalfitano v. Rosenberg*,
   12 N.Y.3d 8 (2009) ................................................................. 13

*Armstrong v. Blank Rome LLP*,
   126 A.D.3d 427 (1st Dep't 2015) ....................................................... 13

*Beudert-Richard v. Richard*,
   72 A.D.3d 101 (1st Dep't 2010) ........................................................10

*Bill Birds, Inc. v. Stein Law Firm, P.C.*,
   35 N.Y.3d 173 (2020) ................................................................ 13

*Briarpatch Ltd., LLP v. Frankfurt Garbus Klein & Seiz*,
   13 A.D.3d 296 (1st Dep't 2004) ....................................................... 13

*Burgher v. AF 111 Props. LLC*,
   80 A.D.3d 1055 (3d Dep't 2011) .......................................................12

*Dombrowski v. Bulson*,
   19 N.Y.3d 347 (2012) ................................................................ 10

*Dukuray v. Experian Info. Sols.*,
   2024 U.S. Dist. LEXIS 132667 (S.D.N.Y. 2024) .................................. 21

*Facebook, Inc. v. DLA Piper LLP (US)*
   134 A.D.3d 610 (1st Dep't 2015) ...................................................... 13

*Fields v. Turner*,
   1 Misc. 2d 679 (N.Y.Co. 1955) ....................................................... 14

*Franklin v. Winard*,
   199 A.D.2d 220 (1st Dep't 1993) ...................................................... 10

*FTI Consulting, Inc. v. CT Miami, LLC*,
   2018 N.Y. Misc. LEXIS 3406 (N.Y. Co. 2018) ...................................... 9

*Guidance Endodontics, LLC v. Olshan Grundman Frome Rosensweig & Wolosky, LLP*,
   157 A.D.3d 508 (1st Dep't 2018) ...................................................... 18

*Iberdola Energy Products v. MUFG Union Bank*,
   218 A.D.3d 409 (1st Dep't 2003) ...................................................... 15

*InKine Pharm. Co. v. Coleman*,
   305 A.D.2d 151 (1st Dep't 2003) ....................................................... 9

*Jean v. Chinitz,*
  163 A.D.3d 497 (1st Dep't 2018) ............................................. 13

*Lauer v. Rapp,*
  190 A.D.2d 778 (2d Dep't 1993) ............................................. 10

*Levine v. Lacher & Lovell-Taylor,*
  256 A.D.2d 147 (1st Dept' 1998) ............................................ 10

*Meese v. Miller,*
  79 A.D.2d 237 (4th Dep't 1981) ............................................. 15

*Park v. Kim,*
  91 F.4th 610 (2d Cir. 2024) ............................................... 20-21

*Pellegrino v. File,*
  291 A.D. 2d 60 (1st Dep't 2002) *lv. denied,*
  98 N.Y.2d 606 (2002) ........................................................ 11

*People v. Chess,*
  162 A.D.3d 1577 (4th Dep't 2018) .......................................... 16

*Price v. Herestic,*
  240 A.D.2d 151 (1st Dep't 1997) ........................................... 10

*Prudential Ins. Co. v. Dewey, Ballentine, Bushby, Palmer & Wood,*
  170 A.D.2d 108 (1st Dep't 1991) ........................................... 10

*Shea v. Hambros PLC,*
  244 A.D.2d 39 (1st Dep't 1998) ............................................ 17

*Singh v. Trief & Olk,*
  26 Misc.3d 1211(A)(Kings Co. 2009) ........................................ 9

*Sonnenschine v. Giacomo,*
  295 A.D.2d 287 (1st Dep't 2002) ........................................... 9

*State v. Wyatt,*
  935 N.W.2d 669, 2019 WL 5692291 (2019) .................................... 14

*Stroock & Stroock & Lavan v. Beltramini,*
  157 A.D.2d 590 (1st Dep't 1990) ........................................... 10

*Waggoner v. Caruso,*
  68 A.D.3d 1 (1st Dep't 2009) .............................................. 17

*William v. Kaufman Org., Ltd. v. Graham James LLP,*
  269 A.D.2d 171 (1st Dep't 2000) ........................................... 9

*Wolkstein v. Morganstern,*

iii

275 A.D.2d 635 (1st Dep't 2000) ........................................................ 12

*Won The Hwang v. Bierman,*
206 A.D.2d 360 (2d Dep't 1994) ........................................................ 10

*Zarin v. Reid & Priest,*
184 A.D.2d 385 (1st Dep't 1992) ........................................................ 11

**STATUTES**

22 NYCRR 130-1.1 ........................................................................... 1, 20

CPLR5003-a ...................................................................................... 10

CPLR 3016 .................................................................................... 13, 17, 18

CPLR 3211 ......................................................................................... 1, 23

CPLR 5003-a ......................................................................................... 3

New York Judiciary Law §487 ....................................................... i, 1, 13, 14

iv

## PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to plaintiff's cross-motion to strike and for sanctions, and in reply to plaintiff's opposition to the motion by defendants Liane Fisher and Fisher Taubenfeld, LLP (collectively, "the law firm"), to dismiss the amended complaint pursuant to CPLR 3211(a)(1) and (7), as well as for an order of sanctions pursuant to 22 NYCRR 130-1.1 (a), (c)(2) and (3).

