IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS DEXTER JAKES,<br><br>Plaintiff,<br><br>v.<br><br>DUANE YOUNGBLOOD; JOHN DOE 1; JOHN DOE 2; JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; JOHN DOE 6; JOHN DOE 7; JOHN DOE 8; JOHN DOE 9; JOHN DOE 10,<br><br>Defendants. | CIVIL ACTION NO. 2:24-cv-01608-WSS<br><br>Judge William S. Stickman<br><br>**Affidavit of Tyrone A. Blackburn, Esq. In Response to Dustin A. Pusch's Vexatious Multiplication of the Proceedings** |

I, Tyrone A. Blackburn, being duly sworn, depose and say:

I. **Introduction & Purpose**

1. I am the former attorney for the Defendant in *Thomas Dexter Jakes v. Duane Youngblood, et al.*, Civil Action No. 2:24-cv-01608-WSS, pending in the United States District Court for the Western District of Pennsylvania. I submit this Affidavit to bring to the Court's attention certain actions by Plaintiff's counsel, Mr. Dustin Pusch, which I believe constitute bad faith intentional misrepresentation, procedural omissions, and disgusting retaliatory conduct. These actions have caused me professional and significant financial harm.

II. **Errata, Revised Filings, & "Vanguard of Legal Filing Perfection"**

2. The official docket in this case shows that Mr. Pusch has submitted multiple errata and revised filings, evidence that he has failed to meet basic standards of care and accuracy in his court submissions.

3. Yet Mr. Pusch seeks to present himself as though he sits at the vanguard of legal filing perfection. That portrayal is inconsistent with the record of his own errors, omissions, and misleading statements.

III. **Mischaracterization of Facey v. Fisher**

4. Mr. Pusch has implied to this Court that I was sanctioned in *Facey v. Fisher* for citation or quotation errors similar to those raised here—an insinuation that is false.

5. In *Facey v. Fisher*, another one of my pro bono cases, I represent an African American woman who credibly accused her former counsel, Liane Fisher of fraud, negligence, and

conversion of her $89,000 settlement. Defendant Fisher gave Plaintiff Facey a check that bounced[1], made a wire transfer that was rejected due to insufficient funds, and caused Ms. Facey to be surrounded by law enforcement in her bank as they suspected her of attempting to cash a stolen check. While in the Bank Ms. Facey called Ms. Fisher in the phone begging for help, Ms. Fisher yelled at her telling her to try cashing the check again (which she did, and it was rejected) and then hung up on her when Ms. Facey informed her that the check was rejected again.

6. This would have been a harmless error, and a deplorable way to treat one's client, but for the fact that Ms. Fisher knew the check would have never cleared due to having: 1. Due to her rejecting the alert which came from her bank asking her if she had authorized the check to be cashed. Ms. Fishers actions were so deplorable that Ms. Facey's bank branch manager, who had called law enforcement to arrest Ms. Facey, instead instructed her to make a police report against Ms. Fisher.

7. Ms. Fisher then attempted to send a wire transfer to Ms. Facey, which was rejected due to insufficient funds. This resulted in Ms. Facey's bank account being frozen for nearly 60 days due to suspicion of money laundering.

8. Ms. Facey's bank account was frozen in the middle of the winter. At the time Ms. Facey was unemployed. Ms. Facey could not pay her rent, could not purchase groceries, and could barely take care of her 3 adolescent children. As a result of all of this, Ms. Facey, who was pregnant at the time *suffered a miscarriage* due to the stress (according to her medical provider) stemming from Defendant Fishers actions.

9. The *Facey* sanctions order did *not* rest on any errors related to citation or quotation. Instead, the Court imposed a sanction because:
    a. I did not withdraw the Complaint after my client had been compensated by former counsel.
    b. I did not affirmatively inform the Court, after filing the lawsuit, that a federal judge had compelled my client to accept the settlement check.
    c. The Court found that the Complaint was malicious and aimed at embarrassing or harassing Defendants.