Initially, it must be noted that the version of the amended complaint that was the subject of this motion, and which paragraphs and causes of action were referenced in support of same, was filed by plaintiff on March 3, 2025, and is annexed to the reply affirmation of Lisa L. Shrewsberry, dated April 16, 2025, as Exhibit "A." Such amended complaint was designated as First Amended Civil Complaint, filed as Docket No. 6, is 52 pages in length, and contained the six causes of action addressed in the law firm's motion, for conversion, fraud, unjust enrichment, negligence (legal malpractice), breach of fiduciary duty and negligent infliction of emotional harm, as well as a claim for treble damages under New York Judiciary Law §487 (although plaintiff did not allege a cause of action for same). It appears that plaintiff thereafter replaced such amended complaint with a second amended complaint on March 7, 2025, also filed as Docket No. 6, a copy of which is annexed to the reply affirmation of Lisa L. Shrewsberry as Exhibit "B." Such second amended complaint (which also bears the designation of First Amended Civil Complaint), reduced plaintiff's claims to three causes of action, sounding in breach of fiduciary duty, negligence (legal malpractice) and negligent infliction of emotional harm, as well a claim for treble damages under Judiciary Law §487 (without alleging a cause of action for same).

Therefore, in her second amended complaint plaintiff has withdrawn her claims for conversion, fraud and unjust enrichment. (It is unclear why plaintiff addressed such withdrawn

claims in her opposition to the instant motion, so we have replied thereto in an abundance of caution.)  In any event, although the law firm takes no position on the propriety of the procedure by which the second amended complaint was filed to replace the first amended complaint, this motion applies to both pleadings, and the law firm does not object to the second amended complaint serving as the operative pleading herein.

It is important to note that, in her opposition, plaintiff agrees to the dismissal of her cause of action for negligent infliction of emotional harm, which is identified as Count III in her second amended complaint.  In opposition, it is clearly stated that "[t]o be clear:  Plaintiff is not asserting a standalone cause of action for infliction of emotional distress."  (Memo. of Law in Opp., p. 14). Therefore, at present the operative pleading contains two causes of action, which sound in breach of fiduciary duty and negligence (legal malpractice).

It is respectfully requested that this Court grant the instant motion to dismiss this action as the facts alleged by plaintiff are the same in every version of her pleading.  This action is based on demonstrably false allegations, and has been brought to harass Ms. Fisher.  Indeed, it is difficult to reconcile the assertions of plaintiff and her attorney in opposition hereto, in light of the undeniable facts and unrefuted documentation raised by the law firm to the Court in support of this motion. In fact, plaintiff accepts such documentation in opposition, but asserts that such documentation "corroborates" her allegations.  (Memo. of Law in Opp., p. 7)  However, the allegations that the law firm "stole" settlement funds from plaintiff, or "bounced" a check or a wire to plaintiff, are entirely refuted by the documentary evidence. Such documentation also puts lie to the assertion that the law firm lied about sending the replacement wire, and that the law firm did not initiate the intervention of Judge Caproni to compel plaintiff to finally accept her settlement funds on March

7, 2025.  It is unclear why plaintiff would state such allegations with an intentional disregard of the truth.

It is also respectfully requested that plaintiff's cross-motion be denied.  It is rich in irony that plaintiff's counsel seeks sanctions against the law firm, and a referral of the undersigned for discipline, for the audacity of seeking dismissal of the amended complaint herein, by continuing to misrepresent documented facts, and relying on fictitious case law, that simply does not exist.[1]

## **STATEMENT OF FACTS**

### ***Background***

The law firm represented Monique Facey in the matter of *Facey v. City of New York,* in the United States District Court for the Southern District of New York, under docket no. 23-cv-07035 (VEC), before Judge Valerie E. Caproni.  On October 2, 2024, the parties agreed to settle the action for $150,000, and filed a stipulation of dismissal. The defendant City of New York had 90 days to fund such settlement, until on or about January 2, 2025, pursuant to CPLR 5003-a(b).

On December 24, 2024, the law firm received the settlement check from the City of New York in the amount of $150,000. Plaintiff correctly asserts that the law firm did not deposit such check into the firm's Chase IOLTA account until December 30, 2024, after the law firm's holiday break.  (It is unclear why plaintiff has taken the position that the check issued by the City of New York would have cleared on December 30, 2024, the same day it was deposited.)  On January 15,

---

[1] Plaintiff cites in opposition cases identified as *Xiong v. Knight*, 80 A.D.3d 1055 (3d Dep't 2011), *Fields v. Turner,*2019 WL 569229 (N.Y. Co. 2019), *Gutman v. Klein,* 26 Misc. 3d 1211(A) (Kings Co. 2009), *Johnson v. Stadtlander*, 16 A.D.3d 1580 (4ᵗʰ Dep't 2018) and *In re Warburgh*, 72 A.D.3d 107 (1ˢᵗ Dep't 2010).  As discussed more fully in Points I, II and III herein, none of these cases appear to exist, and all of such citations belong to completely different cases with no application herein.

It must also be noted that although plaintiff has withdrawn her third cause of action for negligent infliction of emotional harm, the two scientific articles she cites in paragraph 140 of the second amended complaint are not found within the referenced American Journal of Obstetrics & Gynecology.  Indeed volumes 219 and 101 (as cited by plaintiff) were not published in 2023, but rather date back to 2018 and 1968, respectively.

3

2025, after the check cleared, the law firm confirmed with Ms. Facey her mailing address by email. [Dkt. No. 10] After confirming delivery instructions, the law firm wrote a check to Ms. Facey from the firm's Chase IOLTA account in the amount of $85,553.43. [Dkt. No. 11]. It is undisputed that the actual amount due to Ms. Facey was $89,553.43, pursuant to the retainer agreement which provides for an offset of costs ($744.29) and a 40% contingency fee. The January 15th check was mailed to Ms. Facey.