10. All reasons I vehemently refute and intend to appeal. The case came to me; I assessed it and filed on behalf of Ms. Facey. I was under no obligation to withdraw the litigation after Ms. Fisher finally paid Ms. Facey pursuant to a Court order several months after issuing a

---

[1] After failing to notify the Plaintiff that her check had arrived for close to 30 days after she cashed it.

bad check and rejected wire transfer. Especially when Ms. Facey's damages were not limited to the $89,000.00 but also included damages resulting from a Fisher induced miscarriage.

11. By misrepresenting the basis of the *Facey* sanctions—and suggesting that the alleged misconduct in that case was analogous to citation errors at issue here—Mr. Pusch distorts the record and attempts to lever an intentionally deceptive comparison.

IV. **Cartagena v. Dixon – Omission of Key Procedural Facts**

12. In *Cartagena v. Dixon*, I notified the Court of an error in a filing, submitted a corrected document, and, under the Court's *direction*, highlighted the corrections in the Defendants' Reply Memorandum of Law.

13. Although this occurred after Mr. Pusch's vexatious reporting, he failed to correct the record and update this Court on the subsequent occurrence in *Cartagena v. Dixon*. Again, Mr. Pusch's pedals a misleading narrative about my actions in that matter.

14. As identified earlier, Mr. Pusch is no stranger to filing errors, as evidenced by the bevy of errata's he has filed here. If I had the time to waste, I am certain I could dig through pacer and state court dockets and find a ton of errata filings and corrected documents filed by Mr. Pusch in unrelated cases throughout the years, but doing so would *vexatiously multiply the proceedings* and make me no better than Mr. Pusch.

V. **Dustin Pusch's Retaliatory Bar Complaints and The Harm They Have Caused**

15. On or about June 11, 2025, Mr. Pusch filed an ethics complaint against me with the New Jersey Office of Attorney Ethics, falsely alleging that I misrepresented my D.C. Bar admission status solely because I placed the initials, "D.C." on my letterhead.

16. I was sworn into the District of Columbia Bar on May 7, 2024, by the Honorable Katherine H. Parker, United States Magistrate Judge for the Southern District of New York.

17. My Bar application is pending because I have not yet received my Bar ID number.

18. Under D.C. Court of Appeals Rule 49(c)(8) (Unauthorized Practice of Law), an attorney whose application for admission to the D.C. Bar is pending—especially one admitted in another U.S. jurisdiction—may provide legal services and hold themselves out as authorized to practice law... The rule authorizes such limited practice for up to 365 days with the possibility of extension for good cause.

19. The Rule imposes specific conditions and requires disclosures. Among the requirements, the attorney must have submitted the application for admission, be in good standing in

another jurisdiction, not be disbarred or under suspension, and be supervised by an active member of the D.C. Bar.

20. Mr. Pusch's claims that I have either practiced or improperly held myself out as licensed to practice in the District of Columbia are unfounded in light of these facts:
    a. I have never filed a case in D.C.
    b. I have never appeared in a D.C. court.
    c. I do not maintain an office in D.C.
    d. I have never advertised legal services in D.C.

21. My conduct of adding the initials D.C. to my letterhead is consistent with the requirements of Rule 49(c)8: I do not maintain an office in D.C.; I have not appeared in a D.C. court; I have not advertised legal services in D.C.; and my conduct is limited to permissible practice under DC's pending status provisions.

22. Prior to filing multiple bar complaints, Mr. Pusch did not attempt any informal verification—there was no phone call, email, or request for documentation. He proceeded instead to initiate formal complaints in multiple jurisdictions without confirming basic facts.

23. Because of these bar grievances, I have incurred substantial expense in retaining ethics counsel and have devoted significant time and effort to defend against inquiries that are demonstrably baseless.

24. Mr. Pusch's conduct in filing the D.C. and New Jersey Bar Complaints constitutes a clear violation of 204 Pa. Code Rule 8.4 (Misconduct), which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation …" or "engage in conduct that is prejudicial to the administration of justice."