In opposition, plaintiff asserts that almost two weeks later she deposited the check mailed to her by the law firm into her account at Municipal Credit Union ("MCU"), on January 27, 2025. (Decl. in Opp. of Facey dated April 1, 2025, ¶II) The next day, on January 28, 2025, Chase Bank issued a Chase Fraud Protection email to the law firm, in an apparent abundance of caution, which required the law firm to confirm the authenticity of the check written to Ms. Facey. [Dkt. No. 12] Upon receipt of such request for verification, the law firm realized that the amount of the check was incorrect, and verification was not completed. It was clear that a replacement check would need to be issued. In her declaration in opposition, plaintiff asserts that such check "bounced," however, the documentary evidence demonstrates that this is not so. More importantly, even in opposition, plaintiff does not offer a single fact in support of such statement.

It is undisputed in opposition that the law firm did not hear back from Ms. Facey until February 4, 2025, when she advised that MCU would require from the law firm a confirmation of amount of the check on the law firm's letterhead. It is also undisputed that on February 5, 2025, Liane Fisher discussed the issue with Ms. Facey and with Chase Bank, and it was determined that the most expedient way to get her the settlement funds was to wire the funds to her MCU bank account from the firm's Chase IOLTA account. On February 7, 2025, Ms. Facey emailed to the law firm her wire instructions, and Ms. Fisher personally effected the wire of

$89,553.43 from the firm's Chase IOLTA account to Ms. Facey's MCU account on the same day. On February 7, 2025, Ms. Fisher advised Ms. Facey by email that she would send the wire that day. [Dkt. No. 13]  Later on February 7, 2025, Ms. Fisher received confirmation that the wire was sent to MCU by Chase, she advised Ms. Facey of same and Ms. Facey acknowledged same. [Dkt. No. 14]  On February 11, 2025, the law firm verbally confirmed with MCU the wire sent on February 7, 2025, and explained the mistake in the original amount of the January 15th check, pursuant to MCU's inquiries. Ms. Fisher then emailed Ms. Facey on February 11, 2025, attaching confirmation by Chase that the wire was sent to Ms. Facey. [Dkt. No. 15]

It is undisputed that on February 12, 2025, Ms. Facey advised by email that MCU had "rejected" the wire, and advised the law firm that "I'm going to need a check." [Dkt. No. 16] This undisputed fact completely dismantles the unsupported statement in opposition that Liane Fisher lied about sending the wire or did not send the wire.  Moreover, by email to Ms. Fisher from Chase, dated February 12, 2025, Chase confirmed that the wire to Ms. Facey was returned to Chase by MCU, because of a restriction on Ms. Facey's account. [Dkt. No. 17]

It also bears repeating that attached to the moving affirmation of Liane Fisher as Exhibit "J" is a true and correct copy of the summary of transactions in the law firm's Chase IOLTA account during the relevant time frame.  Such summary, which was generated by Chase, clearly shows the deposit of the $150,000 in settlement funds on December 30, 2024, the negotiation of the check in the amount of $85,553.43 on January 28, 2025, the reversal of same on January 29, 2025, the outgoing wire transfer of $89,553.43 to Ms. Facey's MCU account on February 7, 2025, and the rejection of the wire in such amount by MCU on February 12, 2025 because of a "restriction" on Ms. Facey's account. [Dkt. No. 18]

It is undisputed by Ms. Facey in opposition that the law firm immediately reached out to

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 12 of 32

her by email on February 12, 2025 [Dkt. No. 19], and tried calling her numerous times on February 12, 2025, in order to resolve the issue. At this point, it appeared that a bank check from Chase would be the best manner in which to get Ms. Facey her settlement funds. It is also undisputed by Ms. Facey that she never responded to the law firm.

### *Complaint Filed Against the Law Firm in Federal Court*

Rather, the next day, on February 13, 2025, Ms. Facey filed a complaint against the law firm in the United States District Court, Eastern District of New York (*Facey v. Fisher,* 25- CV-813), through attorney Tyrone Blackburn, Esq. [Dkt. No. 20] Despite the above clearly documented history of this matter, and ongoing communication with Ms. Facey, and with no due diligence whatsoever, Mr. Blackburn falsely asserted (as he continues to do herein) claims against the law firm for misappropriation of Ms. Facey's settlement funds.

### *The Law Firm's Efforts to Compel Plaintiff to Accept Her Funds*

Even in opposition, it is undisputed that the law firm immediately offered to transfer such settlement funds by bank check or wire to Mr. Blackburn once it became aware of his involvement, but he refused to respond. Neither plaintiff nor her counsel dispute that by emails from Lisa Shrewsberry to Mr. Blackburn, the law firm attempted to transfer Ms. Facey's settlement funds to him, on February 13, February 14 and February 20, 2025. [Dkt. No. 21] Nevertheless, Mr. Blackburn refused to accept the settlement funds on behalf of Ms. Facey, and filed suit against the law firm, despite being advised by Ms. Shrewsberry that the wire was not accepted by Ms. Facey's bank due to a hold on her account by MCU.

In opposition, plaintiff does not dispute that the law firm applied to Judge Caproni, by letter dated February 18, 2025 [Dkt. No. 22], for leave to deposit the settlement funds due to Ms. Facey, in the amount of $89,553.43, with the Southern District of New York, because of Mr.

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 13 of 32

Blackburn's refusal to accept same on her behalf, as it was no longer appropriate for the law firm

to contact her directly. The law firm advised Judge Caproni that it was clear that Mr. Blackburn

had refused to accept the settlement funds so that he could continue the fiction that the law firm

had "stolen" such funds.