25. The impact of these complaints is not only financial but also reputational, and professional. They have imposed a heavy burden on my practice—especially given my limited resources and substantial pro bono work—and have distracted from my ability to focus on the substantive matters of those cases.

26. Given this conduct, and in light of the ethical rules governing attorney behavior—and absent any good cause shown by Mr. Pusch—this Court should consider Mr. Pusch's bar complaints an act of retaliation and a misuse of the disciplinary and grievance process.

VI. **Corrections & Ongoing Efforts**

27. As I advised the court during the show cause hearing, I am conducting a full review of all filings made using updated LexisNexis and Westlaw platforms.

28. I have already corrected filings in multiple cases—both state and federal—where citation or minor drafting errors occurred.

VII. **Request for Relief**

29. I respectfully request that the Court view Mr. Pusch's actions—especially his malicious bar complaint, which has caused me significant financial harm—in light of the full record and deny Plaintiff's request for monetary sanctions.

30. I also respectfully request that the Court take judicial notice of the foregoing facts; discredit any arguments by Mr. Pusch that rely on false or misleading statements about *Facey v. Fisher* or omissions concerning *Cartagena v. Dixon*; and consider imposition of sanctions under Rule 11, 28 U.S.C. § 1927, or the Court's inherent authority for Mr. Pusch's pattern of bad faith filings and misuse of the ethics/grievance process.

31. To impose sanctions under § 1927, the Court must find that counsel has (1) multiplied "the proceedings"; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) did so in bad faith or by intentional misconduct—advancing meritless claims that counsel knew or should have known to be meritless, where the motive for filing the multiple proceedings was an improper purpose such as harassment. *In re Prosser*, 777 F.3d at 162; see also *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002); see also *Barley v. Fox Chase Cancer Center*, 54 F. Supp. 3d 396, 408 (E.D. Pa. 2014).

32. That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). And one permissible sanction is an "assessment of attorney's fees"—an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side. Id., at 45, 111 S.Ct. 2123; *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).

33. Because of Mr. Pusch's malicious bar complaint, I have had to spend thousands of dollars to retain ethics counsel to defend a baseless "unauthorized practice of law" complaint in D.C. and in New Jersey.

34. This was clearly bad faith—particularly since Mr. Pusch, who displays a keen ability to conduct research, failed to verify basic facts before filing multiple bar complaints. This is also a clear act of retaliation tied to my pro bono advocacy on behalf of my former client Defendant Youngblood, which led several men to come forward with independent claims of sexual harassment, grooming, and assault against Plaintiff Jakes.

35. Under 204 Pa. Code § 99.3 — The Lawyer's Duties to the Court and to Other Lawyers:

    a. "Pennsylvania Code of Civility, which directs that "[a] lawyer should not bring the profession into disrepute by making unfounded accusations of impropriety or personal attacks upon counsel and, absent good cause, should not attribute improper motive or conduct to the other counsel." § 99.3(6). *Dixon v. All State Ins. Co.*, 2012 U.S. Dist. LEXIS 181472, *21.

36. Mr. Pusch's conduct in filing the D.C. and New Jersey Bar Complaints is a clear example of a lawyer "making unfounded accusations and attributions of improper motive without verifying facts," which is a clear violation of Pennsylvania State Rules of Professional Conduct.

I swear under penalty of perjury that the facts set forth above are true and correct.

**Supporting Legal Authority:**
- *204 Pa. Code § 99.3*, The Lawyer's Duties to the Court and Other Lawyers.
- *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) sets forth the elements needed for § 1927 sanctions.
- *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002) ("Proceedings multiplied… in an unreasonable and vexatious manner…").
- *Barley v. Fox Chase Cancer Center*, 54 F. Supp. 3d 396, 408 (E.D. Pa. 2014).
- *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
- *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).

DATE: September 19, 2025

BY: */s/ Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
T.A. Blackburn Law, PLLC
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: (347) 342-7432
Email: tblackburn@tablackburnlaw.com