In opposition, plaintiff characterizes Mr. Blackburn's response to the law firm's

application to Judge Caproni as a "report of the situation" to Judge Caproni. However, such

response, dated February 19, 2025, a copy of which is annexed to the reply affirmation of Lisa

L. Shrewsberry as Exhibit "C," actually opposed the law firm's request to deposit Ms. Facey's

settlement funds with the Court, but did not agree to accept such settlement funds, instead

requesting that the matter play out and "be resolved in the New York State Supreme Court." Such

letter belies the statements made by plaintiff in her Memorandum of Law in Opposition that she

begged the law firm and Judge Caproni for her settlement funds, and that the law firm did not

"voluntarily" transmit her settlement fund to her, and that Judge Caproni "compelled" the law

firm to "hand over" the settlement funds, or that plaintiff was forced to fight the law firm for

months. Such statements are further belied by the words of Judge Caproni during the hearing on

March 7, 2025, wherein she admonished Mr. Blackburn as follows:

> This is entirely absurd. The fact that I am using my time to get a
> check delivered from Attorney 1 to the client is completely absurd.
> And I am looking at you, Mr. Blackburn, because you are
> responsible for this.

[Dkt. No. 24]

On March 7, 2025, Ms. Facey was compelled to accept her settlement funds from the law

firm. In opposition hereto, Ms. Facey admits that she received her settlement funds in Court on

March 7, 2025 (Decl. in Opp. of Facey, ¶II). Although she asserts in opposition that she was not

"paid in full," it cannot be disputed that she received $89,553.43 and nowhere in her pleadings

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 14 of 32

does plaintiff assert that she was entitled to any additional amount of settlement funds.

8

# ARGUMENT

## POINT I

### PLAINTIFF CANNOT DEMONSTRATE A CLAIM FOR NEGLIGENCE OR BREACH OF FIDUCIARY DUTY AGAINST THE LAW FIRM

Claims for negligence and breach of fiduciary duty by a client against her attorneys are properly analyzed under the theory of legal malpractice. *FTI Consulting, Inc. v. CT Miami, LLC,* 2018 N.Y. Misc. LEXIS 3406 (N.Y. Co. 2018). Moreover, where, as here, the two causes of action are based upon the very same facts and seek similar relief, a breach of fiduciary duty claim will be dismissed as duplicative of the legal malpractice (negligence) claim. *InKine Pharm. Co. v. Coleman,* 305 A.D.2d 151 (1st Dep't 2003) (dismissal of breach of fiduciary claim as duplicative of legal malpractice claim appropriate where damages sought are similar, even if not identical); *Sonnenschine v. Giacomo,* 295 A.D.2d 287 (1st Dep't 2002) (cause of action for breach of fiduciary duty based upon same operative facts as that for legal malpractice is properly dismissed as duplicative). While plaintiff attempts to parse her factual allegations between the causes of action for breach of fiduciary duty and negligence (legal malpractice), the operating facts all are based upon the alleged delay in her receipt of the settlement funds due to Ms. Fisher's purported intentional conduct.[23] It cannot be seriously refuted that both claims are duplicative and redundant

---

[2] The second amended complaint asserts that the law breached a fiduciary duty by failing to safeguard funds, provide accurate disclosures or act in plaintiff's interest (¶72), and that the law firm was negligent in grossly mismanaging plaintiff's funds. (¶105)

[3] It should be noted that plaintiff's references to the law firm's purported violations of the New York Rules of Professional Conduct in her cause of action for breach of fiduciary duty, and in opposition to the instant motion, are presently under review of the Grievance Committee for the First Department. Mr. Blackburn filed a complaint with the Grievance Committee on behalf of Ms. Facey, on identical allegations, on February 14, 2025, and the law firm has responded to, and refuted, same. In any event, an alleged disciplinary violation does not create a cause of action for legal malpractice. *William v. Kaufman Org., Ltd. v. Graham James LLP,* 269 A.D.2d 171 (1st Dep't 2000). While plaintiff attempts to challenge this longstanding rule by citing the case of *Gutman v. Klein,* 26 Misc.3d 1211(A)(Kings Co. 2009), such case is not found by search of Lexis or Google. Rather, such cite belongs to the case of *Singh v. Trief & Olk,* 26 Misc.3d 1211(A)(Kings Co. 2009), which is not relevant to the facts herein. Moreover, on pages 7 and 24 of the second amended complaint, plaintiff purports to quote from a case entitled *In re Warburgh,* 72 A.D.3d 107 (1st Dep't 2010) for the proposition that a lawyer who "withheld" settlement funds (as opposed to stealing funds) is liable for breach of fiduciary duty. However, this case is not in existence on Lexis or Google. Rather, such cite belongs to

9

of each other. Plaintiff's causes of action, therefore, must be analyzed as one cause of action for legal malpractice.

Under the law of New York, in order to plead a claim for legal malpractice, a plaintiff must demonstrate that the attorney was negligent, that the negligence was the proximate cause of the plaintiff's loss, and evidence of actual and ascertainable damages. *Prudential Ins. Co. v. Dewey, Ballentine, Bushby, Palmer & Wood,* 170 A.D.2d 108 (1st Dep't 1991). In order to survive dismissal, the complaint must show that "but for" the attorney's alleged malpractice, the plaintiff would not have sustained some actual and ascertainable damages. *Franklin v. Winard,* 199 A.D.2d 220 (1st Dep't 1993); *Stroock & Stroock & Lavan v. Beltramini,* 157 A.D.2d 590 (1st Dep't 1990), so that the failure to establish proximate cause requires dismissal regardless of whether negligence is established. *Won The Hwang v. Bierman,* 206 A.D.2d 360 (2d Dep't 1994). Moreover, speculative or conclusory allegations of damage are insufficient to state a viable claim. *Levine v. Lacher & Lovell-Taylor,* 256 A.D.2d 147 (1st Dep't 1998). *Price v. Herestic,* 240 A.D.2d 151 (1st Dep't 1997); *Lauer v. Rapp,* 190 A.D.2d 778 (2d Dep't 1993). Finally, non-pecuniary damage, such as emotional distress, is not recoverable in a claim for legal malpractice. *Dombrowski v. Bulson,* 19 N.Y.3d 347 (2012).

Plaintiff's assertion that the law firm breached a duty to her is based on the delay in her receipt of the subject settlement funds. It bears repeating that plaintiff's underlying case against the City of New York settled on or about October 2, 2024, so that the settlement funds were not due from the City of New York until 90 days thereafter, on or about January 2, 2025. CPLR5003-a(b). The settlement check from the City of New York was received by the law firm on December 24, 2024, and deposited into the law firm's IOLTA account on December 30, 2024. The original

---

the actual case of *Beudert-Richard v. Richard,* 72 A.D.3d 101 (1st Dep't 2010), which involves the sale of a cooperative apartment.

10

check was written to plaintiff on January 15, 2025, after clearance of the City's check.  Plaintiff did not attempt to negotiate such check until January 27, 2025.  While a mistake was made in the amount of the law firm's check to plaintiff, such error does not rise to the level of professional negligence. Such error was quickly identified and corrected, which culminated in a replacement wire to plaintiff on February 7, 2025, which was unfortunately rejected by plaintiff's bank on February 12, 2025.  Any delay in receipt of such funds after February 12, 2025 is entirely due to the refusal of plaintiff and her attorney to accept same, which caused the law firm to seek and obtain a court order to force plaintiff to accept such funds.  Plaintiff, therefore, has not credibly alleged that the law firm breached a duty to her.

In any event, even if plaintiff could assert a breach of duty by the law firm, she has not alleged proximate causation, or actual and ascertainable damages.  Plaintiff is in possession of her settlement funds, which she has admitted in opposition.  Therefore, no act of the law firm caused plaintiff to lose possession of her settlement funds.  Moreover, any legal fees incurred by plaintiff are due to the scheme by her and her attorney to create a false narrative that her funds were "stolen."

The remaining monetary damages plaintiff seeks are alleged only vaguely, and even in opposition are described merely as "bank problems and fees (frozen account potential penalties for returned check.")  (Memo. of Law in Opp., p. 12).  However, speculative or conclusory allegations of damage cannot be the basis for a legal malpractice claim. *Pellegrino v. File,* 291 A.D. 2d 60 (1st Dep't 2002) *lv. denied,* 98 N.Y.2d 606 (2002); *Zarin v. Reid & Priest,* 184 A.D.2d 385 (1st Dep't 1992) (plaintiff's damages were speculative as he provided no basis for his calculations).  Plaintiff's failure to set forth a specific amount of damage in fees, or providing an

11

actual loss amount of "bank problems" in insufficient, and "potential penalties" demonstrates nothing at all.

The remainder of plaintiff's purported damages, which are described as emotional distress and psychological harm, are simply not recoverable under the theory of legal malpractice. *Wolkstein v. Morganstern,* 275 A.D.2d 635 (1st Dep't 2000) (a cause of action for legal malpractice does not afford recovery for any item of damage other than pecuniary loss, so there can be on recovery for emotional or psychological injury).  Importantly, while plaintiff acknowledges this longstanding rule under New York law, she argues that there is case law allowing exceptions, by citing a case identified as "*Xiong v. Knight*, 80 A.D.3d 1055 (3d Dep't 2011)" which plaintiff describes as standing for the proposition of "acknowledging possibility of emotional damages in legal malpractice where loss was profoundly personal." (Memo. of Law in Opp., p. 15)  However, there is no case in New York (that can be found by Lexis or Google search) with the caption *Xiong v. Knight*, and the cite plaintiff assigns to such fictitious case actually belongs to *Burgher v. AF 111 Props. LLC*, 80 A.D.3d 1055 (3d Dep't 2011), which is a trespass case and does not involve a legal malpractice claim, even tangentially.  Plaintiff, therefore, is not entitled to recover damages for emotional distress or psychological harm.

It is respectfully requested, therefore, that plaintiff's claims for negligence and breach of fiduciary duty be dismissed in their entirety because they do not, as they must, state a viable cause of action for legal malpractice.

12

## POINT II

### PLAINTIFF CANNOT DEMONSTRATE A CLAIM AGAINST THE LAW FIRM FOR VIOLATION OF NEW YORK JUDICIARY LAW §487

It must be noted that neither of plaintiff's amended complaints contain a separately delineated cause of action for violation of New York Judiciary Law §487. However, plaintiff's *ad damnum* clause seeks to recover treble damages under §487. Under New York Judiciary Law §487, an attorney "who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is guilty of a misdemeanor and may be liable to the injured party for treble damages in a civil action. N.Y. Jud. Law §487. Similar to fraud, §487 applies to the making of false statements with scienter, and does not apply to mere negligence or non-intentional errors. *Amalfitano v. Rosenberg,* 12 N.Y.3d 8 (2009). A claim for violation of §487 must also be plead with the specificity required under CPLR 3016(b). *Jean v. Chinitz,* 163 A.D.3d 497 (1st Dep't 2018). Moreover, because the violation of §487 is a crime, the courts are circumspect to ensure that penal responsibility is not extended beyond the fair scope of the statutory mandate. *Bill Birds, Inc. v. Stein Law Firm, P.C.,* 35 N.Y.3d 173 (2020). Relief under a cause of action based upon §487 is not lightly given, and requires allegations of egregious conduct or a chronic and extreme pattern of behavior. *Facebook, Inc. v. DLA Piper LLP (US),* 134 A.D.3d 610 (1st Dep't 2015); *Armstrong v. Blank Rome LLP,* 126 A.D.3d 427 (1st Dep't 2015) (allegations regarding an act of deceit must be stated with particularity). A claim under §487 will be dismissed if the allegations as to scienter are conclusory and factually insufficient. *Briarpatch Ltd., LLP v. Frankfurt Garbus Klein & Seiz,* 13 A.D.3d 296 (1st Dep't 2004).

Even in opposition, plaintiff has not properly alleged that the law firm engaged in any deceit or collusion with respect to plaintiff or her settlement funds. She does not allege any facts

13

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 20 of 32

upon which to reach the conclusion that the law firm acted at any time with the intent to deceive plaintiff. All of plaintiff's assertions in this regard are made upon information and belief, and even in opposition are based on wild accusations that are belied by the facts and the documentary evidence.

Moreover, it must be noted that in opposition on this point, plaintiff cites a case of "*Fields v. Turner*, 2019 WL 5692291 (N.Y.Co. 2019)" for the proposition that a §487 claim includes the "mishandling of settlement funds." (Memo. of Law in Opp., p. 13) However, again, no such case can be found by Lexis or Google search. The case of *Fields v. Turner* is actually found under the cite *Fields v. Turner*, 1 Misc. 2d 679 (N.Y.Co. 1955), and does not involve a claim under §487 (which statute was not enacted until 1965) or settlement funds. Moreover, the cite included by plaintiff belongs to the case of *State v. Wyatt,* 935 N.W.2d 669, 2019 WL 5692291 (2019), which is a South Dakota Supreme Court case.

It is respectfully requested, therefore, that plaintiff's claim for damages under N.Y. Judiciary Law §487 be dismissed in its entirety.

14

## POINT III

### PLAINTIFF CANNOT DEMONSTRATE A CLAIM
### FOR CONVERSION AGAINST THE LAW FIRM

It must be noted that although plaintiff's second amended complaint deleted her cause of action for conversion, her opposition to this motion opposes the dismissal of such claim.  In opposition, plaintiff concedes that the law firm received the settlement check from the City of New York on December 24, 2024, and that the law firm deposited such check into its IOLTA account on December 30, 2024.  While plaintiff alleges, upon information and belief, that the settlement funds became  "immediately available" for disbursement on December 30, 2024, plaintiff fails to account for the time necessary for such settlement check to clear.  In any event, it is conceded by plaintiff that the law firm first attempted to transfer to plaintiff her settlement funds on January 15, 2025, less than two weeks thereafter.  The Chase record of the law firm's IOLTA account transactions during the relevant time period demonstrates that such check was not "fraudulent," and that the subsequent wire to plaintiff was not fictitious.  [Dkt. No. 18] Rather, the documentary evidence demonstrates that the law firm was diligent in attempting to transfer to plaintiff her settlement funds  from January 15, 2025 (after the funds from the City cleared), to February 12, 2025, and that plaintiff did not attempt to negotiate the January 15, 2025 settlement check until two weeks into such time period, on January 27, 2025.

Even in opposition, there is no basis upon which to allege that the law firm exercised "unauthorized dominion over the  settlement funds, to the exclusion of plaintiff's rights." *Iberdola Energy Products v. MUFG Union Bank,* 218 A.D.3d 409, 410 (1st Dep't 2003).  Under the law of New York, the test for conversion is whether the defendant "actually interferes with the property . . . in defiance of plaintiff's rights" or improperly makes use of such property.  *Meese v. Miller,* 79 A.D.2d 237, 242-243 (4th Dep't 1981).  However, the facts make clear that the law firm did not

15

interfere with, or misuse, plaintiff's settlement funds. Rather, the law firm worked to transfer such funds to plaintiff, and was only able to do so by seeking a Court order to finally force plaintiff and her attorney to accept such funds. Plaintiff's entire effort to show that the law firm exercised dominion over the settlement funds is based on the misrepresentation, refuted by documentary evidence, that the settlement funds were forced out of the law firm's hands by Judge Caproni. However, the application to Judge Caproni, plaintiff's response to same, and the transcript of the appearance before Judge Caproni put lie to such statement. [Dkt. Nos. 22 and 24, and Ex. "C" to reply affirmation of Lisa L. Shrewsberry] Moreover, it is unrefuted in opposition that Mr. Blackburn refused to respond to every effort to move the settlement funds to him from February 13, 2025, until the appearance before Judge Caproni on March 7, 2025.

It must be noted that in opposition on this point, plaintiff cites the case of *Johnson v. Stadtlander*, 162 A.D.3d 1580 (4ᵗʰ Dep't 2018) in support of the proposition that her allegations of "withholding" funds state a viable claim of conversion. (Memo. of Law in Opp., p. 10) However, a search of Lexis and Google produce no case by that caption, and the cite belongs to the case of *People v. Chess,* 162 A.D.3d 1577 (4ᵗʰ Dep't 2018), which involves a completely irrelevant criminal matter.

It is respectfully requested, therefore, that any claim for conversion be dismissed in its entirety.

16

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 23 of 32

## POINT IV

### PLAINTIFF CANNOT DEMONSTRATE A CLAIM
### OF FRAUD AGAINST THE LAW FIRM

It must be noted that although plaintiff's second amended complaint deleted plaintiff's cause of action for fraud, her opposition to this motion opposes the dismissal of such claim. Under the law of New York, in order to state a viable cause of action for fraud, a plaintiff must allege the misrepresentation or concealment of a material fact, falsity, scienter by the defendant, justifiable reliance on the deception, and resulting injury. *Waggoner v. Caruso,* 68 A.D.3d 1 (1st Dep't 2009). Moreover, such elements must be pleaded in detail, to comply with CPLR 3016(b). If insufficient factual allegations of even a single element are lacking, the claim must be dismissed. *Shea v. Hambros PLC,* 244 A.D.2d 39 (1st Dep't 1998).

Plaintiff asserts, with no factual support whatsoever, that the law firm intentionally issued a settlement check in the wrong amount, intentionally mailed such check to plaintiff two days late, and intentionally failed to verify the check. Plaintiff then alleges that the law firm falsely concealed the location of its office. Plaintiff makes the outrageous allegation, upon information and belief, that the law firm deliberately delayed paying to plaintiff her settlement funds "to cover unrelated financial obligations" and that the law firm "commingled funds." Plaintiff also asserts in opposition that the law firm misrepresented that it would send a replacement wire, and that sufficient funds were in the law firm's IOLTA account to cover same. (Memo. of Law in Opp., p. 8) However, it is clear from the communications between plaintiff, the law firm and Chase, as well as the Chase record of the IOLTA account transactions and running balance, that none of the foregoing is true. Further, plaintiff's assertion that the law firm is not a tenant at the address asserted by plaintiff herself in paragraph 8 of the amended complaint, is made out of whole cloth. Indeed, even if plaintiff's foregoing allegations were not demonstrably false, plaintiff (even in

17

opposition) does not provide specific facts demonstrating materiality, falsity and justifiable reliance. Moreover, even in opposition, plaintiff utterly fails to allege (as required under CPLR 3016(b)) any details of scienter or reliance.

Plaintiff's argument in opposition essentially is that the Court should simply "infer" fraud, and ignore the actual facts, because this is a pre-answer motion to dismiss. However, the abject speculation by plaintiff in her pleadings, and in opposition, is not entitled to deference in considering a motion to dismiss. *Guidance Endodontics, LLC v. Olshan Grundman Frome Rosensweig & Wolosky, LLP,* 157 A.D.3d 508 (1st Dep't 2018). It is respectfully requested, therefore, that any fraud claim be dismissed in its entirety.

18

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 25 of 32

## POINT V

## THE LAW FIRM IS ENTITLED TO AN AWARD OF SANCTIONS

This action is frivolous and malicious. Plaintiff and her counsel concocted this action to capitalize on a short delay in the receipt of plaintiff's settlement funds, from January 27, 2025, when plaintiff first attempted to cash the January 15, 2025 check from the law firm, to February 12, 2025, when plaintiff's bank (MCU) rejected the replacement wire from the law firm's Chase IOLTA account. During this two week period, plaintiff and the law firm were in contact, and there was no question about what was occurring. Thereafter, from February 12, 2025 to March 7, 2025, plaintiff and her attorney simply refused to accept the settlement funds, which forced the law firm to seek and obtain a federal court order to compel her to do so. These facts are borne out by the documentary evidence submitted in support of the instant motion. It bears repeating that in opposition, plaintiff does not dispute any of the documentary evidence submitted by the law firm, and even goes far as to argue that all of such documentary evidence "corroborates" plaintiff's claims. (Memo. of Law in Opp., p. 7)

It bears repeating that certain facts are intentionally misrepresented by plaintiff and her attorney in the amended complaint, including:

1. The allegation that Ms. Fisher lied about sending the replacement wire to plaintiff. This is untrue, and belied by the proof of such wire was sent by Ms. Fisher to plaintiff. [Dkt. No. 18]

2. The allegation that the law firm "had no physical presence" and that the law firm had no discernable address. This is also untrue, as plaintiff and her attorney must know, as they also allege in paragraph 8 of both amended complaints that the law firm is located at 225 Broadway, Suite 1700, New York, New York 10007.

3. The allegation that the law firm retained 100% of the settlement amount paid by the City of New York, rather than the 40% to which it was entitled. Plaintiff and her attorney know this is untrue. Plaintiff received the amount of $89,553.43, which was calculated as follows - -$150,000 minus $744.29 in expenses = $149,255.7 x 60% = $89,553.43. In fact, in

opposition, plaintiff admits to receiving settlement funds on March 7, 2025.  (Facey Decl. in Opp., II)

Moreover, in opposition, plaintiff and her attorney misrepresent the events between February 12, 2025 and March 7, 2025.  The unrefuted documentary evidence demonstrates that Ms. Facey stopped responding to the law firm on March 12, 2025, and filed a federal court action on March 13, 2025 accusing the law firm of theft.  The law firm attempted to transfer the settlement funds to Mr. Blackburn on February 13, 14 and 20, 2025, but he never responded.  The law firm applied to Judge Caproni to transfer the funds to the SDNY on February 18, 2025, and Mr. Blackburn opposed such request on February 19, 2025, not agreeing to accept the funds on plaintiff's behalf, and advising Judge Caproni that he would prefer to allow the matter to play out in state court.  Judge Caproni ordered Mr. Blackburn, Ms. Facey and the law firm to appear before her on March 7, 2025, at which time she admonished Mr. Blackburn and compelled Ms. Facey to accept the funds.  These facts are beyond dispute.  Yet, in opposition, and upon the same documents, plaintiff argues that she was begging for her settlement funds from February 12, 2025 to March 7, 2025, and that Judge Caproni "forced" the law firm to transmit the settlement funds to her.  Such outrageous misrepresentation is clearly intentional.

Such plain misrepresentations are made to support this frivolous action, and continue Mr. Blackburn's campaign against Ms. Fisher, and form the basis for an award of sanctions under 22 NYCRR 130-1.1(a).  The law firm has been forced to incur the expense of this motion (in addition to the expense of the application to Judge Caproni and defending against the identical allegations before the Grievance Committee), which expenses were compounded by having to respond to outright misrepresentations of fact and (nonexistent) case law.  It must be noted that an attempt to persuade a Court or oppose an adversary by relying on non-existent precedent has been held to constitute "an abuse of the adversary system" warranting sanctions. *Park v. Kim,* 91 F.4th 610, 615

20

(2d Cir. 2024); _Dukuray v. Experian Info. Sols._, 2024 U.S. Dist. LEXIS 132667 (S.D.N.Y. 2024)

It is respectfully requested, therefore, that an order of sanctions be entered against plaintiff and her

attorney.

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 28 of 32

## POINT VI

## PLAINTIFF'S CROSS-MOTION MUST BE DENIED

### A.    Request For Sanctions

Plaintiff's request for sanctions is based upon the argument that the law firm's motion to dismiss is frivolous, and that sanctions are appropriate to protect the integrity of the judicial process.  The law firm's motion to dismiss is not frivolous, which (at minimum) is demonstrated by plaintiff's withdrawal of her cause of action for negligent infliction of emotional harm in response to same.  In any event, the motion to dismiss is based on the undisputed documentary evidence filed in support of same, and the longstanding law of New York with respect to claims for legal malpractice.  Moreover, it must be reiterated that plaintiff's argument that she is trying to protect the integrity of the judicial system is completely at odds with her presentation to this Court of case law that does not exist, in support of her efforts to convince the Court to ignore well-established legal precedent.

### B.    Request to Strike

Finally, plaintiff's cross-motion to strike should be denied.  Such relief is sought on the grounds that the law firm's motion to dismiss (1) accuses Mr. Blackburn of soliciting their clients, including by advertising outside their office, (2) states that Mr. Blackburn has a pattern of filing frivolous litigation, and (3) asserts that Mr. Blackburn is waging a documented campaign against Liane Fisher.  However, contrary to Mr. Blackburn's assertion, no statement was made by anyone that he "improperly solicited [Ms. Fisher's] former clients, including by allegedly advertising in front of her office."  (Blackburn Affirm. in Support of Cross-Motion, ¶3)  This is a bizarre assertion, and created out of thin air, and not based upon any statement or argument in support of the motion, or otherwise.

22

Case 2:24-cv-01608-WSS    Document 69-1    Filed 09/17/25    Page 29 of 32

        With respect to Mr. Blackburn's assertion that the law firm has scandalously asserted that

he has a "pattern of filing frivolous litigation," this exact finding was made by U.S. District Judge

Denise Cote, in her order dated April 3, 2024 [Dkt. No. 25, p. 14].

        Finally, the law firm's position that Mr. Blackburn has waged a documented campaign

against Ms. Fisher is borne out by his history of threatening to publicly humiliate her by making

public the utterly false allegation that she had an improper and illicit personal relationship with her

adversary counsel in the *Zunzurovski* matter (unless she agreed to an immediate "settlement"),

making good on such threat by the filing of the meritless *Zunzurovski* action against her when she

refused to succumb to his extortive demands[4], and his unsupported assertions in this action that

she "stole" her client's money, which reckless and malicious claim has also been filed by Mr.

Blackburn with the New York Attorney General, the New York Grievance Committee for the First

Department, the New Jersey Office of Attorney Ethics and (upon information and belief) the

Manhattan District Attorney's office.  It is difficult to characterize such behavior as anything short

of a campaign.  In a telling statement on page 24 of the plaintiff's Memorandum of Law in

Opposition, plaintiff states that it would have been appropriate for Ms. Fisher to have "resolved

this matter quietly," referring to Mr. Blackburn's threat by letter dated March 3, 2025, to increase

the amount of damages sought to $10 million in this lawsuit, if the law firm did not immediately

respond to his "settlement demand."  As in *Zunzurovski,* the law firm stood firm, and Mr.

Blackburn made good on his threat by substituting the second amended complaint for the first

amended complaint on Docket No. 6, which *inter alia* increased the damages sought from $1

million to $10 million.

---

[4]  By order dated April 9, 2025, this Court granted the law firm's motion to dismiss the amended complaint in
*Zunzurovski v. Fisher,* Index No. 153842/2024, under CPLR 3211(a)(1) and (7).

23

It is respectfully requested, therefore, that plaintiff's cross-motion to strike and for sanctions be denied in its entirety.

## **CONCLUSION**

Based upon the foregoing, it is respectfully requested that the Amended Complaint be dismissed in its entirety, with prejudice, along with an award of costs and sanctions, and that plaintiff's cross-motion be denied in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: Hawthorne, New York
     April 16, 2025

TRAUB LIEBERMAN STRAUS &
SHREWSBERRY LLP
*Attorneys for Defendants Liane Fisher and Fisher
Taubenfeld, LLP*

*Lisa L. Shrewsberry*

By:    Lisa L. Shrewsberry, Esq.
    Mid-Westchester Executive Park
    Seven Skyline Drive
    Hawthorne, New York 10532
    (914) 347-2600

25

## **WORD COUNT CERTIFICATION**

I hereby certify pursuant to Uniform Civil Rules Section §202.8-b(c) that the total number of words in this Memorandum of Law in Opposition to Plaintiff's Cross-Motion to Strike and for Sanctions, and in Further Support of Motion to Dismiss Amended Complaint and an Award of Sanctions by Defendants Liane Fisher and Fisher Taubenfeld, LLP, exclusive of the caption and signature block, is **6,941**, and that this document complies with the word count limit set forth in Uniform Civil Rules Section §202.8-b(a).

Dated: Hawthorne, New York
       April 16, 2025

TRAUB LIEBERMAN STRAUS &
SHREWSBERRY LLP

*Lisa L. Shrewsberry*

Lisa L. Shrewsberry, Esq.

26